**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ERIC COOMER, )<br>    *Plaintiff*, )<br>    )<br>vs. )<br>    )<br>MAKE YOUR LIFE EPIC, LLC, D/B/A )<br>THRIVETIME SHOW AND CLAYTON )<br>THOMAS CLARK, INDIVIDUALLY, )<br>    *Defendants*. ) | CIVIL ACTION NO. 1:21-cv-03440-KLM |

**DEFENDANTS' SPECIAL MOTION TO DISMISS**
**PURSUANT TO COLORADO REVISED STATUTES § 13-20-1101**

Clayton Clark ("Clark") is a well-known podcast host. His show, Make Your Life Epic, LLC, d/b/a the Thrivetime Show ("Thrivetime" and, with Clark, "Defendants"), is about business and politics. He often has special guests who he interviews regarding current events. Since long before the 2020 General Election, the country has been roiled in the debate over election integrity. Numerous lawsuits around the country have been filed relating to voting anomalies and voting machines. The public debate over voting machines continues to this day. On or about December 22, 2020 Clark interviewed Joe Oltmann ("Oltmann") on his show for the first time to discuss his experience with Eric Coomer "(Coomer") on an Antifa conference call. In a different lawsuit pending in the State Court of Colorado ("State Lawsuit"), Coomer alleges Oltmann's statements about him are defamatory. Now, Coomer comes to this Court alleging Clark is also liable to him for defamation simply for interviewing Oltmann. As Defendants demonstrate below, Coomer's lawsuit should be dismissed under Colorado Revised Statutes § 13-20-1101 ("Anti-SLAPP Statute") as follows.

## BACKGROUND

**I.      Public Debate About The 2020 General Election and Electronic Voting Machines.**

The 2020 General Election, much like the 2016 General Election, was intensely watched and hotly contested. According to research conducted by the Pew Research Center, roughly 36% percent of adults in the United States say they followed the results of the 2020 General Election "almost constantly."[1] Another 34% percent checked "fairly often" and 22% did so "occasionally."[2] Only about 7% of adults completely ignored the results.[3]

Following the 2020 General Election being called for Joe Biden, forensic audits and investigations of the 2020 General Election were initiated by court order or by direction of state legislatures or attorneys general in Arizona, Georgia, Michigan, Wisconsin, New Hampshire, and Pennsylvania. In fact, recently "[a] judge . . . asked Georgia election investigators and the [Georgia Bureau of Investigations] to provide an update about any investigations into allegations involving the casting of counterfeit ballots in last year's presidential election."[4] The Arizona Senate even ordered a full forensic audit of the votes cast in Maricopa County. The audit included Dominion's voting machines used in that county during the 2020 General Election.[5]

---

[1] *Americans Paid Close Attention as Election Returns Came In*, Pew Research Center (Nov. 23, 2020) https://www.pewresearch.org/journalism/2020/11/23/americans-paid-close-attention-as-election-returns-came-in/.

[2] *Id*.

[3] *Id*.

[4] Mark Niesse, *Judge Seeks Info on Georgia Investigations of Counterfeit Ballots*, ATLANTA J. CONST. (Sept. 20, 2021), https://www.ajc.com/politics/judge-seeks-info-on-georgia-investigations-of-counterfeit-ballots/YUQ3JQR32VHTNCXO3NUMW4YQNY/.

[5] Ex. 1 at 62-63, Cyber Ninjas, *Maricopa County Forensic Election Audit Volume III* (2021).

Concerns regarding election integrity and security in connection with electronic voting machines are not new. Following the 2016 general election, a left-leaning advocacy organization and individual voters filed an action in the United States District Court for the Northern District of Georgia, seeking to set aside the results of a 2016 Congressional race in which the Republican candidate had prevailed. The *Curling v. Raffensperger* plaintiffs alleged "sophisticated hackers – whether Russian or otherwise – had the capability and intent to manipulate elections in the United States."[6] Even as recently as March 10, 2022, current White House press secretary Jen Psaki admitted to the world that Russia had in fact hacked the 2016 General Election, although the information has not been declassified.[7]

On October 11, 2020, just three weeks before the 2020 General Election, and with no knowledge regarding the classified findings of the U.S. government, the court in *Curling* issued an order regarding the Dominion voting system's security risks and the potential for fraud or irregularities.[8] The court concluded, "[t]he Plaintiffs' national security experts convincingly present evidence that this is not a question of 'might this actually ever happen?' – but 'when it will happen,' especially if further protective measures are not taken."[9] The *Curling* litigation dealing

---

[6] Amended Complaint, Dkt. No. 15, *Curling v. Raffensperger*, No. 2017-CV-292233 (N.D. Ga. 2020); *See* Ex. 2, *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1268 (N.D. Ga. 2020).

[7] Ex. 3 at 1-2, Timothy H.J. Nerozzi, *Psaki tells TikTok influencers Russia 'hacked our election' in 2016*, FOX NEWS (Mar. 11, 2022) https://www.foxnews.com/tech/psaki-tells-tiktok-influencers-russia-hacked-election-2016; *see also* Taylor Lorenz, *White House Briefing TikTokers Ukraine* at 20:00, SOUNDCLOUD (Mar. 10, 2022) https://soundcloud.com/taylorlorenz/white-house-press-briefing-tiktokers-ukraine.

[8] Ex. 2, *Curling*, 493 F. Supp. 3d 1264, 1339-40.

[9] *Id*. at 1342. Indeed, the court found numerous concerns with Dominion's voting machines. *See id*. at 1278, 1280-81, 1283, 1287, 1306.

with the serious security vulnerabilities of Dominion's voting technology continues to this day. So to do the vulnerabilities with Dominion voting machines.

Not only were Republicans contesting the 2020 General Election results, just as Democrats contested the 2016 General Election, but so was President Trump. In fact, President Trump asserted that he won the election and that the victory had been stolen from him, generating one of the largest news stories in U.S. history, a genuine matter of public concern. Coomer, by virtue of his role as the former Director of Product Security and Strategy for Dominion Voting Systems, placed himself at the center of these public discussions.

## II. Oltmann First Reported on Coomer's Involvement in the 2020 General Election.

With all of this as backdrop, on November 9, 2020, Oltmann reported on his Podcast that he attended a conference call with Antifa in which an individual named Eric told the attendees: "Don't worry about the election, Trump is not gonna [sic] win. I made f*#@ing sure of that. Hahahaha."[10] Oltmann reported that he had identified that individual as Coomer and reported his position at Dominion, along with vile and hateful posts from Coomer's Facebook account. Just ten days after Oltmann first reported on Coomer, on November 19, 2020, Rudy Giuliani and Sidney Powell, then attorneys for President Trump, held a national press conference to speak about election issues and Coomer's role in the fraud.[11] Before ever appearing on Clark's show, throughout November 2020, Oltmann also gave interviews for a variety of other news

---

[10] Compl. at ¶ 29.

[11] Compl. at ¶ 34; *see also Rudy Giuliani Trump Campaign Press Conference Transcript November 19: Election Fraud Claims*, REV (Nov. 19, 2020) https://www.rev.com/blog/transcripts/rudy-giuliani-trump-campaign-press-conference-transcript-november-19-election-fraud-claims.

organizations.[12]  Oltmann even signed a sworn affidavit attesting to his story about Coomer for use by President Trump's legal team in their election challenges.[13]

### III. Who is Eric Coomer?

Plaintiff Coomer, the former Director of Product Security and Strategy for Dominion Voting Systems ("Dominion"), hates President Trump.[14] Coomer plastered his disdain for President Trump all over his Facebook account.[15] Coomer reposted on his Facebook page an Antifa manifesto addressed to President Trump.[16] Coomer's hateful speech provides insight on who he is and what he stands for.[17] After being called out by Oltmann, Coomer then removed all of his rants from Facebook and made it appear as if his page never contained such writings.[18]

Eric Coomer is also a proven liar.  In fact, on December 8, 2020, Coomer penned an op-ed in the Denver Post stating that "*any posts on social media channels purporting to be from me have also been fabricated,*" knowing this was false.[19]  Indeed, Coomer subsequently admitted the

---

[12] Compl. at ¶¶ 33-35.

[13] Ex. 4, Dkt. No. 9-6, Exhibit 6 to Plaintiff's Amended Complaint, *Freehan v. Wisconsin Elections Comm'n*, Case No. 2:20-cv-01771-PP (Dec. 3, 2020); see also Coomer's Amended Complaint at ¶ 63 n.100 (Feb. 4, 2021), *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-cv-34319, currently pending in District Court, Denver County, Colorado.

[14] Ex. 5 at 0001-2, 0009-14, 0037-38, 0042-43, 0052-54, 0057-68, 0071-80, Dkt. No. 41-8, Exhibit G to Defendants' Motion to Dismiss, *US Dominion, et al. v. Herring Networks, Inc., et al.*, Case No 1:21-cv-02130-CJN (Nov. 18, 2021).

[15] *See id*.

[16] *Id*. at 0009-12.

[17] *See* Ex. 5.

[18] Ex. 6 at 39:10-40:3, Dkt. No. 41-7, Exhibit F to Defendants' Motion to Dismiss, *US Dominion, et al. v. Herring Networks, Inc., et al.*, Case No 1:21-cv-02130-CJN (Nov. 18, 2021); Ex. 7 at p.4, Eric Coomer, *Guest Commentary: I work for Dominion Voting Systems. I did not commit voter fraud. The attacks against me need to stop.*, The Denver Post (Dec. 8, 2020).

[19] Ex. 7.

posts were "authentic" in an interview with the New York Times and in his deposition in the State Lawsuit.[20]

Coomer's Facebook posts, his denials of their existence, and his subsequent hollow contrition show a man willing to say anything to fit the situation at hand. But Coomer's recent run-in with local police in his hometown of Salida, Colorado, reveals he is willing to lie under any circumstance. Two days before his deposition in the State Lawsuit, numerous witnesses saw Coomer run a stop sign, drive his truck into a storefront, back out of the rubble, and drive away, almost hitting several pedestrians.[21] When confronted by police wearing body cameras outside a bar he operates, Coomer repeatedly lied about his involvement.[22] Only after his lawyers came to the scene and intervened did Coomer own up to his actions.[23] Eric Coomer is a liar.

**IV.   Mr. Clark Interviews Oltmann On His Show and His Reawaken America Tour.**

On December 22, 2020, two weeks after Coomer's Denver Post op-ed where he lied to the world, Clark interviewed Oltmann for the first time on his Podcast. During the Podcast, Oltmann retold his story regarding Coomer. On June 5 and October 11, 2021, Clark interviewed Oltmann again on his show and Oltmann has been a guest speaker at Defendants' Reawaken America Tour. Clark's interview of Oltmann and Oltmann's speeches on the tour clearly relate to a matter of public concern, *i.e.*, election results, security, and integrity.

---

[20] Ex. 8 at p.7, Bryan Schutmaat, *He was the 'Perfect Villain' for Voting Conspiracists*, N.Y. Times (Aug. 24, 2021), https://www.nytimes.com/2021/08/24/magazine/eric-coomer-dominion-election.html (emphasis added); *see aslo* Ex. 6 at 39:10-40:3.

[21] Ex. 9 at 8:5-12:25, Certified Transcript of Body Camera Footage from Eric Coomer's Arrest on September 21, 2021 (Mar. 11, 2022).

[22] *Id*. at 2:13-3:9, 3:24-4:6, 4:9-5:19, 14:11-15:8.

[23] *Id*. at 16:11-18:8.

Coomer asserts 27 specific allegedly defamatory statements made by Oltmann or Defendants' Podcast or speaking tour.[24] Coomer's allegations are found in the Original Complaint at ¶¶ 3, 47-59, 63, 65, 67-68, 71-72.[25]

## ARGUMENT

### I. The Colorado Anti-SLAPP Statute Standard

Colorado's Anti-SLAPP Statute provides, "[t]he general assembly finds and declares that it is in the public interest to encourage continued participation in matters of public significance and that this participation should not be chilled through abuse of the judicial process." C.R.S. § 13-20-1101(1)(a).[26] To enforce the general assembly's intent, the Anti-SLAPP Statute empowers courts to promptly dismiss meritless lawsuits that target constitutionally protected speech and association. C.R.S. § 13-20-1101(3)(a). The Anti-SLAPP Statute provides a two-part test to determine whether a claim challenged under it should be dismissed. *Id.*; *see also Stevens*, No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *3 (citing *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3rd 171, 173-74 (Cal. App. 2011)). First, a court must determine whether a plaintiff's claims arise

---

[24] The remaining allegations by Coomer are either in no way tied to Defendants or are not defamatory against Coomer. For instance, Coomer alleges this statement by Oltmann is defamatory against him: "It's impossible to ignore the fact that the fraud was so massive, the system is so compromised, that there is no way you can trust these voting machines. There's no way you can trust the people in leadership that are running those voting machines. They're all compromised because they continually lie to us." Compl. at ¶ 61. Nowhere in this statement is Coomer's name mentioned. The Supreme Court has made clear that statements must be directed at a specific individual to be actionable. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288-89 (1964).

[25] For the Court's convenience, Ex. 10 contains Plaintiff's alleged and actionable defamatory statements.

[26] Colorado's Anti-SLAPP Statute first went into effect on July 1, 2019. C.R.C. § 13-20-1101. Because the statute was newly enacted, few Colorado courts have addressed it at any length. The Honorable Judge Robert Blackburn recently stated: "As the magistrate judge aptly noted, because Colorado's anti-SLAPP law is relatively new and untested, and given that it tracks California's statute almost exactly, it is appropriate to draw from the more well-established body of authority interpreting the California law." *Stevens v. Mulay*, No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021).

from any act in furtherance of a person's right of free speech or association. C.R.S. § 13-20-1101(3)(a); *Stevens*, 2021 WL 1153059, at *3. If a defendant makes a *prima facie* showing on this step, the burden shifts to the plaintiff who must demonstrate a "reasonable likelihood of prevailing on the claim." C.R.S. § 13-20-1101(3)(a); *Stevens*, 2021 WL 1153059, at *3. All of Plaintiff's causes of action alleged against Defendants must be dismissed pursuant to the Anti-SLAPP Statute because (1) the claims arise out of constitutionally protected activity, including freedom of speech and association; and (2) Plaintiff cannot show a reasonable likelihood of prevailing on his claims.

## II.     Coomer's Claims Arise out of Constitutionally Protected Activity.

Under the first part of the test, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech." *Braun v. Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 61 (Cal. Ct. App. 1997). To meet this burden, a defendant need only demonstrate that the act underlying plaintiff's causes of action fits one of the categories spelled out in the Anti-SLAPP Statute. *Id*. Relevant here are the following categories:

> (2) As used in this section, unless the context otherwise requires:
>
>> (a) "Act in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue" includes:
>
> \* \* \*
>
>> (II) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law;
>
>> (III) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

8

> (IV) Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

C.R.S. § 13-20-1101(2)(a).

With regard to (II), dozens of challenges or official audits of the 2020 General Election have been brought, whether by state legislatures, court orders, or lawsuits, many of which are still ongoing. C.R.S. § 13-20-1101(2)(a)(II); *see* Background § I, above. Defendants' alleged defamatory statements deal directly with election results, security, and integrity, all of which are issues being argued in challenges brought by numerous individuals and organizations regarding the 2020 General Election. Coomer does not dispute this, admitting Oltmann's statements have been used in connection with a judicial proceeding.[27]

Defendants' podcast and speaking tour were broadcast over the internet and thus the broadcasts at issue are a "public forum" under C.R.S. § 13-20-1101(2)(a)(III). *See, e.g., Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807, 119 Cal. Rptr. 2d 108, 115 (2002) (on-air discussion between talk-radio cohosts was public forum); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) (recognizing that websites accessible to the public are public fora for purposes of the Anti-SLAPP Statute).

As for Section (IV), the Tenth Circuit has held that "speech about political elections . . . undoubtedly" constitutes a matter of public concern. *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1186 (10th Cir. 2010) (speech about school board elections involved matters of public concern). More people

---

[27] *See* Coomer's Amended Complaint at ¶ 63 n.100 (Feb. 4, 2021), *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-cv-34319, currently pending in District Court, Denver County, Colorado.

voted in the 2020 General Election than any other election in the history of the United States. [28] *See* Background § 1 above. There can be no genuine dispute that Defendants broadcast the challenged statements in furtherance of their First Amendment rights to debate and discuss matters under judicial consideration, in a public forum, and in connection with a matter of public interest, thus satisfying the first prong of Colorado's Anti-SLAPP Statute.

### III. Coomer Cannot Demonstrate a Reasonable Likelihood of Prevailing

Because Defendants satisfy their threshold burden on the first prong of the Anti-SLAPP Statute, the burden shifts to Coomer to demonstrate that he has a "reasonable likelihood" of prevailing on his claims. *Stevens*, 2021 WL 1153059, at *3 (citing *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 702 (2011)). "Once the court reaches the second prong of the analysis, it must rely on admissible evidence, not merely allegations in the complaint or conclusory statements by counsel." *Finton Constr., Inc. v. Bidna & Keys APLC*, 190 Cal. Rptr. 3d 1, 12 (Cal. App. 2015).

#### A. Coomer Cannot Prevail on his Claims for Defamation.

Under Colorado law, the elements for defamation are "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993).

Because the statements made by Defendants regard a matter of "public concern," Coomer must prove by clear and convincing evidence that Defendants themselves (Clark and Make Your

---

[28] *See* James M. Lindsay, *The 2020 Election by the Numbers*, Council on Foreign Relations (Dec. 15, 2020) https://www.cfr.org/blog/2020-election-numbers.

Life Epic, LLC—*not Oltmann*) acted "with actual malice, that is, with actual knowledge that they were false or in reckless disregard of the truth."[29] *Fry v. Lee*, 408 P.3d 843, 847 (Colo. App. 2013). "Actual malice can be shown if the author entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity." *Id*. at 848. "Whether the evidence in a defamation case is sufficient to support a finding of actual malice is a question of law for the court to decide."[30] *Id*. Coomer challenges numerous statements throughout his Original Complaint attributed to Oltmann and many others. But he has only alleged 27 specific statements that can be actionable against Defendants Clark and Make Your Life Epic, LLC.[31]

### 1.   **Coomer Cannot Carry His Evidentiary Burden.**

To meet the actual malice standard, Coomer must prove by clear and convincing evidence that every challenged statement Defendants published or republished about him was false. *Finton Constr*, 190 Cal. Rptr. 32 at 11. Substantial truth is a defense to Coomer's claims. *Fry*, 408 P.3d at 848 (citing *Miles v. Ramsey*, 31 F.Supp.2d 869, 875 (D. Colo. 1998)). "[A] defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true." *Id*. at 849 (internal

---

[29] The Colorado Supreme Court has held that the actual malice standard applies to defamatory statements about public *and* non-public figures where the statements involve a matter of public concern. *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1034 (10th Cir. 2013) (citing *Walker v. Colorado Springs Sun, Inc.*, 188 Colo. 86, 538 P.2d 45, 459 (1975)); *see also Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1102, 1106 (Colo. 1982).

[30] Because most of the challenged statements were not made by Defendants, but rather by Oltmann, it bears noting that Colorado law also applies the actual malice standard to republishers of statements about matters of public concern. *Reddick v. Craig*, 719 P.2d 340, 343 (Colo. App. 1985); *Compare Anderson v. Colorado Mountain News Media Co.,* No. 18-CV-02934-CMA-GPG, 2019 WL 3321843, at *9 (D. Colo. May 20, 2019).

[31] *See* Ex. 10.

quotations omitted). "The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Id*.

Statement Nos. 1, 2, 10, 16, 19, 22, 23, and 24 are all substantially true and deal with Coomer being a member/supporter of Antifa and him being a liar. *Id*. at 848. Coomer admittedly published on his Facebook account hateful speech directed at President Trump and Republicans.[32] Sandwiched between those posts is Coomer's manifesto explaining, supporting, and defending Antifa.[33] Under the law, a reasonable person reading those posts would believe Coomer was a supporter of Antifa. *See id*. Coomer is also a proven liar.[34] The statements wherein Coomer is called a liar are, therefore, substantially true, and not actionable. *Id*. Statement No. 27 also contains the statement that Coomer was arrested a month prior.[35] This is also proven true and not actionable. *Id*.

Statement Nos. 3 and 14 contain no factual assertion against Coomer. Rather, they are statements about praying for Oltmann and Defendants' subjective belief that Oltmann's statements are true. *See id*. The statements are not actionable because they are not directed at Coomer. *N.Y. Times Co.*, 376 U.S. at 288-89. Statement No. 4 concerns Oltmann being a whistleblower about Coomer. Such a statement could concern Coomer's Antifa support or something else. Because it is not specific and therefore unable to be proven true or false, this statement is not defamatory. *See Keohane v. Wilkerson*, 859 P.2d 291, 297 (Colo. App. 1993) ("if the statement does contain

---

[32] *See* Background § III, above; Exhibit 5 at 0001-2, 0009-14, 0037-38, 0042-43, 0052-54, 0057-68, 0071-80.

[33] Ex. 5 at 0009-12.

[34] *See* Background § III, above; Ex. 7 at p.4; Ex. 8 at p.7; Ex. 6 at 39:10-40:3; Ex. 8 at 8:5-12:25, 2:13-3:9, 3:24-4:6, 4:9-5:19, 14:11-15:8, 16:11-18:8.

[35] *See id*.

or imply a verifiable fact, but is not reasonably susceptible to interpretation as a declaration of fact, it will receive full constitutional protection and no action for defamation will lie"), *aff'd sub nom*, *Keohane v. Stewart*, 882 P.2d 1293; *see also Fry*, 408 P.3d at 848-49.

Statement No. 8 concerns Coomer's patents held by Dominion, his support for Antifa, and his ability to effect elections because of his position at Dominion. Coomer has patents on election equipment, he is a supporter of the Antifa movement, and he provided affidavits for Dominion discussing security vulnerabilities and integrity issues in litigation in Georgia.[36] Because the "gist" of this statement is substantially true, it is not actionable. *Fry*, 408 P.3d at 848-49.

Statements No. 9 and 12 are opinions and therefore not defamatory. Statement Nos. 10, 11, 13, 15, 16, 17, and 18 are questions asked by Defendants. Because these statements are incapable of being true or false, they are not actionable. *See Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 520 (Colo. App. 1983); *Keohane*, 859 P.2d at 297; *see also Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. Dist. Ct. App. 1994). Statement 20 makes no factual assertion against Coomer and, therefore, not actionable. *N.Y. Times Co.*, 376 U.S. at 288-89.

Statement Nos. 5, 6, 7, 21, 25, and 26 deal directly with Oltmann (not Defendants) overhearing Coomer on an Antifa conference call stating he made sure Trump could not win the 2020 General Election. Oltmann has sworn to the truth of these statements in an affidavit filed in a lawsuit by President Trump's legal team.[37] As a proven liar, Coomer cannot prove by clear and

---

[36] *See* Compl. at ¶ 51; Ex. 5 at 0009-12; *Curling*, 493 F. Supp. 3d at 1293.

[37] Ex. 4; *see also* Coomer's Amended Complaint at ¶ 63 n.100 (Feb. 4, 2021), *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-cv-34319, currently pending in District Court, Denver County, Colorado.

convincing evidence that the statements are false simply based on his *ipse dixit* denial of Oltmann's testimony.

## 2. Coomer Cannot Prove Defendants Acted with Actual Malice.

Coomer must prove by clear and convincing evidence that Defendants (not Oltmann) acted "with actual malice, that is, with actual knowledge that [their statements] were false or in reckless disregard of the truth." *Fry*, 408 P.3d at 848. Accordingly, Coomer must prove by clear and convincing evidence that Defendants knew the statements to be false or "entertained subjective doubts about [their] truth." *Diversified Mgmt.*, 653 P.2d at 1109; *see also Fry*, 408 P.3d at 848; *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Coomer cannot meet this burden.

Actual malice is a subjective standard, meaning Defendants' (not Oltmann's) state of mind is at issue. *N.Y. Times*, 376 U.S. at 287. In proving actual malice, it is not sufficient to prove only "[t]hat a reasonably prudent person would not have published the defamatory statement or would have investigated before publishing . . ." *Lewis v. McGraw-Hill Broad. Co., Inc.*, 832 P.2d 1118, 1123 (Colo. App. 1992); *see Spacecon*, 713 F.3d at 1041-42. Coomer must prove by clear and convincing evidence that Clark and Make Your Life Epic LLC published statements knowing them to be false or while entertaining subjective doubts about their truth.

On November 19, 2020, a month before Defendants' interviews and speaking tour, Oltmann's statements regarding Coomer were made by Giuliani and Powell, President Trump's legal team, in a press conference discussing the election results, fraud, security, and integrity.[38] Oltmann also gave interviews on numerous news media programs and submitted a sworn affidavit

---

[38] *Rudy Giuliani Trump Campaign Press Conference Transcript November 19: Election Fraud Claims*, Rev.com (Nov. 19, 2020) https://www.rev.com/blog/transcripts/rudy-giuliani-trump-campaign-press-conference-transcript-november-19-election-fraud-claims.

14

of his account.[39]  Defendants were entitled to rely on these individuals and the evidence presented when it republished Oltmann's statements. There is no inherent reason to doubt the veracity of any Oltmann's statements or the individuals who reported them.  Further, challenges regarding the 2020 General Election were filed by numerous jurisdictions, individuals, and organizations across the country, with some continuing to this day.  To say that election fraud is inherently improbable is itself inherently improbable.  So too is the claim that Oltmann's statements are inherently improbable.  Coomer cannot prove by clear and convincing evidence that Defendants knew the statements were false or acted with reckless disregard for the truth.  In fact, based on all the evidence and Coomer's propensity for lying, Defendants have every reason to believe Oltmann's statements regarding Coomer.

### IV. Coomer's Remaining Claims Fail Because They Are Predicated on Protected Speech.

Coomer's Intentional Infliction of Emotional Distress ("IIED") and Civil Conspiracy claims, along with his request for an injunction, are predicated wholly on Defendants' alleged defamatory statements and nothing else.  Because Coomer's claims are all premised on Defendant's exercise of their First Amendment rights, the Anti-SLAPP Statute clearly applies to them as well.  As a result, of Coomer's remaining claims must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request Coomer's claims be dismissed in their entirety with prejudice and pursuant to C.R.S. § 13-21-1101(4)(a).

---

[39] Ex. 4; Compl. at ¶ 33-35; *see also* Coomer's Amended Complaint at ¶ 63 n.100 (Feb. 4, 2021), *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, Case No. 2020-cv-34319, currently pending in District Court, Denver County, Colorado.

DATED: March 23, 2022               Respectfully submitted,

                                    DANIELS & TREDENNICK PLLC

                                    */s/ Douglas A. Daniels*
                                    Douglas A. Daniels
                                    Texas State Bar No. 00793579
                                    doug.daniels@dtlawyers.com
                                    Heath A. Novosad
                                    Texas Bar No. 24037199
                                    heath.novosad@dtlawyers.com
                                    6363 Woodway Drive, Suite 700
                                    Houston, Texas 77057
                                    (713) 917-0024 (Telephone)
                                    (713) 917-0026 (Facsimile)

                                    ***Attorneys for Defendants***

**CERTIFICATE OF CONFERENCE**

In accordance with D.C.COLO.LCivR 7.1(a), on March 14, 2022, the undersigned attorney spoke with Plaintiff's counsel regarding the nature and effect of the above-entitled Motion. As this is not a Fed. R. Civ. P. 12(b) motion to dismiss and due to the nature of Defendants' Anti-SLAPP motion under Colorado Revised Statutes § 13-20-1101, the only way to cure the defects that serve as the basis for the Motion would be a voluntary dismissal with prejudice by Plaintiff because no amended pleading can cure the defects of Plaintiff's complaint. Plaintiff would not agree to such a dismissal. Accordingly, Defendants filed their Anti-SLAPP motion.

                                    */s/ Douglas A. Daniels*
                                    Douglas A. Daniels

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties of record through the Court's CM ECF system on March 23, 2022.

                                    */s/ Douglas A. Daniels*
                                    Douglas A. Daniels

16