**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03440-WJM

ERIC COOMER, PhD.,

      Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW and
CLAYTON THOMAS CLARK, individually,

      Defendants

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO DISMISS**
**PURSUANT TO COLORADO REVISED STATUTES § 13-20-1101**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, PhD., files this Response to Defendants' Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 (the Motion), and states as follows:

## I.      INTRODUCTION

1.      The Motion, filed a year and a half after the 2020 Presidential election, relies heavily on the contention that there was legitimate "public debate" over whether the presidential election was rigged and, specifically, rigged by Dr. Coomer. This is a false narrative. Over sixty lawsuits asserting various election fraud challenges have been dismissed.[1] In many instances, the

---

[1] By contrast, federal courts have denied motions to dismiss defamation cases arising out of election fraud allegations. *See U.S. Dominion, Inc., et. al. v. Rudolph Giuliani*, No. 1:21-cv-00213(CJN) (Dist. Ct. D.C.) (Motion to Dismiss denied Aug. 11, 2021)*; U.S. Dominion, Inc., et. al. v. Sidney Powell et. al.*, No. 1:21-cv-00040(CJN) (Motion to Dismiss denied Aug. 11, 2021); *U.S. Dominion, Inc., et. al. v. My Pillow, Inc. et. al.*, 1:21-cv-00445(CJN) (Motion to Dismiss denied Aug. 11, 2021); *U.S. Dominion, Inc., et. al. v. Fox News Network, LLC*, No. N21C-03-257EMD (Del. Sup. Ct.) (Motion to Dismiss denied Dec. 16, 2021).

lawyers bringing the challenges have themselves been sanctioned.  A division of this Court has rightly described the falsehoods like those promulgated by Defendants as "the stuff of which violent insurrections are made."[2]  Countless qualified election security experts and governmental agencies have debunked the various theories of widespread voter fraud and no legitimate factual support for those claims existed when Defendants defamed Dr. Coomer.  Even the politicized Maricopa County audit attached to the Motion failed to find widespread fraud.

2.      This Response presents the Court with legal authority and evidence that, as a threshold matter, C.R.S. § 13-20-1101 is inapplicable because Dr. Coomer's claims do not arise out of a protected activity under the anti-SLAPP statute.  Alternatively, the Response provides the Court with prima facie evidence supporting each element of Plaintiff's causes of action, assuming the Court determines the statute applies.  For example, one of the referenced cybersecurity experts, Dr. J. Alex Halderman, provides the Court with his own declaration that specifically addresses and refutes the inherently implausible claims made about Dr. Coomer by the Defendants in this case.  And Plaintiff has marshalled considerable additional evidence in the form of multiple declarations, deposition testimony, and exhibits to support the sufficiency of his claims.

3.      For their part, Defendants generally do not challenge the underlying facts at issue.  Instead, they challenge their liability for their conduct.  To support this, they broadly invoke the First Amendment as a defense with no real analysis for when and how it applies.  But, there is no

---

[2] *O'Rourke et. al. v. Dominion Voting Systems et. al*., No. 20-cv-03747-NRN, Order Granting Defendants' Motion for Sanctions, at p. 6 (Aug 3, 2021).

constitutional value in defamation.[3]  Defamation does not advance public debate.[4]  While there are constitutional protections for speech, those protections have limits.[5]  They are balanced against competing liberty interests in privacy and reputation.[6]  Applying those protections requires an existing matter of public concern involving the plaintiff—not one Defendants manufacture.[7]  Defendants ignore this and advance a standard that does not exist—that because elections in general are matters of public concern, then any accusation against any individual involved with election administration, no matter how baseless, is a de facto matter of public concern.

4.       Based on this, Defendants then claim that the Colorado anti-SLAPP law requires the Court to dismiss this case in its infancy.  Neither the First Amendment nor Colorado's anti-SLAPP statute justifies such an outcome.  Instead, the facts of this case merit a jury trial.

## II.       BACKGROUND

### A.       The Parties

5.       Dr. Coomer is a private individual.[8]  Neither Dominion Voting Systems nor Dr. Coomer were governmental employees or controlled the election or the governmental bodies they were assisting.[9]

---

[3] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("there is no constitutional value in false statements of fact").

[4] *Id.* ("[n]either the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

[5] *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105-10 (Colo. 1982).

[6] *Rosenblatt v. Baer*, 383 U.S. 75, 93 (1966) (Stewart, J., concurring) ("The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty."); *see also Keohane v. Stewart*, 882 P.2d 1293, 1298 (Colo. 1994).

[7] *Diversified Mgmt., Inc.*, 653 P.2d at 1105–10 ("those charged with defamation cannot, by their own conduct, create their own defense"); *see Quigley v. Rosenthal*, 327 F.3d 1044, 1061 (10th Cir. 2003) (same).

[8] *See* Ex. P 1, Declaration of Eric Coomer, at ¶¶ 10, 38; *see also* Ex. P 2, at ¶ 8.

[9] *Id.* at ¶¶ 4, 9.

6. Defendant Clay Clark is an author, speaker, and host of The Thrivetime Show. Defendant Make Your Life Epic, LLC, dba Thrivetime Show is an Oklahoma based LLC owned and operated by Clay Clark and his wife, Vanessa Clark.[10] Thrivetime is the entity responsible for the Reawaken America Tour (the Tour), which travels the country promoting election fraud conspiracy theories, Covid-19 disinformation, and various other QAnon-based themes.[11]

**B. Clark's defamatory statements about Dr. Coomer[12]**

7. Defendants incorrectly assert that Plaintiff "comes to this Court alleging Clark is also liable to him for defamation simply for interviewing Oltmann."[13] But Plaintiff's claims arise from both Defendants' own statements and from the publication of defamatory statements by others on the Tour.

8. With no investigation or inquiry, including failure or refusal to contact Dr. Coomer, Dominion Voting Systems,[14] or any other obviously relevant and potentially corroborating sources,[15] Clark began publishing a series of defamatory statements about Dr. Coomer beginning on December 22, 2020. Relying entirely on a single unreliable source, Joe Oltmann, Clark unequivocally stated that "the Director of Security for Dominion Voting Systems is in fact a

---

[10] *See* Plaintiff's Response to Court's Order to Show Cause, Mar. 16, 2022, ¶ 4.

[11] *See generally* Ex. P 3, Declaration of Mike Rothschild.

[12] Plaintiff rejects Defendants' use of the various quotes included in Plaintiff's Complaint which are numbered in Defendants' Exhibit 10 and characterized in the Motion, at pp. 11-14. Defendants defamed Dr. Coomer by asserting that he partook in an Antifa conference call, claimed on that call to have rigged the election, and did in fact rig the election. Furthermore, it is not true or substantially true that Dr. Coomer is a member/supporter of Antifa, that he is a "proven liar," that he was "arrested," or that he had the "ability to effect elections."

[13] *See* Motion, at p. 1.

[14] Ex. P 1, at ¶ 25-26.

[15] *See* Ex. P 4, Declaration of Heidi Beedle, at ¶ 20 (Oltmann referenced Beedle in his November 13, 2020 affidavit, falsely claiming she also partook in the "Antifa call." *See* Ex. P 1-23, at pp. 1-2. Oltmann also claimed in his November 9, 2020 podcast first defaming Dr. Coomer that Beedle led him to the call. *See* Ex. P 1-2, at 18:4-18.)

member of Antifa."[16]   He went on to state that "You have people like Eric Coomer that are attempting to overthrow what appears to be the will of the people."   Clark asked a guest, "Does it bother you, knowing that the head of Security and Strategy for Dominion is a member of Antifa who wants to overthrow our country?"   He asked another, "What question would you have for Joe Oltmann about the treasonous behavior of Eric Coomer, the Strategy and Security Director of Dominion Voting Systems?"[17]

9.      The interview contained other obviously false claims that confirm both that Clark did no investigation prior to publication, and that his claims align with a preconceived narrative promulgated by QAnon conspiracy theorists.[18]   Clark titled his interview, "Exposing the Treasonous Eric Coomer the ANTIFA Member and the Director of Strategy and Security at DOMINION Voting Systems."   Clark posted the same on his Facebook account.   Clark published "Show Notes" associated with the interview that asked "What do we do with people that commit treason, sedition and subversive activities?" immediately before querying "Is Eric Coomer going to go to jail for this?"[19]   Clay Clark, not Joe Oltmann, made the decision to publish these statements accusing Dr. Coomer of being an Antifa member who had committed the crime of treason.

10.      Clark would go on to repeat these defamatory falsehoods onstage and while being broadcast live on this internet to potentially millions of viewers, and repeatedly assured his audience that Oltmann was a reliable source who had uncovered election fraud.[20]

---

[16] *See* Ex. P 1, at ¶ 23; Ex. P 1-11; Ex. P 1-11, at 0:15.

[17] *Id.*, at 17:36, 18:38, 28:41.

[18] *See* Ex. P 1, at ¶ 25; Ex. P 3, at ¶ 43.

[19] Exs. P 1-27; P 1-12.

[20] *See* Ex. P 1, at ¶¶ 30-31.

**C.      Thrivetime's defamatory statements about Dr. Coomer**

11.      In addition to the December 22, 2020 interview, Defendant Thrivetime also made the decision to publish numerous defamatory statements about Dr. Coomer, all while knowingly disregarding numerous credible authorities that have conclusively debunked claims that the election was rigged.  These publications are set forth in the attached Declaration of Dr. Coomer.[21]

12.      Thrivetime was also on notice that Oltmann had been sued for defamation, and knew at least one of Oltmann's co-defendants, Newsmax, had publicly apologized to Dr. Coomer and admitted that there was no evidence to support Oltmann's claims about Dr. Coomer.[22]

13.      On July 18, 2021, Thrivetime, through the Tour, published Oltmann lying onstage, falsely claiming that he "happened to get on a call with a guy named Eric Coomer back in September of last year."  Oltmann then falsely claimed that he had overheard Dr. Coomer state on that call that he had rigged the election.[23]

14.      The Tour chose to again publish Oltmann spreading falsehoods about Dr. Coomer on September 25, 2021, when Oltmann falsely claimed that "Eric Coomer was on that call" and that he "just sat in a deposition with him where the guy literally lied about everything.  Dominion Voting Systems is a system just like others that is designed to steal your voice.  That's not hyperbole.  That's not me making stuff up.  That's truth."[24]  The Tour chose to again continue publishing versions of these same lies on November 17 and December 11, 2021.[25]

---

[21] *Id.*, at ¶ 41; *see also* Exs. P 1-28; P 1-29; P 1-30; P 1-31; P 1-32; P 1-33.

[22] Ex. P 1-36, Newsmax retraction (May 1, 2021).

[23] Ex. P 1-16.

[24] Ex. P 1-18.

[25] *See* Ex. P 1, at ¶ 31-32.

15.     In every instance, the Tour made a decision to publish defamatory falsehoods that Dr. Coomer participated in an Antifa conference call, claimed on that call to have rigged the election, and did in fact rig the election.  The Tour did so even after Oltmann's refusal to answer key deposition questions (resulting in court-ordered sanctions) was made public on or about October 29, 2021.[26]

**D.      Evidence included with this Response**

16.     This Response attaches significant evidentiary support for Plaintiff's claims.

17.     Among other thing, Dr. Coomer's declaration addresses the falsity of the statements made about him by Defendants, the severe emotional distress he has been under since November 2020, and the damage the Defendants have caused him.  He refutes the notion that he is a "liar"[27] and provides the Court with numerous exhibits, including examples of the defamatory material, that underpin his claims.

18.     Dr. Alex Halderman is a University of Michigan professor and expert in election cybersecurity.  His declaration demonstrates to the Court that there was never credible evidence, whether provided by Oltmann or by other parties, that the presidential election was "rigged".  Dr. Halderman explains how it would have been impossible for Dr. Coomer to affect the election results without detection and how Oltmann's Google search of Dr. Coomer is fabricated.  Dr. Halderman's declaration provides the Court with prima facie proof of actual malice.

19.     Mike Rothschild is an author and expert in QAnon conspiracy theories.  Mr. Rothschild's declaration provides the Court with context regarding the Tour's ties to QAnon

---

[26] Ex. P 6, Declaration of Charles J. Cain, at ¶ 8.

[27] *See also* Defendants' Exhibit 6, at 51:9-61:12; Ex. P 1-10.

and the overall theme promoted by the Tour that a "deep state" of cabalists stole the election and used Dr. Coomer as a tool to do it.  Mr. Rothschild also speaks to financial profiteering that occurs at the Tour events.  His declaration provides prima facie proof of actual malice.

20.     Heidi Beedle is a journalist who has reported on Oltmann extensively and who Oltmann suggested was an Antifa leader who participated in the Antifa call.  Her declaration is relevant to the falsity and inherent improbability of Oltmann's claims regarding the "genesis" of the Dr. Coomer election-rigging narrative and his status as an "Antifa" leader.

21.     Eric Bania is an expert in data analytics.  His declaration analyzes a time slice of online threats, including more than a thousand accounts on Twitter that used the terms "kill," "die," "shoot," "treason," "hang" and the like when referring to Dr. Coomer.  His declaration is relevant to the outrageousness of the Defendants' conduct and Dr. Coomer's damages.

22.     Counsel for Plaintiff provides a declaration that authenticates the deposition transcripts of Joe Oltmann taken in Case No. 20CV34319 *Eric Coomer v. Donald J Trump for President, Inc. et. al.*  These transcripts demonstrate Oltmann's refusal to provide court-ordered testimony regarding his core allegations against Dr. Coomer.  All of this information was made public on or about October 29, 2021, and would have been available to Defendants.

## III.     ARGUMENT

23.     Anti-SLAPP laws serve a limited purpose—to enable courts to dismiss frivolous cases brought with the intent to chill a person's constitutional rights.  *See FilmOn.com Inc. v.*

*DoubleVerify Inc.* 439 P.3d 1156, 1160 (Cal. 2019); *see also Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016)[28] (noting the core-goal of the anti-SLAPP statute is to weed out "meritless claims").

24.     The statute mandates a two-step analysis.  First, courts must determine whether the statute applies.  Under this step, the movant bears the initial burden to show the anti-SLAPP statute applies to a plaintiff's claims.  *Kieu Hoang v. Phong Minh Tran* 60 Cal. App. 5th 513, 524-25 (2021).  The statute applies when a claim arises from any action taken "in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution *in connection with a public issue*."  C.R.S. § 13-20-1101(3)(a) (emphasis added).  The statute identifies four specific acts that constitute protected activity under the statute.  *Id.* at § 13-20-1101(2)(a).  Of those acts, Defendants have alleged that three apply here: (1) statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law;" (2) statements "made in a place open to the public or a public forum in connection with an issue of public interest;" and (3) statements "in furtherance of . . . constitutional right of free speech in connection with a public issue or an issue of public interest."[29]  Defendants have the burden to establish the actions giving rise to Dr. Coomer's claims constitute protected activity.

**A.     Colorado's anti-SLAPP statute does not apply because Defendants' defamation of Dr. Coomer is not a protected act.**

25.     Collateral allusions to protected activity are insufficient to subject a cause of action to the anti–SLAPP statute.  *Freeman v. Schack*, 154 Cal. App. 4th 719, 728-30 (2007); *Hanover*

---

[28] As the Colorado statute is "relatively new and untested," but "tracks California's statute almost exactly," courts may look to California's "more-established body of authority" in applying the Colorado statute.  *Stevens v. Mulay*, No. 19-cv-01675, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021).

[29] *See* Motion, at 8-9 (citing C.R.S. § 13-20-1101(2)(a)(II IV)).

*Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1097-99 (N.D. Cal. 2014).  Instead, the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech in connection with a public issue.  *Rand Res., LLC v. City of Carson*, 433 P.3d 899, 907 (Cal. 2019).  Courts look to the principal thrust or gravamen of the plaintiff's cause of action, as well as the specific nature of the speech at issue to determine whether the anti-SLAPP statute applies.  *See Hanover Ins. Co.*, 68 F. Supp. 3d at 1097; *see also Rand Res., LLC*, 433 P.3d at 909-10 (finding courts should focus on "the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern"); *Paul v. Friedman*, 95 Cal. App. 853, 866 (2002) (finding "[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding").

### i.      Defendants' statements were not made in connection with an existing matter of public concern.

26.      Because Dr. Coomer is neither a public official nor public figure,[30] application of the anti-SLAPP statute here turns on whether Defendants' statements regarding Dr. Coomer involved a matter of public concern.[31]  Whether a statement is a matter of public concern is a legal determination based on "the content, form, and context of the statements, in conjunction with the motivation or 'point' of the statements as revealed by the whole record."  *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008).  Courts make this determination on a case-by-case basis. *See Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 17-18 (Colo. App. 1996).  Essentially private

---

[30] *See* Ex. P 1, at ¶ 10.

[31] Both subsections II and IV of C.R.S. § 13-20-1101(2)(a) require an analysis of whether the defendants' statement was made in connection with a matter of public concern.  *See* C.R.S. § 13-20-1101(2)(a)(II)(public interest); *Id.* § 13-20-1101(2)(a)(IV) (public issue or public interest).

interests do not become public merely because they attract interest.  *See Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976); *see also Diversified*, 653 P.2d at 1107.  As with public figures, constitutional protections here turn on whether there is a legitimate public interest about which information is needed or appropriate.  *See Williams*, 943 P.2d at 17; *Waldbaum*, 627 F.2d at 1296-97 ("A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.").  A legitimate public interest must be specific and have existed **prior to the defamation.**  *See Hutchinson*, 443 U.S. at 135; *Waldbaum*, 627 F.2d at 1295, n.19.  Defendants cannot create the public issue.  *See Diversified*, 653 P.2d at 1107; *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 41 (Colo. App. 1996).  Instead, the focus is on the public event and the plaintiff's conduct in relation to that event.  *See Diversified,* 653 P.2d at 1106; *Rosenbloom*, 403 U.S. at 43.

27.     Generally, private individuals and their private employment are not considered matters of public concern.  *See Williams*, 943 P.2d at 17-18; *McIntyre,* 194 P.3d at 525-27.  In the context of public figures, the Colorado Supreme Court has recognized a reluctance "to make too easy a finding that one is a public figure."  *See Diversified,* 653 P.2d at 1107.  This is because public officials and public figures have both exposed themselves to increased risk of injury while maintaining greater public access to counteract false statements than private individuals.  *Gertz*, 418 U.S. at 344-45.  In contrast, private individuals have not relinquished any interest in the protection of their reputation and, consequently, have a more compelling interest in redress for injury.  *Id.* at 345-46.  "Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are more deserving of recovery."  *Id.*  While there are compelling interests in public speech, they are balanced against equally legitimate interests in the protection

of reputation.  *See Keohane v. Stewart*, 882 P.2d 1293, 1297 98 (Colo. 1994) (noting the right to privacy and one's reputation are based in "our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.") (citing *Rosenblatt*, 383 U.S. at 92-93, (Stewart, J., concurring)).

28.   Despite Defendants' assertions that their statements generally concerned the election and Dr. Coomer's position with Dominion Voting Systems "placed himself at the center of these public discussions,"[32] Dr. Coomer is not *the election*.  Dr. Coomer's former role with Dominion Voting Systems, which he held for many years, including before Donald Trump's 2016 victory, did not and could not have served to make him a de facto public figure in waiting in the event that anyone ever challenged election results in a jurisdiction utilizing equipment manufactured by his employer.  To find otherwise would set a dangerous precedent for every other individual involved in any form of election administration in the country.

      **ii.   Defendants' statements were not made in connection with an issue under consideration or review by a judicial body.**

29.   For statements to be made "in connection with" an issue under review by a judicial body, they must have a direct connection with issues under review in a judicial proceeding and be directed to persons with an interest in the proceeding.  *See Hanover Ins. Co.*, 68 F. Supp. 3d at 1101 (finding statements did not reference attorneys in the litigation or the litigation itself); *McConnell v. Innovative Artists Talent & Literary Agency, Inc.*, 175 Cal. App. 4th 169, 178 (2009) (finding statements did not relate to issues in dispute in litigation).  It is insufficient to argue that a statement is tangentially connected to issues under review.  *See McConnell*, 175 Cal. App. 4th at

---

[32] Motion, at pp. 4, 9.

178.  Instead, there must be a sufficient, causal nexus between the statements and the issues under review.  *See Paul*, 95 Cal. App. 4th at 866-67.

30.  Defendants argue that their false claims about Dr. Coomer were somehow made in connection with the dozens of baseless election challenges brought by former President Trump and his allies following his defeat in the 2020 election.  In reality, only four of the more than sixty post-election lawsuits ever mentioned Dr. Coomer at all, and all four of those lawsuits were filed by Sidney Powell.[33]  In no case was Dr. Coomer named as a defendant, nor was Dominion Voting Systems.  And in every instance, these "Kraken" lawsuits were dismissed long before any of the statements at issue in this dispute.[34]  In sum, any and all post-election litigation then pending had absolutely nothing to do with Dr. Coomer or Oltmann's concocted claims about him, so there can be no argument that Defendants' defamatory statements were made in connection with any issue under consideration or review by any judicial body.

**B.    Regardless, Dr. Coomer has more than sufficient evidence to establish a reasonable likelihood of success on his claims.**

31.  Regardless of whether the Colorado anti-SLAPP statute applies, Dr. Coomer can establish that his claims are meritorious.  In the second step of the anti-SLAPP analysis, courts assess whether a plaintiff has sufficient evidence to establish a "reasonable likelihood that the plaintiff will prevail on the claim[s]" to which the statute applies.  C.R.S. § 13-20-1101(3)(a).  California courts interprets their nearly identical statute to mean that, so long as a plaintiff can

---

[33] *See Pearson v. Kemp*, Case No. 1:20-cv-04809-TCB (Dist. Ct. N.D. Ga.) (filed November 24, 2020, dismissed December 7, 2020);  *King v. Whitmer*, Case No. 2:20-cv-13134-LVP-RSW (Dist. Ct. E.D. Mich.) (filed November 25, 2020, dismissed December 7, 2020);  *Bowyer v. Ducey*, Case No. 2:20-cv-02321-DJH (Dist. Ct. Ariz.) (filed December 1, 2020, dismissed December 9, 2020);  *Feehan v. Wisconsin Elections Commission*, Case No. 2:20-cv-1771 (Dist. Ct. E.D. Wis.) (filed December 1, 2020, dismissed December 9, 2020).

[34] *Supra* n. 18.

present evidence of a prima facie showing for each claim, the court must not dismiss the claims. *See Baral*, 376 P.3d at 608-09; *see also Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 718 (Cal. 2019) (finding plaintiff "need not prove her case to the court; the bar sits lower, at a demonstration of 'minimal merit'") (citations omitted).  Other states likewise only require a prima facie showing of evidence to defeat dismissal under the anti-SLAPP statute.  *See, e.g., In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, no pet.).

32.     In making this assessment, the Court only looks to whether the plaintiff "has stated a legally sufficient claim and made a prima facie factual showing."  *Baral*, 376 P.3d at 608.  The Court does not weigh the evidence and must accept all evidence in the plaintiff's favor as true.  *Id.* at 608–609.  As the California Supreme Court noted in *Baral*:

> The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity.

*Id.*.  Once a plaintiff provides the minimum quantum of evidence to show a legally cognizable claim, the plaintiff has satisfied its burden under the second prong.  *See id.*

###### i.     The evidence establishes a prima facie showing for Dr. Coomer's defamation claim.

33.     Under Colorado law, the elements for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication."  *Williams v. Dist. Court, Second Judicial Dist., City & Cnty. of Denver*, 866 P.2d 908, 911 n.4 (Colo. 1993).

34.     If a defamatory statement does not involve a public official, public figure, or a matter of public concern, at trial the plaintiff must only prove defamation by a preponderance of

the evidence. *McIntyre*, 194 P.3d at 524. However, if the statement does pertain to a matter of public concern or a public official or figure, there are two additional burdens the plaintiff must prove at trial: (1) the statement's falsity by clear and convincing evidence and (2) that the defendant published the statement with actual malice. *Id.*; *see also Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861, F.3d 1081, 1110 (10th Cir. 2017). At this stage of the proceeding, Plaintiff need only establish a reasonable probability that he would be able to produce at trial clear and convincing evidence of falsity and actual malice. *See Anderson*, 477 U.S. at 252; *see also Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 562 (2012); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005). Here, heightened constitutional protections do not apply because Dr. Coomer is not a public official, public figure, or matter of public concern. Even if these protections applied, Dr. Coomer has established prima facie evidence of Defendants' defamation.

> **a.   Dr. Coomer has evidence establishing a prima facie showing that Defendants' statements were false.**

35.    Defendants alleged that Dr. Coomer was on an Antifa conference call, a statement of fact that is verifiably false.[35] Defendants also alleged that Dr. Coomer stated on the alleged call that he intended to rig the presidential election.[36] And finally, Defendants alleged expressly or impliedly that Dr. Coomer subverted the results of the presidential election.[37] Dr. Coomer has unequivocally stated these statements are false, which is competent and admissible evidence. For purposes of the anti-SLAPP statute, Dr. Coomer's evidence is accepted as true. *See Baral*, 376 P.3d at 608-09.

---

[35] *See* Ex. P 1, at ¶¶ 23-24, 29-32; Motion, Exhibit. 10, Statement 5.

[36] *Id.*, at ¶¶ 23, 29-32.

[37] *Id.*, at ¶¶ 27, 30-31.

36.     Defendants admit they relied on Oltmann as the source of their defamation, and, therefore, built their defamation on the speculation of a witness who admitted he had no personal knowledge or evidence of the allegations made.[38]  Numerous statements made by Defendants are built on these false premises and are also actionable.  *See Milkovich*, 497 U.S. at 20 (finding opinions are actionable when they imply or rely upon provably false facts).  Colorado courts have also found that accusations of criminal activity, even in the form of an opinion, are not constitutionally protected and are actionable.  *See Keohane*, 882 P.2d at 1304.  Defendants have accused Dr. Coomer of committing election fraud and treason, which are defamatory per se. *See Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004).   There should be no dispute that Defendants statements are actionable false statements of fact.

**b.      Dr. Coomer has evidence establishing a prima facie showing for actual malice.**

37.     Actual malice "requires at a minimum that the statements were made with reckless disregard for the truth."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *Diversified Mgmt., Inc.*, 653 P.2d at 1110–11.   To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity."  *Lewis v. McGraw-Hill Broad. Co., Inc.,* 832 P.2d 1118, 1122-23 (Colo. App. 1992).   Courts have considered countless circumstantial factors as sufficient to establish that a defendant has acted with actual malice, including: when a story is fabricated by a defendant or is the product of his imagination;[39] when a

---

[38] Motion, at pp. 4-7.

[39] *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968).

defendant relies on anonymous sources;[40] when a defendant had reason to know his source was unreliable;[41] when the allegations made are inherently improbable;[42] when a defendant intentionally avoids the truth;[43] when a defendant's allegations conform to a preconceived storyline;[44] and when a defendant has a financial incentive to make the defamatory statements.[45]

38.     Here, Dr. Coomer has sufficient evidence to establish actual malice.  First, Oltmann fabricated the false allegations against Dr. Coomer, which Defendants adopted.[46]   Second, Oltmann's story was premised on anonymous sources, which Defendants equally relied upon.[47]  Third, Defendants had several reasons to know their source, Oltmann, was unreliable and his story inherently improbable.  Oltmann does not have any relevant credentials or official verification of his hearsay claims about Dr. Coomer.[48]  Oltmann conducted no legitimate investigation in support of his story and purposefully avoided the truth.[49]  Oltmann had no evidence in support of his story.  Instead, Oltmann's story is built on an alleged Google search of anonymous speakers from an

---

[40] *Id.*; *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016).

[41] *St. Amant*, 390 U.S. at 732; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017).

[42] *St. Amant*, 390 U.S. at 732; *Spacecon Specialty Contractors, LLC. v. Bensinger*, 782 F. Supp. 2d 1194, 1201 (D. Colo. 2011), *aff'd sub nom.*, 713 F.3d 1028 (10th Cir. 2013); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 46 (D.D.C. 2002), *aff'd.*, 350 F.3d 1272 (D.C. Cir. 2003).

[43] *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 693 (noting the failure to review available evidence and attempt to interview known key witnesses can constitute evidence of actual malice); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1361 (Colo. 1983); *Kuhn v. Trib.-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981).

[44] *Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) (noting a defendant's effort to make evidence conform to a preconceived story can be "powerful evidence" of malice); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. at 872 (W.D. Va. 2016).

[45] *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992).

[46] *See* Ex. P 1, at ¶¶ 14-18, 41-43.

[47] *See supra* at ¶¶ 8-9; *see also* Pl.'s Amend. Compl. at ¶¶ 6, 52-53, 59, 71; n.74.

[48] *See* Ex. P 2, Declaration of J. Alex Halderman at ¶¶ 22-34.

[49] *See* Ex. P 1, at ¶¶ 15-18, 26.

unrecorded call that he claims to have infiltrated, when in reality, Oltmann fabricated evidence of that supposed Google search and then lied about it under oath.[50]  Oltmann kept this alleged call secret for two months—despite almost daily podcasts—only to remember *after* the election and *after* advancing other election fraud theories.[51]  Fourth, the story he advanced involves facially impossible election interference.[52]  Fifth, like Defendants, Oltmann had a preconceived storyline of election fraud and desire to prove it.[53]  Sixth, like Defendants, Oltmann had political motivations and general ill will.[54]  Seventh, like Defendants, Oltmann had financial incentive to defame Dr. Coomer.[55]  That Defendants relied on Oltmann as their sole source to advance allegations against Dr. Coomer constitutes actual malice.[56]  Eighth, Defendants intentionally avoided and continue to avoid the truth.  Defendants did not contact Dr. Coomer or Dominion regarding the allegations; disregarded reliable sources refuting the allegations; and conducted no investigation before actively promoting the allegations.[57]  Ninth, Defendants have yet to issue a retraction or remove any of the defamatory posts, further evidencing their actual malice.[58]  Evidence of any one of these allegations is sufficient to make a prima facie showing that Defendants acted with actual

---

[50] *See* Ex. P 1, at ¶¶ 16-17; Ex. P 2, at ¶¶ 24-26.

[51] *See* Ex. P 1, at ¶ 17; *see also* Exs. P 1-4, P 1-5, P 1-6, P 1-7, P 1-8.

[52] *See* Ex. P 2*, at* ¶¶ 35-48.

[53] *See* Ex. P 1 at ¶ 17; *see also* Exs. P 1-4, P 1-5, P 1-6, P 1-7, P 1-8..

[54] *See* Ex. P 3, at ¶¶ 10-13, 29-38, 41-70.

[55] *See Id.,* at ¶¶ 10, 39, 47, 67, 76.

[56] See Ex. P 1, at ¶ 23.

[57] *See* Ex. P 1, at ¶¶ 15-17, 26; *see also* Exs. P 1-28, P 1-29, P 1-30, P 1-31, P 1-32, P 1-33, P 1-36.

[58] *See* Ex. P 1, at ¶ 41.

malice when they published the false statements about Dr. Coomer. That Dr. Coomer has evidence of all of them is more than sufficient to satisfy his prima facie burden.

> ii. **The evidence also establishes a prima facie showing for Dr. Coomer's intentional infliction of emotional distress, conspiracy, and injunction claims.**

39.     Defendants' Motion barely addresses Plaintiff's other claims other than to assert that they are also "premised on Defendant's [sic] exercise of their First Amendment rights" and should, therefore, also be dismissed. But Plaintiff's additional claims are also supported by more than enough evidence to satisfy his prima facie burden.

40.     Intentional infliction of emotional distress requires proof that "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 955 (Colo. App. 2014). The evidence shows that Defendants attacked and defamed Dr. Coomer as a constant feature of the Tour's message over multiple events, all while Dr. Coomer was publicly stating that he was receiving countless death threats and had to go into hiding. The pervasive nature of these threats has been documented by Advanced Democracy, Inc. and confirmed by Plaintiff's expert.[59] The Defendants' conduct caused Dr. Coomer severe emotional distress.[60] Plaintiff has met his burden as to this cause of action.

41.     Dr. Coomer has also made a prima facie showing of civil conspiracy. To prevail on a claim for civil conspiracy, a plaintiff must prove five elements: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the

---

[59] *See* Ex. P 5, Declaration of Doug Bania.

[60] *See* Ex. P 1, at ¶ 43.

minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). Dr. Coomer's conspiracy claims are premised on his claims for defamation and intentional infliction of emotional distress.  In this context, Defendants constitute two or more persons who profited off of the Tour that featured false and defamatory statements about Dr. Coomer.[61]  There was obvious concurrence in promoting this material, both Clark and Thrivetime engaged in unlawful overt acts and should be jointly liable for their conduct for acting in concert with each other.  Their conspiracy liability is also consistent with principal/agency liability.

42.     Injunctive relief is not a claim subject to review under C.R.S. § 13-21-1101, *et seq.* It is a remedy Dr. Coomer has sought in the event he prevails on his claims against Defendants. Review of that relief at this stage of the proceeding is premature.  Even were this relief subject to review at this time, Dr. Coomer has made a prima facie showing for permanent injunctive relief.

## IV.     PRAYER

43.     Dr. Coomer respectfully requests that the Court deny Defendants' special motions to dismiss because the statute does not apply and, in the alternative, because Dr. Coomer has made a prima facie evidentiary showing for each of his claims.  Further, Dr. Coomer respectfully requests all such other and further relief to which the Court deems him to be justly entitled.

---

[61] *See* Ex. P 3, at ¶¶ 39, 76.

Respectfully submitted this 13th day of April 2022.

Respectfully submitted,

_____/s/ Charles J. Cain_____
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis*
Zachary H. Bowman*
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)
*Applications for admission forthcoming

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 has been served on all counsel on this 13th day of April 2022, using the CM/ECF system which will send notification of such filing to the following email addresses:

Doug Daniels
Doug.daniels@dtlawyers.com

Heath Novosad
heath@dtlawyers.com

_____/s/ Charles J. Cain_____
Charles J. Cain