# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM

ERIC COOMER, PhD.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED OBJECTIONS AND MOTION TO STRIKE DECLARACTIONS OF ERIC COOMER, J. ALEX HALDERMAN, MIKE ROTHSCHILD, HEIDI BEEDLE, AND DOUG BANIA**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

    Plaintiff Eric Coomer, PhD. (Dr. Coomer), by and through undersigned counsel, files this Response to Defendants' Amended Objections and Motion to Strike Declarations of Eric Coomer, J. Alex Halderman, Mike Rothschild, Heidi Beedle, and Doug Bania [Dkt. 36], and states as follows:

### I.    INTRODUCTION

    1.    Defendants assert a multitude of objections to the evidence presented by Dr. Coomer in his Response to Defendants' Special Motion to Dismiss pursuant to C.R.S. § 13-20-1101. All of the evidence submitted in Dr. Coomer's Response is properly submitted and well within the scope of permissible review by the Court. The Motion should be denied accordingly.

## II.     ARGUMENT AND AUTHORITIES

2.     Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).  Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. *Wade v. EMCASCO Ins.*, 483 F.3d 657, 666 (10th Cir. 2007).  In doing so, the federal court may seek guidance from decisions rendered by lower courts in the relevant state. *Id.* (*citing Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001)).  This Court may also seek guidance from appellate decisions in other states with similar legal principles. *United States v. DeGasso*, 369 F.3d 1139, 1148 (10th Cir. 2004).

3.     The question of state law implicated by Defendants' Motion to Strike turns on the interpretation of a newly enacted state statute, C.R.S. § 13-20-1101, which became effective on July 1, 2019, and expressly allows for submission of "supporting and opposing affidavits stating the facts upon which the liability or defense is based" as part of the anti-SLAPP procedure.  C.R.S. § 13-20-1101(3)(b).  As of this writing, no state appellate court has yet construed the statute.  Colorado state district courts, however, have had opportunity to address the specific concerns raised by Defendants here, and have declined similar invitations to so strictly limit a Plaintiff's ability to present evidence in response to an anti-SLAPP motion to dismiss.

4.     Given the absence of any state court appellate decisions on this issue, the most relevant state district court decision relevant to this Court's consideration would be

2

that issued in *Coomer v. Donald J. Trump for President, Inc., et. al.*, Case No. 2020CV34319. In that case, which arises from very similar facts, Plaintiff also submitted declarations from Dr. Coomer, Dr. Halderman, Mr. Rothschild, Ms. Beedle, and Mr. Bania. Each declaration was similar or identical to those submitted here, and in every instance the court rejected multiple motions to strike the declarations outright, and found that many individual objections were frivolous.[1] Ultimately, the Court only struck a single sentence from the declaration of Dr. Halderman,[2] as well as a single sentence from the declaration of Mike Rothschild.[3] It did not strike any portion of the declarations of Dr. Coomer, Heidi Beedle, or Doug Bania.[4] The Court then went on to make additional findings supporting its review of the declarations in question in its 136-page order denying all defendants' motions to dismiss pursuant to C.R.S. § 13-20-1101 in their entirety.[5]

5. Beyond this trial court order, the Colorado statute is "relatively new and untested," but "tracks California's statute almost exactly," and courts may look to California's "more-established body of authority" in applying the Colorado statute.

---

[1] One Defendant, Herring Networks, Inc dba One America News Network, was sanctioned for filing frivolous objections. *See* **Exhibit A**, Order Regarding Plaintiff's Motion for Expedited Relief from the OAN Defendants' Evidentiary Objections, Nov. 21, 2021.

[2] *See* **Exhibit B**, Order Regarding Plaintiff's Responses to all Defendants' Objections to his Evidence Proffered in Support of Special Motions to Dismiss Pursuant to C.R.S. § 13-20-1101 and Certain Defendants' Responses to Plaintiff's Evidentiary Objections, Dec. 5, 2021, at pp. 2, 37 (sustaining an objection to Dr. Halderman's statement that "It would have been the height of cartoonish buffoonery to claim to a large group that such a scheme was in the works, much less that it was guaranteed to prevail.")

[3] *See id.*, at p. 40 (sustaining an objection to Mr. Rothschild's statement that "None of this is true, or even possible.")

[4] *See id.*, at pp. 9, 41, 45-47.

[5] *See generally* **Exhibit C**, Order Regarding All Defendants' Special Motions to Dismiss Pursuant to C.R.S. § 13-20-1101, May 13, 2022 (incorporating statements from all five Declarants in the court's analysis).

*Stevens v. Mulay*, No. 19-cv-01675, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021).

As Defendants note, the California Supreme Court has recently held the following:

> [A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable.

*Sweetwater Union High School Dist. v. Gilbane Building Co.*, 434 P.3d 1152, 1163 (Cal. 2019).

6. In this case, as in *Coomer v. Donald J. Trump for President, Inc. et. al.*, this standard weighs heavily in favor of admitting the five declarations in question for purposes of the Court's analysis of Defendants' anti-SLAPP Motion to Dismiss.

### III.   DECLARATIONS

#### A. *Declaration of Eric Coomer*

7. Defendants do not seek to strike Dr. Coomer's Declaration in its entirety, but rather object to a variety of specific statements contained in that Declaration. Defendants first take issue with Dr. Coomer's statement that "Dominion is not a governmental entity and does not control, administer, or conduct elections." They assert this is an impermissible legal conclusion regarding Dominion's potential status as a state actor. This is a puzzling assertion given that Dominion, as a matter of objective fact, is undisputedly a private actor that does not control, administer, or conduct elections. As Dominion's former Director of Strategy and Security, knowledge of this fact is well within Dr. Coomer's personal knowledge and is not intended as any sort of legal conclusion,

4

especially considering that Dominion's legal status has no bearing on this dispute, and no possible relevance to Dr. Coomer's claims.

8. Defendants next challenge Dr. Coomer's use of the adjective "defamatory" in paragraph 10, asserting this is an impermissible legal conclusion as to the claim being litigated. This is a defamation lawsuit. By filing the Complaint, Dr. Coomer necessarily characterized the statements at issue as defamatory. Dr. Coomer cannot reasonably be expected to refrain from describing this lawsuit in documents submitted for the Court's consideration in weighing matters pertinent to the lawsuit.

9. With respect to paragraph 17, Defendants assert that Dr. Coomer lacks a sufficient basis in personal knowledge to describe Joseph Oltmann's (Oltmann) evolving claims with respect to the supposed "Antifa call," as well as Oltmann's recently discovered fabrication of evidence to support his false narrative. Here again, there is likely no one with more personal knowledge of Oltmann's false claims about Dr. Coomer than Dr. Coomer himself. In any case, paragraph 17 is supported by multiple footnotes which each make reference to multiple exhibits wherein Oltmann's own statements, often on video, can be seen to reflect the basis of Dr. Coomer's assertions. With respect to Oltmann's fabrication of evidence, this conclusion is based on Dr. Coomer's personal knowledge that Oltmann has never presented any reasonable rebuttal to the assertion that he fabricated this evidence, and his own default on a motion calling the matter to the Court's attention in *Coomer v. Donald J. Trump for President, Inc. et. al*. This assertion is also supported by the Declaration of Dr. Halderman,[6] as discussed more below.

---

[6] *See* Declaration of J. Alex Halderman, at ¶¶ 24-26.

5

10. Defendants claim that Dr. Coomer's statement that "numerous individuals across the country have been stalked and harassed by" Joey Camp is hearsay and lacks a sufficient basis in personal knowledge. Here again, this matter is well within Dr. Coomer's personal knowledge and Mr. Camp's serial harassment of numerous individuals across the country is a matter of public record and can be viewed by anyone with an internet connection, including Dr. Coomer.[7]

11. Defendants next claim that Dr. Coomer lacks a sufficient basis in personal knowledge to make statements regarding the events described paragraphs 23-25 and 27-33, apparently because "Coomer does not state that he was present at or involved with the production of these appearances." Here again, Dr. Coomer's statements incorporate video exhibits where the Court can see for itself the statements made by Defendants. One need not be present at or involved with production of these statements to have personal familiarity with their contents.

12. With respect to paragraph 34, Defendants object to Dr. Coomer's use of the term "defamed," a term whose use Plaintiff addressed in paragraph 9, above, and incorporates herein by reference. Defendants also assert that Dr. Coomer's statements regarding the disposition of lawsuits challenging the 2020 elections and expert reports regarding the 2020 election results were made without personal knowledge because "Coomer was not involved in the named lawsuits and did not author the cited reports."

---

[7] *See, e.g.,* Michael Roberts, *Is Colorado Super Troll Trying to Stir Up the Tay Anderson Mess?*, WESTWORD, June 9, 2021, https://www.westword.com/news/super-troll-joseph-a-camp-tay-anderson-controversy-update-11990263; *see also Festival of Color Denver Hacked by Notorious Cyberstalker Joseph Camp*, THE COLORADO 303!LIFE, Oct. 26, 2019, https://thecolorado303.com/2019/10/26/festival-of-color-denver-hacked-by-notorious-cyberstalker-joseph-camp/

6

But Dr. Coomer has read them, and has provided copies of many of those documents as exhibits for the Court's reference. *See* Exhibits P 1-28-34. Defendants notably do not dispute Dr. Coomer's characterization of the contents of those documents, nor could they.

13. Defendants argue that paragraph 41 should be stricken because "Coomer improperly discusses his personal opinions regarding the organization Antifa, with variations of the phrase 'I believe' used five times." Defendants cannot have it both ways. They have made Dr. Coomer's non-existent relationship with "Antifa" the basis of a nationwide defamation campaign that has resulted in countless death threats, and now complain that he has sworn to his beliefs about that supposed "organization." These beliefs are highly relevant to this dispute, and the context for Dr. Coomer's re-posting of the satirical "Antifa manifesto" is essential for the Court's analysis of Defendants' reckless disregard for the truth. With respect to the FBI's statement itself, Dr. Coomer has sworn that he read the statement at issue at the time, and has provided a publication which includes a copy of that statement for the Court's review. *See* Exhibit P 1-26.

### B.   *Declaration of J. Alex Halderman*

14. Defendants argue that the Court should strike the Declaration of Dr. Halderman in its entirety, claiming it is "substantially comprised of statements made without a sufficient foundation in personal knowledge, legal conclusions, and argumentative statements and opinions." Dr. Halderman is one of the nation's leading experts in election security, and his substantial body of experience in this field speaks for itself. *See* Exhibit P 2-1. Defendants' challenge of Dr. Halderman's credentials is especially ironic, given Defendants' own repeated references to the *Curling v.*

*Raffensperger* litigation in their special Motion to Dismiss. There, Defendants repeatedly imply that that litigation, where Dr. Coomer served as an expert witness for Dominion Voting Systems, somehow serves to support their multiple publications asserting that Dr. Coomer was a traitor who had committed treason. The opposing expert in that case was Dr. Halderman, and he has provided testimony directly disputing that characterization. Here again, Defendants cannot have it both ways. If *Curling* is supposedly evidence that Dominion voting machines rig elections and Dr. Coomer is corrupt, then Dr. Halderman's expert opinions on the matter are especially pertinent to this Court's analysis.

15. In the alternative, Defendants argue that specific statements from Dr. Halderman's report should be stricken, starting with paragraph 7, which Defendants assert contains inflammatory statements that are argumentative and draw improper conclusions about Defendants' subjective motivations. As with other similar objections, the opinions expressed by Dr. Halderman in paragraph 7 are based on the materials he has reviewed and directed the Court to, which are sufficiently documented throughout his Declaration.

16. With respect to paragraphs 17-19, Defendants object to Dr. Halderman describing documents he has read, claiming his "secondhand repetition of the statements and conclusions of third parties lack a basis in personal knowledge and is inadmissible hearsay." Here again, Dr. Halderman provided links to the statements themselves, and the statements speak to the sources he reviewed in formulating his own conclusions on the matter which are well within his personal knowledge.

17. Defendants next object to paragraphs 21-34, where Dr. Halderman describes the specific claims at issue in this dispute, and applies his substantial body of experience and expertise to analyzing the claims made by Oltmann and relied on by Defendants. This portion of Dr. Halderman's Declaration is especially pertinent to this Court's potential actual malice analysis with respect to the inherent implausibility of Oltmann's claims. Whether or not what Oltmann claimed was even possible as an objective matter of fact is an essential consideration when assessing Defendants' reckless disregard for the truth, and one which Dr. Halderman is uniquely qualified to speak to. If an expert like Dr. Halderman, whose work as a subject matter expert had led him to cross paths with Dr. Coomer in an adversarial context, is so stunned by Defendants' claims that he describes them as "implausible," and "characteristic of 'crackpot' conspiracy theories," and he then goes on to describe Oltmann as a charlatan, then this is highly suggestive that Defendants' publications about Dr. Coomer were inherently implausible at the time they were made, and that they would have realized that at the time had they done any research whatsoever before publishing their claims.

18. Defendants challenge paragraphs 56-57, claiming that because Dr. Halderman had no personal involvement in conducting the audits he discusses, that he is unqualified to speak to their conclusions. Here again, Dr. Halderman is among the nation's most qualified individuals to discuss the results of election audits by virtue of his decades of experience working in and around such procedures, and he is allowed to discuss the documents that form the basis of his opinion. Defendants also falsely assert that the question of whether the 2020 elections were rigged is irrelevant. While it is

understandable that Defendants now seek to distance themselves from their defamatory publications, it is indisputable that they accused Dr. Coomer of treason for rigging the election.

19. Finally, Defendants object to paragraph 58, stating that Dr. Halderman cannot opine on Defendants' subjective motivations. However, Dr. Halderman is simply stating conclusions that he has made based on the evidence he has reviewed. As with all of Dr. Halderman's opinions, they are capable of being admissible at trial, and are proper for the Court's consideration here.

### C.   *Declaration of Mike Rothschild*

20. Defendants' also object to the Declaration of Mike Rothschild in its entirety, this time because it "consists of a narrative chronicle of events in which Rothschild had no personal involvement and did not perceive firsthand." This is a puzzling objection to expert testimony, as expert witnesses are typically third parties who rarely were personally involved with the matters on which they opine. In any case, Rothschild too clearly described the bases on which his opinions are formed, and directed the Court to 79 separate footnotes demonstrating his extensive research on the matter.

21. Defendants first object to paragraph 4, stating that Rothschild cannot describe the preconceived QAnon narrative that the election would be stolen because such testimony "announces that his Declaration will impermissibly argue in favor of a conclusion drawn by Rothschild." Expert declarations argue in favor of the conclusions they present. This is permissible.

22. Similarly, Defendants argue that paragraphs 6-40 should be stricken because they provide a narrative of events that Rothschild did not personally partake in (as indicated above). These events occurred in Rothschild's area of expertise, which he has been closely observing for more than a decade. He has published numerous works on this topic, and was recently invited to provide testimony to the United States Congress given his years of acknowledged expertise in this field. He does not need to have been physically present for the events he describes for his opinion to be relevant to the Court's consideration.

23. Defendants next object to paragraphs 41-56, again claiming that Rothschild apparently cannot comment on events that he was not physically present to observe as they occurred in real time. This is not a realistic standard, and in any case, Rothschild adequately described the bases for his expert opinion that the speakers at the ReAwaken America Tour promote dangerous pseudoscience and fraudulent medicine, and for his opinion Clark's interviewees have made contradictory claims that are not supported by evidence.

24. Defendants raise a similar objection to paragraphs 57-96, claiming Rothschild cannot opine on the QAnon ties of speakers at Clark's events. This objection fails for the same reason as the others. Defendants specifically object to Rothschild's statement in paragraph 70 that Mike Flynn is motivated "more [by] financial gain that true belief," claiming Rothschild makes the statement without evidence. In reality, Rothschild included a footnote to an article which includes audio of Flynn himself describing the QAnon theories that he profits off of spreading as "total nonsense."

11

25. Defendants' objection to paragraphs 97-100 raises similar concerns. As discussed above, this objection is without merit.

26. Defendants conclude by suggesting that Rothschild's entire Declaration is irrelevant. In reality, evidence that defamatory statements conform to a preconceived narrative is evidence of actual malice,[8] as is willful avoidance of the truth,[9] failure to investigate,[10] and a financial incentive to defame for the speaker.[11] Evidence that defamatory statements are inherently improbable is also evidence of actual malice.[12] As a result, Rothschild's Declaration is extremely relevant for the Court's consideration, especially considering Defendants' argument that the actual malice standard should apply.

### D. *Declaration of Heidi Beedle*

27. Defendants similarly object to the entirety of Heidi Beedle's Declaration on the basis that it is "substantially comprised of statements without a foundation in personal knowledge, hearsay, and argumentative statements and opinions." Beedle's Declaration speaks for itself, and the Court can see it does not fit this description.

---

[8] *Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) (noting a defendant's effort to make evidence conform to a preconceived story can be "powerful evidence" of malice); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. at 872 (W.D. Va. 2016).

[9] *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 693 (noting the failure to review available evidence and attempt to interview known key witnesses can constitute evidence of actual malice); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1361 (Colo. 1983); *Kuhn v. Trib.-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981).

[10] *Id.*

[11] *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992).

[12] *St. Amant*, 390 U.S. at 732; *Spacecon Specialty Contractors, LLC. v. Bensinger*, 782 F. Supp. 2d 1194, 1201 (D. Colo. 2011), *aff'd sub nom.*, 713 F.3d 1028 (10th Cir. 2013); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 46 (D.D.C. 2002), *aff'd.*, 350 F.3d 1272 (D.C. Cir. 2003).

28. Defendants first object, remarkably, to paragraph 9 of Beedle's Declaration, where she indicates she was not the individual that Oltmann had identified as her at an October 13, 2020 meeting of a local chapter of "Our Revolution." Beedle's knowledge that she is not the individual in question is a permissible statement based on her own personal knowledge.

29. Defendants next object to Beedle's statement that Oltmann "likely falsified" and "likely fabricated" evidence. Beedle provides a reference to the basis of her opinion and is permitted to testify to the bases on which her opinions are premised.

30. Defendants state that Beedle's "professional opinion" described in paragraph 21 is comprised of improper personal speculation, but disregard the basis for Beedle's opinion, which is her years of experience as a reporter covering far left groups.

31. Finally, Defendants suggest that "the veracity of Oltmann's evidence and testimony have no bearing on whether Defendants subjectively *believed* Oltmann's claims." This may be true, but it is not relevant. The inquiry before the Court under an actual malice analysis, if the Court were to determine that heightened standard applies, is whether Defendants proceeded with reckless disregard for the truth. The evidence presented in the Beedle affidavit supports a finding that Defendants promoted claims that were inherently improbable, that they failed to investigate, and that relied on an unreliable source. Thus, Defendants intentionally avoided the truth, which was objectively ascertainable at the time their false statements were made.

### E. *Declaration of Doug Bania*

32. Defendants object to Doug Bania's technical analysis of Twitter archives by asserting his findings are impermissible because he was neither the author nor the subject of the tweets in question. Twitter is a public forum. One need not be either the author or the subject of a tweet to be able to comprehend or opine on its substance. Defendants further assert that the 1000+ threats to Dr. Coomer described in the Bania Declaration are irrelevant to the Court's analysis, but this is not accurate. This evidence speaks directly to the damages Dr. Coomer has endured, as well as the outrageous conduct Defendants are knowingly persisting in by promoting false claims that they know to be resulting in threats to Dr. Coomer's life.

### CONCLUSION

For all the reasons stated herein, Plaintiff Eric Coomer, PhD. respectfully requests that this Court overrule Defendants' objections to the declarations submitted in support of his Response to Defendants' special motion to dismiss and for such other relief to which he may be justly entitled.

Respectfully submitted this 18th day of May 2022.

Respectfully submitted,

*/s/ Charles J. Cain*
Charles J. Cain, No. 51020
ccain@cstrial.com
Steve Skarnulis*
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Zachary H. Bowman*
zbowman@cstrial.com

14

>**CAIN & SKARNULIS PLLC**
>P. O. Box 1064
>Salida, Colorado 81201
>719-530-3011/512-477-5011 (Fax)
>
>Thomas J. Rogers III, No. 28809
>trey@rklawpc.com
>Mark Grueskin, No. 14621
>mark@rklawpc.com
>**RechtKornfeld PC**
>1600 Stout Street, Suite 1400
>Denver, Colorado 80202
>303-573-1900
>*Applications for admission forthcoming
>**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Amended Objections and Motion to Strike has been served on all counsel on this 18th day of May 2022, using the CM/ECF system which will send notification of such filing to the following email addresses:

>Doug Daniels
>Doug.daniels@dtlawyers.com
>
>Heath Novosad
>heath@dtlawyers.com
>
>                    */s/ Charles J. Cain*
>                    Charles J. Cain