## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM

ERIC COOMER, PhD.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW and CLAYTON THOMAS CLARK, individually,

    Defendants

---

## EXHIBIT 1

---

| | |
|---|---|
| DISTRICT COURT, DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: August 15, 2022 3:15 PM<br>CASE NUMBER: 2021CV33632 |
| **Plaintiff:** ERIC COOMER, Ph.D.<br><br>v.<br><br>**Defendant(s):** SALEM MEDIA OF COLORADO, INC. AND RANDY CORPORON | ▲ COURT USE ONLY ▲<br><br>Case Number(s): 2021CV33632<br>Courtroom: 280 |
| **ORDER RE: DEFENDANT'S MOTION TO DISMISS PURSUANT TO C.R.C.P. 12(b)(5)** | |

THIS MATTER is before the Court on Defendant Salem Media of Colorado, Inc.'s ("Salem Media") Motion to Dismiss pursuant to C.R.C.P. 12(b)(5) filed on May 3, 2022. Eric Coomer, ("Plaintiff") filed a Response on May 24, 2022 and Salem Media filed a Reply on June 10, 2022. Randy Corporon ("Corporon") filed a joinder in Salem Media's Motion and Reply. Having reviewed all of the pleadings, record, and applicable law, the Court hereby finds, and orders as follows:

## BACKGROUND

This case stems from statements made by Corporon and Salem Media (collectively "Defendants") regarding Plaintiff. Salem Media owns 710 KNUS, a Colorado radio station, and Corporon is a radio host at the station. Pl. Compl. ¶ 1. Plaintiff is the former Director of Strategy and Security for Dominion Voting Systems ("Dominion"). Pl's. Compl. ¶ 2.

1

On November 9, 2020, the *Conservative Daily*[1] discussed Plaintiff on an episode of its podcast. *Id.* Joseph Oltmann ("Oltmann")[2] produces the Conservative Daily podcast and is a Colorado political commenter who promotes election fraud theories on his podcast. *Id.* at ¶ 2-3. Oltmann endorsed an election fraud theory against Plaintiff on his November 9, 2020 podcast episode. Oltmann stated that he infiltrated a conference call with Antifa activists prior to the 2020 presidential election. *Id.* at ¶ 3. He claimed that, while on the Antifa conference call, he purportedly heard a person identified as "Eric from Dominion" state that he would ensure the election went to President Biden. *Id.* Oltmann did not explain how he learned of the alleged Antifa conference call nor how he gained access to it. *Id.* Additionally, Oltmann acknowledged he did not record the call and had no knowledge of the participants he referenced as being on the call. *Id.* Oltmann ultimately attributed the statements by the person identified as "Eric from Dominion" to the Plaintiff. *Id.*

Defendant Corporon hosted Oltmann on Corporon's radio show titled *Wake Up with Randy Corporon* on November 14, 2020. *Id.* at ¶ 5. Corporon and other Salem Media radio hosts interviewed Oltmann multiple times over the next several weeks. *Id.* The Plaintiff alleges that in every interview, Oltmann repeated his story that Plaintiff engaged in election fraud in connection with his ties to the Antifa phone call and his employment ties with Dominion. *Id.* During these interviews, Oltmann "frequently insisted that he was presenting absolute and verifiable facts." *Id.*

Plaintiff denies the entirety of Oltmann's story and filed suit on November 13, 2021 asserting claims for defamation, intentional infliction of emotional distress ("IIED"), and civil conspiracy against both defendants, and negligent supervision and/or negligent retention against Salem Media.

---

[1] The Conservative Daily is not affiliated with Salem Media.
[2] Oltmann is a defendant in related case numbers 2020CV34319 and 2022CV31201.

## STANDARD OF REVIEW

Motions to dismiss a complaint are viewed with disfavor. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996). The Court addresses a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim, by accepting all factual allegations in the pleading as true and viewing them in the light most favorable to the plaintiff. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not accept as true conclusory allegations or legal conclusions. *Warne v. Hall*, 373 P.3d 588, 591 (Colo. 2016). To be accepted as true, factual allegations must rise to a level above mere speculation and must be plausible. *Id.* at 595. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Plausibility" refers to the "scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The movant bears the burden of proof for a Motion to Dismiss for failure to state a claim under 12(b)(5). *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1160 (Colo. App. 2006).

## ANALYSIS

**I.    The Plaintiff's First Claim for Relief - Defamation**

3

To prove a defamation claim, a plaintiff must establish (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Lawson v. Stow*, 327 P.3d 340, 345 (Colo. App. 2014). In defamation actions concerning private individuals, a plaintiff must prove the publication of a defamatory statement by a preponderance of the evidence. *McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008).

For defamatory statements that involve a matter of public concern, a plaintiff has a heightened burden of proof. The defamed party (1) must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance; (2) must prove that the speaker published the statement with actual malice—that is, with actual knowledge that the statement was false or with reckless disregard for whether the statement was true; and (3) the defamed party must establish actual damages to maintain the action, even if the statement is defamatory per se. *Lawson* 327 P.3d at 346.

For purposes of this motion to dismiss, Defendants contest the defamation claim on two grounds. First, Defendants assert that the publications are a public concern and therefore the actual malice standard applies. Def. Reply 2-4. Second, Defendants aver that Plaintiff fails to assert a plausible claim for defamation because the alleged defamatory statements are vague and fail to recite the precise words. Def. Reply 5.

I.      Plaintiff's Defamation Claim is a Matter of Public Concern

Plaintiff alleges that that the defendants' alleged defamatory statements are not a matter of public concern because Plaintiff is a private citizen and was privately employed. Pl. Resp. 7-8. The

4

Court agrees that Plaintiff is private citizen and addresses whether the substance of the Defendants' statements is a matter of public concern.

A matter is of public concern when it "embraces an issue about which information is needed or is appropriate" or when the "public may reasonably be expected to have a legitimate interest in what is being published." *Shoen v. Shoen*, 292 P.3d 1224, 1229 (Colo. App. 2012). Whether the speech is inappropriate or controversial is irrelevant to the question of whether it deals with a matter of public concern. *Snyder v. Phelps*, 562 U.S. 443, 460 (2011). To determine whether speech is a matter of public or private concern, the court must examine the content, form, and context of that speech as revealed by the whole record. *Id.* No factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said. *Id.* at 454. The alleged statements concern safeguarding elections, specifically the integrity of the 2020 presidential election. *See* Pl's. Exhibit 1 pg. 72 ¶ 147 (holding in *Coomer v. Donald J. Trump for President et al.* that the actual malice standard applies because voting machine vulnerabilities are a matter of public concern).

The Court finds this matter is a public concern because the public has a real legitimate interest in fair and secure elections as part of the democratic election process. *See Shoen*, 292 P.3d at 1229. Accordingly, the actual malice standard applies in this case.

II. <u>Plaintiff's Complaint Establishes a Plausible Claim of Relief for Defamation</u>

As noted, Defendants contest that Plaintiff fails to establish a defamation because the publications are vague. This argument is identical to Defendant's Motion for Definite Statement pursuant to C.R.C.P. 12(e). Therefore, the Court declines to provide a full analysis on the plausibility of each element of defamation, including the actual malice standard. *See* Def. Reply 1 ("Salem also does not contend that Plaintiff has failed to sufficiently allege actual malice").

5

The Defendants argue that Plaintiff did not plead with specificity as to the exact language of the defamatory statement. Def's. Mtn. Dismiss 3 (citing Pl. Compl. ¶ 80). The Court finds that the Plaintiff presented sufficient plausible facts regarding the defamatory statements. Plaintiff alleged specific defamatory language as he "incorporated the prior paragraphs, as well as the Introduction of [his] complaint" into his claim for defamation. *See* Pl's. Compl. ¶ 79. The paragraphs support the basis of Plaintiff's claim because Corporon, and other hosts of 710 KNUS invited Oltmann onto the radio station to repeat and endorse Oltmann's story that he participated in an "Antifa conference call" and heard that Plaintiff was part of a scheme to commit election fraud. *Id.* at ¶ 42-43 ("everywhere across the country, [Plaintiff] is in every state, he is the one actually presenting that he is the cog to the wheel. So that I found out that. . . he owned. . he's a shareholder at Dominion.").

Plaintiff's complaint presents numerous quotes and specific language to support Plaintiff's claim for defamation. In paragraph forty-three of Plaintiff's complaint, Plaintiff alleges that Corporon endorsed Oltmann's story that Plaintiff tampered in the 2020 presidential election because of his purported connection to Antifa by stating to Oltmann:

"You have exposed the Antifa basis to the man who has the knowledge and the influence on this company that has these machines and this software in battleground states around the country. He actually made a statement that he had solved this problem for Antifa and the left of getting rid of Donald Trump, and that adds seriousness to what we're already concerned about."

*See, e.g.*, *id.* at ¶ 43.

Corporon republishing his interview with Oltmann on Twitter:

*"*The man who pulled #Antifa thuggery out of DominionVotingSystems for all to see and understands the hack. . . Thanks, Joe!"); *See* Pl. Compl. 45.

Deborah Flora, another 710 KNUS radio host, promoting Oltmann's theory that Plaintiff committed election fraud because of his employment ties to Dominion and ties to Antifa:

6

"In a nutshell, in a nutshell, go back and listen to the show, 710knus.com, Joe Oltmann, a brave man that stepped forward with information, has information that Eric Coomer, who is the Dominion Voting Systems Director of Strategy and Security, I trip over it because it is such a wrong title for him. Director of Strategy and Security, Eric Coomer, on his personal posts, he has posted things like the Antifa manifesto, anti-American sentiment, death to the president, death to the cops. This is the person that is behind the Dominion Voting System."); *See* Pl. Compl. ¶ 46.

Oltmann commenting that Plaintiff committed election fraud because of his ties with Antifa on the Peter Boyles Show, another radio show on 710 KNUS:

"I infiltrated a call with Antifa, um, Eric was on that call, to my knowledge, I believe it was Eric that was on that call, just based upon the information that was there. Somebody said Eric is the Dominion guy, and he stated on that call when asked what's gonna happen when Trump becomes president, don't worry about the election Trump's not gonna win, I made sure of it." *See* Pl. Compl. ¶ 49 (quoting Oltmann on the Peter Boyles show on Nov. 18, 2020).

Corporon advancing the connection between Plaintiff and election fraud based on ties to Dominion and Antifa on his show:

"Of course Joe Oltmann was very significant in calling out the motive, the motive behind leadership, behind some of the big brains that run Dominion Voting Systems, Eric Coomer, because of his ties to Antifa." Pl. Compl. ¶ 51.

Oltmann's story connected Plaintiff to election fraud because of Plaintiff's purported ties to an Antifa conference call and his employment at Dominion. The Defendants perpetuated this story by hosting Oltmann on their shows to share his story. *Id.* at ¶¶ 39-42. The Court finds that Plaintiff's complaint provides sufficient specificity on the alleged defamatory statements to support a plausible claim of relief for defamation.

## II. The Plaintiff's Second Claim for Relief for Intentional Infliction of Emotional Distress

The Defendants next allege that Plaintiff's second claim for IIED also fails to state a plausible claim for relief as a matter of law because (1) it is barred by the First Amendment and

7

the Colorado Constitution; (2) the claim is duplicative of the defamation claim; and (3) the conduct alleged does not rise to the requisite level of "outrageousness." Def's. Mtn. Dismiss 4-6.

## I.     The Plaintiff's IIED Claim is Not Barred by the First Amendment and Colorado Constitution.

Defendants' initially argue that, because the statements giving rise to the Plaintiff's IIED claim are a matter of public concern, the Plaintiff's IIED claim is barred by the First Amendment and Article II Section 10 of the Colorado Constitution. *See* Def's. Mtn. Dismiss 5. Defendants alter this argument in their reply by stating that the IIED claim "is subject to the First Amendment and Colorado Constitution." Def. Reply 7.

The First Amendment can bar a plaintiff from recovery for an IIED claim by protecting the defendant's speech. *See Snyder*, 562 U.S. at 460. Speech on matters of public concern is considered "at the heart of the First Amendment's protection." *Id.* at 452. Accordingly, speech on public issues is entitled to special protection. *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). However, accusations of criminal activity are not constitutionally protected. *Keohane v. Stewart*, 882 P.2d 1293, 1304 (Colo. 1994). Here, the Defendants' statements accuse the Plaintiff of interfering with the 2020 presidential election, a criminal activity which is not subject to First Amendment protections. *See id*.

Therefore, the First Amendment and Colorado Constitution do not bar Plaintiff's IIED claim. However, the IIED claim is subject to the heightened actual malice standard based on the Court's finding that the defamatory statements are a public concern. *Lewis v. McGraw-Hill*, 832 P.2d 1118, 1124-25 (Colo. App. 1992) (if actual malice standard applies to defamation claim because of public concern, then ancillary tort claims are also subject to actual malice standard).

## II. The Plaintiff's Second Claim for IIED is not Duplicative.

The Defendants contend that the Plaintiff's second claim for relief for IIED is based on the same alleged publications as the Plaintiff's defamation claim, seeks the same damages, and requires the same showing of actual malice as does his defamation claim. *Id.* at 4. The Defendants also state that because noneconomic damages for all tort claims are capped by § 13-21-102.5, C.R.S., the IIED claim requiring the same evidence and seeking the same damages is redundant and will not increase recoverable damages in this case. *Id.* at 5.

A claim for IIED requires proof that (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 955 (Colo. App. 2014). The elements of a cause of action for defamation are (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Lawson v. Stow*, 327 P.3d 340, 345 (Colo. App. 2014). A plaintiff may sue a defendant for IIED arising out of defamatory statements. *Han Ye Lee v. Colorado Times*, *Inc.*, 222 P.3d 957, 965 (Colo App. 2009).

Here, the Plaintiff's IIED claim is not duplicative of his defamation claim. First, the elements required for IIED are distinct from those required for defamation. Second, in addition to the defamatory allegations, the Defendants continual repetition of Oltmann's story incited others to harass and threaten Plaintiff. *See* Pl's. Compl. ¶ 84; Pl. Resp. 17. Although the IIED arises from the Defendants' alleged defamatory statements, these facts and damages produced from the harassment and threats are distinct from the elements of defamation as outlined above.

9

For the foregoing reasons, the Court finds that Plaintiff's IIED claim is not duplicative of the defamation claim.

III. <u>The Conduct Alleged by the Plaintiff May Plausibly Rise to the Level of "Outrageousness" Required for an IIED claim.</u>

The Defendants' final argument for dismissing the Plaintiff's IIED claim is that Plaintiff fails to allege conduct rising to the level of "outrageousness" necessary to state a plausible claim for relief. Def's. Mtn. Dismiss 6.

Outrageous conduct is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (quoting *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994)). Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, the trial court is initially responsible for determining whether reasonable persons could differ on the question. *Han Ye Lee*, 222 P.3d at 963. Where reasonable people may differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts § 46 cmt. h (1965); *Meiter v. Cavanaugh*, 580 P.2d 399, 401 (Colo. App. 1978) ("We believe that the conduct here lies so near the bounds of indecency that the question of whether it is actionably outrageous was properly left to the jury.").

A Plaintiff may allege defamatory statements that can rise to the requisite level of outrageousness to sustain a claim for IIED. *See Han Ye Lee*, 222 P.3d at 965. In *Han Ye Lee*, the plaintiff sued a newspaper for severe emotional distress after a defamatory newspaper article falsely reported that she declined to testify in her husband's murder trial. *Id.* at 964. That article implied the plaintiff was disloyal to her husband and impugned her integrity. *Id.* Further, the

10

newspaper did not verify the story before publishing. *Id.* The *Han Ye Lee* court found that a reasonably jury could find that defamatory statements by a newspaper article were extreme and outrageous. *Id.*

Here, the Plaintiff alleged defamatory statements exceed the statements made in *Han Ye Lee*. Defendants repeatedly accused Plaintiff of conspiring to alter the results of the 2020 presidential election based on Oltmann's story without verifying his claims. Defendants branded Plaintiff as a traitor, impugned his personal and professional reputation, and incited threats of violence against him. Defendants went so far as to promote a "million-dollar bounty" for anyone that could provide irrefutable evidence that Plaintiff produced fraudulent votes during the 2020 election. Pl. Compl. ¶ 61. Plaintiff provided sufficient evidence to establish a prima facie showing that Defendants' statements were extreme and outrageous.

### III.   The Plaintiff's Third Claim for Negligent Supervision and/or Retention

The Defendants argue that because the Plaintiff must prove actual malice in his defamation claim, his third claim for relief for Negligent Supervision and/or Retention fails to state a claim for relief as a matter of law. Def's. Mtn. Dismiss 7. The Defendants aver that the Plaintiff cannot state a plausible claim for relief for negligence because the "actual malice" standard requires a heightened burden. *See id.* at 7-8. The Court agrees with Defendants.

The rule adopted in *Lewis v. McGraw-Hill Broadcasting Co.*, also applies to Plaintiff's negligence supervision and retention claim. That rules states that the actual malice standard applies equally to ancillary tort claims which arise from an alleged defamatory statement. *Lewis*, 832 P.2d at 1124-25. "Absent a legally sufficient pleading of material falsity, recovery is barred by the First Amendment." *Fry v. Lee*, 408 P.3d 843, 856 (Colo. App. 2013); *See also Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 16 (Colo. App. 1996) ("plaintiffs may not avoid the strictures of

11

defamation law by artfully pleading their defamation claims to sound in other areas of tort law"). Accordingly, a plaintiff cannot bring a negligence claim arising out of a defamatory publication that involves a matter of public concern because the actual malice standard imposes a higher burden than mere negligence.

Here, Plaintiff's negligent supervision and retention claim against Salem Media is premised on the alleged defamatory statements made by Corporon and other radio hosts. Therefore, the Court finds that Plaintiff does not establish a plausible claim and relief under Rule 12(b)(5).

### IV. The Plaintiff's Fourth Claim for Civil Conspiracy

Plaintiff's fourth claim of relief is civil conspiracy against both Defendants. Civil conspiracy contains the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result thereof. *Stauffer v. Stegeman*, 165 P.3d 713, 718 (Colo. App. 2006). Conspiracy is a derivative claim based on underlying unlawful conduct. *See Colo. Cmty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. 2013).

Defendants' only argument is that if the Court dismisses Plaintiff's other claims, then his civil conspiracy claim must be dismissed as well. Defendants do not challenge the substance of the civil conspiracy claim in this motion.

Here, Plaintiff's complaint sets out plausible evidence to support an implicit conspiracy between Corporon and Salem Media to connect Plaintiff, because of his career in election services at Dominion, with Antifa to perpetuate the notion of election fraud in the 2020 presidential election. Pl. Compl. ¶ 91-93. Corporon and other Salem Media radio hosts produced and republished the narrative against Plaintiff on numerous occasions. *Id.* The Court finds that

Plaintiff's complaint provides a plausible showing of civil conspiracy. Additionally, the Court finds that Plaintiff has separate plausible claims of relief – defamation and IIED – and denies Defendants' motion to dismiss Plaintiff's claim for civil conspiracy as a derivative claim.

## ORDER

For the foregoing reasons, the Court grants in part and denies in part the Defendants' Motion to Dismiss. The Court denies the Defendants' Motion to Dismiss relative to Plaintiff's defamation, intentional infliction of emotional distress, and civil conspiracy claims. The Court grants Defendants' Motion to Dismiss as to Plaintiff's negligence supervision and retention claim.

DATED: August 15, 2022

BY THE COURT:

_____
David H. Goldberg
District Court Judge