**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-3440-WJM-KLM

ERIC COOMER, Ph.D.,

    Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, d/b/a THRIVETIME SHOW, and
CLAYTON THOMAS CLARK,

    Defendants.

---

**ORDER DENYING DEFENDANTS' SPECIAL MOTION TO DISMISS
AND DEFENDANTS' MOTION TO STRIKE**

---

Plaintiff Eric Coomer, Ph.D. ("Dr. Coomer"), sues Defendants Make Your Life

Epic, doing business as ThriveTime Show ("ThriveTime"), and Clayton Thomas Clark

("Clark") (together, "Defendants") for defamation, intentional infliction of emotional

distress, and civil conspiracy, in connection with their statements about him following

the 2020 presidential election.  (ECF No. 1).  Now before the Court is Defendants'

Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 (ECF

No. 24) ("Special Motion") and Defendants' Amended Objection to and Motion to Strike

Declarations of Eric Coomer, J. Alex Halderman, Mike Rothschild, Heidi Beedle, and

Doug Bania (ECF No. 36) ("Motion to Strike").

For the reasons stated below, the Motion to Strike is granted in part and denied

in part, and the Special Motion is denied.

## I. BACKGROUND

### A.     Colorado's Anti-SLAPP Statute

In 2019, C.R.S. § 13-20-1101 went into effect in Colorado.  (ECF No. 24 at 7 n.26.)  Section 13-20-1101 is what is referred to as an "anti-SLAPP" statute, intended to discourage strategic lawsuits against public participation ("SLAPP").  *Salazar v. Pub. Trust Inst.*, 522 P.3d 342, 345, 345 n.1 (Colo. App. 2022).  "The statute's purpose is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.'"  *Id.* at 246 (quoting C.R.S. § 13-20-1101(1)(b)).  To strike this balance, the statute provides a "special motion to dismiss" for quickly screening out frivolous suits intended to chill speech about matters of public concern.  *Id.* at 246–47 (quoting C.R.S. § 13-20-1101(3)(a)).

Defendants contend their allegedly defamatory speech about Dr. Coomer falls within the scope of Section 13-20-1101 and filed the Special Motion accordingly.  (*See* ECF No. 24.)

### B.     Material Facts

Dr. Coomer is the former Director of Product Strategy and Security at Dominion Voting Systems, Inc. ("Dominion"), an electronic voting systems company.  (ECF No. 30-1 ¶ 2.)  Beginning in November 2020, non-party podcast host Joe Oltmann began accusing Dr. Coomer of fraudulently rigging the election in favor of President Joe Biden and against then-President Donald Trump.  (ECF No. 24 at 4.)  Oltmann alleged— initially on his podcast and then in other forums—that he had infiltrated an "Antifa" conference call in September 2020, during which a man identified as "Eric . . . the

Dominion guy" proclaimed: "Don't worry about the election, Trump is not gonna [sic] win.  I made f-ing sure of that. Hahahaha."  (*Id.*; ECF No. 30-1 ¶¶ 15–16.)  Oltmann said that, after this call, he identified Eric from Dominion as Dr. Coomer and described for his listeners certain Facebook posts Dr. Coomer had made.  (ECF No. 24 at 4.)  Dr. Coomer denies he interfered with or even had the power to interfere with the 2020 election and asserts Oltmann's statements were fabricated to align with his preconceived narrative that Trump was the legitimate winner of the election.  (ECF No. 30-1 ¶¶ 17–18.)

Oltmann's statements about Dr. Coomer were soon amplified by public figures Rudy Giuliani, Sidney Powell, and others.  (*Id.* ¶ 19; ECF No. 24 at 4.)  As Dr. Coomer grew in notoriety online, he and other Dominion employees began receiving death threats, including via voicemails on his personal cell phone, e-mails, and anonymous warnings that he was being watched.  (ECF No. 30-1 ¶ 19–20.)  Dr. Coomer stopped going to work at Dominion's Denver office and, fearing for his life, eventually went into hiding, deleted his Facebook posts, and reduced contact with his family.  (*Id.*)  For months, he moved frequently between the homes of friends and acquaintances, returning to his own home only to occasionally check on his pets and belongings.  (*Id.* ¶ 20.)  On one occasion, a stranger approached his home and shouted at him through his window about election fraud.  (*Id.*)  Dr. Coomer warned the stranger that he was armed with a shotgun and told the stranger to leave.  (*Id.*)  Shortly after, Oltmann referenced the incident in a post on the social media platform Parler.[1]  (*Id.*)

---

[1] Oltmann wrote: "Eric Coomer . . . want to chat with you but you are too scared.  How about you put that shotgun down and come out?  Everyone is watching you Eric. . . everyone."  (ECF No. 30-10.)

Among those spreading Oltmann's story about Dr. Coomer were Defendants. (ECF No. 24 at 6.)  Clark is the "well-known podcast host . . . [of] the Thrivetime Show . . . , [which] is about business and politics."  (*Id.* at 1.)  On December 22,2020, Clark interviewed Oltmann on the ThriveTime Show, and Oltmann repeated his story about Dr. Coomer.  (*Id.* at 6.)  Defendants titled the episode containing the interview, "Exposing the Treasonous Eric Coomer[:] the ANTIFA Member and the Director of Strategy and Security at DOMINION Voting Systems."  (ECF No. 30-13 at 2.)  The "show notes" of this episode include several numbered questions implying Dr. Coomer is affiliated with Antifa, interfered with the voting systems in Georgia, committed treason, and may or should go to jail.  (*Id.* at 3–4.)

Clark continued to invite Oltmann as a guest on his show, and ThriveTime published episodes in which Clark and Oltmann discussed Dr. Coomer on June 5, 2021, and October 11, 2021.  (ECF No. 30-1 ¶¶ 27–28.)  During these episodes, Clark referred to Oltmann as "the tip of the spear exposing election fraud," and Oltmann repeated his claims about Dr. Coomer's participation in the conference call and efforts to rig the election.  (*Id.*)  Oltmann reciprocated by inviting Clark on his podcast, Conservative Daily, "on multiple occasions, including multiple appearances after being served with this lawsuit, most recently on January 26, 2022[,] and on March 15, 2022." (*Id.* ¶ 28.)

The Reawaken America Tour (the "Tour") is owned and managed by ThriveTime and hosted by Clark.  (*Id.* ¶ 29.)  Starting in July 2021 and continuing at least until January 2022, Defendants invited Oltmann to Tour events in California, Michigan, Colorado, Texas, and Arizona, at which Oltmann repeated his assertions about Dr.

Coomer.  (*Id.* ¶¶ 29–33.)  The Tour events in Colorado, Texas, and Arizona, post-dated reporting on and public release of a Trump Campaign memorandum finding Dr. Coomer had no connections to Antifa.[2]  (*Id.* ¶¶ 30–33.)

Since Oltmann first told the story of Dr. Coomer on the conference call, Dr. Coomer has lost his job and effectively his career, received almost daily threats, been clinically diagnosed with anxiety and depression, and suffered nationwide reputational damage.  (*Id.* ¶ 43.)

## II. LEGAL STANDARD

Disposition of a special motion to dismiss under Section 13-20-1101 requires a two-step analysis.  *Salazar*, 522 P.3d at 248.  The Court must "consider first whether the motion and supporting affidavit establish a prima facie case that the plaintiff's cause of action falls within the anti-SLAPP statute—that is, whether the claim arises from an act 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.'"  *Id.* (quoting C.R.S. § 13-20-1101(3)(a)).  If the case falls within the anti-SLAPP statute's scope, then the Court must "consider the pleadings and the supporting and opposing affidavits to determine whether the nonmoving party (the plaintiff) has established a reasonable likelihood of success on his claim."  *Id.*

Being only a few years old, Colorado's anti-SLAPP statute has not been extensively litigated.  *L.S.S. v. S.A.P.*, — P.3d —, 2022 WL 11485481, at *4 (Colo. App. October 22, 2022).  Because Colorado's statute "closely resembles California's anti-

---

[2] Alan Feuer, *Trump Campaign Knew Lawyers' Voting Machine Claims Were Baseless, Memo Shows*, N.Y. Times (Sept. 21, 2021), https://www.nytimes.com/2021/09/21/us/politics/trump-dominion-voting.html; *Read the Trump Campaign's Internal Memo*, N.Y. Times (Sept. 21, 2021), https://www.nytimes.com/interactive/2021/09/21/us/trump-campaign-memo.html.

SLAPP statute," Colorado courts look to the more developed body of California case law for guidance.  *Id.*  Perhaps also due to the thin caselaw on the anti-SLAPP statute, divisions of the Colorado Court of Appeals apparently disagree on how to treat Plaintiff's factual allegations for purposes of the Special Motion.  One division held a court neither accepts the allegations as true nor determines their truth.  *Salazar*, 522 P.3d at 248.  Per that decision, courts must "assess whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff."  *Id.*  Two other divisions, looking to California case law, held courts should "'not weigh evidence or resolve conflicting evidence or resolve conflicting factual claims' but simply 'accept the plaintiff's evidence as true, and evaluate[] the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'"[3]  *L.S.S.*, 2022 WL 11485481, at *4 (quoting *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016)); *accord Creekside Endodontics, LLC v. Sullivan*, — P.3d —, 2022 WL 17839873, at *5 (Colo. App. Dec. 22, 2022).  The Colorado Supreme Court has not yet resolved this split among divisions of the Colorado Court of Appeals.

Judges in this federal district court have applied different standards in deciding motions brought under Colorado's anti-SLAPP statute.  Senior U.S. District Judge Robert E. Blackburn previously applied the standard adopted from California state courts when considering a special motion under Colorado's anti-SLAPP law.  *Stevens v.*

---

[3] Unlike panels of United States Courts of Appeals, divisions of the Colorado Court of Appeals act independently based on their understanding of the law.  Colo. Judicial Branch, Protocols, https://www.courts.state.co.us/Courts/Court_Of_Appeals/Protocols.cfm (last visited Mar. 3, 2023).  While earlier-issued decisions by one panel of a United States Court of Appeals is binding on other panels of that same court, divisions of the Colorado Court of Appeals are free to decide an issue before them in a way that conflicts with an earlier decision by another division on the same issue.  *United States v. White*, 782 F.3d 1118, 1126–27 (10th Cir. 2015).  Therefore, even though *Salazar* was issued before *L.S.S.* and *Creekside Endodontics*, it does not control here.

*Mulay*, 2021 WL 1153059, at *3 (D. Colo. Mar. 26, 2021) ("This is a 'summary judgment-like' standard, under which I must 'accept[] as true the evidence favorable to [Mr. Mulay] and evalut[e] [Ms. Stevens's] evidence only to determine whether [she] has defeated [Mr. Mulay's] evidence as a matter of law.") (quoting *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171, 174 (Cal. Ct. App. 2011)) (alterations in original)).

U.S. District Judge Charlotte N. Sweeney, relying on authority from the Ninth Circuit, determined that the applicable standard depends on the nature of the challenge brought in the Special Motion. *Moreau v. United States Olympic & Paralympic Comm.*, — F. Supp.3d —, 2022 WL 17081329, at *7, 10–12 ("If the anti-SLAPP motion mounts a legal challenge, courts assess the motion under Federal Rule of Civil Procedure 12(b)(6).  If the anti-SLAPP motion mounts a factual challenge, courts assess the motion under Federal Rule of Civil Procedure 56.") (citation omitted).

"Reasonable likelihood," though not defined in the statute, is a phrase that has been used "interchangeably" by Colorado courts with the more familiar phrase "reasonable probability."  *Salazar*, 522 P.3d at 249.  Because Colorado Courts presume the General Assembly was aware of this fact, "'reasonable likelihood in the anti-SLAPP statute is synonymous with "reasonable probability.'"  *Id.*; *accord L.S.S.*, 2022 WL 11485481, at *4 n.3.

### III. ANALYSIS

### A.   Application of Section 13-20-1101 in Federal Court

The briefing on the Special Motion does not address whether the anti-SLAPP statute applies in this Court.  Rather the parties merely assume that it does, and they further assume that the special-motion mechanism created by the state statute is available in this Court in this action.  (*See generally* ECF Nos. 24, 30, 37.)

In *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, the Tenth Circuit noted that the "issue of whether to apply anti-SLAPP statutes . . . in federal court is a challenging one and has divided the circuits."  956 F.3d 1128, 1139 (2020).  *Barnett* did not require resolution of this question, and the panel explicitly left the question open.  *Id.* ("It makes sense to wait to decide the issue until we must do so, perhaps after helpful development of both federal law and Oklahoma case law interpreting the statute.")

Judge Sweeney recently analyzed this question in depth in *Moreau*.  2022 WL 17081329, at *2–6.  Following Ninth Circuit case law analyzing the application of California's anti-SLAPP law, Judge Sweeney determined Colorado's anti-SLAPP statute applies in federal court.  *Id.* at *6.  The Court has carefully considered Judge Sweeney's persuasive analysis and reasoning on this issue and has decided that it, too, will apply Colorado's anti-SLAPP statute in this action.

**B.    Anti-SLAPP Step One**

The first step under the statute is to determine whether Defendants' allegedly defamatory statements were made "in connection with a public issue."  *Id.* at *7.  There are four categories of statements that fall under this definition under Colorado's anti-SLAPP statute.  C.R.S. § 13-20-1101(2)(a).  The statue provides:

> (a) "Act in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue" includes:
>
> > (I) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law;
> >
> > (II) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other

official proceeding authorized by law;

(III) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

(IV) Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

C.R.S. § 13-20-1101(2)(a).  Defendants argue their statements fall within categories II, III, and IV.  (ECF No. 24 at 8–9.)

Plaintiff emphasizes that Defendants bear the burden at step one of establishing the statements are protected activity, and he argues the Special Motion's mere "[c]ollateral allusions to protected activity are insufficient" to carry this burden.  (ECF No. 30 at 9.)  He argues that the allegedly defamatory statements were not made in connection with an *existing* matter of public concern, and therefore do not fall within categories III or IV.  (*Id.* at 10–12.)  In Plaintiff's view, prior to the conspiracy theory hatched by Oltmann and amplified by Defendants and others, he was a private citizen, despite his work at a company that provides electronic voting systems.  (*Id.*)  Plaintiff argues the statements do not fall within category II because they were, at most, tangentially related to issues under review in the various frivolous lawsuits filed in the wake of the 2020 election.  (*Id.* at 12–13.)

Defendants persuasively argue in reply that the allegedly defamatory statements fall within Colorado's anti-SLAPP provision.  Under the California case law cited by both parties, "[i]t is 'the *principal thrust or gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies.'"  *Freeman v. Schack*, 154 Cal. App. 4th 719, 727 (Cal. App. 2007) (quoting *Martinez v. Metabolife Int'l, Inc.*, Cal. App.

4th 181, 188 (Cal. App. 2003)).  Unlike in *Freeman*, where the gravamen of the claim was a breach of fiduciary duty, which accrued prior to the filing of a public lawsuit, *id.* at 730–32, the gravamen of this action is the allegedly defamatory public statements themselves.  And while the Court agrees with Dr. Coomer that simply being employed by Dominion did not make him a public figure, the Court agrees with Defendants that his arguments focus too narrowly on himself and his status as a private citizen.  (ECF No. 37 at 4–7.)

In the Court's view, the appropriate aperture for considering the allegedly defamatory statements is not specifically Dr. Coomer himself, but election security and administration more generally.  Viewed through this wider lens and in the context of (i) an election conducted during a global pandemic and (ii) a 2016 election after which election security was widely discussed, the Court concludes the gravamen of this case falls within the scope of the anti-SLAPP statute.  (*See* ECF No. 24 at 3.)

Therefore, the Court finds Defendants have met their burden at step one and proceeds to step two.

## C.     Motion to Strike

At step two, Plaintiff must go beyond his pleadings and present evidence that satisfies the Court that he is reasonably likely to prevail on the merits of his claims.  *See L.S.S.*, 2022 WL 11485481, at *4.

Defendants argue in the Motion to Strike that substantial portions of the evidence Plaintiff submits to meet his burden at step two cannot be properly considered by the Court.  (*See* ECF No. 36 at 2.)  Therefore, before the Court can determine whether Plaintiff has met his burden at step two, it must rule on the Motion to Strike.

Plaintiff submits, among other evidence, several declarations in opposition to the

Special Motion.  (*See* ECF No. 36 at 2.)  Defendants argue substantial portions of Dr. Coomer's and the entirety of Dr. J. Alex Halderman's, Mike Rothschild's, Heidi Beedle's, and Doug Bania's declarations should be stricken.  (*Id.* at 6–7, 10, 12–13.)  Relying on California law, Defendants argue a Court may only consider declarations "if it is reasonably possible the proffered evidence set out . . . will be admissible at trial."  (*Id.* at 2 (quoting *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 434 P.3d 1152, 1163 (Cal. 2019)).)  "[I]f the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection."  (*Id.* (quoting *Sweetwater Union*, 434 P.3d at 1163).)  Plaintiff agrees the Court should apply California law as articulated in *Sweetwater Union.*  (*See* ECF No. 38 at 4.)

The Court notes below that when ruling on a special motion predicated on a factual challenge, federal courts apply the standards set forth in Rule 56.  *See infra* Section III.A.  Rule 56(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Under this standard, plaintiffs "need not produce evidence 'in a *form* that would be admissible at trial,' but the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Machs.*, 48 F.3 478, 485 (10th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In the Court's view, the rule articulated in *Sweetwater Union* is substantively identical to the standard under Rule 56(c)(2).  *See Sweetwater Union*, 434 P.3d at 1163 ("To strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes.")

The Court next addresses Defendants' objections to each of the declarations. Defendants helpfully describe each objection individually and identify the objected-to language by paragraph numbers; however, for the sake of brevity, the Court summarizes these objections based on their content.

1.  Dr. Coomer's Declaration

Defendants argue that portions of Dr. Coomer's declaration contain evidence that cannot be admitted for the following reasons: (1) lack of personal knowledge; (2) impermissible legal conclusions; and (3) improper personal opinions.

After reviewing the parties' arguments and Dr. Coomer's declaration, the Court finds the objected-to statements can be admitted at trial.  For example, Defendants argue Dr. Coomer has insufficient personal knowledge to describe statements by Oltmann on Defendants' podcast and at Defendants' Tour events because he was not personally present when the statements were made.  (ECF No. 36 at 6.)  But this ignores the fact that these statements were often videotaped for later viewing by a wider audience.  As another example, Defendants argue Dr. Coomer's description of certain statements as "defamatory" is an impermissible legal conclusion.  (*Id.* at 7.)  But Dr. Coomer's declaration does not attempt to tell the Court how to apply certain facts to the law—it simply uses the adjective "defamatory" to identify the statements that are the subject of this defamation action.  *See United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013).  As a final example, there is nothing inherently impermissible about a lay witness giving opinion testimony.  Fed. R. Evid. 701.  Such testimony need only be rationally based on the witness's perception, helpful to the finder of fact, and not scientific or technical in nature.  *Id.*  As far as Dr. Coomer's opinions about his own mental state, the Court finds they could be helpful to the finder of fact, depending on the

other evidence offered at trial.

Accordingly, with respect the Declaration of Dr. Coomer, the Motion to Strike is denied.

2.      Dr. Halderman's Declaration

Defendants argue the declaration of J. Alex Halderman, Ph.D., should be stricken in its entirety because it is "substantially comprised" of: (1) statements made without personal knowledge; (2) legal conclusions; and (3) argument and opinions. (ECF No. 36 at 7.)

After reviewing the parties' arguments and Dr. Halderman's declaration, the Court finds all but one of the objected-to statements can be admitted at trial. Defendants' objections based on personal knowledge and opinions fundamentally misapprehend either (i) that Dr. Halderman would be offered at trial as an expert witness or (ii) the nature of expert testimony itself.  Experts may rely on information outside their own personal knowledge in formulating their opinions, and they may in fact offer opinion testimony within their area of expertise.  Fed. R. Evid. 703.  Further, the Court disagrees with Defendants' contention that Dr. Halderman's opinions are "*de facto* legal conclusions."  (ECF No. 36 at 8 (emphasis in original).)

For example, Dr. Halderman's opinion that Oltmann's claims about Dr. Coomer should have been incredible "to any responsible" party does not tell the finder of fact how to apply the law to the facts.  *See Schneider*, 704 F.3d at 1294   It is simply an opinion on a fact relevant to the "actual malice" element of a defamation claim involving a matter of public concern.

The Court, however, strikes and does not consider the following statement by Dr. Halderman: "It would have been the height of cartoonish buffoonery to claim to a large

13

group that such a scheme [to rig the election] was in the works, much less that it was guaranteed to prevail."  (ECF No. 30-37 at 11.)  The Court finds that this statement would not assist the finder of fact, and therefore cannot be admitted at trial.  *Specht v. Jensen*, 853 F.2d 805, 813 (10th Cir. 1988).

Accordingly, with respect the Declaration of Dr. Halderman, the Motion to Strike is granted in part and denied in part.

3.     Rothschild's Declaration

Defendants argue the declaration of Mike Rothschild should be stricken in its entirety because it consists of: (1) statements made without personal knowledge; and (2) argument and opinions.  (ECF No. 36 at 10.)

After reviewing the parties' arguments and Rothschild's declaration, the Court finds the objected-to statements can be admitted at trial.  Again, Defendants' objections strongly suggest they misapprehend the nature of the testimony Rothschild would offer at trial.  Expert testimony is often based on information outside the expert's personal knowledge, and the very purpose of expert testimony is assisting the finder of fact with expert opinions.  *See* Fed. R. Evid. 702, 703.

Accordingly, with respect the Declaration of Mike Rothschild, the Motion to Strike is denied.

4.     Beedle's Declaration

Defendants argue the declaration of Heidi Beedle should be stricken in its entirety because it is "substantially comprised" of: (1) statements made without personal knowledge; (2) hearsay; and (3) argument and opinions.  (ECF No. 36 at 12.)

After reviewing the parties' arguments and Beedle's declaration, the Court finds the objected-to statements can be admitted at trial.  None of the statements in Beedle's

declaration are made without personal knowledge nor are they hearsay.  For example, Defendants argue Beedle's statements that she is not affiliated with the organization "Our Revolution" and why she believes Oltmann misidentified her as a member of that organization are made without personal knowledge.  (ECF No. 36 at 12.)  But surely Beedle knows personally with which groups she is and is not affiliated.  At trial, it may be necessary for Beedle to offer more foundation for why she thinks the February 16, 2020, Our Revolution event *specifically* is the reason Oltmann came to misidentify her as affiliated with Our Revolution.  (*See* ECF No. 30-40 ¶ 9.)  But at this time, the Court finds this testimony can be admissible at trial.  As another example, Defendants argue Beedle offers improper opinion testimony but, again, lay opinion testimony is permissible under Federal Rule of Evidence 701, and Defendants offer no argument as to why Beedle's statements are impermissible under that rule.  (*See* ECF No. 36 at 13.)

Accordingly, with respect the Declaration of Heidi Beedle, the Motion to Strike is denied.

5.    Bania's Declaration

Defendants argue the declaration of Doug Bania should be stricken in its entirety because it is "substantially comprised" of statements made without personal knowledge.  (ECF No. 36 at 13.)

After reviewing the parties' arguments and Bania's declaration, the Court finds the objected-to statements can be admitted at trial.  It is clear from his declaration that Bania would testify as an expert at trial—something he has done in more than 75 different cases in state and federal courts.  (ECF No. 30-45 ¶ 5.)  Though Defendants object that Bania was not personally involved in sending or receiving the tweets he analyzes in his declaration, as the Court has already explained, this is not necessary for

an expert like Bania to consider and opine on the threatening tweets about Dr. Coomer. Fed. R. Evid. 703.

Accordingly, with respect the Declaration of Doug Bania, the Motion to Strike is denied.

### D.    Anti-SLAPP Step Two

At step two, the Court must consider the evidence provided by Plaintiff and determine whether it establishes a likelihood to prevail on the merits.  *See L.S.S.*, 2022 WL 11485481, at *4.

As Judge Sweeney explained in *Moreau*, the special-motion procedure does not fit neatly into either Rule 12 or Rule 56.  *Moreau*, 2022 WL 17081329, at *7.  For this reason, "courts must determine whether the basis of an anti-SLAPP motion is legal or factual."  *Id.*  If the motion amounts to a legal challenge, the court analyzes it under the Rule 12 standard; if it amounts to a factual challenge, the court analyzes it under the Rule 56 standard. *Id.*  Because this Court finds Defendants' challenge is factual in nature, it holds that the Rule 56 standard and approach applies.  *Id.*

In *Moreau* the party invoking the anti-SLAPP statute levied both legal and factual challenges.  *Id.* at *7–12.  Again following guidance from the Ninth Circuit, Judge Sweeney ruled on the legal challenge but not on the factual challenge.  *Id.* at *11–12. Under Ninth Circuit law, in a case where the special motion is predicated on a factual challenge, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."  *Planned Parenthood Fed'n Am., Inc. v. Ctr. Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The reason for this rule, however, is to prevent the application of a state procedural rule limiting discovery by the party resisting dismissal in "direct colli[sion]" with Rule 56.

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'")

Here, because Plaintiff has already had the benefit of the discovery conducted in other proceedings against Oltmann and other defendants (*see* ECF No. 38 at 4–5), he has presented extensive evidence already in his custody and control in opposition to the Special Motion, and therefore in the circumstances of this case is not disadvantaged by early consideration of that Motion.  Therefore, the Court will proceed to consider Plaintiff's claims individually in turn.

1.    Defamation

Under the First Amendment and Colorado law, in a defamation case involving a matter of public concern, there are six elements a plaintiff must show: (1) a defamatory statement; (2) that was materially false; (3) concerning Plaintiff; (4) published to a third party; (5) with actual malice; and (6) that caused actual or special damages.  *Brokers' Choice Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) (citing *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993); *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013)).

**Defamatory Statement.**  There can be no real dispute that at least some of the statements attributed to Defendants are defamatory.  Under Colorado law, a statement is defamatory per se if it imputes a criminal offense.  *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004).  Plaintiff has submitted evidence tending to show Defendants

repeatedly endorsed Oltmann's accusation that Dr. Coomer committed fraud and treason by inviting him on the TriveTime Show and the Tour. (ECF No. 30-1 ¶¶ 23–33.) Treason is a crime so infamous it is specifically mentioned in the federal Constitution. U.S. Const. art. III, § 3. The Court finds Plaintiff has met his burden at step two with respect to the first element.

**Materially False.** In a case such as this, where the allegedly defamatory statements relate to a matter of public concern, the plaintiff must show falsity by clear and convincing evidence. *Fry*, 408 P.3d at 848. Here, the declarations Plaintiff submits contain substantial evidence tending to show the falsity of the various statements Defendants made about him. This includes evidence tending to show not only that the election fraud as alleged by Oltmann was technically impossible, but also that the claim of Dr. Coomer's involvement in the September conference call was supported by fabricated evidence. (ECF No. 30-37 ¶¶ 25–26, 44–45.) Given this compelling evidence, the Court finds Plaintiff could show material falsity by clear and convincing evidence, and it further finds that he has carried his burden at step two with respect to the second element.

**Concerning Plaintiff.** Many, if not all, of the allegedly defamatory statements "concern" Plaintiff. As has already been noted, many of the statements—including those made by Defendants rather than Oltmann—mention Dr. Coomer by name. (*See e.g.*, ECF No. 24-10 at 3.) The Court finds Plaintiff has met his burden at step two with respect to the third element.

**Published to a Third Party.** Defendants repeatedly seek to shift the Court's focus to Oltmann. (ECF No. 24 at 1, 10–11, 13–14.) And while it is true that Oltmann

originated the claims that Dr. Coomer committed election fraud and treason, Defendants did more than merely deliver or transmit these statements.  As alleged, Defendants repeatedly invited Oltmann onto the ThriveTime Show podcast and to Tour events, and Defendants themselves knowingly published statements suggesting Dr. Coomer committed the crimes of election fraud and treason.  (ECF No. 30-1 ¶¶ 23–33.)

Moreover, Defendants' argument that the following statement, which they freely admit was made by them, is merely an unverifiable opinion (and not an assertion of fact) and therefore unactionable severely strains credulity: "And you have these people like Eric Coomer that are attempting to overthrow what appears to be the will of the people." (ECF No. 24-10 at 3.)  The Court finds Plaintiff has met his burden at step two with respect to the fourth element.

**Actual Malice.**  Plaintiff must show with clear and convincing evidence that Defendants' defamatory statements about him were published "with actual malice, that is, with actual knowledge that they were false or in reckless disregard of the truth."  *Fry*, 408 P.3d at 848.  "Actual malice can be shown if the author entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity."  *Id.*  There is substantial circumstantial evidence in the declarations that Defendants acted with reckless disregard of the truth.  Take again the example of Defendants' statement regarding Dr. Coomer "attempting to overthrow what appears to be the will of the people."  Defendants made this statement based on uncorroborated assertions by Oltmann about a conference call that allegedly occurred months earlier and was not recorded.  (ECF No. 30 at 17.)

Despite Oltmann's obvious, self-serving motivations to make these accusations,

Defendants did not even attempt to reach out to Dr. Coomer or Heidi Beedle prior to making this statement about Dr. Coomer.  (ECF No. 30-1 ¶ 26; ECF No. 30-40 ¶ 20; *see Burns v. McGraw*, 659 P.2d 1351, 1361–62 (Colo. 1983)).)  "[F]ailure to pursue the most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth."  *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981). The Court finds Plaintiff has met his burden at step two with respect to the fifth element.

**Damages.**  No reasonable person, or trier of fact, can credibly dispute that Plaintiff has been damaged.  Dr. Coomer has lost his job (and potentially his career), he been harassed and stalked, he has been threatened with physical harm, he has been diagnosed with anxiety and depression, and his reputation has allegedly been destroyed.  (ECF No. 30-1 ¶¶ 20, 43.)  The Court finds Plaintiff has more than met his burden at step two with respect to the sixth element.

Having satisfied his burden with respect to each element, the Court finds Plaintiff has shown he is likely to prevail on the merits of his defamation claim.  Therefore, with respect to Plaintiff's defamation claim, the Special Motion is denied.

    2.    <u>Intentional Infliction of Emotional Distress</u>

"A claim for intentional infliction of emotional distress requires proof that (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress."  *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 955 (Colo. App. 2014) (internal quotation marks omitted).

**Outrageous Conduct.**  "'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). Plaintiff has presented evidence that Defendants, for a period of at least a year, repeatedly accused Dr. Coomer (or amplified others' accusations) of the crimes of election fraud and treason, that they did so in reckless disregard of the truth, and that they persisted in these accusations even after a point in time when they reasonably should have known of the death threats Plaintiff had received.  (ECF No. 30-1 ¶¶ 23–33.)

On one occasion, for example, a man harassed Dr. Coomer at his house, only leaving when Dr. Coomer threatened him with a shotgun.  (*Id.* ¶ 20.)  Afterward, Oltmann mocked Dr. Coomer in a social media post in which he acknowledged that people were harassing Dr. Coomer based on the accusations of election fraud and treason.  (*Id.*)  This occurred before Oltmann's first appearance on Defendants' podcast, and yet Defendants still repeatedly invited Oltmann on the podcast and to live Tour events to repeat and spread the allegedly defamatory statements against Dr. Coomer. (*Id.* ¶¶ 20, 23–25, 28–34.)  As a result, the Court finds Plaintiff has met his burden at step two with respect to the first element.

**Recklessly or with Intent.**  Plaintiff does not indicate in his brief argument relating to this claim whether he plans to show Defendants acted recklessly or with intent.  (*See* ECF No. 30 at 19.)  For the purposes of this analysis, however, the Court will use the lower standard of recklessness.  "A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause

severe emotional distress to the other person." *Culpepper*, 877 P.2d at 882–83. Plaintiff has presented a bevy of relevant evidence in the declarations, but in the Court's view, a single piece of evidence already discussed could support a finding of recklessness. The incident at Dr. Coomer's house involving the stranger and the shotgun alone should have made clear that these accusations had the effect of causing him severe emotional distress. Yet, despite this event being acknowledged by Oltmann, Defendants still brought him on the podcast and to Tour events, endorsed Oltmann's accusations, and repeated them to Defendants' audiences.[4] The Court finds Plaintiff has met his burden at step two with respect to the second element.

**Causing Severe Emotional Distress.** Emotional distress is "severe" when "no reasonable man could be expected to endure it." Restatement (Second) Torts § 46, cmt. j; *see Culpepper*, 877 P.2d at 882–83 (citing Restatement (Second) Torts). Plaintiff has submitted evidence to show that he has endured credible fear for his own life and the lives of his family, in addition to suffering significant anxiety and depression. (ECF No. 30-1 ¶¶ 19, 43.) The Court finds Plaintiff has met his burden at step two with respect to the third element.

Having satisfied his burden with respect to each element, the Court finds Plaintiff has shown he is likely to prevail on the merits of his intentional infliction of emotional distress claim. Therefore, with respect to Plaintiff's intentional infliction of emotional distress claim, the Special Motion is also denied.

---

[4] It is not clear whether Defendants were actually aware of this post at the time they first invited Oltmann onto the ThriveTime Show podcast. Regardless, the standard is "knew or should have known," and the Court finds a jury could reasonably find Defendants should have investigated how Oltmann came to know about Dr. Coomer and become aware of Oltmann's chilling Parler post prior some or all of their allegedly defamatory statements.

3.    <u>Civil Conspiracy</u>

The elements of civil conspiracy under Colorado law are: "(1) two or more

persons, and for this purpose a corporation is a person; (2) an object to be

accomplished; (3) a meeting of the minds on the object or course of action; (4) one or

more unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier*

*Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989).

**Two or More Persons.**  Defendants Clark and ThriveTime are two "persons" for

purposes of this analysis.  The Court finds Plaintiff has met his burden at step two with

respect to the first element.

**Object to be Accomplished.**  Plaintiff's evidence tends to show that the object

of Defendants' conspiracy was to defame him for financial gain.  (*See* ECF No. 30-39 ¶

39 ("[G]iven the price of tickets and the amount of merchandise sold, it's not

unreasonable to think that each tour stop brings in at least a million dollars.").)  The

Court finds Plaintiff has met his burden at step two with respect to the second element.

**Meeting of the Minds.**  Plaintiff's declarations also support the conclusion that

there was a meeting of the minds between Defendants.  Starting with inviting Oltmann

onto the ThriveTime Show in December 2020 and continuing throughout the many Tour

events that featured Oltmann, Clark and ThriveTime appear to have acted in concert to

publish and promote the allegedly defamatory statements.  (*See* ECF No. 30-1 ¶¶ 23–

33.)  The Court finds Plaintiff has met his burden at step two with respect to the third

element.

**Overt Acts.**  There can be no real dispute that overt acts were taken to advance

the alleged conspiracy, based on the evidence Plaintiff submits.  (*See id.*)  Indeed,

Defendants do not even contest that they made many of the alleged statements—they

merely argue the statements are not actionable for various reasons.  (ECF No. 24 at 12–14.)  The Court finds Plaintiff has met his burden at step two with respect to the fourth element.

     **Damages.**  As discussed above in Sections III.E.1 and III.E.2, Plaintiff has presented evidence of the serious economic and psychological damages he has endured as a result of Defendants' conduct.  The Court finds Plaintiff has met his burden at step two with respect to the fifth element.

Having satisfied his burden with respect to each element, the Court finds Plaintiff has shown he is likely to prevail on the merits of his civil conspiracy claim.  Therefore, with respect to Plaintiff's civil conspiracy claim, the Special Motion is denied.

## IV. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1.    Defendants' Special Motion to Dismiss Pursuant to Colorado Revised Statutes § 13-20-1101 (ECF No. 24) is DENIED;

2.    Defendants' Amended Objection to and Motion to Strike Declarations of Eric Coomer, J. Alex Halderman, Mike Rothschild, Heidi Beedle, and Doug Bania (ECF No. 36) is GRANTED IN PART and DENIED IN PART as set out above;

3.    Plaintiff's Unopposed Motion to Set Hearing on Defendants' Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (ECF No. 43) is DENIED AS MOOT;

4.    The Stay of this action (ECF No. 34) is hereby LIFTED; and

5.    Counsel for the parties is DIRECTED to jointly contact the Chambers of U.S. Magistrate Judge Kristen L. Mix **no later than March 9, 2023** to set a status conference, or such other proceeding as Judge Mix deems appropriate to

promptly advance this litigation.


Dated this 7th day of March, 2023.

BY THE COURT:

William J. Martinez
Senior United States District Judge