IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

     Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, d/b/a THRIVETIME SHOW,
REOPEN AMERICA LLC, d/b/a REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

     Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff Dr. Eric Coomer's oral Motion to Compel: (1) Defendant Make Your Life Epic's (MYLE's) responses to a discovery request that seeks MYLE's financial records, including records concerning MYLE's revenue generated by the ReAwaken America Tour ("Tour"); and (2) nonparty Vanessa Clark's responses to a subpoena *duces tecum* that also seeks Defendant MYLE's financial records, tax returns, payroll records, and other business records and communications related to the tour, as well as Ms. Clark's personal tax returns. This matter is also before the Court on Ms. Clark's oral Motion to Partially Quash the subpoena *duces tecum*.  On October 12, 2023, the Court held a discovery dispute hearing and ruled on some of the discovery disputes, while taking others under advisement. *See Courtroom Minutes* [#87]. Additionally, the Court ordered simultaneous briefing on the relevance of financial information to Plaintiff's defamation claim and that claim's malice element. *Id*. The parties

timely filed their briefs on October 23, 2023. *See Plaintiff's Brf.* [#88] and *Defendant MYLE's Brf.* [#90].

For the reasons stated below, **Plaintiff's Motion to Compel** is **granted in part** and **nonparty Vanessa Clark's Motion to Partially Quash the Subpoena** *Duces Tecum* is **granted in part**.

## I.    Background

Plaintiff Eric Coomer, Ph.D., the former Director of Strategy and Security at Dominion Voting Systems,[1] sues Defendants Make Your Life Epic ("MYLE"), doing business as ThriveTime Show; Reopen America LLC, doing business as Reawaken America Tour ("Tour"); and Clayton Thomas Clark ("Clark"), the Tour's founder, for defamation, intentional infliction of emotional distress, and civil conspiracy, in connection with their statements about him following the 2020 presidential election. *See First Amend. Compl.* [#104]. Plaintiff alleges that "[t]hrough their traveling tour and series of nationally published interviews, Defendants have monetized a false election fraud narrative and promoted a constant drumbeat of outright falsehoods intended to place Dr. Coomer at the center of an imagined conspiracy to defraud the American people." *Id*. at ¶ 1. Plaintiff also alleges that the Tour, which travels throughout the country, and the Tour's founder, Defendant Clark, "regularly publish lies about Plaintiff ["invented by Colorado podcaster and conspiracy theorist Joe Oltmann"] . . . and falsely accuse him of criminal conduct on a historically unprecedented scale." *Id*. at ¶ 2. Clark and MYLE allegedly "began publishing and subscribing to" these theories, and Clark "monetize[d]" these "baseless claims by founding the [Tour], which [travels] the country selling $250 tickets to

---

[1] Denver-based Dominion Voting Systems "provides election support services across the United States[.]" *First Amend. Compl.* [#104] at ¶ 20.

conferences promoting election fraud lies, including Oltmann's lies about Dr. Coomer," which include claims "without any evidence whatsoever, that Dr. Coomer did in fact rig the election" and is, therefore, "a traitor" and someone who committed "treason," "a capital offense." *Id*. at ¶¶ 3, 4; *see also id*. at ¶ 62 (alleging that Oltmann accused Dr. Coomer of enabling Dominion Voting Systems to create "phantom" or "fraudulent" ballots). Additionally, Defendant MYLE sells Tour tickets through its website and "livestreams the Tour events in real time and has published hundreds of videos from the Tour events," while "[Defendant Tour] . . . puts on . . . events and collects revenue associated with the Tour." *Id*. at ¶ 41.

Plaintiff claims that "Defendants have persisted in promoting, publishing, and profiting off of publishing Oltmann's lies to a national audience." *Id*. at ¶ 7; *see also id*. at ¶ 38. For example, Clark's events, which are operated by Defendants MYLE and/or the Tour, "livestreams all of its tour events [including Oltmann's appearances, which are "regularly devoted to defaming Dr. Coomer, spreading falsehoods about the 2020 election, and issuing calls for political violence"] online to a national and potentially international audience." *Id*.  Defendants also allegedly promoted these falsehoods on social media. *Id*. In addition to Oltmann's appearances, the Tour includes appearances by "more than two dozen other conservative political activists, vaccine skeptics, QAnon promoters, election fraud conspiracy theorists, and others." *Id*. at ¶ 43; *see also id*. at ¶ 64.

Defendants' promotion of Oltmann's theories extend beyond the Tour. For example, on his podcast, Defendant Clark featured an interview with Oltmann entitled, "Exposing the Treasonous Eric Coomer the ANTIFA Member and the Director of Strategy

and Security at DOMINION Voting Systems." *Id*. at ¶ 49. This podcast episode was "published across multiple media platforms[.]" *Id*.

Plaintiff claims that "Defendants had numerous reasons to know that Oltmann's claims about Dr. Coomer were false and that they have published and continue to publish highly defamatory content with reckless disregard for the truth." *Id*. at ¶ 76. In support, Plaintiff contends that Oltmann "has offered no evidence in support of his allegations," "has no personal knowledge of any election fraud involving Dr. Coomer," "has not disclosed any witness with personal knowledge of any election fraud committed by Dr. Coomer," and "has offered no evidence of election fraud committed by Dr. Coomer." *Id*. at ¶¶ 77, 78. Further, Plaintiff contends that "Oltmann's allegations are based on anonymous sources—specifically unknown and unverified speakers on an Antifa call Oltmann allegedly infiltrated," and Oltmann's allegations "regarding the alleged Antifa call itself have varied" and been inconsistent. *Id*. at ¶¶ 79, 80. Nevertheless, "Defendants' collective objective was [allegedly] to promote the false claim that the 2020 presidential election was rigged for their own financial and political gain." *Id*. at ¶ 101.

As a result of these falsehoods, Plaintiff's reputation has been "irreparably tarnished" and he "now endures frequent credible death threats and the burden of being made the face of an imagined criminal conspiracy of unprecedented scope in American history." *Id*. at ¶ 8; *see also id*. at ¶ 82. Based on Defendants' alleged conduct, Plaintiff asserts three claims: (1) defamation; (2) intentional infliction of emotional distress; and (3) civil conspiracy. *Id*. at ¶¶ 91-102.

## II.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant[2] to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Discoverable information "need not be admissible in evidence[.]" Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *3 (W.D. Va. Jan. 8, 2021) (citing *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019)).

Federal Rule of Civil Procedure 37(a)(1) permits a party to seek an order compelling discovery from a party who has failed to disclose or produce the requested information. The party resisting discovery bears the burden of persuasion. *See Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines*, No. 11-cv-02008-MSK-KLM, 2012 WL 1801979, at *7 (D. Colo. May 16, 2012). "When the discovery sought appears relevant, the party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance

---

[2] Evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Leighr v. Beverly Enters-Kan. Inc.*, 164 F.R.D. 550, 552 (D. Kan. 1996) (internal citation, quotation, and modification omitted).

Federal Rule of Civil Procedure 45 governs discovery from nonparties; it permits a party to command a person to attend a deposition and produce documents, electronically stored information, or tangible things at a specific time and place. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*, No. Case No. 17-md-2785-DDC-TJJ, 2018 WL 2926581, at *2 (D. Kan. June 11, 2018). "In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena." *Id.* A nonparty commanded to produce documents "may serve on the party or attorney designated in the subpoena a written objection to inspecting [or] copying . . . any or all of the materials[.]" Fed. R. Civ. P. 45(d)(2)(B). The serving party may then, on notice to the commanded person, seek a court order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i). Alternatively, a nonparty may ask the court to quash or modify a subpoena for reasons such as where the subpoena "requires disclosure of privileged or other protected matter[.]" Fed. R. Civ. P. 45(d)(3)(A).

Finally, in deciding whether a subpoena imposes an undue burden on the responding nonparty, courts consider factors such as relevance, the requesting party's need for the documents, the document request's breadth, and the period covered by the

request. *Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 6376723, at *6 (D. Colo. Sept. 29, 2023). Mere inconvenience to or some expense incurred by the responding nonparty does not amount to an undue burden. *In re Epipen*, 2018 WL 2926581, at *5. However, "discovery from third-parties in particular must, under most circumstances, be closely regulated." *Coomer*, 2023 WL 6376723, at *6.

### III.   Analysis

To prevail on his defamation claim, which involves a matter of public concern, *i.e.*, the integrity of the 2020 presidential election, Plaintiff Dr. Coomer must prove: (1) a defamatory statement; (2) that was materially false; (3) concerning Plaintiff; (4) published to a third party; (5) with actual malice; and (6) that caused actual or special damages. *Coomer v. Make Your Life Epic LLC*, --- F. Supp. 3d ----, 2023 WL 2390711, at *8 (D. Colo. Mar. 7, 2023). "A communication is made with actual malice if it is published with 'actual knowledge that it was false' or 'with reckless disregard for whether it was true.'" *Creekside Endodontics, LLC v. Sullivan*, 527 P.3d 424, 431 (Colo. App. 2022). In other words, "actual malice is proved by evidence that the publisher entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity." *Id*. at 431 (internal quotation marks and citation omitted).

"Certain circumstantial evidence, such as the defendants' motivations or lack of diligence, bears on the existence of actual malice[.]" *Grayson v. No Labels, Inc.*, No. 6:20-cv-1824-PGB-LHP, 2022 WL 1701853, at *3 (M.D. Fla. May 20, 2022); *see also Gilmore v. Jones*, No. 3:18-cv-0017, 2021 WL 68684, at *5 (W.D. Va. 2021) (stating that "[p]laintiffs may use both direct and indirect evidence to prove actual malice" and "indirect evidence is often key to proving actual malice") (citing *Herbert v. Lando*, 441 U.S. 153, 160-65

(1979)). Indeed, "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself." *Gilmore*, 2021 WL 68684, at *5 (quoting *Herbert*, 441 U.S. at 170).

In support of his Motion, Plaintiff argues that "[f]inancial motive is one of various factors that [c]ourts traditionally look to when assessing actual malice," and while "[f]inancial motive *alone* is not sufficient to establish actual malice, . . . *it is a relevant factor*." *Plaintiff's Brf.* [#88] at 5 (emphasis in the original) (citing *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1136 (9th Cir. 2003); *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1042-43 (10th Cir. 2013)). Further, Plaintiff argues that "Defendants' financial records are . . . relevant because they are likely to explain one of the reasons *why* Defendants have persisted in their yearslong [sic] defamation campaign against Plaintiff despite the overwhelming infirmities of the narrative they continue to publish." *Id*. at 6 (emphasis in the original).

In opposition, Defendants argue that financial information is irrelevant to actual malice and not discoverable. *Defendants' Brf.* [#90] at 1-6. In support, Defendants contend, "[e]vidence that a libel defendant had a financial motive to publish a challenged statement does not tend to make it more probable that the defendant published the statement with actual malice [*i.e.*, "that defendant actually knew or disregarded facts at the time of publication"] because publishers of non-defamatory statements have the exact same financial motive—to make money." *Id*. at 2. In support, Defendants cite to inapposite court decisions focused on whether financial motive *alone* will support a finding of actual malice, instead of the issue raised by Plaintiff's discovery requests: whether financial information is relevant and discoverable under the ordinary presumption of broad

discovery. *See id*. at 2 (citing *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 7568 (PGG), 2018 WL 473 5717, at *12 (S.D.N.Y. Sept. 29, 2018) (on a motion to dismiss, rejecting argument that a financial motive, standing alone, supports a finding of actual malice); *Palin v. New York Times Co.*, 264 F. Supp. 3d 527, 537 (S.D.N.Y. 2017) (dismissing defamation complaint in absence of plausible allegations of actual malice because "[a] supposition that a sharp attack on a disfavored political figure will increase a publication's readership[ ] has never been enough to prove actual malice."); *Schwartz v. Worrall Publ'ng., Inc.*, 610 A.2d 425, 431 (N.J. App. 1992) (noting, on reversal of lower court's summary judgment ruling, that financial motives "cannot provide a sufficient basis for finding actual malice.")).

For the following reasons, the Court finds that Plaintiff has the better argument. At this stage in the proceedings, *i.e.*, the discovery phase, the parties are entitled to obtain relevant evidence to marshal support for their claims and defenses. While Plaintiff cannot rely on financial motive as clear and convincing evidence of actual malice, circumstantial evidence, such as Defendants' financial motivations, "bears on the existence of actual malice" and, is therefore, entirely relevant. *Grayson*, 2022 WL 1701853, at *3; *see also Spacecon*, 713 F.3d at 1042-43 (stating, "[t]he motivation behind a publication is *a factor* to consider in determining whether the evidence shows a publisher acted with actual malice," but "cannot, by itself, provide a sufficient basis for finding actual malice") (emphasis added); *Suzuki Motor Corp.*, 330 F.3d at 1136 (finding "sufficient circumstantial evidence of a financial motive to support the ultimate conclusion of actual malice" and noting relevance of financial motive to actual malice inquiry regarding the defendant's automobile test rigging); *cf. Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657,

667 (1989) (stating that a desire to increase profits does not "suffice *to prove* actual malice") (emphasis added). Therefore, as a general matter, Plaintiff is permitted to obtain discovery on Defendants' financial motive. The Court will next consider the at-issue discovery requests.

**The At-Issue Discovery Requests**

**1.    Plaintiff's Request for Production No. 4 to Defendant MYLE**

Plaintiff's Request for Production Number 4 seeks "[a]ll financial records between January 1, 2021[,] and the present demonstrating, describing, or discussing revenues generated for [MYLE] by the Tour, including, but not limited to, profit and loss statements." In response, MYLE asserted a myriad of objections: relevance, disproportionate to the needs of the case, seeks confidential information, and violates Defendants' and non-parties' privacy rights. In support of their proportionality objection, MYLE contends that its "financial records from January 1, 2021[,] to the date of Oltmann's first appearance on the Tour are temporally irrelevant to actual malice as a matter of law" because the at-issue statements did not occur before the Tour commenced on April 16, 2021, or before Oltman joined the Tour on July 17, 2021. *Defendant's Brf.* [#90] at 6-7. MYLE further contends that that the request for financial records "to the present" is "overbroad and temporally irrelevant . . . because the last Tour event alleged in the Complaint was in April 2022." *Id.* at 7 (citing original Complaint [#1] at ¶ 45).[3]

---

[3] Paragraph 45 of the Original Complaint [#1] and paragraph 47 of the First Amended Complaint [#104] contain links to a website (https://www.thrivetimeshow.com/reawaken-america-tour/), which purports to belong to "ThriveTime Show" and lists dates for "next conferences." Though the original and amended complaints list tour dates through April 2022, the "ThriveTime Show" website lists dates through December 16, 2023, in Tulare, California. *See* https://www.thrivetimeshow.com/reawaken-america-tour/ (last visited on December 5, 2023). The Court may take judicial notice of factual information on the ThriveTime Show website, which is listed in the Original Complaint and the First Amended Complaint. *See New Mexico ex rel.*

For reasons already discussed, the Court finds that certain financial records are relevant to Plaintiff's defamation claim, particularly the "actual malice" element of that claim. Therefore, the Court overrules the relevance objection.

The Court also overrules MYLE's objection that the request seeks confidential information and violates non-parties' rights. "Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on federal question or diversity of citizenship," the latter being the basis for the Court's jurisdiction over this case.[4] *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 554 (D. Colo. 2009). "[F]ederal courts recognize a qualified evidentiary privilege for . . . confidential commercial information." *Id.* (citing *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 356 (1979)). Thus, confidential commercial information "is not provided automatic protection against disclosure, but the courts are directed to weigh the claim of privacy against the need for disclosure." *Id.*

In *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 158 (Colo. 2008), which concerned a discovery dispute between two private parties regarding the plaintiff's tax returns, the Colorado Supreme Court affirmed the applicability of a test articulated in *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005) to discovery disputes between two private parties over confidential information. The *Alcon* test requires consideration of: (1) the requesting party's "compelling need" for the information; (2) whether a "least intrusive alternative" exists; and (3) the requested information's relevance. *Stone*, 185 P.3d at 159.

---

*Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1257-58 (D.N.M. 2020) (taking judicial notice of information contained on websites referenced in a complaint); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (taking judicial notice of historical retirement fund earnings information on the defendant's website).

[4] *See First Amend. Compl.*, ¶ 13 (asserting basis for diversity jurisdiction).

"If a court determines that a compelling need for the" information exists, the court should focus on the specific information that the party requesting discovery is actually seeking, and limit the permitted discovery to the necessary materials[.]" *Id*.

Here, as already discussed, Defendants' financial information is relevant to Plaintiff's defamation claim, and Plaintiff has a compelling need for this information to marshal evidence to support the "actual malice" element of the defamation claim. Though this is circumstantial evidence, Plaintiff is unlikely to prove "awareness of falsehood from the mouth of [Defendants]." *Gilmore*, 2021 WL 68684, at *5 (quoting *Herbert*, 441 U.S. at 170). Further, as discussed below, the Court will narrow the scope of the request to focus on the information that is truly relevant, *i.e.*, Defendants' profit motives for publishing statements that specifically concern Plaintiff.

Finally, to the extent Defendant MYLE objects on grounds that the request violates non-parties' rights, the Court interprets that objection as a reference to the rights of the Tour, which has since been added as a party in the First Amended Complaint. Therefore, this objection is overruled as moot.

The Court also rejects MYLE's argument that the request is temporally overbroad. Plaintiff alleges that "Clark and [MYLE] began publishing and subscribing to Oltmann's bizarre and implausible claims in a podcast interview conducted with Oltmann on December 22, 2020, which Defendants published with the title, "Exposing the Treasonous Eric Coomer the ANTIFA Member and the Director of Strategy and Security at DOMINION Voting Systems." *First Amend. Compl.* [#104] at ¶ 3. Plaintiff also alleges that, "[i]n early 2021, ThriveTime and/or Reopen America LLC dba ReAwaken America Tour also founded the ReAwaken America Tour (the Tour)[.]" *Id*. at ¶ 41. Further, according to the

"ThriveTime Show" website, the ReAwaken America Tour continues to travel the country, with a December 15-16, 2023 stop in Tulare, California. *See* https://www.thrivetimeshow.com/reawaken-america-tour/ (last visited on December 5, 2023). With this information in mind, Plaintiff's request for financial records "between January 1, 2021 and the present" is not temporally overbroad.

The Court, however, agrees that the request is topically overbroad and, therefore, disproportionate to the needs of the case. As Defendants note, the two-day events generate revenue from multiple speakers—not just Oltmann—and, presumably, not all the speakers disseminate false election fraud theories about and verbally attack Plaintiff. Additionally, Plaintiff's defamation claim rests on Defendants' publication, distribution, and dissemination of false election fraud theories about and attacks on Plaintiff;[5] publication of "multiple interviews spreading falsehoods about Dr. Coomer" and promotion of "those falsehoods across multiple social media platforms." *See First Amend. Compl.* [#104] at ¶ 7. Therefore, the Court agrees that financial records and revenue information unrelated to the false election fraud theories about and attacks on Plaintiff are irrelevant. *See*, *e.g.*, *Gilmore*, 2021 WL 68684, at **7-8 (distinguishing between the irrelevance of defendants' general profit motive to publish stories related to controversial positions and the relevance of defendants' profit motive to publish stories about the plaintiff because "such evidence is relevant to, even if not sufficient to prove, actual malice").

Accordingly, Defendant MYLE is ordered to produce "all financial records (including, but not limited to, profit and loss statements) between January 1, 2021, and

---

[5] *See First Amend. Compl.* [#104] at ¶ 7 ("Defendants have persisted in promoting, publishing, and profiting off of publishing Oltmann's lies to a national audience," and "Oltmann's appearances onstage are regularly devoted to defaming Dr. Cooper, spreading falsehoods about the 2020 election, and issuing calls for political violence.").

the present demonstrating, describing, or discussing Tour revenues generated for [MYLE], to the extent those revenues are attributable to falsehoods about and attacks on Plaintiff, *including but not limited to*: Oltmann's appearances, statements, speeches, interviews, other communications, theories, or his likeness, and Defendants' repurposing thereof; or any other person's or entity's appearances, statements, speeches, interviews, other communications, or merchandise concerning Plaintiff or his role at Dominion Voting Systems. Defendant MYLE is **ordered to produce these documents by January 15, 2024**.

### 2.   Plaintiff's Subpoena *Duces Tecum* to Nonparty Vanessa Clark

On July 10, 2023, Plaintiff issued a subpoena *duces tecum* to nonparty Vanessa Clark. According to the First Amended Complaint, Ms. Clark is MYLE's registered agent. *See First Amend. Compl.* [#104] at ¶ 10 ("[MYLE] may be served with process through its registered agent, Vanessa Clark[.]"). In the discovery dispute chart that the parties submitted to the Court in advance of the discovery hearing, Plaintiff represents that Ms. Clark "is a corporate officer of [D]efendant Make Your Life Epic, LLC dba Thrivetime Show, and has been identified by Defendants as the individual responsible for managing the company's finances."

The subpoena included 20 document demands, including demands for tax returns and other financial information. Ms. Clark seeks to partially quash the subpoena in connection with eight of those document demands.

The Court addresses each demand in turn below.

### a.    Request for Production No. 7

Document Request Number 7 seeks:

> All documents or communications authored, sent, or received by You relating to the Tour's finances, including, but not limited to, any business plans, profit and loss statements, bank statements, general ledger reports, detailed journal reports, or monthly balance sheets, including any native backup files.

The subpoena defines "You" in conjunction with "Clark" and "your" to mean "Clayton Thomas Clark, as well as any and all current or former agents, servants, employees, attorneys, affiliates, or representatives acting for or on its behalf." Also, "Tour" or "the Tour" means "the ReAwaken America Tour, also known as Clay Clark's Health & Freedom Conference." Additionally, the subpoena temporally limits the requests from "November 1, 2020, to the present."

In response, Ms. Clark asserted a myriad of objections: overbroad and burdensome; irrelevant; the Request should be directed to a corporate representative; the Request seeks confidential information and violates the rights of non-parties; and the Request seeks trade secrets and proprietary information.

For the reasons discussed in connection with Plaintiff's Request for Production Number 4 to Defendant MYLE, the Court agrees that this Request for "[a]ll documents or communications . . . relating to the Tour's finances" is overly broad and seeks information not reasonably targeted at discovery into Defendants' profit motives for publishing statements that specifically concern Plaintiff. Therefore, the Court narrows the Request to: "All documents or communications authored, sent, or received by You relating to the Tour's finances stemming from or related to falsehoods about and attacks on Plaintiff, *including but not limited to*: Oltmann's appearances, statements, speeches, interviews, or

other communications, and Defendants' repurposing thereof; or any other person's or entity's appearances, statements, speeches, interviews, other communications, or merchandise concerning Plaintiff or his role at Dominion Voting Systems.

Also, for the reasons discussed in connection with Plaintiff's Request for Production Number 4, the Court overrules Ms. Clark's objection that the Request seeks confidential, proprietary, trade secret information and violates rights of non-parties. Regarding the former, the information is relevant, and Plaintiff has a compelling need for it. Regarding the latter, to the extent that concerns the Tour, a recently named Defendant, that objection is moot. To the extent the objection concerns Ms. Clark as a nonparty, that objection is overruled; the Request seeks information from her in her former or current capacity as an actor or agent on the Tour's behalf.

As for Ms. Clark's objection that the Request should be directed to a corporate representative, the Court finds that Plaintiff has properly issued this subpoena to Ms. Clark, in her capacity as a "current or former agent[ ], servant[ ], employee[ ], . . . or representative[ ] acting for on [the Tour's] behalf," for documents in her possession, custody, or control. Federal Rule of Civil Procedure 45(a) specifically permits a party to seek documents from a nonparty that are in that nonparty's "possession, custody, or control[.]" Ms. Clark cites to no authority to support her objection that the Request "should be directed to a corporate representative of the Tour." The Request concerns documents and communications that *Ms. Clark* authored, sent, or received. Such documents are undoubtedly within Ms. Clark's possession, custody, or control. Therefore, Ms. Clark is **ordered to respond to Request for Production Number 7 by January 15, 2024.**

### b.      Request for Production No. 8

Document Request Number 8 seeks:

> All Tour tax returns between January 1, 2021 and the present, including, but not limited to, all state sales tax returns, all federal income tax returns, and any supporting schedules.

In response, Ms. Clark asserted a myriad of objections: overly broad and unduly burdensome; irrelevant; disproportionate to the needs of the case; the Request should be directed to a corporate representative; and the Request seeks confidential information and violates the rights of non-parties. In the parties' discovery dispute chart, Plaintiff contends that the information "is reasonably defined and limited in scope" and the evidence "is relevant to Defendants' financial motivation in defaming [Plaintiff.]"

A "strong policy in favor of protecting the confidentiality of tax returns" exists. *Alcon*, 113 P.3d 735, 743 (Colo. 2005). "[T]he party seeking release of a tax return bears the burden of showing a 'compelling need' for the return[;] [a]bsent a compelling need, a subpoena for a tax return should be quashed." *Id*. at 743. "[B]ecause of their confidential nature, tax returns may not be ordered disclosed unless a court finds that they are relevant to the subject of the action and that there is a compelling need for information contained in the returns because the information sought is not otherwise readily obtainable." *Stone v. State Farm Auto. Ins. Co.*, 185 P.3d 150, 159 (Colo. 2008).

In *Alcon*, the Colorado Supreme Court considered "whether a plaintiff who has claimed a loss of earnings as damages in a personal injury lawsuit is required to disclose his or her tax returns." 113 P.3d at 736. Ultimately, the Court held that, because the defendant "has access to the information needed to defend against [the plaintiff's] claim for future loss of earnings through her W-2 forms, he cannot make the adequate

showing" of a compelling need for the plaintiff's tax returns from the past ten years. *Id*. at 737. Much like the *Alcon* defendant, the Court finds that Plaintiff does not need a "complete picture" of the Tour's income as contained in its tax returns. Any revenue information Ms. Clark produces in response to the subpoena *duces tecum*, pursuant to this Order, is sufficient. Therefore, Plaintiff does not have a compelling need for the tax return information. *See Stone*, 185 P.3d at 160-61 (finding lower court's order requiring disclosure of tax returns overbroad and noting that court's failure to consider alternative sources of information).   Accordingly, the Court **denies Plaintiff's oral Motion to Compel** and **grants Ms. Clark's oral Motion to Quash the subpoena** with respect to Request for Production Number 8.

### c.   Request for Production No. 9

Document Request Number 9 seeks:

> All personal tax returns between January 1, 2021 and the present, including, but not limited to, all state sales tax returns, all federal income tax returns, and any supporting schedules.

In response, Ms. Clark asserted a myriad of objections: overly broad and unduly burdensome; irrelevant; disproportionate to the needs of the case; the Request should be directed to a corporate representative; and the Request seeks confidential information and violates the rights of non-parties. In the parties' discovery dispute chart, Plaintiff contends that the "[t]he Clarks' personal tax returns are evidence that is relevant to Defendants' financial motivation in defaming [Plaintiff], which is a factor relevant to the Court's analysis of actual malice."

For the reasons discussed with respect to Request for Production 8, the Court finds that Plaintiff has failed to demonstrate a compelling need for Ms. Clark's personal

tax returns. Thus, the strong policy in favor of protecting tax returns' confidentiality trumps. To the extent that Plaintiff seeks discovery on the revenue Defendant Clark personally generated from or related to falsehoods about and attacks on Plaintiff, Plaintiff may tender a more tailored request to him. To the extent that Plaintiff seeks discovery on the revenue nonparty Ms. Clark personally generated from or related to falsehoods about and attacks on Plaintiff, Plaintiff will need to demonstrate a compelling need. Accordingly, the Court **denies Plaintiff's oral Motion to Compel** and **grants Ms. Clark's oral Motion to Quash the subpoena** with respect to Request for Production Number 9.

### d.    Request for Production No. 10

Request for Production No. 10 seeks:

All communications with any and all bookkeepers or accountants hired by the Tour between January 1, 2021 and the present.

In response, Ms. Clark again asserts the previously raised objections. In the parties' discovery dispute chart, Plaintiff contends that "Defendants' communications with the Tour's bookkeepers and accountants is evidence that is relevant to Defendants' financial motivation in defaming [Plaintiff]."

For the reasons already discussed, Plaintiff fails to make an adequate showing of a compelling need for the requested information. To the extent Plaintiff seeks to acquire a complete picture of the Tour's income, that is unnecessary. *See Alcon*, 113 P.3d at 737. Any revenue information Ms. Clark produces in response to the subpoena *duces tecum*, pursuant to this Order, is sufficient.

### e.      Request for Production No. 11

Request for Production No. 11 seeks:

All documents or communications authored, sent, or received by You relating to the Tour's ticket sales between January 1, 2021 and the present, including, but not limited to, documents reflecting the number of tickets sold and the price of tickets sold.

In response, Ms. Clark again asserts the previously raised objections, but responded by stating that she "does not have any documents or communications reflecting the number of tickets sold or the price of each ticket sold." In the parties' discovery dispute chart, Plaintiff contends that, "[r]ecords related to the Tour's ticket sales is evidence that it is relevant to Defendants' financial motivation in defaming [Plaintiff.]"

For reasons already discussed in connection with Request for Production No. 7 to Ms. Clark and Plaintiff's Request for Production Number 4 to Defendant MYLE, Plaintiff's request for discovery relating to the Tour's ticket sales is not reasonably targeted at discovery into Defendants' profit motives for publishing statements that specifically concern Plaintiff. Therefore, the Court narrows the Request to seek "[a]ll documents or communications authored, sent, or received by You relating to the actual or potential impact any Tour speaker's falsehoods about or attacks on Plaintiff have or have had on the Tour's ticket sales between January 1, 2021, and the present[.]"

Additionally, the Court rejects Ms. Clark's objection that the Request should be directed to a corporate representative because the Court finds that Plaintiff has properly issued this subpoena to Ms. Clark, in her capacity as a "current or former agent[ ], servant[ ], employee[ ], . . . or representative[ ] acting for on [the Tour's] behalf[.]" Accordingly, the Court **grants Plaintiff's oral Motion to Compel** and **orders Ms. Clark to supplement**

her response to Request for Production Number 11, as modified by this order, by January 15, 2024.

### f.      Request for Production Nos. 12, 14

Request for Production No. 12 seeks:

All payroll records for all employees or independent contractors for the Tour between January 1, 2021[,] and the present, including records of any and all employee compensation paid in cash.

Request for Production No. 14 seeks:

All tour vendor invoices from January 1, 2021, until the present, including invoices for inventory that the Tour purchased with cash.

In response, Ms. Clark again asserts the previously raised objections. In the parties' discovery dispute chart, Plaintiff contends that the requested information is relevant to Defendants' financial motivation.

For the reasons already discussed, Plaintiff fails to make an adequate showing of a compelling need for the requested information. To the extent Plaintiff seeks to acquire a complete picture of the Tour's income, that is unnecessary. *See Alcon*, 113 P.3d at 737. Any revenue information Ms. Clark produces in response to the subpoena *duces tecum*, pursuant to this Order, is sufficient for Plaintiff to prosecute its defamation claim. Accordingly, the Court **denies Plaintiff's oral Motion to Compel** and **grants Ms. Clark's oral Motion to Quash** the subpoena *duces tecum* with respect to Request for Production Numbers 12 and 14.

### g.      Request for Production No. 15

Request for Production No. 15 seeks:

All original daily journals showing Tour cash and credit card receipts, including all cash and credit logs, as well as any and all handwritten totals of daily sales between January 1, 2021, and the present.

In response, Ms. Clark again asserts the previously raised objections. In the parties' discovery dispute chart, Plaintiff contends that the requested information is relevant to Defendants' financial motivation.

For reasons already discussed in connection with Request for Production Nos. 7 and 11 to Ms. Clark and Plaintiff's Request for Production Number 4 to Defendant MYLE, Plaintiff's request for discovery relating to the Tour's sales is not reasonably targeted at discovery into Defendants' profit motives for publishing statements that specifically concern Plaintiff. Therefore, the Court narrows the Request to seek "[a]ll daily journals, cash and credit logs, and other accountings of the Tour's cash and credit card receipts from presentations and merchandise promoting falsehoods about or attacks on Plaintiff, between January 1, 2021, and the present." Accordingly, the Court **grants Plaintiff's oral Motion to Compel** and **orders Ms. Clark to supplement her response to Request for Production Number 15, as modified by this order, by January 15, 2024.**

### IV.     Conclusion

For the foregoing reasons,

IT IS **ORDERED** that **Plaintiff's oral Motion to Compel** Defendant MYLE's response to Request for Production No. 4 is **granted**, and MYLE shall produce documents responsive to the Request—as modified by this Order—**by January 15, 2024**.

IT IS FURTHER **ORDERED** that **Plaintiff's oral Motion to Compel nonparty Vanessa Clark's responses to subpoena *duces tecum* Request for Production Nos. 7, 11, and 15** is **granted**, and Ms. Clark shall produce documents responsive to those Requests—as modified by this Order—**by January 15, 2024**. The remainder of Plaintiff's oral Motion to Compel is **denied**.

IT IS FURTHER **ORDERED** that **nonparty Vanessa Clark's oral Motion to Quash** the subpoena *duces tecum* is **granted** with respect to **Request for Production Nos. 8, 9, 10, 12, and 14**. The remainder of Ms. Clark's oral Motion to Quash is **denied**.

Dated: December 7, 2023

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge