**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

**PLAINTIFF'S RESPONSE TO NON-PARTY JOSEPH OLTMANN
OBJECTION TO SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), by and through undersigned counsel, files this response to Non-Party Joseph Oltmann's Objection to Subpoena and Motion for Protective Order, and as states as follows:

**CONFERRAL**

Plaintiff's counsel has conferred with counsel for Joseph Oltmann. During that call, and as discussed below, Plaintiff's counsel agreed that Oltmann did not need to reproduce documents from any prior production, and subsequently sent links to confirm the substance of those productions. Counsel for Oltmann subsequently identified April 2, 2024 as a potential deposition date and stated that "[Oltmann] is working on gathering what relevant documentation he has which was not objectionable."

1

## I.  INTRODUCTION

1. With the exception of Dr. Coomer and Defendants, there is no more relevant witness in this case than Joseph Oltmann (Oltmann). He is the origin of the false claims at issue, and he is referenced 243 times in Plaintiff's Complaint. Oltmann's Motion for Protective Order is the latest iteration of his now yearslong effort to avoid sworn testimony at all costs, for which he has been sanctioned tens of thousands of dollars by both the Denver District Court and the Colorado Court of Appeals.

2. The subpoena issued here[1] seeks testimony and documents that are unique and highly relevant to this case. It pertains to matters not subject to protective order in related proceedings, and specifically seeks documents that Oltmann has never produced. The Motion should be denied and Oltmann should be ordered to produce the documents requested and appear for a deposition.

## BACKGROUND FACTS

3. Oltmann is a named defendant in related proceeding *Coomer v. Donald J. Trump for President, Inc. et al.*, 2020CV34319 (Denver Dist. Ct.). That case was originally filed on December 20, 2020. The Court there denied all Defendants' anti-SLAPP motions to Dismiss on May 13, 2022, and those appeals, including Oltmann's, are still pending before the Colorado Court of Appeals.[2]

4. In that case, the Court allowed only very limited discovery pursuant to Colorado's anti-SLAPP statute, including five requests for production and limited

---

[1] Exhibit 1.

[2] *See Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2022CA843.

2

depositions of three hours each per defendant.[3] Those depositions were expressly limited in scope to the actual malice factors that Dr. Coomer had to overcome in response to the defendants' anti-SLAPP motions to dismiss, as well as questioning relating to any coordination between defendants as relevant to Dr. Coomer's claim for civil conspiracy.[4]

5. The Denver District Court held a hearing on Oltmann's attempted invocation of the Reporter's Privilege, C.R.S. § 13-90-119, on July 7, 2021.[5] The Court determined that Oltmann was "evasive and not credible," and that his story about the supposed "Antifa call" was "probably false."[6] Oltmann was ordered to disclose the identity of his supposed conduit to this call,[7] as well as the individual who had provided him access to Dr. Coomer's Facebook account.[8]

6. In light of threats of violence, Oltmann was ordered to appear for his deposition in the Denver District Courthouse on August 11, 2021.[9] Oltmann, the founder of the ReOpen Colorado movement in opposition to Covid-19 public health measures,[10] falsely claimed to the court that he could not appear for that deposition because he was

---

[3] Exhibit 2, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Order Regarding Reconsideration of Plaintiff's Motions for Expedited Discovery to Aid in Responding to Defendants' Special Motions to Dismiss (June 8, 2021).

[4] *Id.*, pp. 3-6.

[5] Exhibit 3, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Hearing Transcript (July 7, 2021).

[6] *Id.* at 90:22-91:7.

[7] *Id.* at 92:14-18.

[8] Exhibit 4, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319, Hearing Transcript (Aug. 27, 2021), at 39:21-41:12.

[9] Exhibit 3, at 97:12-20.

[10] *See* Heidi Beedle, *Joe Oltmann's Rise to Power in Colorado*, COLORADO TIMES RECORDER (April 11, 2022), available at https://coloradotimesrecorder.com/2022/04/joe-oltmanns-rise-to-power-in-colorado/44792/ (provided under separate cover on an external jump drive).

3

afraid of contracting Covid-19.[11]  Instead of appearing for his deposition, Oltmann attended "Mike Lindell's Cyber Symposium" in South Dakota, where he was videotaped unmasked onstage while defaming Dr. Coomer at length.[12]

7. When he was eventually deposed, Oltmann refused to disclose the identities of either the conduit to the "Antifa call" or the individual who provided him access to Dr. Coomer's Facebook account.  He was subsequently sanctioned for his failure to appear, and for his refusal to provide court ordered testimony.[13]  The Court eventually ordered Oltmann and his counsel to pay $32,988.64 in sanctions.[14]  When he attempted to appeal those sanctions, the Colorado Court of Appeals sanctioned him again.[15]  In sum, Oltmann has so far paid $53,671.14 in sanctions for his refusals to produce evidence to support his claims about Dr. Coomer.[16]

8. At no point in that proceeding was Oltmann questioned about his relationship with Defendants in this proceeding, his communications with Defendants or anyone acting on their behalf, his appearances on the ReAwaken America Tour, or various other topics relevant here.

---

[11] Exhibit 5, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Defendant Joseph Oltmann's Motion for Relief from the July 7, 2021 Order Requiring Joseph Oltmann to Appear at the Courthouse for his Deposition on August 11, 2021 (Aug. 6, 2021).

[12] *See generally, Coomer v. Michael J. Lindell et. al.*, Case No. 1:22-cv-01129 (D. Colo. 2022), Complaint at ¶¶ 78-86.

[13] Exhibit 6, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Order Regarding Plaintiff's Second Motion for Sanctions Against the Oltmann Defendants Pursuant to C.R.C.P. 37 (Oct. 12, 2021).

[14] Exhibit 7, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Sanctions Order Against Defendant Oltmann and Counsel (Mar. 22, 2022).

[15] Exhibit 8, *Coomer v. Oltmann et. al.*, Case No. 2021CA1481, Order of the Court (Feb. 22, 2022).

[16] Exhibit 7; *see also* Exhibit 9, *Coomer v. Donald J. Trump for President, Inc. et. al.,* Order Regarding Plaintiff's Notice of Submiss of Attorney's Fees and Costs Pursuant to Order of the Court of Appeals (Jan. 9, 2023).

9. On August 29, 2022, Dr. Coomer subpoenaed Oltmann in related proceeding *Coomer v. Lindell, et. al*, Case No. 1:22-cv-01129.[17] Here again, Oltmann made various bad faith efforts to avoid providing testimony, including by falsely claiming he had not received the subpoena when he had, by claiming that his attorney was not his attorney, and by asserting that he had become a resident of Texas.[18] The Court rejected these efforts to escape testimony and compelled Oltmann to sit for a deposition.[19] In light of Dr. Coomer's concerns arising from Oltmann's constant threats of violence, the Court again compelled Oltmann to appear for his deposition in the courthouse.[20]

10. As in *Coomer v. Donald J. Trump for President et. al.*, the subpoena issued in the *Lindell* case focused on the facts relevant to that dispute, namely Oltmann's relationship and communications with defendants Mike Lindell, MyPillow, Inc., and FrankSpeech LLC.[21]

11. On January 29, 2024, Dr. Coomer issued a Subpoena to Testify at a Deposition in a Civil Action and Produce Documents to Non-Party Joseph Oltmann (Oltmann). The subpoena was personally served on Oltmann on February 1, 2024. [Dkt. 111]. The subpoena set the date of time for the deposition of Oltmann as March 6, 2024, beginning at 10:00 am (mdt) at the United States Courthouse located at 901 19th Street, Denver Colorado 80294-3589. Along with the subpoena, Oltmann was served with a duces tecum requesting production of documents.

---

[17] Exhibit 10, *Coomer v. Lindell et. al.*, Plaintiff's Notice of Intent to Take Oral and Video Deposition of Joseph Oltmann (Aug. 29, 2022).

[18] *See generally*, Exhibit 11, *Coomer v. Lindell et. al.*, Joseph Oltmann's Objection to Plaintiff's Motion for Substituted Service on Colorado Counsel (Sep. 26, 2022).

[19] Exhibit 12, *Coomer v. Lindell et. al.*, Minute Order (Level 1 Restricted) (Dec. 13, 2022).

[20] *Id.*, p. 3.

[21] Exhibit 10, pp. 12-13.

5

12. With the potential narrow exception of some categories of documents sought in Request No. 3, every document request pertains to evidence that Dr. Coomer has either never requested from Oltmann, or that Oltmann has never produced despite court orders compelling him to do so.

13. This latest iteration of Oltmann's ceaseless efforts to avoid accountability should again be rejected.

## II.   ARGUMENT

14. Oltmann objects to the subpoena on various grounds. He asserts that the discovery sought would be duplicative of other discovery conducted in other related cases, that the information sought is subject to a protective order in a related proceeding, and that responding to the subpoena presents an undue burden. All of these arguments fail.

### A.   *Prior testimony is not admissible here.*

15. As a preliminary matter, F.R.C.P 32 expressly precludes Dr. Coomer from utilizing Oltmann's prior testimony in other cases against the Defendants here. *See* F.R.C.P. 32(a)(1)(A) ("At a hearing or trial, all or part of a deposition may be used against a party on these conditions . . . the party was present or represented at the deposition or had reasonable notice of it.") Here, Defendants were not present or represented at the prior depositions described in Oltmann's Motion, nor did they have any notice of the depositions. The deposition in the *Coomer v. Donald J. Trump for President, Inc. et al.* case, for example, occurred before this lawsuit was even filed, and the deposition in the *Lindell* case occurred while discovery in this case was stayed pending resolution of Defendants' anti-SLAPP motion to dismiss.

16. Even Federal Rule of Civil Procedure 32(a)(8), which can allow for use of depositions taken in earlier actions, still limits that potential use to actions "involving the

6

same subject matter *between the same parties, or their representatives or successors in interest*." (emphasis added.)  This case does not involve the same parties as those related cases, nor does it involve their representatives or successors in interest.

17. As a result, Oltmann's reliance on his prior testimony in other cases has no bearing on this one.  He is a central witness in *this* case, and his testimony is highly relevant.

### B. *The testimony sought is specific to this case.*

18. The origins of Oltmann's claims about Dr. Coomer and the supposed "Antifa call" are obviously relevant and Dr. Coomer must address those matters in his deposition of Mr. Oltmann.  The details of Oltmann's claims have shifted over time though, and Dr. Coomer's understanding of the bases for Oltmann's claims has similarly evolved since the time when prior depositions were taken.  Oltmann's claims with respect to the specific publications at issue in this dispute also feature unique representations.

19. Contrary to Oltmann's assertions, however, there is a substantial body of subject matter which must also be addressed that is both relevant to this dispute and outside the bounds of that single topic.  For example, similarly relevant are Oltmann's communications with Defendants, his appearances on the ReAwaken America Tour and the circumstances surrounding those appearances, Oltmann's relationship with Defendants, and the extent to which Defendants did or did not make efforts to investigate Oltmann's claims. There can be no argument that Oltmann has ever testified on any of these matters.

20. The distinct focus of this subpoena is further reflected in documents Request Nos. 4-6, all of which focus on communications with Defendants in this proceeding.  There can be no argument that Dr. Coomer sought or received these

7

documents in either the *Coomer v. Donald J. Trump for President, Inc., et al.* case or the *Lindell* case.

### C. *The documents requested have not been previously produced.*

21. During conferral with Oltmann's counsel, Dr. Coomer agreed that documents previously produced by Oltmann would not need to be reproduced in this proceeding.[22] Undersigned counsel provided links to those prior productions and offered to stipulate that "these documents would not need to be reproduced pursuant to the subpoena in the Clark case and will be treated as if they were produced in this matter."[23] The Oltmann Motion notably omits reference to this proposed accommodation. In any case, Dr. Coomer is not demanding that Oltmann produce the same documents again.

22. This accommodation does not negate the request for documents identified in the subpoena, however, because Oltmann has not actually produced those documents in any other proceeding. Oltmann misleadingly states that "production of documents relating to Subpoena Requests Nos. 1, 2, and 3 have already been addressed in the DDC case." Motion, at p. 6. Oltmann goes on to state that "Plaintiff Coomer already has the responsive documents he is requesting through discovery that was afforded him in the DDC case that were determined to exist, were in Joseph Oltmann's possession and not protected by a privilege from production." *Id.* at 7-8.

23. In reality, Oltmann has never even identified the individual(s) described in Request Nos. 1, and 2, much less produced communications with them. He was repeatedly sanctioned for those refusals. Dr. Coomer does not have the documents he is

---

[22] Exhibit 13, Conferral email (Feb. 26, 2024).
[23] *Id.*

8

requesting, the Court in the *Coomer v. Donald J. Trump for President, Inc. et al.* case never made any determinations about what documents existed or were in Oltmann's possession, and the documents requested are not protected by any privilege from production. The only document Oltmann ever produced that falls under the umbrella of Request No. 3 is a four page series of notes he supposedly took during the alleged "Antifa call."[24] As discussed below, however, these notes are distinct from the notes requested by the subpoena. And as discussed above, Dr. Coomer has already offered to stipulate that Oltmann does not need to produce these again.

24. Dr. Coomer has never requested or received documents responsive to Request Nos. 4-6, and the existence of the document(s) in Request No. 7 was never even known to Dr. Coomer until Oltmann was deposed in the *Lindell* case.

### D. *Nothing requested is subject to a protective order.*

25. Oltmann attaches as Exhibit B to his Motion the Amended Omnibus Protective Order Dated October 8, 2021 Entered Pursuant to C.R.C.P. 26(c). Oltmann argues that "if he is forced to be deposed in this case, it creates a problem for Joseph Oltmann if in his deposition he is asked questions that fall under the scope of the Protective Order that has been issued in the DDC case." Motion, p. 4. He goes on to argue that "These requests . . . may fall within the scope of the Protective Order entered by the judge in the DDC case." *Id.*

26. Reference to the actual order readily dispels any potential concerns here. The protective order at issue is extremely narrow, and pertains to only two specific documents which it defines as "Confidential Information." The order limits disclosure of

---
[24] Exhibit 15.

9

those two documents to certain identified individuals, and requires redaction of filings that discuss the Confidential Information. The order expressly holds that:

> If Confidential Information is to be discussed or disclosed during a deposition or court hearing, a party shall have the right to exclude from attendance at the deposition, during the time the Confidential Information is to be discussed, any person not entitled under this Protective Order to receive the Confidential information.[25]

27. Here, the two documents in question are already in Dr. Coomer and Oltmann's possession, as well as in the possession of counsel for Defendants by virtue of their representation of Defendant Eric Metaxas in that proceeding. Undersigned counsel affirms that those two documents are unlikely to have relevance to this proceeding, and does not anticipate any specific questioning on either. In the unlikely event that any questioning on those documents may occur, the parties can simply redact those references in any subsequent public filings that reference the testimony in question. This is an unlikely but easily solvable issue.

### E. *Oltmann must produce his second set of call notes.*

28. Over the years, Oltmann has frequently touted the notes he supposedly took on the alleged "Antifa call" as proof that the call occurred, including in the publications at issue in this dispute. For example, in his December 11, 2021 appearance with the ReAwaken America Tour in Dallas, Texas, Oltmann stated, "But I was on that call with Eric Coomer that day. I wrote down copious notes how Trump's not going to win, I'll make sure of it. Don't worry about it."[26] As some of the only "evidence" that Oltmann has to support his claim that the "Antifa call" ever even happened, and especially considering

---

[25] Exhibit 14, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Amended Omnibus Protective Order Dated October 8, 2021 (Oct. 8, 2021), p. 3.
[26] *See* Plaintiff's Complaint [Dkt. 1], ¶ 71.

their likely availability to the Defendants at the time of the publications at issue here, these notes are undeniably relevant to this dispute.

29. Request No. 7 pertains to a second set of notes that Oltmann supposedly compiled relating to the alleged "Antifa call." That Oltmann had in fact assembled two sets of notes was unknown to Dr. Coomer until Oltmann revealed this fact for the first time in his December 16, 2022 deposition in the *Lindell* case.[27] Oltmann confirmed the existence of a second set of notes under oath, and the excerpt from that deposition describing that second set of notes was attached to the subpoena as Exhibit 1.

30. Oltmann claims this second set of notes was compiled for Randy Corporon, RNC Committeeman for the state of Colorado and a talk radio host on 710 KNUS.[28] Oltmann has claimed in correspondence relating to *Coomer v. Donald J. Trump for President, Inc. et al.*, that Corporon was also serving as his legal counsel at the time when this second set of notes would have been assembled.

31. While attorney client privilege may typically attach to this sort of document, it does not here. This is because Oltmann waived any claim to privilege when he read these notes live on air during his November 9, 2020 episode of Conservative Daily, when he first published his false claims about Dr. Coomer. Reference to the video footage from that publication establishes beyond any shadow of a doubt that Oltmann is reading from this second set of notes on air. He explicitly states that he is reading from them.[29] He

---

[27] Exhibit 1, pp. 17-18.

[28] Both Corporon and the parent company for 710 KNUS, Salem Media of Colorado, Inc., are named defendants in related proceeding *Coomer v. Salem Media of Colorado, Inc., et. al.*, Case No. 33632 (Denver Dist. Ct. 2021).

[29] Exhibit 16, excerpt from *Dominion, Big tech, and how they stole it*, CONSERVATIVE DAILY PODCAST (Nov. 9, 2020) at 0:03 (Oltmann: "I'm going to go through some of my notes here, okay?") (video provided under separate cover on an external jump drive).

11

looks down and recites a supposed dialogue in the stilted cadence of someone who is reading from a document. He recites unique and specific quotations that he attributes to Dr. Coomer.[30] Oltmann repeated this specific back and forth of dialogue in his first interview with Clark, suggesting he may have read the second set of notes live on air in the first publication at issue in this dispute as well.[31]

32. The burden of establishing that a particular communication is privileged rests on the party asserting the privilege. *Wesp v. Everson*, 33 P.3d 191, 198 (Colo. 2001) (*citing D.A.S. v. People*, 863 P.2d 291, 294 (Colo. 1993)). A client may impliedly or expressly waive the privilege that attaches to a protected attorney client communication. *Miller v. Dist. Ct.*, 737 P.2d 834, 838 (Colo. 1987). To prove an implied waiver, there must be evidence showing that the privilege holder, "by words or conduct, has impliedly forsaken his claim of confidentiality with respect to the communication in question." *Id.* at 838 (citing *Clark v. Dist. Court,* 668 P.2d 3, 8 (Colo. 1983)). Waiver may occur in a variety of situations, including when a party places in issue a confidential communication going directly to a claim or defense, or when a witness testifies as to the communication without objection by the privilege-holder. *See Lanari,* 827 P.2d at 499-500; *Mountain States Tel. & Tel. Co. v. DiFede,* 780 P.2d 533, 543 (Colo.1989). The burden of establishing such a waiver rests with the party seeking to overcome the privilege. *Miller,* 737 P.2d at 838.

33. Here, Oltmann read the notes on a live broadcast that he himself streamed online. During that publication, Oltmann stated, "I want you guys to understand that

---

[30] *Id.* at 0:16 (Oltmann: "We have prepared for the new future where we put down these fascist f's.")
[31] *See* Plaintiff's Complaint [Dkt. 1], ¶ 50.

what we're about to show you, you have to share," "you're going to want to hit that share button," and "go ahead and share it." He has repeatedly publicly relied on *this second set of notes* as evidence to support his claims, including in this case.[32] They are discoverable, and Oltmann should be compelled to produce them.

### E. The subpoena imposes no undue burden on Oltmann.

34. Oltmann is under a pre-existing obligation to preserve evidence related to his false claims about Dr. Coomer in *Coomer v. Donald J. Trump for President, Inc. et al.*, and the documents requested by the subpoena likely constitute only a very small portion of that evidence. "To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a futile exercise, putative litigants have a duty to preserve documents that may be relevant to future litigation." *Cache La Poudre Feeds v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) ((*citing Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). As such, merely producing that narrow subset should be simple and straightforward.

35. The suggestion that the subpoena constitutes a form of "harassment," or that Oltmann does not have ample time to respond to the subpoena, are similarly untenable. In reality, Oltmann hosts a twice-daily podcast where he opines on various conspiracy theories and persists in defaming Dr. Coomer on an almost literally daily basis. It is not an exaggeration to state that he has defamed Dr. Coomer in hundreds of separate publications over a span of more than three years now. He is frankly obsessed with Dr. Coomer. In addition to his busy podcasting schedule, he mentions Dr. Coomer on social media with great frequency. Oltmann's lies have produced a constant stream of

---

[32] The notes that Oltmann has produced do not include the back and forth dialogue attributing specific statements to Dr. Coomer that Oltmann has published countless times.

actual harassment and threats directed at Dr. Coomer that persist, unabated, to this day.[33] That is actual harassment. In any case, if Oltmann did not want to find himself called as a witness in multiple defamation cases, he should not have dedicated his life to spreading lies on every platform possible for years on end.

### III. CONCLUSION

For all of the reasons stated herein, Eric Coomer, Ph.D. respectfully requests the Court deny Joseph Oltmann's Objection to Subpoena and Motion for Protective Order, and that the Court order:

a. Joseph Oltmann appear at the United States Courthouse located at 901 19th Street, Denver Colorado 80294-3589, no later than April 30, 2024, and provide testimony in this matter;

b. Joseph Oltmann to produce all documents responsive to the subpoena issued to him by Eric Coomer, Ph.D.; and

c. For such other and further relief to which Eric Coomer, Ph.D. may be justly entitled to receive.

---

[33] *See, e.g.*, @notstoya, X, (Feb. 29, 2024) https://x.com/notstoya/status/1763332601467772932?s=20 . ("Been wondering about Eric Coomer lately. Wondering if he figures he's off the hook. That 2020 was so long ago that if anything was going to happen it already would've. I thank about that a lot . . . ." (provided under separate cover on an external jump drive). On any given day, a search of "Eric Coomer" on social media will produce results of various individuals repeating Oltmann's lies about Dr. Coomer and/or implying threats of violence.

14

Respectfully submitted this 5th day of March 2024.

                                      Respectfully submitted,

                                          */s/ Charles J. Cain*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**