IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-3440-WJM-KAS

ERIC COOMER, Ph.D.,
*Plaintiff*

v.

MAKE YOUR LIFE EPIC, LLC, dba THRIVETIME SHOW, REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and CLAYTON THOMAS CLARK, individually,
*Defendants*

---

**JOSEPH OLTMANN'S REPLY TO PLAINTIFF'S RESPONSE TO THE OBJECTION TO SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

---

Nonparty, Joseph Oltmann, through his attorneys, files this reply to Plaintiff's Response to Nonparty Joseph Oltmann's Objection to Subpoena and Motion for Protective Order ["Plaintiff's Response"], as follows:

**I.    Two Prior Depositions of Oltmann are Not Disputed by Plaintiff's Response**

Plaintiffs Response states that Mr. Oltmann is his most relevant witness; but does not deny the fact that his attorneys have now deposed Mr. Oltmann personally on two occasions specifically related to Oltmann's statements about Eric Coomer the Antifa call and Coomer's internet/Facebook public profile.

> Denver District Court, State of Colorado called, *Eric Coomer, Ph.D., v. Donald J. Trump for President, Inc., et al., 2020CV34319* [hereafter "DDC case"). Joseph Ottman is a defendant in the DDC case. **Exhibit C,** Deposition of Oltmann in the DDC case.

> *Coomer v. Michael Lindell, Frankspeech LLC and My Pillow*, U.S. District Court

(Dist. Colo.) 1:22-CV-01129-NYW-SKC [hereafter, "*Lindell* case"]. Joseph Oltmann was a nonparty in the *Lindell* case. **Exhibit D,** Deposition of Oltmann in the *Lindell* case.

## II. Not Disputed Discovery

Plaintiff's Response focuses on characterizing the Subpoena to Testify at a Deposition in a Civil Action and Produce Documents [hereafter, "the Subpoena"][1] as a subpoena for additional deposition testimony and document production as <u>*solely focused on case-specific information*</u> from Mr. Oltmann.

Notably, Mr. Oltmann is not disputing or seeking to quash the subpoena to the extent the deposition questions and the materials sought by plaintiff are solely in reference to the defendants in this case: 1) Make Your Life Epic, LLC, and its Thrivetime Show, 2) Reopen America LLC and its Reawaken America Tour, or 3) Clayton Thomas Clark, individually.[2]

## III. However, clearly the Subpoena at issue is yet another (third) repeat attempt to obtain deposition testimony and/or documents on a broad scope of subjects that are <u>not</u> <u>specific</u> to the present case.

**A.** Statutorily, Coomer's discovery in the Denver District Court Case of *Coomer v. Trump et al.* ["DDC"] case against Mr. Oltmann was technically supposed to be limited discovery as per the Anti-SLAPP statute. However, the court's order of discovery was broad and encompassed the full elements of Plaintiff's need to make a *prima facie* case of defamation against Oltmann, and therefore, was not actually limited. *See* Plaintiff's Response, DDC Order, Exhibit 2, p.4 ("that Plaintiff is requesting

---

[1] Exhibit A to Oltmann's, Objection to Subpoena and Motion for Protective Order by Joseph Oltmann [hereafter, "the Subpoena"]
[2] This is except to the extent that the Subpoena seeks to function as if it is a set of interrogatories with imposition of multiple instructions and definitions to provide written answers to questions.

discovery aimed at establishing Plaintiff's prima facie case").  The DDC acknowledged the scope to be broadly,

> . . . the proposed written discovery and request for depositions [ ] generally aimed at establishing the actions of each Defendant with respect to their knowledge, their investigations, their communications and their states of mind. Further, the Court agrees with Plaintiff's contention that the Defendants are the primary source of information regarding the actions they did take, or did not take, relative to whether they proceeded with actual malice or reckless disregard and whether some or all of the Defendants acted in concert.

Plaintiff Response, Ex. 2, p.4-5.  By way of written discovery in the DDC case, Coomer's Requests for Production of Documents were permitted to request "[a]ll communications" of Oltmann with the multiple defendants and 6 nonparties.  *Id.*, p.6.

The Request for Production of Documents from Coomer requested all "communications" by Mr. Oltmann about Coomer and Dominion voting systems including "[t]he person that assisted you in gaining access to the "Antifa call" and four (4) other non-parties from January 2020 to July 2021.  *See* **Exhibit E,** DDC, Coomer's Request for Production of Documents [hereafter "DDC discovery"].

The DDC discovery also requested "[a]ll documents reflecting any investigation [Oltmann] made regarding allegations about Dr. Coomer." *Id.*  The DDC discovery also requested "all broadcast and publications of Joseph Oltmann, FEC United, and Shuffling Madness Media containing statements regarding Dr. Coomer." *Id.*

The deposition of Oltmann in the DDC case also included questions and testimony about the subject matters referenced by Plaintiff in the documents identified in the Subpoena of this case.  *See* Exhibit C, deposition of Joseph Oltmann, subject to protective order ["DDC deposition"].

3

<u>In deposition in the DDC case</u> Mr. Oltmann was asked specifically about providing the identity of the person that gave him access to the Antifa call. He refused to provide the identify of that person stating: "I made a commitment not to disclose the name of that person" but "[u]nfortunately, that person who is known to [him] is actually in [his] notes." Exhibit C, Oltmann's DDC deposition, page 11, line 13- page 12, line 15. Mr. Oltmann was specific about that his concerned was for the physical safety of this individual and that of his children because of the nature of Antifa. *See Id.,* DDC Deposition, p.21,$\ell\ell$.22-p.23,$\ell$,1. Subsequently when questioned in deposition, Mr. Oltmann identified the initials located in his notes that belonged to the "the individual that gave [him] access to the call." *See* Exhibit C, DDC deposition (subject to protective order) page 22, line 14. Mr. Oltmann further gave testimony about not being able to contact the individual. *Id.* pp.63-35.

In addition, the DDC Deposition of Oltmann covered his testimony about the "notes of the Antifa call" that were taken by Mr. Oltmann and were already produced to Plaintiff Coomer by Mr. Oltmann and about which he was questioned during his deposition. *See id.,* DDC deposition, pages 11 – page 24.

In addition, the DDC deposition of Oltmann covered the discovery sought about how Mr. Oltmann obtained screenshots of Coomer's private Facebook pages. Exhibit C, DDC deposition, pp.84,$\ell$.19 - p.85,$\ell$.22. It is true that Mr. Oltmann refused to provide names of these individuals because he was concerned for their safety in light of Mr. Coomer's lack of control, ill tempered behavior, and desire to hurt those who speak against him; without an agreed attorney's-eyes only stipulation for protection of those to

4

be identified.  *See* DDC Deposition, pp. 86,*l*.5-p.92,*l*.10.  *See also*, DDC Deposition, p.97,l.16 – p.98,l.12.

As a consequence, Plaintiff Coomer's discovery in the DDC case was and is broad and inclusive, already covering some of the very same Requests for Production of Documents included in the Subpoena to Oltman in this case – specifically, paragraphs 1, 2 and 3 of the Subpoena.

**B.**     Contrary to Comer's representation that the *Lindell* subpoena[3] focused only on facts specific to that case, Coomer made requests for similar general subject matter materials in the *Lindell* case as well, with the intent to depose and aske questions about the same subjects.  In other words, not just seeking documents and deposition testimony specific only to the *Lindell* case.

Plaintiff's Response reflects that the *Lindell* subpoena's Requests for Production of Documents reflect the same broad categories of documents sought in the Subpoena at issue in this case.  *See* Plaintiff's Response, Exhibit 10, p.13, *Lindell* subpoena, ¶6 (re: documents of Coomer's manipulation of 2020 election), ¶8 (November 11, 2020 screenshot of Google search results), ¶9 (investigation of Georgia voting machines), ¶10 (notes re: "Antifa call"), ¶12 (all communications re: investigate Coomer), ¶14 (communications re: person for access to Facebook account), ¶15 (communications re: persons for access to identities or Antifa call participants).  These broad requests were not specific to the *Lindell* case and are subjects encompassed by the Subpoena served on Mr. Oltmann in this case.

---

[3] in the U.S. District Court case of *Coomer v. Lindell* ["*Lindell* subpoena"]

**C.** The Subpoena's requests for production of documents in this case include some of the same general categories of requested documents that Coomer requested in the DDC case and in the *Lindell* case (the two cases in which he has already been deposed). Presumably, Coomer's counsel will also be asking the same general categories of deposition questions relevant to the broad request for production of documents.

The Subpoena's request for documents at page 5, Request Nos. 1, 2, 3 and 7 are repetitive requests for production. Specifically, when compared to the above discovery in the DDC case and the *Lindell* case, Coomer's requests are duplicative of the discovery already proffered and completed by Coomer in the DDC case and the *Lindell* case. The Subpoena's duplicative discovery requests are:

> 1. All communications between September 1, 2020 and the present between you and the individual(s) you identified as "RD" who you have claimed provided you access to the alleged "Antifa call" including, but not limited to, all emails, text messages, and voice messages.
>
> 2. All communications between June 1, 2020 and the present between you and the individual(s) who provided you <u>access to Dr. Coomer's private Facebook</u> account.
>
> 3. All contemporaneous <u>evidence you collected at the time of the alleged "Antifa call"</u> including, but not limited to, any audio recording of the call, any video recording of the call, any <u>list of participants</u> on the call, <u>and any notes</u> taken during or immediately after the call.
> ...
> 7. Any notes you created for Randy Corporon providing information on the alleged "Antifa call," as described in your December 16, 2022 sworn testimony in related proceeding *Coomer v. Lindell, et. al.,* (*see* **Exhibit 1,** at 303:19-304:4) including, but not limited to, the notes you read from on CONSERVATIVE DAILY podcast on November 9, 2020.1

**IV.** **Use of prior deposition of a witness pursuant to Rule 32 FRCP.**

Plaintiff's Response fails to make a valid argument based on FRCP 32. The deposition of Oltman, *who is not a party to this litigation*, may be used pursuant to Rule 32, as follows:

> (a) Using Depositions.
> . . .
> (2) *Impeachment and Other Uses.* Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence.
> . . .
> (4) *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> (A) that the witness is dead;
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
> (D) that the party offering the deposition could not procure the witness's attendance by subpoena; **or**
> (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

USCS Fed. Rules Civ. Proc. R. 32 (2024). Contrary to Plaintiff's Response, Rule 32(a)(8) is not strictly construed.

> Significantly, "total identity of parties ... is not required," *id.*, and the "same party" rule has "been construed liberally in light of the twin goals of fairness and efficiency.
> . . .
> Thus, courts interpreting this rule "recognize that the real test should be whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent now has." *Id.* (citing Wright, Miller & Marcus, Federal Practice and Procedure § 2150).

*Runge v. Stanley Fastening Sys., L.P.,* No. 4:09-cv-00130-TWP-WGH, 2011 U.S. Dist.

7

LEXIS 147924, at *7-*8 (S.D. Ind. Dec. 23, 2011).

Plaintiff Coomer's argument is premised upon only the idea of using the prior depositions as primary testimony in this case; as if Mr. Oltmann would not be called to testify if this case goes to trial.  The argument is further disingenuous given that Coomer has no preclusion to the using the two prior Oltmann depositions for not only their *discovery value* on for the issues presently before the court.  Also, there is no preclusion for Coomer to use the two prior depositions for impeachment purposes instead of primary/substantive testimony at trial.  See *Powertrain, Inc. v. Ma*, 640 F. App'x 263, 264 (5th Cir. 2016).  *See also USCS* Fed. Rules Evid. R. 804 and 807; USCS Fed. Rules Evid. R. 613 (evidence of a witness's prior inconsistent statement).  This is assuming Plaintiff or another party would call Mr. Oltmann to testify at a trial in the present action, since Plaintiff Coomer is delineating him as a "central witness in *this* case."

**V.     Plaintiff's Subpoena Goes Beyond Seeking Discovery Specific to This Case**

Notably, Plaintiff's Response beginning on page 7 argues that he wants to ask questions at deposition and seek production "specific" to "this dispute" in this case. Yet, he acknowledges wanting to go into (in order to understand what he does not already understand) the general subject matter of the Antifa call.  Plaintiff's Response does not deny he has already gone into that subject of discovery in the other cases.  This is a tacit admission that he wants to go over the same ground again.  Plaintiff's Response vaguely suggests a justification for the Subpoena is because Oltmann's claims have "evolved."

8

Coomer does not offer any explanation for why he should get yet a third "bite at the apple." Instead, Coomer diverts to talk about "specificity" to the dispute in the present case. As already indicated, Oltmann is not opposing the Subpoena's discovery specific to the dispute involved in the present case against just Reawaken, Make Life Epic and Clayton Clark. But <u>Plaintiff's Response does not agree to restrict the Subpoena's scope to just about discovery related to the defendants in *this* case</u>. Plaintiff's Response does not define its reference (page 7) to a "substantial body of subject matter" which reasonably smacks of zero limitations to the scope of discovery by the Subpoena.

Mr. Oltmann had not questioned Coomer counsel's statement that Oltmann does not need to re-produce documents already produced to Coomer. But what Coomer refers to as an "accommodation" is not the requested definitive limitation on the "scope" of the Subpoena. Since Plaintiff's Response leaves undefined what is meant by a "substantial body of subject matter."

The only documents that Oltmann has not produced pursuant to the previous discovery in the *Lindell case* and the DDC case, would be those documents, if any, and deposition testimony, if any, about matters related to Reawaken, Make Life Epic and Clayton Clark. Those are requests in the Subpoena (discussed in conferral and in the Motion for Protective Order) for which Oltmann is not seeking a protection order.

The statement by Plaintiff's Response that he does not have documents he has requested in past discovery is Coomer ignoring that he has asked in depositions if the documents being sought, exist, and been advise when they do not. *See e.g.,* Exhibit C,

9

DDC deposition, p,28,l.22 – p.29,l.3 (Oltmann stating he does not have access to Signal communications because Signal deletes after 5 minutes).  Coomer has been told the documents do not exist. *Id.* (29, 21).

In fact, paragraph no.7 of the Subpoena's request for "notes" related to communication by Mr. Oltmann with Randy Corporon has already been a topic of deposition testimony, as evident from the Subpoena itself.  The request is for a set of notes which are not the notes taken during the Antifa call (those are already in Plaintiff's possession per the exhibit attached to the Plaintiff's Response).  Nonetheless, the subject has already been a part of deposition testimony in the *Lindell case* and Coomer has been advised (by prior counsel for Oltmann, Ingrid DeFranco) that the notes are privileged. *See* **Exhibit D,** Liddel deposition, p.308, ll.7-25 (affirming that the notes being talked about in ¶7 of the Subpoena are notes Oltmann included with his notes in conversation with his counsel at the time, Randy Corporon, and Oltmann's recollection of the specific phrase being used).  That section of the *Liddell case* deposition was not provided by Plaintiff's Response.

Besides, it is a tenuous argument as to the relevance of Oltmann's program notes when he has testified the phrase -- "We have prepared for the new future where we put down these fascist F's," -- was based on his memory and not on the notes. Regardless, It is undersigned counsel's understanding that Mr. Oltmann has looked for the notes requested by ¶7 of the Subpoena and has not been able to locate them.

**VI.  Conclusion**

Plaintiffs Response to Nonparty Oltmann's Objection to Subpoena and Motion for

10

Protective Order does not justify burdening Mr. Oltmann with additional hours of deposition testimony covering matters already covered.  Coomer has already had numerous litigation opportunities to burden Mr. Oltmann with attendance at depositions and written discovery production requests.

The obvious reason is that Plaintiff's Complaint against these defendants in this lawsuit against Make Your Life Epic, Reopen America LLC and Clayton Thomas Clark contains allegations that reference Mr. Oltmann but are not distinct in any manner from the allegations against Mr. Oltmann in the DDC case or in U.S. District Court case of *Coomer v. Lindell.*

The allegations involving Oltmann in the Plaintiff's Complaint in this case, compared to the Complaints by Plaintiff in these other lawsuits, show that they are not distinctly different – meaning, Plaintiff Coomer's statement that he has "uniquely relevant" reasons to re-depose a non-party to this lawsuit is disingenuous.

Coomer tries to make an argument in this matter out of the fact that Mr. Oltmann was sanctioned in the DDC case.  However, the important reference in the Plaintiffs Response is the acknowledgement that plaintiff has already sought to obtain information about an individual who provided Mr. Oltman access to observe what is called the Antifa call and sought to obtain the name of individuals who provided Mr. Oltmann access to Mr. Coomer's Facebook account.

Significantly, plaintiff is acknowledging the overlap and redundancy of the Subpoena for deposition and requests for production of documents by asking for the very same things.  It appears that the purpose in making this request to the nonparty in

this case is an attempt to have Mr. Oltmann sanctioned again, having nothing to do with any uniqueness specifically relevant to this U.S. District Court lawsuit. Coomer's continued self-serving commentary referring to anything Mr. Oltmann has done or does to protect his legal interests and the rights of himself and others to safety and privacy as "bad faith efforts" reflects the real impetus behind the Subpoena is to attempt to obtain sanctions against Oltmann.

There is little if any relevance in this case to the identification of the person who gave Mr. Oltmann access to the Antifa call. There is little if any relevance to the identification of the person who gave Mr. Oltmann access to the Facebook account. Besides, Coomer has already admitted the veracity of the information obtained in his Facebook account. Clearly, Coomer is seeking this information only in order to retaliate against that person. The same is true for Coomer's wanting to retaliate against the person that gave Oltmann access to the Antifa call[4].

WHEREFORE, Joseph Oltmann respectfully renews his requests that this Court enter an Order of Protection, quashing Plaintiff's subpoena in its entirety, protecting Joseph Oltmann from the need to attend the deposition and ordering that Joseph Oltmann does not have to produce or make arrangements to produce documents requested on February 22, 2024, or the currently scheduled deposition of March 6, 2024, or at any later scheduled date. Mr. Oltmann requests his reasonable fees and

---

[4] The pure mercenary purpose of retaliation is made evident because Coomer's insistence is that the Antifa call never occurred or he was not on the call. Therefore, he has every other means of showing by evidence within his own control that he was not on such a call by producing his phone records, his internet provider/browser listings for the month of September 2020 on his computer, cell phone, tablet etc. or supplying alibi witnesses for the date and time. He is solely wanting to have power and potential of recriminations against the identified persons.

costs associated with this motion, and for such further relief that is deemed just and proper in the circumstance.

Respectfully submitted this this 26th day of March 2024,

        *s/ Mark A. Sares*
        Mark A. Sares, #19070
        HARRIS, KARSTAEDT, JAMISON & POWERS, P.C.
        10333 E. Dry Creek Road, Suite 300
        Englewood, Colorado 80112
        Phone:  720-875-9140
        Fax:     720-875-9141
        msares@hkjp.com
        ATTORNEYS FOR NON-PARTY JOSEPH OLTMAN

CERTIFICATE OF SERVICE

I certify that on this 26th day of March 2024, I electronically served <u>Reply to Plaintiff's Response to Objection to Subpoena and Motion for Protective Order by Joseph Oltmann</u> and sent a copy to the following individuals' email addresses:

| | |
|---|---|
| Brad Kloewer, Esquire<br>Charlie Cain, Esquire<br>Steve Skarnulis, Esquire<br>Zachary H. Bowman, Esquire<br>David E. Jennings, Esquire<br>Cain and Skarnulis, PPLC<br>P.O. Box 1064<br>Salida, Colorado 81201<br>Telephone: (719) 530-3011<br>*Attorneys for Plaintiff* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to:  bkloewer@cstrial.com<br>ccain@cstrial.com<br>skarnulis@cstrial.com<br>zbowman@cstrial.com<br>djennings@cstrial.com |
| Thomas J. Rogers, III, Esquire<br>Mark Grueskin, Esquire<br>RechtKornfeld PC<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>Telephone: (303) 573-1900<br>*Attorneys for Plaintiff* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to:  trey@rklawpc.com<br>mark@rklawpc.com<br>( ) By Facsimile Transmission to _____ |
| Thomas Baker Quinn, Esquire<br>Gordon & Rees LLP<br>555 17th Street, Suite 3400<br>Denver, CO 80202<br>303-534-5160<br>*Attorneys for Defendant Make Your Life Epic, LLC* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to tquinn@gordonrees.com<br>( ) By Facsimile Transmission to 303-534-5161 |
| Melissa Ann Wiese, Esquire<br>Gordon Rees Scully Mansukhani LLP<br>555 17th Street, Suite 3400<br>Denver, CO 80202<br>303-200-6879<br>*Attorneys for Defendant Make Your Life Epic, LLC* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( )  by designated email to:   mwiese@grsm.com; 8<br>( ) By Facsimile Transmission to _____ |
| | *Original signature on file at the offices of*<br>*Harris, Karstaedt, Jamison & Powers, P.C.*<br><br>*s/ Mark A. Sares* |