**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

      Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW and
CLAYTON THOMAS CLARK, individually,

      Defendants

---

**PLAINTIFF'S SUPPLEMENTAL FILING**
**REGARDING JUNE 6, 2024 HEARING**

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

      Plaintiff Eric Coomer, Ph.D., through the undersigned, files this supplement to apprise the Court of published statements made by Joseph Oltmann (Mr. Oltmann) following the contempt hearing. *See* Courtroom Minutes, Dkt. 142.

      1.    Mr. Oltmann appeared on his Conservative Daily podcast at approximately 4:00 p.m. (mdt), June 6, 2024. Prior to the beginning of the livestream, Conservative Daily's splash page promoted the fact that Mr. Oltmann walked out of the courthouse deposition:



2.      When the livestream began, Mr. Oltmann appeared to be broadcasting from his personal residence in Douglas County.  The podcast remains available online as of this filing.[1]

3.      Without limitation, the salient statements by Mr. Oltmann relating to the matter at hand are categorized below.  By providing the Court with this information, Plaintiff is not endorsing the truthfulness, propriety, or accuracy of Mr. Oltmann's statements.

## I.      KNOWLEDGE OF COURT ORDER(S)

4.      Mr. Oltmann repeatedly confirmed his familiarity with orders issued by this Court, including, but not limited to, the following statements:

a.      "So, I got asked to do, I didn't get asked, I got ordered to do another deposition for Clay Clark.  Eric Coomer vs. Clay Clark."[2]

b.      "He says, tell me who the source was for the Facebook posts.  And I just went like this.  And he asked me again.  And I just looked like this.  And he asked me again, and I just looked like this, straight ahead.  And he asked me again and says I'll take it as you're going to violate the order. And he went straight to the order.  'You've been ordered by the judge to give up this information.'  Now he had Coomer walk out of the room, but keep in mind these are the same attorneys who have done as much damage, and have lied through their f-ing teeth at every turn."[3]

---

[1]      https://conservativedaily.com/cd-livestream/6-june-2024-joe-walks-out-of-coomer-dominion-deposition-vs-clay-clark-reports-live

[2] *Id.* at 3:06.

[3] *Id.* at 24:08.

## II.    INTENT TO VIOLATE ORDER(S)

5.    In addition to confirming his knowledge of the Court's orders, Mr. Oltmann also repeatedly described his pre-existing intent to violate those orders.  These statements include, but are not limited to, the following:

a.    "I knew what they were going to do.  They made the deposition location the federal courthouse in Denver in the jury room of the judge that said that I had to divulge this information.   So it's lawfare."[4]

b.    "I knew what they were going to do.  I even told Mark [Sares] before we walked in there.   I was like, listen, I'm not answering these questions.  And if it happens, I'm going to do something.  And I have to be careful what you tell the attorney because you don't want to put them between a rock and a hard spot.  But it was weird because he was like, well, you know, we can just go in front of the judge.  And I was like, that's not how it works, Mark.  That's not how it works. They're going to make that threat, they're going to take the threat, they're going to weaponize the system, they're going to force me to divulge my sources."[5]

c.    "And so I'm going, okay, how do you square this peg?  How do you square it?  What do I do?  I'm sitting there, I'm not going to answer it.  Because if I answer, I'm directly in contempt, and they'll run and get the judge.  So I don't say a word.  And Charles Cain says to the other attorney who was there, he needs to answer.  You need to make him answer.  I didn't say a word.  I didn't say a word.  I said nothing. I just sat there.  And then he says, Charles Cain says, 'Do you want to have a word with your client,' to my attorney, 'before we go get the judge?' And that was the trigger for me.  I was like yep, everything that I said was going to happen is happening and they are literally going to go and come for me."[6]

---

[4] *Id.* at 5:05.

[5] *Id.* at 22:39.

[6] *Id.* at 24:48.

### III.   KNOWLEDGE OF CONSEQUENCES

6.      Mr. Oltmann is also aware of the consequences of violating the Court's orders, as he made clear through the following statements:

    a.    "Had I stayed there, I would have been put in front of the judge.  Well, as soon as you go in front of the judge, because they basically want to weaponize the deposition, you go in front of the judge and then they walk right over in front of the judge and say he's not going to give us the information, judge.  And so the judge goes okay well I'm going to lock you up until you tell me, even though it's a violation of law."[7]

    b.    "And so they went in front of the judge, the magistrate, just as I said they would, right?  And there's something you need to know.  I had to come home and I had to tell my wife that they are weaponizing the court system against me.  And there's a chance that they are going to put me in jail for doing the right thing."[8]

    c.    "You know, I feel like I'm letting people down when I make a decision that I might go to jail.  Like, that might be a consequence.  I want you to know, it'll be worth it."[9]

### IV.   DISPARAGEMENT OF THE COURT AND COUNSEL

7.      Mr. Oltmann also repeatedly referenced his personal contempt for the Court, Hon. Judge Starnella, and Plaintiff's counsel.   Those statements include the following:

    a.    "And frankly, I haven't started talking about the judge in this case, who literally is a radical left DEI [coughs]."[10]

    b.    "You got the attorneys for Coomer which are absolute trash heaps.  I mean Charles Cain is a lying scumbag.  And they don't care."[11]

---

[7] *Id.* at 26:05.

[8] *Id.* at 29:50.

[9] *Id.* at 52:53.

[10] *Id.* at 22:17.

[11] *Id.* at 11:30

c.   "So I told Mark, cuz Cain was at the door saying 'I gotta let the judge know, I gotta let em know, I gotta let em know.'  I mean I'm sitting here talking to my attorney and he's knocking on the door.  'I gotta get the judge in here.  You have five minutes.  You have five minutes.' I'm thinking to myself, F this guy.  Right?  This little midget.  Him and Coomer."[12]

d.   "So they went in front of the judge, the magistrate, the one that decided that laws don't apply anymore and we're going to weaponize this against Joe.  And said ok we're going to give them attorney's fees I guess.  I'm getting basically back information as I can.  And they're going to make me pay for their attorney fees.  I'm thinking to myself, jeez, they get their pound of flesh everywhere they go."[13]

e.   "The weaponization is just an everyday thing.  They just don't care. The judges, these magistrates, they're like, I'm going to get further, I'm going to hang my hat with these radicals.  It's very sad."[14]

## V.   DISCLOSURE AND WAIVER OF ATTORNEY/CLIENT COMMUNICATIONS

8.   Throughout his June 6, 2024 podcast, Mr. Oltmann repeatedly described his oral and written communications with his counsel of record, Mark Sares,[15] including and specifically with respect to his decision to flee the deposition:

a.   "My attorney is up to speed on the fact that he thinks they're going to use lawfare.  We had the conversations about what came next.  I told him, listen to me, I'm not going to put somebody else in danger.  The fact that I lived through this over the last three years, most people can't live through this.  Most people would not be able to withstand what I have withstood for three and a half years."[16]

b.   "And so I get up and I go to talk to Mark [Sares], and I go to the other room.  And Mark, then, we sit and we're talking about this and he's

---

[12] *Id.* at 28:34.

[13] *Id.* at 31:45.

[14] *Id.* at 36:45.

[15] Plaintiff's counsel has requested that Mr. Sares retain all texts and email communications with Mr. Oltmann concerning his deposition.

[16] *Id.* at 9:08.

like, Joe, you have to.  It's protected attorney client privilege.  And I'm thinking to myself, what is happening here?  I'm not going to do it.  I'm not going to divulge.  I'm not going to do what I said I wouldn't do before.  And why would I?  And he's like okay, I understand.  And so we walk back in another room so that I could actually make a few phone calls.  I call another attorney that I have.  Called a couple of attorneys, actually, and got a little more advice.  Told them what my strategy was going to be, and they said there's no doubt.  Here's what every attorney said.  There's no doubt Joe that they weaponized, that they did this because they want to punish you.  There's no doubt that they literally are talking to each other and that they have a concerted effort to go after you so that they can destroy you.  There's no doubt in my mind that is absolutely fact.  But the next things that you do is you have to make the decision.  And I said ok, well, I'm not going to put anybody else in danger."[17]

c.    "And so I grab my bag, put it on my shoulder, walked out, went downstairs, went out of the building, sent a text message to my attorney.  It said, 'If they want to forego those questions I'll come back into the deposition and finish the deposition.  If they want to weaponize it then I'm not coming back.'  Then I sent another text that said 'I'm not putting anyone else in danger.'"[18]

## VI.    THREATS OF VIOLENCE

9.    As he frequently does, Mr. Oltmann expressed his anger with threats of violence against his perceived enemies, including through the following statements:

a.    Oltmann: "The only reason that I'm still here today is because I fought back.  And I told people on this podcast what I tell them."

Podcast co-host Apollo: "Not gonna give him up, not going anywhere."

Oltmann: "And if you come for me, I'm going to put you in a bag."[19]

---

[17] *Id.* at 27:18.

[18] *Id.* at 29:04.

[19] *Id.* at 26:48.

b.  "And so I fought, and they're like ok, this guy is serious.  He is actually serious.  He will hurt someone.  And I will.  You come to my house, I will hurt you."[20]

## VII.  FURTHERANCE OF PROVABLE FALSEHOODS

10.  Throughout the June 6 podcast, Mr. Oltmann persisted in the publication of provable falsehoods.  These included false statements about his own prior depositions, as well as about evidence in this case.  For example, Mr. Oltmann made the following statements:

a.  "After lunch, they started in with the lies.  They brought up Joey Camp.[21] I asked about Joey Camp, and I go, what is this stuff with Joey Camp.  I forget the context behind it.  A lot going on.  But I brought it up and they were like well, Joey Camp texted Eric Coomer and said he had a recording of that antifa call.  And I was like wait, what?  Because wouldn't that be nice?"[22]

b.  "So they said that and they said yeah we talked about it in the last deposition.  You shouldn't be surprised.  I'm thinking to myself, no we didn't.  If you'd have told me, either that or I'm just completely brain dead."[23]

c.  "Now the lawyer for Coomer lied and said that Joey Camp had sent Eric Coomer texts that he had a recording and blah blah blah, a bunch of other stuff.  And according to Joey Camp, that's not true."[24]

11.  In reality, Mr. Camp, who recently pleaded guilty to a criminal charge of "Spreading False News" in Belize in connection with the murder of a member of the

---

[20] *Id.* at 27:10.

[21] Mr. Camp has appeared as a guest on Conservative Daily.

[22] *Id.* at 17:00.

[23] *Id.* at 18:05.

[24] *Id.* at 29:34.

Belizean Coast Guard,[25] did send a text message to Dr. Coomer on February 28, 2022, wherein he threated Dr. Coomer and claimed to have a recording of the "antifa call."[26]

12.    This matter was, in actuality, discussed with Mr. Oltmann during his December 18, 2022 deposition in related proceeding *Coomer v. Lindell et. al*., Case No. 1:22-cv-01129-NYW-SKC.[27]  Mr. Oltmann similarly feigned ignorance to having been already presented with evidence of Mr. Camp taking credit for "discovering" Dr. Coomer *prior to* Mr. Oltmann's claims when he was deposed in related proceeding *Coomer v. Donald J. Trump for President, Inc. et. al.*, Case No. 2020cv34319 (Denver Dist. Ct.).

13.    Plaintiff's counsel was unable to question Mr. Oltmann further concerning this matter and the alleged recording, as well as numerous other topics because of Mr. Oltmann's conduct during the deposition as detailed by Mr. Oltmann *himself* during his podcast.

---

[25] https://caincloud.egnyte.com/dl/vNn0Jes3K2/2024-04-15_Twitter_Joey_Camp_Guilty_Verdict_Belize_.mov

[26] **Exhibit 1**.  Undersigned counsel has corroborated Mr. Camp's use of this telephone number at the time, including with reference to messages sent to multiple third parties from the same number wherein Camp identified himself, attached photos of himself, and provided links to his website.

[27] **Exhibit 2**, *Coomer v. Lindell et. al.*, Case No. 1:22-cv-01129-NYW-SKC, Depo. Tr. Oltmann (Dec. 16, 2022) at 314:4-319:3.  The attached **Exhibit 1** was entered in that deposition as Exhibit 56.  Please also note that Mr. Oltmann denied that Mr. Camp gave him access to Dr. Coomer's Facebook account during this deposition but persists in refusing to disclose who did.

Respectfully submitted this 7th day of June 2024.

Respectfully submitted,

_____/s/ Bradley A. Kloewer_____

Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Steve Skarnulis
skarnulis@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**