IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, doing business as ThriveTime Show,
CLAYTON THOMAS CLARK, individually, and
REOPEN AMERICA LLC, doing business as ReAwaken America Tour,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE FOR A FINDING OF CIVIL CONTEMPT AGAINST THIRD PARTY WITNESS JOSEPH OLTMANN**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court following a Contempt of Court Hearing held before the undersigned on June 6, 2024. *See Courtroom Minutes* [#142]. The hearing was held following the abrupt termination of the deposition of non-party Joseph Oltmann, whom Plaintiff had subpoenaed. The Court had previously ordered that the deposition take place in the undersigned's jury room. *See Minute Order* [#135]. During the hearing, counsel for Plaintiff, Defendants, and Mr. Oltmann made a record regarding the events leading to Mr. Oltmann's abrupt termination of his deposition and Mr. Oltmann's refusal to answer specific questions. *See Courtroom Minutes* [#142] at 1. The following consists of certified facts from the hearing and a recommendation that Mr. Oltmann be ordered to show cause why he should not be held in contempt and be subject to civil sanctions. The undersigned **recommends** that the District Judge impose sanctions in the form of the fees and costs

1

the parties directly incurred as a result of his noncompliance and a fine that shall accrue daily until Mr. Oltmann comes into full compliance.

## I.      INTRODUCTION

The parties are well-versed in the facts of this case. For context and as relevant to this Recommendation and Order, the Court provides a limited overview of the facts, which are drawn from the District Judge's Order Denying Defendants' Special Motion to Dismiss and Defendants' Motion to Strike [#45].

Plaintiff Eric Coomer, Ph.D., is the former Director of Product Strategy and Security at Dominion Voting Systems, Inc. ("Dominion"), an electronic voting systems company. *Order* [#45] at 2. Beginning in November 2020, non-party podcast host Joe Oltmann began accusing Dr. Coomer of fraudulently rigging the election in favor of President Joe Biden and against then-President Donald Trump. *Id*. Oltmann alleged—initially on his podcast and then in other forums—that he had infiltrated an "Antifa" conference call in September 2020, during which a man identified as "Eric . . . the Dominion guy" proclaimed: "Don't worry about the election, Trump is not gonna [sic] win. I made f-ing sure of that. Hahahaha." *Id*. at 2-3. Oltmann said that, after this call, he identified Eric from Dominion as Dr. Coomer and described for his listeners certain Facebook posts Dr. Coomer had made. *Id*. at 3. Dr. Coomer denies he interfered with or even had the power to interfere with the 2020 election and asserts Oltmann's statements were fabricated to align with his preconceived narrative that Trump was the legitimate winner of the election. *Id*. Oltmann's statements about Dr. Coomer were soon amplified by public figures and, eventually, he and other Dominion employees began receiving death threats. *Id*. at 3.

2

These threats forced Dr. Coomer into hiding and caused him to reduce contact with his family. *Id*.

On February 1, 2024, Mr. Oltmann was served with a Subpoena to Testify at a Deposition in a Civil Action and Produce Documents ("the Subpoena"). *See Subpoena* [#114-1] at 2. In pertinent part, the Subpoena requested production of the following documents:

1. All communications between September 1, 2020 and the present between you and the individual(s) you identified as "RD" who you have claimed provided you access to the alleged "Antifa call" including, but not limited to, all emails, text messages, and voice messages.

2. All communications between June 1, 2020 and the present between you and the individual(s) who provided you access to Dr. Coomer's private Facebook account.

3. All contemporaneous evidence you collected at the time of the alleged "Antifa call" including, but not limited to, any audio recording of the call, any video recording of the call, any list of participants on the call, and any notes taken during or immediately after the call.

7. Any notes you created for Randy Corporon providing information on the alleged "Antifa call," as described in your December 16, 2022 sworn testimony in related proceeding *Coomer v. Lindell, et al.*, . . . including, but not limited to, the notes you read on CONSERVATIVE DAILY podcast on November 9, 2020.

*Id*. at 8.

A few weeks later, Mr. Oltmann filed an Objection to Subpoena and Motion for Protective Order [#114] ("Objection and Protective Order Motion") in which he sought to quash the subpoena in its entirety. *Objection and Protective Order Motion* [#114] at 9. On April 8, 2024, after the Objection and Protective Order Motion was fully briefed, the Court held a hearing. *Courtroom Minutes* [#127]. During the hearing, Mr. Oltmann, through his counsel, clarified that his objections concern Request for Production ("RFP") Nos. 1-3 and

7. *See id*. at 1-2. The Court denied the Objection and ordered Mr. Oltmann to produce documents.

Additionally, the Court ordered Mr. Oltmann's deposition to occur and that it be conducted in the undersigned's jury room on June 6, 2024, at 9:00 a.m. *Id*. at 2; *see also Minute Order* [#135] at 1; *Transcript of April 8, 2024 Hearing* [#130] ("Transcript") at 6:12-17; 12:11-18; 14:2-16; 16:23-17:2; 28:19-20; 51:10-13; 54:4-7; 62:25-63:19. As set forth in the Court's Certified Facts, Mr. Oltmann appeared for his deposition on June 6, 2024. However, within a couple of hours following the deposition's commencement, Mr. Oltmann departed the courthouse without being released from the subpoena or court authorization.

Where an "act constitutes a civil contempt," 28 U.S.C. § 636(e)(6)(B)(iii) directs the magistrate judge to "forthwith certify facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under [§ 636(e)(6)], an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." "A certification of facts 'serve[s] the function of a . . . pleading for trial to be held before the district judge.'" *Daniel & Max LLC v. B&B Holding Co., LLC*, No. 19-173, 2022 WL 19191, at *2 (D.N.M. Jan. 3, 2022) (quoting *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 903 (3d Cir. 1992)). The certification is "a showing that, after investigation, sufficient evidence exists to establish a prima facie case of contempt." *Id*.

Based on the Certified Facts listed below, the Court **recommends** that the District Judge issue an order requiring Joseph Oltmann to appear and show cause why he should not be found in contempt of court for violating the Court's April 8, 2024 ruling that he testify

under oath pursuant to the subpoena and that he submit to a deposition in the undersigned's jury room. *See Courtroom Minutes* [#127]; *Minute* Order [#135]; *Transcript* [#130] at 6:12-17; 12:11-18; 14:2-16; 16:23-17:2; 28:19-20; 51:10-13; 54:4-7; 62:25-63:19. The Court **recommends** that Mr. Oltmann be sanctioned in an amount of the fees the parties directly incurred because of Mr. Oltmann's noncompliance. The Court **further recommends** that a monetary sanction in the amount of $300 per day be imposed until Mr. Oltmann complies with the subpoena and the Court's April 8, 2024 rulings.

## II. CERTIFIED FACTS[1]

1. On February 1, 2024, non-party Joseph Oltmann was served a Subpoena to Testify at a Deposition in a Civil Action and Produce Documents, which included seven requests for production. *Subpoena* [#114-1] at 2, 8.

2. On February 26, 2024, Mr. Oltmann filed an Objection to Subpoena and Motion for Protective Order [#114] in which he sought to quash the Subpoena in its entirety.

3. On April 8, 2024, the Court held a hearing on Mr. Oltmann's Objection and Protective Order Motion, denied the Motion, and ordered Mr. Oltmann to provide the following documents:

- "Communications between [Mr. Oltmann] and the individual identified as "RD" from December 1, 2022, to the present. These communications include but are not limited to all emails, text messages and voice messages." (RFP No. 1).

- "[A]ll communications between June 1, 2020, to the present between himself and the individual(s) who provided him with access to Dr. Coomer's private Facebook account. The identities shall be designated as highly confidential, attorneys' eyes only." (RFP No. 2).

---

[1] These certified facts are derived from the court docket and *undisputed* facts all counsel placed on the record during the Contempt Hearing. *June 6, 2024, Audio Recording*, 2:41:42 - 2:54:40 p.m.

- "[A]ll contemporaneous evidence he collected at the time of the alleged 'Antifa call' including, but not limited to, any audio recording of the call, any video recording of the call, any list of participants on the call, and any notes taken during or immediately after the call." (RFP No. 3).

- "[T]he 'Antifa call notes' which Mr. Oltmann prepared and from which he read on the November 9, 2020 *Conservative Daily* podcast, and which he sent to attorney Randy Corporon." (RFP No. 7).

*Courtroom Minutes* [#127]; *Transcript* [#130].

4. On May 7, 2024, the Court ordered Mr. Oltmann "to appear for his deposition at 9:00 a.m. on June 6, 2024, at the Byron G. Rogers United States Courthouse." *Minute Order* [#135] at 1.

5. On June 6, 2024, Mr. Oltmann appeared with his counsel for his deposition at the Byron G. Rogers United States Courthouse at 9:10 a.m.; however, Mr. Oltmann did not bring with him the following documents, as required by the Subpoena and by the Court's April 8, 2024 ruling, *Courtroom Minutes* [#127]:

    a. Any documents regarding "RD" (Request for Production No. 1).

    b. Any documents concerning communications between June 1, 2020, and the present between Mr. Oltmann and the person(s) who provided him with access to Dr. Coomer's private Facebook account. (Request for Production No. 2).

6

   c. Any documents contemporaneous to the alleged "Antifa call," including any audio or video recording of the call (Request for Production No. 3).[2,3]

6. Mr. Oltmann's deposition commenced at 9:26 a.m. and proceeded until 12:03 p.m., when a recess was taken (the "Morning Session").

7. During the Morning Session, Mr. Oltmann refused to answer questions about the source or conduit who enabled him to attend the "Antifa call" that Dr. Coomer allegedly attended, and to which Mr. Oltmann had not received an invitation to join.

8. Mr. Oltmann's deposition resumed on the record at 12:40 p.m.

9. At about 12:45 p.m., Plaintiff's counsel excused Plaintiff Dr. Coomer, Defendant Vanessa Clark, and Defendant Clark's personal counsel, to facilitate questioning about who provided Mr. Oltmann access to Dr. Coomer's private Facebook account, a topic designated as "highly confidential, attorneys' eyes only," per the Court's April 8, 2024 bench ruling, *Courtroom Minutes* [#127] at 2.

---

[2] During his June 6, 2024 deposition, Mr. Oltmann testified that he does not possess any audio or video recordings of the "Antifa call." As for RFP No. 3's request for "any notes taken during or immediately after the call," Plaintiff's counsel represented that Mr. Oltmann previously produced hand-written notes in connection with other litigation, namely, *Eric Coomer, Ph.D. v. Donald J. Trump for President, Inc., et al.,* 2020cv34319 (Denver District Court), but Mr. Oltmann did not produce those hand-written notes on June 6, 2024 in response to the subpoena.

[3] During the Contempt Hearing, Attorney Mark Sares, Mr. Oltmann's counsel, asserted that "there is no non-production of documents in this case" and that "the previous notes of the time, the contemporaneous notes from the call, the Antifa call, they've had those for a long time." *June 6, 2024 Audio Recording*, at 2:57:45-2:58:13; *see also id*. at 3:11:07-3:11:35. Additionally, Mr. Sares represented that Mr. Oltmann no longer possesses the notes Mr. Oltmann was reading from when he appeared on the CONSERVATIVE DAILY to discuss the alleged "Antifa call." *Id*. at 2:58:35-2:59:38. Counsel for Defendants acknowledged that Mr. Oltmann has produced "a couple pages" of notes; however, a question remains as to whether Mr. Oltmann produced all his notes, which he previously characterized as "copious." *June 6, 2024 Audio Recording*, at 3:00:16-3:01:01. Hence, a dispute remains as to whether Mr. Oltmann has produced all responsive documents in his custody or control. *See id*. at 3:01:01-3:01:11. Resumption of Mr. Oltmann's deposition will likely facilitate resolution of that dispute. *See id*. at 3:00:16-3:01:01.

10. Plaintiff's counsel asked Mr. Oltmann multiple times how he obtained access to Dr. Coomer's private Facebook account, but Mr. Oltmann refused to answer those questions.

11. Plaintiff's counsel then apprised Mr. Oltmann of the Court's April 8, 2024 Order requiring him to identify the individual(s) who provided him with access to Dr. Coomer's private Facebook account; however, Mr. Oltmann remained non-responsive to further questioning on the topic.

12. Plaintiff's counsel then requested a break to allow Mr. Oltmann's attorney, Mark A. Sares, to counsel Mr. Oltmann and a break was taken at around 12:53 p.m.

13. During the break, Mr. Sares was in another Magistrate Judge's jury room with Mr. Oltmann for about 35 minutes, during which time Plaintiff's counsel perceived the two of them to be on a phone call with someone.

14. After about 35 minutes, Plaintiff's counsel interrupted Messrs. Sares and Oltmann to advise them that, due to the passage of time, the Court's intervention was necessary, and Plaintiff's counsel wished to have all counsel meet with the undersigned in her chambers.

15. All counsel met with the undersigned in her chambers, at which time the undersigned directed Mr. Sares to confer with Mr. Oltmann for 20 minutes to cajole his compliance with the Court's April 8, 2024 Order.

16. After the meeting in the undersigned's chambers, Plaintiff's counsel returned to the jury room where Mr. Oltmann's deposition was being conducted. While waiting for Messrs. Sares and Oltmann's twenty-minute conferral period to conclude, Plaintiff's counsel learned that Mr. Oltmann left the courthouse.

17. When Mr. Oltmann left the courthouse, Plaintiff's counsel had not authorized Mr. Oltmann to leave, he was not otherwise released from the subpoena, and the deposition had not been completed.

### III. PLAINTIFF'S SUPPLEMENTAL FILING REGARDING MR. OLTMANN'S CONTINUED CONTUMACY

On June 7, 2024, the day after the contempt hearing, the Court received Plaintiff's Supplemental Filing Regarding June 6, 2024 Hearing [#143] ("Plaintiff's Supplement"). This filing describes conduct Mr. Oltmann allegedly engaged in soon after he departed the courthouse without authorization. At 4 p.m., within three hours of Mr. Oltmann's abrupt, unauthorized departure, Mr. Oltmann allegedly appeared on the CONSERVATIVE DAILY podcast from his home to boast about his actions. *Plaintiff's Supplement* [#143] at 1-2 (depicting CONSERVATIVE DAILY's splash page, which states, "WATCH NOW: Joe WALKS OUT of Coomer Dominion Deposition Vs. Clay Clark, Reports Live"). During Mr. Oltmann's podcast appearance, he acknowledged existence of the Court's Order concerning his deposition, described his refusal to comply with the Order and his preexisting intent not to comply, referred to the court proceedings as "lawfare" and "weapon[ized]," acknowledged that he might be jailed for his noncompliance, disparaged the undersigned and Plaintiff's counsel, articulated purported falsehoods, and suggested violence against anyone who forces him to divulge who provided him with access to Dr. Coomer's private Facebook account.[4] *See id.* at 3-8 (citing CONSERVATIVE DAILY podcast

---

[4] The specific exchange was as follows:
    Oltmann: "The only reason that I'm still here today is because I fought back. And I told people on this podcast what I tell them."
    Podcast co-host Apollo: "Not gonna give him up, not going anywhere."
    Oltmann: "And if you come for me, I'm going to put you in a bag."
CONSERVATIVE DAILY podcast (dated June 6, 2024), at 26:48.

(dated June 6, 2024), https://conservativedaily.com/cd-livestream/6-june-2024-joe-walks-out-of-coomer-dominion-deposition-vs-clay-clark-reports-live, (last visited June 14, 2024)).

### IV.   MR. OLTMANN'S NONCOMPLIANCE IS NOT ISOLATED

The Court declines to view Mr. Oltmann's noncompliance in a vacuum; rather, the Court takes judicial notice of proceedings in *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, No. 2020cv034319 (Denver Dist. Ct.) and *Eric Coomer v. Joseph Oltmann, et al.*, No. 2021CA1481 (Colo. App.).[5] *See Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1119 (D. Kan. 2018) (noting that a federal court may take judicial notice of state court documents) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008)). As of March 5, 2024, Mr. Oltmann has purportedly paid—or been ordered to pay—$53,671.14 in sanctions because of his refusal to adhere to the rule of law and to comply with court orders requiring him to disclose information to support his allegations about Plaintiff Coomer. *See Plaintiff's Response to Non-Party Joseph Oltmann Objection to Subpoena and Motion for Protective Order* [#116] ¶ 7.

On August 29, 2021, the Denver District Court compelled Mr. Oltmann's deposition testimony after he failed to appear at his deposition noticed for August 10, 2021, and the court imposed sanctions of attorneys' fees incurred as a result of Mr. Oltmann's non-appearance. *See Coomer v. Donald J. Trump for President, et al. Order*, 2020cv34319 (Denver Dist. Ct.) (dated Aug. 29, 2021).

---

[5] Plaintiff filed orders from those proceedings into this Court's docket. *See Order Regarding Plaintiff's Second Motion for Sanctions Against Oltmann Defendants Pursuant to C.R.C.P. 37* (Denver Dist. Ct.) [#116-6]; *Sanctions Order Against Defendant Oltmann and Counsel* (Denver Dist. Ct.) [#116-7]; *Order of the Court* (Colorado Court of Appeals) [#116-8]; *Order Regarding Plaintiffs' Notice of Submission of Attorney's Fees and Costs Pursuant to Order of Court of Appeals* [#116-9].

On October 12, 2021, the Denver District Court found that "[Mr.] Oltmann's refusal to provide the name of the individual that provided the Facebook posts is a knowing and direct violation of this Court's August 27, 2021 Order compelling him to provide the information and is a proper area for imposition of sanctions by this Court." *Coomer v. Donald J. Trump for President, et al. Order* [#116-6] at 3. Accordingly, the court awarded reasonable and necessary attorneys fees and costs to Dr. Coomer. *Id*. at 5; *see also Coomer v. Donald J. Trump for President, et al. Order* [#116-7] at 10 (imposing specific fees and costs).

On February 22, 2022, the Colorado Court of Appeals awarded Dr. Coomer reasonable attorney fees and costs when it dismissed Mr. Oltmann's appeal of the Denver District Court's August 29, 2021 order imposing sanctions related to depositions, including Mr. Oltmann's non-appearance at his deposition. *Coomer v. Oltmann, et al. Order* [#116-8] at 2.

The Court also takes judicial notice of proceedings pending in this District; namely, *Coomer v. Lindell, et al.*, No. 22-cv-01129-NYW-SBP. On December 13, 2022, the District Judge rejected Mr. Oltmann's attempt to avoid obeying a subpoena duces tecum and ordered Mr. Oltmann to appear for his deposition in the U.S. District Courthouse at 9 a.m. MST on Friday, December 16, 2022. *Coomer v. Lindell Minute Order* [#116-12] at 2-3.

## V.     STANDARD FOR CIVIL CONTEMPT

Courts have broad discretion to exercise their contempt powers to ensure compliance with court orders and to compensate for injuries resulting from noncompliance. *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001) (noting that the imposed sanction served "to protect the truth-seeking procedures of discovery,

11

and the [non-complying party] himself eschewed all opportunities to avoid the sanction"); *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998). A movant must prove by clear and convincing evidence that (1) a valid court order existed, (2) the nonmovant had knowledge of the order, and (3) the nonmovant disobeyed the order. *Reliance*, 159 F.3d at 1315. If the movant meets its burden, then the burden shifts to the nonmovant to show either that he complied with the court order or that he was unable to do so. *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008). Clear and convincing evidence is evidence that "places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). A nonmovant "may be absolved from a finding of civil contempt" if his "actions appear[ ] to be based upon a good faith and reasonable interpretation of the order[.]" *Spectra Sonics Aviation, Inc. v. Ogden City*, No. 89-4142, 1991 WL 59369, at *2 (10th Cir. Apr. 19, 1991).

## VI. ANALYSIS

### A. Whether Mr. Oltmann Disobeyed the Valid Subpoena and the Court's Discovery Orders

Rule 45(g) of the Federal Rules of Civil Procedure permits a subpoena-issuing court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Similarly, Rule 37(b)(1) authorizes courts to treat as contempt of court a deponent's failure to obey a court order that the deponent "be sworn or . . . answer a question[.]" "Contempt sanctions may be applied both to a person who disobeys a subpoena-related order and one who fails entirely to

12

obey a subpoena." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2465 (3d ed. June 2024 update).

"When a recalcitrant witness fails to obey the duly issued orders of a court, he may be cited for contempt, either criminal, civil or both." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 499 (10th Cir. 1980). Civil contempt is remedial, whereas criminal contempt is punitive. *See In re Van Vleet*, 461 B.R. 62, 69 (D. Colo. 2010); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994) (noting that the civil contempt is "for the benefit of the complainant," while criminal contempt is "to vindicate the authority of the court").

Magistrate Judges have limited contempt authority. *Daniel & Max LLC v. B&B Holding Co., LLC*, No. 19-173 GJF/GBW, 2022 WL 19191, at *1 (D.N.M. Jan. 3, 2022) (citing 28 U.S.C. § 636(e)). In matters such as this where the magistrate judge is the referral judge, "the magistrate judge shall certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(b)(e)(6).

Here, Mr. Oltmann was subject to two valid court orders concerning his deposition and he was under the power of a duly served subpoena. *See Transcript* [#130]; *Courtroom Minutes* [#127]; *Minute Order* [#135]. Further, Mr. Oltmann had knowledge of the Court's Orders because Plaintiff's counsel brought them to Mr. Oltmann's attention during his deposition. Finally, there is clear and convincing evidence that Mr. Oltmann violated the Court's Orders and failed to obey the subpoena.

During his deposition, Mr. Oltmann refused to answer questions about: (1) the source or conduit who enabled Mr. Oltmann to attend the "Antifa call" that Dr. Coomer allegedly attended, and to which Mr. Oltmann had not received an invitation to join; and (2) how he obtained access to Dr. Coomer's private Facebook account. Mr. Oltmann's refusal to answer these questions is a violation of the undersigned's April 8, 2024 rulings and May 7, 2024 Minute Order. Mr. Oltmann remained steadfast in his refusal even after Plaintiff's counsel informed him of the Court's April 8, 2024 Order. Mr. Oltmann not only refused to answer certain questions in violation of court orders, but he also abandoned his deposition and departed the courthouse without court authorization and in absence of release from the duly served subpoena. This conduct warrants a finding of contempt of court. "[T]he failure of a subpoenaed party to attend or produce according to the terms of a subpoena is prima facie evidence of contempt." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2465 (3d ed. June 2024 update).

**B.     Sanctions**

"Civil-contempt sanctions may be imposed only to compel or coerce obedience to a court order or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (internal quotation marks and citations omitted) (cleaned up). "[T]he same sanctions (i.e., a fine and imprisonment) are imposed for civil contempt as well as criminal contempt, but [in civil contempt] they are employed 'as coercive sanctions to compel the contemnor to do what the law made it his duty to do.'" 3A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 703 (4th ed. June 2024 update).

With respect to fines, "[t]he amount of the compensatory sanction must be based upon the actual losses sustained as a result of the contumacy." *Acosta*, 884 F.3d at 1240 (internal quotation marks and citations omitted) (cleaned up). "Therefore, a direct causal relationship must exist between the amount of damages and the violation[.]" *Id*. As the Supreme Court has explained, the sanction must be "limited to the fees the innocent party incurred solely because of the misconduct[.]" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103-04 (2017). Under that standard, "[a] district court has broad discretion to calculate fee awards[.]" *Id*. at 104.

With respect to imprisonment, that must end "when the contempt is purged." 3A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 703 (4th ed. June 2024 update); *see also Bagwell*, 512 U.S. at 828 (stating, "[t]he paradigmatic coercive, civil contempt sanction, involves confining a contemnor indefinitely until he complies with an affirmative command[.]"). In other words, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id*. (internal quotation marks and citation omitted).

Based on the legal authorities and Mr. Oltmann's conduct, the undersigned **recommends** that Mr. Oltmann be sanctioned in an amount of the fees the parties directly incurred because of Mr. Oltmann's noncompliance (*e.g.*, court reporter and videographer fees; attorney fees incurred during the deposition, conferences in the undersigned's chambers, and the contempt hearing).

Additionally, to coerce Mr. Oltmann's compliance, the undersigned **recommends** that a sanction of $300, plus appropriate additional daily sanctions, be imposed on Mr. Oltmann after any final order on an order to show cause issues and until Mr. Oltmann

15

comes into compliance with the Court's Orders [##127, 130, 135] and obeys the subpoena [#114-1]. *See Acosta*, 884 F.3d at 1239 (noting that "coercive sanctions" may only remain "until the contemnor complies with the order"). Such daily sanctions are warranted because Mr. Oltmann's noncompliance in this case mirrors his noncompliance in *Coomer v. Donald J. Trump for President, Inc.*, No. 2020cv34319 (Denver District Court). Specifically, Mr. Oltmann has refused to comply with the Denver District Court's orders regarding the same topics addressed in this Recommendation.[6] Once Mr. Oltmann complies, those daily sanctions would cease.

Finally, the undersigned stops short of recommending that the District Judge issue a bench warrant calling for the United States Marshal to apprehend Mr. Oltmann. The undersigned recognizes that courts typically take a graduated approach to compel compliance. *See, e.g.*, *Meadows v. Greenback Recovery Grp. LLC*, No. 1:20-cv-138-KWR-JFR, 2021 WL 1923615, at *3-4 (D.N.M. May 13, 2021) (giving one "last opportunity" to cure noncompliance and declining to issue an arrest warrant despite failures to participate in discovery, to comply with an order compelling discovery responses, or to respond to an order to show cause). While the undersigned is mindful of the larger context in which Mr. Oltmann's noncompliance has occurred, the noncompliance in *this* case is most relevant and the basis for the recommended sanctions. Though the undersigned limits the recommended sanctions to fees, costs, and

---

[6] *See Coomer v. Donald J. Trump for President, Inc.*, No. 2020cv34319 (Denver Dist. Ct.), Order Regarding Plaintiff's Motion for Sanctions Pursuant to CRCP 37 and CRCP 107 and Request for Order to Show Cause (Aug. 29, 2021); Order Regarding Plaintiff's Second Motion for Sanctions Against the Oltmann Defendants Pursuant to C.R.C.P. 37 (Oct. 12, 2021) [#116-6]; Sanctions Order Against Oltmann and Counsel (Mar. 22, 2022) (ordering $32,988.24 in sanctions) [#116-7]; *see also Coomer v. Oltmann*, No. 2021CA1481 (Colo. App.) (Feb. 22, 2022) (imposing sanctions of reasonable attorney fees and costs) [#116-8].

a daily fine, the troubling nature of Mr. Oltmann's conduct cannot go without comment. Despite Denver District Court sanctions of more than $50,000, Mr. Oltmann appears to have *knowingly and intentionally* flouted this Court's Orders and the rule of law. As demonstrated by his appearance on the CONSERVATIVE DAILY podcast, *see Plaintiff's Supplement* [#143] at 3 n.1, Mr. Oltmann has an apparent disdain for a system he asserts has been "weaponize[d]" against him. *Id*. at 4-7. Moreover, Mr. Oltmann appears to insinuate that he can ward off the legal system by threatening violence. *Id*. at 7. Such conduct undermines the integrity and truth-seeking aspects of discovery, frustrates justice, and should not be condoned.

C. **Authorization of Alternate Service of an Order to Show Cause**

During the June 6, 2024 contempt hearing, Plaintiff's counsel raised concerns about being able to serve an Order to Show Cause on Mr. Oltmann for two reasons: (1) Mr. Oltmann's attorney claims his client is a Texas resident, not a Colorado resident; and (2) in another case pending in this District, Mr. Oltmann has resisted service of a subpoena, which necessitated authorization of alternate service. *Hearing Audio*, at 2:54:40-2:56:08 (referencing *Coomer v. Lindell, et al.*, No. 22-cv-01129-NYW-SKC (D. Colo.); *Order* [#63] at 4-6 (granting Plaintiff Coomer's Unopposed Motion for Substituted Service of Subpoena Duces Tecum Directed at Joseph Oltmann and permitting service on Mr. Oltmann's attorney by "personal hand-to-hand service, certified mail, or electronic mail with return receipt" and noting that "there is no indication" that "Mr. Oltmann's location is unknown or unascertainable to [his attorney]").

At the outset, the Court questions whether a legitimate dispute exists as to Mr. Oltmann's residency—Mr. Oltmann purportedly has a Colorado voter registration and a

17

residence in Douglas County, Colorado. *Hearing Audio*, at 2:54:40-2:56:08. Nevertheless, given Mr. Oltmann's contumacy in these proceedings (as in the Denver District Court proceedings), the Court anticipates the need for alternative service of any order to show cause. As another court recognized,

> it is frequently the case that those who have flagrantly violated the court's orders are not disposed to make themselves readily available for personal delivery of notice that they are to be prosecuted for contempt of those orders.

*New York State Nat. Org. for Women v. Terry*, 732 F. Supp. 388, 401 (S.D.N.Y. 1990) (quoting *Dep't of Hous. Preservation & Dev. v. 24 West 132 Equities, Inc.*, 524 N.Y.S.2d 324, 327 (1987)). Therefore, pursuant to the Court's inherent authority to manage its docket to achieve the orderly and expeditious disposition of matters before it, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), the Court **recommends** that Plaintiff be permitted to serve any Order to Show Cause on Attorney Mark A. Sares, counsel for Mr. Oltmann.

## VI. CONCLUSION

In accordance with 28 U.S.C. § 636(e)(6) and in view of the certified facts,

IT IS HEREBY **RECOMMENDED** that Mr. Oltmann be ordered to appear before the District Judge and show cause why he should not be held in contempt of court.

IT IS FURTHER **RECOMMENDED** that Mr. Oltmann be ordered to pay: (1) the fees and costs the parties directly incurred as a result of his noncompliance; and (2) a sanction of $300, plus appropriate additional daily sanctions after any final order on this Recommendation until Mr. Oltmann comes into full compliance with the Court's Orders [##127, 135] and the subpoena [#114-1].

IT IS FURTHER **ORDERED** that the Clerk's Office mail a copy of this Recommendation to Mr. Oltmann's attorney at the following address: Mark A. Sares,

Harris, Karstaedt, Jamison & Powers, P.C., 10333 E. Dry Creek Road, Suite 300, Englewood, Colorado 80112.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: June 14, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge