**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

     Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

     Defendants

---

**PLAINTIFF'S MOTION TO LEAVE
TO FILE SECOND AMENDED COMPLAINT**

---

TO THE HONORABLE MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT:

     Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through counsel, files this Motion for Leave to File Second Amended Complaint, stating in support thereof as follows:

**CERTIFICATE OF CONFERRAL**

     Counsel for Plaintiff has conferred with counsel for Defendants on the relief requested.  Defendants oppose the relief requested in this Motion.

**INTRODUCTION**

     Dr. Coomer seeks leave to file his Second Amended Complaint (SAC), attached hereto as Exhibit 1.[1]  The discovery completed thus far has brought to light new evidence

---

[1] A redline version of the SAC is attached as **Exhibit 2**.

regarding Defendants' willful and malicious conduct, and new evidence of the extent to which they have profited from their defamatory lies about Dr. Coomer. This newly discovered evidence, combined with what was known before suit was filed, supports a claim for exemplary damages. Further, much the conduct giving rise to the SAC occurred after Defendants' were served with the original complaint and, thus, could not serve as a basis for exemplary damages at that time.

## PROCEDURAL BACKGROUND

1.     Dr. Coomer filed his Complaint and Jury Demand on December 22, 2021 [ECF 1]. In October of 2023, Plaintiff became aware for the first time that an additional Defendant, Reopen America, LLC, may bear liability for some of the publications at issue in this dispute. The parties stipulated to Plaintiff's Motion for Leave to File Amended Complaint in order to name Reopen America as an additional Defendant [ECF 97]. On November 7, 2023, Plaintiff filed an Unopposed Motion for Leave to File First Amended Complaint [ECF 101]. The Court granted that Motion on November 9 and Plaintiff filed his First Amended Complaint (FAC) the same day [ECF 103, 104]

2.     By the parties' stipulation, and to facilitate the need to add Reopen America as a party, the FAC does not contain any substantive amendments whatsoever other than the addition of Reopen America.   The factual allegations and causes of action remained identical to the original Complaint.

## FACTUAL BACKGROUND

3.     Evidence revealed in discovery, in conjunction with Defendants' post-Complaint exacerbating conduct, warrant the filing of Plaintiff's Second Amended

Complaint (SAC) to includes a claim for exemplary damages. This evidence includes various sworn admissions by Defendants, as well as a variety of defamatory publications that followed the filing of Plaintiff's Complaint.

### A.   *Post-Complaint defamatory statements.*

4.      In Plaintiff's Original Complaint, filed on December 22, 2021, Dr. Coomer described at great length the objective falsity of the claims Defendants had published, the dangerous and threatening behavior of Joe Oltmann, and the numerous threats that had been directed at Dr. Coomer as a result of the lies at issue in this dispute.[2] Defendants nonetheless continued with their defamatory attacks on Dr. Coomer. This ongoing conduct included not only additional attacks on Dr. Coomer from both Clark and Oltmann at appearances of the ReAwaken America Tour,[3] but also through several additional publications of both The ThriveTime Show and with Clark as a guest on Oltmann's podcast "Conservative Daily."

5.      These numerous additional defamatory publications are included in Exhibit 1, ¶¶ 88-102. These additional statements are described in more detail in the SAC and Plaintiff will not rehash each at length here. For purposes of this argument, however, it is important to note that after being served with the Complaint, both Clark and the Tour continued to publish defamatory statements about Dr. Coomer both online and to live audiences. They persisted in these publications despite never having demanded or been

---

[2] *See* Complaint [ECF 1] at ¶¶ 35-37, 80-88.

[3] Both Make Your Life Epic, LLC dba Thrivetime Show and Reopen America, LLC bear liability for publishing the ReAwaken America Tour. For purposes of this Motion, both Defendants will be referred to collectively as "the Tour."

provided with any evidence that Dr. Coomer partook in an "antifa conference call," claimed on that call to have rigged the election, or that Dr. Coomer did in fact rig the election.

6.     For example, in the very next post-Complaint appearance of the ReAwaken America Tour on January 15, 2022 in Phoenix, Arizona, Defendants invited Joe Oltmann onstage once again.  Oltmann continued spreading provable lies that the 2020 election had been rigged.  SAC at ¶¶ 89-90.  Oltmann appeared again with the Tour on April 1, 2022, in Salem, Oregon, where Clark introduced him as follows:

> Our next presenter, he has been exposing the corruption of Dominion, of Eric Coomer, of election fraud, and he's here with you today to share the truth about high integrity elections and how we're going to move to a place where election fraud is no longer possible in these great United States. Ladies and gentlemen, please stand to your feet and greet the successful entrepreneur with hundreds of employees who has decided to devote his entire treasure and time to exposing election fraud.  Ladies and gentlemen, it's Joe Oltmann!

SAC at ¶ 94.

7.     Oltmann took credit for being the origin of the Dominion Voting Systems conspiracy theory and continued tying Dr. Coomer into his false claims of election fraud, stating, "And so when I stepped out and talked about the fateful call that Eric Coomer was on where he said don't worry about the election, Trump won't win, I made sure of it." After recapping his false claims, Oltmann stated, "We have to focus on the problem, and the problem right now is that the elections have been stolen."  SAC at ¶ 95.

8.     Just as the Tour continued to publish lies about Dr. Coomer through both Clark and Oltmann, Clark also continued appearing on Oltmann's podcast, where he

persisted in promoting false claims against Dr. Coomer.  These interviews frequently included allusions to or threats of violence from Oltmann.  SAC at ¶¶ 91-92.

9.      As one example, on March 15, 2022, Clark and Oltmann discussed Dr. Coomer.  "You and I are kind of connected because of the lawsuit," Clark stated.  "His claim is that the ReAwaken America Tour provided a platform to allow you, Lindell, and others to share information that would have defamed him."  "The guy is evil personified," Oltmann stated.  "He literally is evil."  SAC at ¶¶ 93.

10.     Months later, Clark was back on Conservative Daily on August 3, 2022.  He and Oltmann again promoted the Tour.  "Joe are you coming to [the upcoming Tour event in] New York?" Clark asked.  "Because you have sort of like a standing invitation, and so I think I've got you on there, but I'll call you afterwards and we'll figure out your timeslot."  The two then went on to again discuss Dr. Coomer and this lawsuit, with Clark stating, "Mike Lindell and yourself and myself and now others, there's a good handful of us that are being sued for these sorts of things.  The Trump administration is being sued for these sorts of things, so I would just say I kind of wear it as a badge of honor."  SAC at ¶ 96.

11.     One month later, Clark was back on Conservative Daily again on September 13, 2022.  "I know you're being sued by Eric Coomer," Oltmann stated.  "Your lawyer is probably telling you not to talk about that at all."  Clark responded:

> So he is saying that the Tour, and specifically your involvement with the Tour and me, and you being on the stage, and people like Mike Lindell and others sharing the truth about what's happening is defaming him.  So I would just, my argument to Eric Coomer, if I was with him right now, would be, Eric, you speaking, you just being Eric is what's defaming you.  It's called a reputation.

SAC at ¶ 101.

**B.      *Failure to investigate or corroborate.***

12.      Evidence produced in discovery demonstrates that from the beginning, Clark and the Thrivetime Show had no interest in conducting any investigation into Oltmann's claims.[4]  Despite this lack of concern for the underlying bases of Oltmann's claims, the evidence shows that Clark intended to accuse Dr. Coomer of treason on the Thrivetime Show *for weeks* before even conducting his first interview with Oltmann.[5]

13.      Defendants' subsequent lack of concern for the harm they caused to Dr. Coomer is evident from Clark's sworn testimony.  For example, when presented with evidence that Oltmann had published a photo of Dr. Coomer's home alongside commentary encouraging his followers to "blow this shit up,"[6] Clark testified that he would not have continued to invite Oltmann on the ReAwaken America Tour if he had known that Oltmann engaged in this sort of conduct.[7]  But Clark would have known about this conduct if he had read the Complaint.[8]  Instead, he continued inviting Oltmann on stage for several more months to continue ginning up baseless outrage against Dr. Coomer.

---

[4] SAC at ¶¶ 53, 56, 75; *see also* **Exhibit 3**, Depo Tr. MYLE (Apr. 30, 2024) at 176:1-177:6.

[5] SAC at ¶¶ 52-56; *see also* **Exhibit 3**, Depo Tr. MYLE (Apr. 30, 2024) at 117:16-120:4; *see also* **Exhibit 4**.

[6] **Exhibit 5**.  Notably, this December 5, 2020 post occurred *after* Clark first proposed talking points to Oltmann accusing Dr. Coomer of treason in their first interview, but *before* that interview ever occurred.

[7] **Exhibit 6**, Depo Tr. Clark (May 1, 2024) at 176:13-177:2.

[8] *See* Complaint [ECF 1] at ¶ 35.

### C.    Efforts to profit from this lawsuit.

14.    Despite never reading the lawsuit, Defendants nonetheless made efforts to profit off of it.  Clark, for example, spent several months claiming that he was spending "three thousand dollars a day" on his defense,[9] and directing his viewers to a GiveSendGo fundraiser he titled "ReAwaken America Vs Dominion Lawsuit Defense Fund."[10]   The fundraiser stated that "All proceeds will go towards the legal defense for the ReAwaken America Tour against Eric Coomer formerly on Dominion Voting Systems."[11] Tour co-founder Gen. Michael Flynn promoted this fundraiser onstage, stating "That donation button goes to helping these events."[12]   Under oath, Flynn claimed that he did not recall ever attempting to encourage donations to this fundraiser.[13]

### D.    Additional evidence supporting Defendants' knowledge of falsity and reckless disregard for the truth.

15.    Clay Clark publicly stated that he knew Defendants would get sued if they brought the Tour to Colorado, that he found this prospect "exciting," and that they agreed to do it anyway.[14]   Clark's wife Vanessa confirmed that Clark knew Defendants would get

---

[9]    *See* **Exhibit 7**, THRIVETIME SHOW (Aug. 25, 2022), available at https://caincloud.egnyte.com/dl/BehWgAkWGD/EX_7_-_2022-08-25_Clay_Clark_ReAwaken_America_Tour.mp4_.  External USB drive to be submitted as well.

[10]  **Exhibit 8**.  Notably, at some point since Clark's May 1, 2024 deposition, this fundraiser landing page has been modified to now indicate that it is a "ReAwaken Tour Vs Eric Coomer Legal Defense Fund."  Reference to all proceeds going towards the Tour's legal defense has also been removed.

[11]  *Id.*  Upon information and belief, Defendants' legal defense in this proceeding is being paid for by their insurance carrier.

[12]  **Exhibit 9**, Reawaken America Tour, Las Vegas (Aug. 23, 2023), available at https://caincloud.egnyte.com/dl/W5qlgXFFUk/EX_9_-_2023-08-23_-_ReAwaken_America_Tour_Las_Vegas_-day_2.mp4_.   External USB drive to be submitted as well.

[13]  *See* **Exhibit 10**, Depo. Tr. Flynn (Apr. 4, 2024) at 50:13-52:3.

[14]  **Exhibit 11**, Reawaken America Tour, Canton (Feb. 19, 2022), available at https://caincloud.egnyte.com/dl/QM94ZTsPdx/EX_11_-_2022-02-19_Reawaken_America_Tour-

sued prior to the filing of Plaintiff's Complaint.[15]   The fact that the Clarks anticipated a lawsuit and proceeded anyway is evidence that they had strong reason to know that their claims were false.

16.    Deposition testimony further supports a finding that Defendants never actually believed Oltmann's claims.   Tour co-founder Michael Flynn, for example, testified that he knew nothing about Eric Coomer, was not familiar with the "antifa call" story, and had never looked into it.[16] He claimed he wouldn't recognize Joe Oltmann if he walked in the room.[17]   And he stated that he was not aware of any evidence to suggest that Eric Coomer or Dominion Voting Systems rigged the 2020 election.[18]

17.    But Flynn co-starred with Oltmann in *The Deep Rig*, a "documentary" that prominently featured Oltmann's claims about Dr. Coomer.[19]   Oltmann and Flynn appeared at numerus Tour events together. In fact, Flynn was one of the earliest promoters of Oltmann's lies about Dr. Coomer, even emailing calls for Dr. Coomer's imprisonment to high ranking government officials in the runup to the January 6

---

_Canton_2_re_GiveSendGo_2.mov_ .   External USB drive to be submitted as well.   Notably, Clark made these comments in connection with a request for donations to the fundraiser discussed above.

[15] *See* **Exhibit 12**, Depo. Tr. Vanessa Clark (Feb. 7, 2024) at 102:2-103:13.

[16] *See generally* **Exhibit 10**, Depo. Tr. Flynn (Apr. 4, 2024) at 60:15-64:8; *see also* **Exhibit 13** (video of transcript excerpt), available at https://caincloud.egnyte.com/dl/go7LpCE1vX/EX_13_-_FLYNN_Depo_Clip.mov .   External USB drive to be submitted as well.

[17] *Id.*

[18] *Id.*

[19] This defamatory publication, which posits Oltmann's false claims about Dr. Coomer as the lynchpin to the supposed plot to "rig" the election against former President Trump, is the basis for related proceeding *Coomer v. Byrne, et. al.*, Case No. 8:24-cv-8-TPB-SPF (M. D. Fla.).

insurrection.[20]   Many of Flynn's closest associates, as well as organizations in which he plays an active role, have been sued by Dr. Coomer.[21]   Several of those have even settled with Dr. Coomer.[22]   If Flynn's testimony is to be taken at face value, it suggests he never believed the lies published by the Tour about Dr. Coomer were even worth following up on.   Alternatively, a reasonable jury could find this testimony to lack credibility and suggest that Flynn is falsely claiming ignorance in order to disassociate himself from claims he does not believe are true.   Either way, the testimony is compelling evidence that not even Flynn believes the lies about Dr. Coomer or Dominion Voting Systems.

18.     For his part, Clay Clark's testimony confirmed that he (1) never attempted to contact either Dr. Coomer or Dominion Voting Systems to corroborate Oltmann's claims,[23] (2) never conducted any investigation into the underlying bases for Oltmann's claims, such as basic inquiry into circumstances surrounding the supposed "antifa call,"[24] (3) had a preconceived narrative that the 2020 election would be rigged against former President Trump,[25] (4) had political motives to claim the 2020 election was rigged,[26] (5) disregarded reliable sources confirming that the 2020 election was not rigged,[27]

---

[20] *See* **Exhibit 14** (November 14, 2020 email forwarding calls for Dr. Coomer's arrest); *see also* **Exhibit 15** (December 21, 2020 email chain with Sidney Powell and others discussing need to coordinate with Joe Oltmann, Senator Cotton (R-AR), and various State Department officials).

[21] Examples include Patrick Byrne, Sidney Powell, Sidney Powell P.C., Defending the Republic, Inc., The America Project, LLC, Donald J. Trump for President, Inc., and Defendants here.

[22] Examples include Sidney Powell, Sidney Powell P.C., and Defending the Republic, Inc.

[23] **Exhibit 3**, Depo Tr. MYLE (April 30, 2024) 128:24-129:2; 130:7-20.

[24] *Id.* at 176:1-177:7.

[25] *Id.* at 81:15-22.

[26] *Id.* at 78:2-81:22.

[27] *Id.* at 146:2-147:21.

(6) had no working theory into the inherently implausible suggestion that a single person could rig the entire presidential election,[28] and through all of this conduct, (7) willfully avoided the truth.

19.     For all of these reasons, Dr. Coomer respectfully seeks leave to file his Second Amended Complaint (SAC).

## LEGAL STANDARD

20.     Ordinarily, Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure would apply when, as here, a party seeks to amend its pleading after the deadline set in the Scheduling Order.  *See Coomer v. Lindell et. al*., Case No. 22-cv-01129-NYW-SKC, Order Granting Motion to Amend (Dist. Ct. Colo. July 7, 2023)[29] (*citing Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). First, the party must establish good cause under Rule 16(b)(4).  *Id.*  Only if the party establishes good cause does the court turn to whether amendment is proper under Rule 15(a).  *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc*., 204 F.R.D. 667, 668 (D. Colo. 2001).

21.     With respect to exemplary damages, however, Rules 15(a)(2) and 16(b)(4) do not apply.  **Exhibit 16**, p. 8.   Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages.  Pursuant to § 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial

---

[28] *Id.* at 151:8-153:11.

[29] Attached hereto as **Exhibit 16**.

disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if he establishes prima facie proof of a triable issue. *See* C.R.S. § 13-21-102(1.5)(a). Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

22.    Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a). "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Ins. Co.*, 913 P.2d 514,517 (Colo. 1996).

23.    As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449. Such proof is established by, "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (*quoting Leidhold v. Dist. Ct.*, 619 P.2d 768, 771 n. 3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Id.* In reviewing the Motion to Amend, the Court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing that the injury complained of is

attended by willful and wanton conduct, not whether he will ultimately prevail.  *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

## ARGUMENT

### A.   *Amendment to account for additional defamatory publications is warranted.*

24.     Post-Complaint defamatory statements do not need to be referenced in the Complaint in order for those statements to support Dr. Coomer's claims for relief at trial. *See* **Exhibit 16**, pp. 10-13.   The statements here, however, are directly relevant to Dr. Coomer's additional claim for exemplary damages.[30]   In fact, Colorado's exemplary damages statute expressly identifies such conduct as a basis for allowing a trebling of exemplary damages awarded against a defendant.   In relevant part, the statute states as follows:

> (3)     [T]he court may increase an award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if shown that:
>
> (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner ... during the pendency of the case; or
>
> (b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

C.R.S. § 13-21-102(3)(a-b).

---

[30] Amendment to add allegations arising from statements made in 2022 may serve the auxiliary benefit of implicating additional insurance coverage that could assist in resolution of this dispute.

25.     Defendants' ongoing defamatory publications after the filing of Plaintiff's complaint fall squarely within this statutory allowance.  The allegations in the Complaint leave no doubt that the publications were causing Plaintiff harm, and that additional publications would aggravate that harm.  And that is precisely what they have done.

**B.      *Other grounds supporting a claim for exemplary damages.***

26.     Awards of punitive damages are not available in a defamation case unless the plaintiff is able to demonstrate actual malice.  *Hendrickson v. Doyle*, No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015).

27.     Actual malice "requires at a minimum that the statements were made with reckless disregard for the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1110-11 (Colo. 1982).  To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity." *Lewis v. McGraw-Hill Broad. Co., Inc.*, 832 P.2d 1118, 1122-23 (Colo. App. 1992).   Reckless disregard "cannot be fully encompassed in one infallible definition" and is not limited to specific bases. *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968).  Instead, actual malice can be inferred from objective circumstantial evidence, which can override a defendant's protestations of good faith.  *Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th Cir. 1992).  Circumstantial evidence of actual malice can include when a defendant relies on anonymous sources[31];

---

[31] *Id.*; *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016).

when a defendant has reason to know that a source is unreliable[32]; when the allegations made are so inherently improbable that only a reckless person would publish them[33]; when a defendant intentionally avoids the truth[34]; when a defendant's allegations conform to a preconceived storyline[35]; and when a defendant has an incentive or motive to make the defamatory statements.[36]  All of these bases are reflected in the proposed amendments.

28.    In addition to showing circumstances of fraud, malice, or willful and wanton conduct as required by C.R.S. § 13-21-102(1)(a), the proposed amendments also demonstrate actual malice.  The additional allegations, supported by evidence uncovered in discovery, support a finding that Defendants relied on anonymous sources,[37] had reason to know their source was unreliable, published inherently implausible claims, avoided the truth, sought to affirm a preconceived narrative, and had ulterior motives for publishing the false claims.[38]

---

[32] *St. Amant*, 390 U.S. at 732; *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 190 (2d Cir. 2000); *Wells v. Liddy*, 186 F.3d 505, 542–43 (4th Cir. 1999); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016).

[33] St. Amant, 390 U.S. at 732; Spacecon Specialty Contractors, LLC. v. Bensinger, 782 F. Supp. 2d 1194, 1201 (D. Colo. 2011), aff'd sub nom. Spacecon Specialty Contractors, LLC v. Bensinger, 713 F.3d 1028 (10th Cir. 2013); Lohrenz v. Donnelly, 223 F. Supp. 2d 25, 46 (D.D.C. 2002), aff'd., 350 F.3d 1272 (D.C. Cir. 2003).

[34] Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 693 (1989); Kuhn v. Trib.-Republican Pub. Co., 637 P.2d 315, 319 (Colo. 1981); Burns v. McGraw-Hill Broad. Co., Inc., 659 P.2d 1351, 1361 (Colo. 1983).

[35] *Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 674-75 (W.D. Va. 2019); *Eramo*, 209 F. Supp. at 872.

[36] *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992).

[37] **Exhibit 3**, Depo Tr. MYLE (Apr. 30, 2024) at 124:7-15.

[38] Notably, the Court has already made a finding that Dr. Coomer's Complaint adequately pleads allegations that would support a finding of actual malice.  *See* Order Denying Defendants' Special Motion to Dismiss and Defendants' Motion to Strike [ECF 45] (Mar. 7, 2023).  As such, the existing allegations *already* support a claim for exemplary damages.

**C.    These proposed amendments are timely, asserted in good faith, and without prejudice to Defendants.**

29.    Every proposed amendment is raised in good faith, and Dr. Coomer does not anticipate that the proposed amendments would give rise to any unique or additional discovery in this matter.  As another division of this Court held in the *Lindell* matter when finding an absence of prejudice arising from an added claim for exemplary damages, "[t]he request for exemplary damages cannot be a surprise to Defendants, given the subject matter, tone, and tenor of this action to date." **Exhibit 16**, p. 16.  Both the original Complaint and the FAC expressly requested leave to file and amended Complaint which included a claim for exemplary damages upon the completion of discovery.[39]  As a result, and as in the *Lindell* case, Defendants cannot "articulate any specific discovery that [they] require with the addition of a request for exemplary damages, particularly given that the facts about the alleged malice clearly are within the Defendants' – rather than the Plaintiff's or any third party's – control." *Id.*

30.    In any case, multiple discovery related matters remain unresolved in this case, and an unopposed motion to amend the scheduling order to accommodate those concerns remains pending.  *See* ECF 157.  Trial has not yet been set in this matter. Defendants will not be prejudiced by the proposed amendment.

## CONCLUSION

31.    For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. moves for an order granting leave to file his Second Amended Complaint.

---

[39] *See* Original Complaint [ECF 1] at p. 53; *see also* First Amended Complaint [ECF 104] at p. 54.

Respectfully submitted this 19th day of August 2024.

_____/s/ Bradley A. Kloewer_____
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
Zachary H. Bowman
zbowman@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
and
303 Colorado Street, Suite 2850
Austin, Texas 78701
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**