# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

# EXHIBIT 16

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01129-NYW-SKC

ERIC COOMER, PH.D.,

    Plaintiff,

v.

MICHAEL J. LINDELL,
FRANKSPEECH LLC, and
MY PILLOW, INC.,

    Defendants.

## ORDER GRANTING MOTION TO AMEND

This matter is before the Court on Plaintiff's Motion to Leave to File Second Amended Complaint ("Motion to Amend" or "Motion"), [Doc. 127, filed April 6, 2023]. Defendants Michael J. Lindell ("Mr. Lindell"), Frankspeech LLC ("Frankspeech"), and My Pillow, Inc. ("MyPillow") filed a Response, [Doc. 136], and Plaintiff filed a Reply, [Doc. 140]. This Court finds that oral argument will not materially assist in the disposition of the instant Motion. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion to Amend.

### BACKGROUND

The Court has discussed the background of this case in detail, *see* [Doc. 119 at 1–6], and therefore, limits this section to the allegations most relevant to the Motion before it. Dr. Eric Coomer ("Plaintiff" or "Dr. Coomer") is the former Director of Product Strategy and Security for Dominion Voting Systems ("Dominion"), which provides election support services throughout the

United States, including to at least thirty different states during the 2020 presidential election. [Doc. 21 at ¶ 16]. Joseph R. Biden ("President Biden") won the 2020 presidential election. [*Id.* at ¶ 17]. Nevertheless, a number of individuals and organizations have challenged the legitimacy of the 2020 presidential election, and alleged that the result of such election was tainted by fraud.

Plaintiff alleges that Defendants "have been among the most prolific vectors of baseless conspiracy theories claiming election fraud in the 2020 election," [*id.* at ¶ 1], in that they "began promoting a variety of claims that the November 2020 election had been rigged against former President Trump very shortly after the election was called for President Biden." [*Id.* at ¶ 40]. Dr. Coomer alleges that Defendants based their theories of election fraud upon statements made by non-party Joe Oltmann ("Mr. Oltmann"),[1] who hosts a podcast called "Conservative Daily." [*Id.* at ¶ 27]. On November 9, 2020, Mr. Oltmann expressly identified Dr. Coomer as someone inside Dominion who was "specifically related to Antifa" and "controlling the elections." [*Id.* at ¶ 28]. According to Mr. Oltmann, who purportedly infiltrated Antifa, Dr. Coomer participated in a conference call before the election and responded, when one participant asked, "What are we gonna do if f-ing Trump wins? [sic]," Dr. Coomer replied (as paraphrased by Mr. Oltmann), "Don't worry about the election, Trump is not gonna win. I made f-ing sure of that. Hahahaha [sic]." [*Id.*]. Mr. Oltmann then declared that, by Googling "Eric," "Dominion," and "Denver, Colorado,"

---

[1] This Court takes judicial notice that Plaintiff has filed a separate action against Mr. Oltmann and others based on these allegations in Colorado state court. *See Coomer v. Donald J. Trump for President, Inc.*, Case No. 2020CV034319; [Doc. 22]. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (observing that, whether requested by the parties or not, "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

2

he had identified Dr. Coomer and Dominion as the perpetrators of this election fraud. [*Id.*].[2] Mr. Oltmann then began discussing Dr. Coomer on his podcast on an almost daily basis. [*Id.* at ¶ 34].

On March 11, 2021, Mr. Lindell appeared as a guest on Mr. Oltmann's podcast and was introduced as "Mr. Mike Lindell, the CEO of MyPillow, affectionately known as the MyPillow guy." [*Id.* at ¶ 46]. During the interview, Mr. Lindell informed Conservative Daily's listeners that they could use a unique promotional code for discounts on MyPillow products. [*Id.*]. Mr. Oltmann concluded the interview by promoting Mr. Lindell's forthcoming social media platform, "Frankspeech," stating: "We will be a tireless advocate for MyPillow. We'll be a tireless advocate for what we're doing on the election integrity issue, or side, and we will make sure people know about the platform." [*Id.*].

Frankspeech launched in April 2021. [*Id.* at ¶¶ 47–48]. Plaintiff alleges that "Defendants utilized Frankspeech to defame Dr. Coomer to an online audience around the world, including Colorado, where their defamatory conduct took a variety of forms, including republication of defamatory articles that had been retracted by other outlets, publication of defamatory interviews conducted by Frankspeech hosts, and publication of defamatory statements by Lindell himself." [*Id.* at ¶ 49]. For example, the Frankspeech website re-published Mr. Oltmann's podcast episodes containing "almost daily publications defaming Dr. Coomer with ongoing allegations that he participated in an Antifa conference call, claimed on that call that he intended to subvert the results of the 2020 election, and then did in fact subvert the presidential election." [*Id.* at ¶ 50].

---

[2] Plaintiff alleges that "[i]n reality, however, Oltmann actually fabricated evidence of his supposed Google search on November 11, 2020, two days after his initial claims about Dr. Coomer, by deliberately altering a screenshot image to suggest the search had occurred in late September." [Doc. 21 at ¶ 28].

3

On May 3, 2021, Frankspeech anchor Brannon Howse ("Mr. Howse") interviewed Mr. Oltmann. [*Id.* at ¶ 53]. Mr. Howse began the interview by stating, "[a]gain, I want to remind you before we go to our next guest in Colorado, he's going to tell you about a live conference call with one of the leaders of Dominion voting machines. Before we go to that guest, don't forget, go to mypillow.com if you would. Use the promo code FRANK and save up to 66%." [*Id.* at ¶ 53]. During this interview, Mr. Oltmann repeated his claims about the conference call, specifically identifying Dr. Coomer. [*Id.* at ¶¶ 54–55]. He again explained that he identified Plaintiff as the "Eric" on the conference call using Google, stating he "started doing research" and "it didn't take [him] much to figure out who [Eric] was. I Googled 'Eric Dominion Denver Colorado' and up pops all this information on Eric Coomer of Dominion Voting Systems and what he did." [*Id.* at ¶ 56].

On May 9, 2021, Mr. Lindell appeared on Frankspeech. [*Id.* at ¶ 61]. He stated, with respect to Plaintiff:

> Yeah, Eric Coomer, if I'm you right now, I am, instead of going over and making deals at Newsmax, if I'm you, I'm turning myself in and turning in the whole operation so maybe, just maybe, that you get immunity and you only get to do, I don't know, ten, twenty years. I mean, you are disgusting, and you are treasonous. You are a traitor to the United States of America. And you know what? I can say that, just like I can about Brian Kemp and Brad Raffensberger. These are things that I have evidence of. The evidence is there. You know, it's sitting there. Well Mike, 'Why don't you turn it all in to the Supreme Court and bring it to the FBI?' Oh, it's getting to the Supreme Court, everybody.

[*Id.* (emphasis omitted)]. According to Plaintiff, Mr. Lindell's reference to "deals at Newsmax" refers to Newsmax's on-air retraction of similar claims about—and apology to—Dr. Coomer just days prior. [*Id.* at ¶ 62].

Then, in August 2021, Mr. Lindell hosted a "Cyber Symposium" that was "created, run, and produced by" Mr. Lindell, MyPillow, and Frankspeech. [*Id.* at ¶ 70]. Throughout the

4

symposium, Defendants published statements repeating the false allegations against Dr. Coomer. *See, e.g.*, [*id.* at ¶¶ 82, 84–89]. During the Symposium, Tina Peters ("Ms. Peters"), the then-County Clerk and Recorder for Mesa County, Colorado, allegedly claimed that her office had been "invaded" and "raided" by investigators from the Colorado Secretary of State's office, which was conducting an investigation into a potential breach of election security systems. [*Id.* at ¶ 74 (alteration omitted)]. Dr. Coomer further contends that, in or around February 2022, Mr. Oltmann appeared along with Ms. Peters at a meeting of FEC United, during which "speakers issued direct calls to political violence," including against Colorado Secretary of State, Jena Griswold. [*Id.* at ¶ 35]. Defendant Lindell's relationships with Mr. Oltmann and Ms. Peters have continued since the Symposium. [*Id.* at ¶ 90].

Defendants were served with this lawsuit just before a "Colorado Election Truth Rally" ("Rally") on April 4, 2022. [*Id.* at ¶¶ 92–93]. Mr. Lindell, Mr. Oltmann, and Ms. Peters participated in the Rally that was conducted on the steps of the Colorado State Capitol. [*Id.* at ¶¶ 92–93]. After receiving service of process, Mr. Lindell gave a speech; referring to supposed election fraud, he stated: "It started with Eric Coomer and Dominion based right here in Colorado. By the way, [Plaintiff] just sued me as I walked up on the stage. Just sued me, I just got papers. Thanks, Eric! Now Eric will be the first one behind bars when we melt down the machines." [*Id.* at ¶ 94]. The next day, Frankspeech published another statement from Mr. Lindell:

> So everybody, if you want to know just how corrupt, the corruption we're up against. Eric Coomer served, had served papers to me before I was going onstage at the Capitol. I've never talked about Eric Coomer. He's the, apparently he's the president of Dominion, the criminal crime family here in Denver. . . .
>
> Eric Coomer, you are a criminal. Eric Coomer, your lawyers better look out. I'm not putting up with this. My Pillow doesn't even know who you are. My employees, I have 2,700 employees. Shame on you Eric Coomer. You did a very, very stupid move, Mr. Coomer. You're going to be the first one, right behind Rafsenberger [sic] and Jena Griswold behind bars. . . . You've been a part of the

5

biggest crime this world has ever seen.  Eric Coomer, president of Dominion, you have even said what you did or what you were going to do.  You're disgusting.  You're disgusting, you're evil, you belong behind bars, and we will not stop until you are behind bars.  We're going to melt down your little machines and you're going to hang on to your little prison bars.  "Let me out, let me out!"  Should have thought about that, Eric Coomer, before you did crimes against the United States and quite frankly all of humanity.  It's disgusting what you've done.  You and Dominion.  And Jena Griswold.

[*Id.* at ¶ 95].

Plaintiff initiated this lawsuit on April 4, 2022, in the District Court of Denver County, Colorado, [Doc. 4], and Defendants removed the case to federal court on May 5, 2022.  [Doc. 1].  Defendants sought to dismiss the action.³  [Doc. 18; Doc. 19].  On June 17, 2022, Dr. Coomer filed a First Amended Complaint and Jury Demand ("First Amended Complaint") to add additional allegations of conduct arising since the inception of the lawsuit.  [Doc. 21; Doc. 22].  In his First Amended Complaint, Plaintiff asserts three causes of action against all Defendants: (1) defamation, (2) intentional infliction of emotional distress, and (3) civil conspiracy.  [Doc. 21 at ¶¶ 117–30].⁴  Dr. Coomer alleges that as a result of Defendants' conduct, he "has received countless credible death threats, and continues to receive those threats on a regular basis."  [*Id.* at ¶ 112].  He asserts that he has "been forced to take [measures] to protect himself" due to Defendants' conduct and that he has experienced and will continue to experience serious and emotional physical distress due to Defendants' actions.  [*Id.* at ¶ 116].  He claims harm to his reputation, privacy, safety, and earnings.  [*Id.*].  Defendants again moved to dismiss each of the

---

³ These motions were stricken by the Honorable William J. Martinez.  [Doc. 30].  The matter was reassigned to the undersigned on August 5, 2022, upon her appointment as a United States District Judge.  [Doc. 42].

⁴ The First Amended Complaint also seeks a permanent injunction under a separate heading immediately after Plaintiff's other claims.  *See* [Doc. 21 at 73].  The Court does not construe Plaintiff as asserting a separate cause of action, but merely delineating one type of relief sought should Plaintiff succeed on the merits of his claims.  *See* [Doc. 119 at 6 n.2].

claims asserted in the First Amended Complaint under Rule 12(b)(6).  *See generally* [Doc. 38]. After full briefing on the merits, this Court denied Defendants' Motion to Dismiss on March 15, 2023.  [Doc. 115].

Then, on April 6, 2023, Plaintiff filed this instant Motion to Amend, seeking to further amend his operative pleading to (1) assert facts arising after the filing of the First Amended Complaint and (2) pursue exemplary damages.  [Doc. 127].  The Motion is fully briefed, and is ripe for disposition.

## LEGAL STANDARDS

***Generally.***  Ordinarily, Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure would apply when, as here, a party seeks to amend its pleading after the deadline set in the Scheduling Order.  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  First, the party must establish good cause under Rule 16(b)(4).  *Id.*  Only if the party establishes good cause does the court turn to whether amendment is proper under Rule 15(a).  *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

The determination of good cause under Rule 16 lies within the sound discretion of the court.  Fed. R. Civ. P. 16(b)(4).  Whether good cause exists focuses on the diligence of the moving party seeking leave; a party establishes good cause when she demonstrates that the deadline in the Scheduling Order could not have been met despite diligent efforts.  *Pumpco*, 204 F.R.D. at 668.  A party's delay in performing the necessary pretrial preparation to recognize a claim does not satisfy Rule 16(b)'s good cause standard.  *See Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000).

Rule 15(a) is much more liberal.  Refusing leave to amend "is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive,

7

failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Under Rule 15(a), a general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice. *See, e.g.*, *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Whether to allow amendment or to refuse to allow amendment due to futility is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996); *see also Frank*, 3 F.3d at 1365.

***Exemplary Damages.*** With respect to exemplary damages, however, Rules 15(a)(2) and 16(b)(4) do not apply. Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages. Pursuant to § 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if he establishes prima facie proof of a triable issue. *See* Colo. Rev. Stat. § 13-21-102(1.5)(a). In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure, and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages. *See Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying Colo. Rev. Stat. § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condos. at the Boulders Ass'n*, No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect

8

to Colorado statute in evaluating whether exemplary damages claim is properly brought in diversity action); *see also Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim*, 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)). Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). "Simple negligence cannot support such an award"; rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of [§] 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996).

As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449. Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion

9

of the trial court." *Id.* In reviewing the Motion to Amend, this court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing that the injury complained of is attended by willful and wanton conduct, not whether he will ultimately prevail. *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

## ANALYSIS

In his Motion to Amend, Dr. Coomer argues for leave to further amend his First Amended Complaint to add additional factual allegations that have arisen since the filing of the First Amended Complaint, and to assert a demand for exemplary damages. [Doc. 127]. Specifically, Dr. Coomer contends that since the filing of the First Amended Complaint, Defendants have continued publishing statements that are defamatory in nature. [*Id.*]. Dr. Coomer further contends that these additional defamatory comments are not supported by any facts, and that the "willful and wanton nature of these publications is evident in the fact that Defendants still have no evidence whatsoever to support any of their allegations against Dr. Coomer. [*Id.* at 9]. Defendant object to any amendment to the operative First Amended Complaint, contending that Plaintiff improperly ignores Rule 16(b) and does not attempt to address how the Motion to Amend is timely or supported by good cause. [Doc. 136]. On Reply, Dr. Coomer asserts that he has good cause to amend under both Rules 16(b)(4) and 15(a). [Doc. 140].

### I.     Additional Allegations Regarding Defamation

Dr. Coomer seeks to amend his First Amended Complaint with factual allegations arising after its June 17, 2022, filing and facts culled from discovery. [Doc. 127 at 7]. Specifically, Dr. Coomer contends that statements made or published by Defendants on July 13, 2022; September 7, 2022; September 15, 2022; and March 10, 2023, are additional examples of defamatory comments made by Defendants. [*Id.* at 7–8]. Defendants contend that months have passed since

10

those comments, and Plaintiff's request to amend is untimely both under Rule 16(b)(4) and Rule 15(a). *See* [Doc. 136 at 7].

Upon review of the Motion to Amend, and the proposed Second Amended Complaint and Jury Demand ("Second Amended Complaint"), this Court concludes that Plaintiff's Motion to Amend to include such intervening allegations is "unnecessary." *See Neal v. Aramark Uniform & Career Apparel, LLC*, No. 20-2077-JWB-ADM, 2020 WL 5548809, at *2 (D. Kan. Sept. 16, 2020) (collecting cases). Here, the First Amended Complaint is not subject to a motion to dismiss that tests its sufficiency, the post-litigation allegations are solely factual, and the proposed additions do not encompass new claims or parties, so it is not necessary to amend the pleading to reflect them. *See id.*; *see also Livingston v. City of Chicago*, No. 16 C 10156, 2020 WL 91274, at *4 (N.D. Ill. Jan. 7, 2020) ("Plaintiffs are not required to set out all of the pertinent facts that support their claims in the complaint."). Indeed, as noted by Dr. Coomer, "if Plaintiff had moved to amend immediately after every relevant post-Complaint publication by Defendants, then he would be requesting leave to file his Eighth Amended Complaint, not his Second." [Doc. 140 at ¶ 8]. Such practice is not required by the Federal Rules of Civil Procedure, nor is it an efficient use of this Court's resources, when parties can avail themselves of pretrial discovery:

> The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. <u>Under the prior federal practice, the pre-trial functions of notice-giving issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues.</u> Thus civil trials in the federal courts no longer need be carried on in the

11

> dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 500–01 (1947) (emphasis added and footnotes omitted). To be certain, to the extent that Defendants seek or have sought the identification of the factual bases for Dr. Coomer's claims, Dr. Coomer must identify the facts—including ones that arise or came to light after the July 17, 2022, filing of the First Amended Complaint—in response to discovery requests that are properly framed and served. *Id.*; *see also Mahdy v. Cearley*, No. CIV-13-0852 MV/LAM, 2014 WL 12791277, at *6 (D.N.M. May 2, 2014) (additional facts could "be addressed as needed in discovery and by motion practice as the case moves along"), *report and recommendation adopted*, 2014 WL 12791278 (D.N.M. May 27, 2014).

So long as the factual bases for Dr. Coomer's claims are properly disclosed pretrial, the operative pleading need not be amended each time new evidence emerges related to conduct that restates or otherwise reaffirms the causes of action of defamation, intentional infliction of emotional distress, and civil conspiracy, that have already been adequately pleaded by the First Amended Complaint, i.e., that Defendants have made and promoted statements that Dr. Coomer is responsible for voting machine fraud and tampering that led to the election of President Biden and the defeat of President Trump. Indeed, the purpose of both Rules 8 and 12 of the Federal Rules of Civil Procedure is to give defendants "fair notice" of the causes of action at issue, and the grounds upon which they rest. *See Stanko v. Davis*, 297 F. App'x 746, 748 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a new pleading was required, and if the alleged defamatory conduct was to continue, the Parties and the Court would devote inordinate resources to repeated amendment, which would undermine "the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

12

This, of course, does not exempt Dr. Coomer from providing or supplementing any discovery related to the factual bases for his causes of action. For instance, Rule 26(a)(1) requires—without any formal discovery request—the production of documents that a disclosing party may use to support its claims and that are in its possession, custody, or control. Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26(e) requires initial disclosures, interrogatories, requests for production, and requests for admission to be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

To the extent the Motion to Amend seeks to insert factual allegations related to events in 2022 and 2023 that postdate the filing of the First Amended Complaint, it is unnecessary for the reasons discussed above. However, mindful of Rule 1 of the Federal Rules of Civil Procedure, this Court will accept the tendered Second Amended Complaint. Fed. R. Civ. P. 1. The Motion to Amend is therefore **GRANTED** with respect to Dr. Coomer's intervening-event allegations. Going forward, Plaintiff need not move to amend his pleading to include allegations concerning any intervening events that support existing causes of action.

## II.     Exemplary Damages

To determine whether Dr. Coomer should be permitted to amend his First Amended Complaint to include a demand for exemplary damages, the Court must consider whether the proposed Second Amended Complaint includes sufficient facts, taken as true, to establish a prima facie showing that Defendants acted willfully and/or wantonly. As discussed above, prima facie evidence is that which, unless rebutted, establishes a fact. *See Blatchley v. Cunningham*, No. 15-cv-00460-WYD-NYW, 2017 WL 4333992, at *4 (D. Colo. Mar. 29, 2017). In reviewing Dr.

Coomer's assertions, this Court must view the evidence in the light most favorable to Plaintiff. *See Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *4 (D. Colo. Oct. 27, 2020). The evidence must only be enough for a prima facie showing of willful and wanton behavior, not enough to "defeat a motion for summary judgment or to result in a jury verdict in Plaintiff's favor." *Hendrickson v. Doyle*, No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015). However, this Court is mindful that "awards of punitive damages in defamation cases are not available unless the plaintiff is able to satisfy the stringent requirement of actual malice." *Roberts v. Benson*, No. 21-cv-03029-CMA-NRN, 2023 WL 2569872, at *6 (D. Colo. Mar. 20, 2023), *report and recommendation adopted*, 2023 WL 2813273 (D. Colo. Apr. 5, 2023).

Contrary to Defendants' suggestion that Plaintiff bases his request for exemplary damages on a single email that Mr. Lindell denies reading, [Doc. 136 at 13–14], Dr. Coomer alleges that Defendants have persisted in publishing additional, alleged defamatory statements against Dr. Coomer since the filing of this action and the First Amended Complaint. [Doc. 127 at 9]. Dr. Coomer alleges that, the day after Defendants were originally served with this action through Mr. Lindell, Mr. Lindell stated: "Eric Coomer, you are a criminal. . . . I hear you ran into a building drunk the other day or whatever you were. . . . You've been a part of the biggest crime this world has ever seen." [Doc. 127-1 at ¶ 103]. Dr. Coomer alleges that later, after his deposition in this action, Mr. Lindell stated that he "never read [the lawsuit]," but that he stood by his words that Dr. Coomer was a criminal. [*Id.* at ¶¶ 128–30]. Dr. Coomer also contends that Frankspeech published an interview with Ms. Peters on September 7, 2022, in which Ms. Peters called Dr. Coomer "Antifa," furthering the proposition that Dr. Coomer "bragged on an Antifa call that he was a member of that he would make sure that Trump wouldn't get in." [*Id.* at ¶¶ 119–20]. Dr. Coomer

14

further alleges that, despite allowing these statements on Frankspeech, Mr. Lindell later stated: "I don't even know who Coomer is! I go okay, put it on the pile, this lawsuit. I don't even know how I could bad mouth the guy I didn't know who he was!" [*Id.* at ¶ 126]. Finally, Dr. Coomer alleges that, despite these denials, Mr. Lindell stated: "I stand by my words! I called him a criminal!" [*Id.* at ¶ 129]. In support of each of these allegations, Dr. Coomer cites to source materials. *See generally* [Doc. 127-1]. This Court notes that, in their Response, Defendants do not deny publishing such statements. *See generally* [Doc. 136].

To the extent that Defendants deny Dr. Coomer's allegations about a spreadsheet received by Mr. Lindell containing personal and contact information for Dr. Coomer's relatives, Facebook contacts, and employees, [*id.* at ¶ 111], this Court notes that Defendants' effort to rebut Plaintiff's characterization of the evidence is unavailing, as this Court must consider the evidence in the light most favorable to Plaintiff in determining whether Plaintiff has established a prima facie showing of actual malice. *See Affordify, Inc.*, 2020 WL 6290375, at *4. Similarly, Defendants' arguments that the evidence does not prove injury to Plaintiff, [Doc. 136 at 14], are misplaced at this juncture. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-01301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."). Nor does this Court agree with Defendants that Dr. Coomer is attempting to use *ex post* conduct to establish actual malice; rather, it appears that Dr. Coomer alleges that each of these instances of conduct occurred after Defendants had notice of Dr. Coomer's allegations, but that

15

Defendants continued nonetheless.[5]  In reviewing the proposed Second Amended Complaint as a whole, this Court concludes that Plaintiff has alleged sufficient facts to demonstrate a prima facie showing of actual malice by demonstrating that Defendants continued to publish statements regarding Dr. Coomer and his role in Antifa and/or election fraud without regard to the facts.

Nor is this Court persuaded that there is any prejudice to Defendants with respect to the requested amendment.  The request for exemplary damages cannot be a surprise to Defendants, given the subject matter, tone, and tenor of this action to date.  Nor do Defendants articulate any specific discovery that it requires with the addition of a request for exemplary damages, particularly given that the facts about the alleged malice clearly are within Defendants'—rather than Plaintiff's or any third party's—control.[6]  The Motion to Amend is **GRANTED** with respect to exemplary damages.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion to Leave to File Second Amended Complaint [Doc. 127] is **GRANTED**;

---

[5] Defendants contend that "[a]ny argued willful and wanton conduct that occurred after the injury of defamation cannot be used to show a state of mind for prior defamation as required by *Zerr v. Johnson*, 894 F. Supp. 372, 376 (D. Colo. 1995)." [Doc. 136 at 14].  This Court respectfully finds that *Zerr* does not stand for that proposition.  Instead, the *Zerr* court observed that "[e]arlier acts of kindness do not warrant an inference of bad faith upon occasion of a later, unfavorable comment." 894 F. Supp. at 377 (citing *Hett v. Ploetz*, 121 N.W.2d 270, 274 (Wis. 1963)).  This case does not implicate this principle.

[6] In addition, to the extent that there are new instances of alleged defamatory content that were made or published by Defendants, it is unclear to this Court that Defendants require additional formal discovery to question Mr. Oltmann or Ms. Peters about these statements. [Doc. 136 at 10–11]. However, if Defendants seek further discovery from these individuals, they may meet and confer with Plaintiff and seek leave from the Court, if necessary, to pursue such further discovery.

16

(2)     The Clerk of the Court is **DIRECTED to DOCKET** separately the proposed Second Amended Complaint [Doc. 127-1]; and

(3)     Defendants shall answer the Second Amended Complaint no later than **July 21, 2023**. **No further extensions to this deadline will be granted absent extraordinary circumstances.**

DATED: July 7, 2023                     BY THE COURT:

_____
Nina Y. Wang
United States District Judge