# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

## PLAINTIFF'S MOTION TO SHOW CAUSE
## REGARDING SEPTEMBER 4, 2024 CONTEMPT ORDER

---

"I don't know what is going to happen next. We'll obviously appeal it. But, I might just be the person that they just took out. Who could sustain it? But I'll be damned if I'm going to write a check to that piece of shit, who is a lying scumbag, who has done everything he can to keep everyone silent."

- **Joe Oltmann, Sept. 5, 2024**[1]

---

[1] **Exhibit 1**, Joe Oltmann, *Joe Oltmann with Guest Erin Lee: Gender Ideology – The Epidemic of a Generation*, CONSERVATIVE DAILY PODCAST (September 5, 2024); available at https://caincloud.egnyte.com/fl/R97m5sh77c/20260926_Coomer_Motion_to_Show_Cause_re_Oltmann_ . An USB flash drive will be submitted with all A/V exhibits identified herein as Exs. 1, 5, 6, 7, 15, 16, 17, and 21.

1

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through the undersigned, files this Motion to Show Cause with respect to this Court's Order Overruling Joseph Oltmann's Objection and Adopting As Modified the Magistrate Judge's Recommendation [Dkt. 168] (the Order), and states as follows:

## CERTIFICATE OF CONFERAL

Counsel for Plaintiff first sent the email attached as **Exhibit 2** on September 16, 2024, to counsel for Mr. Oltmann, Mark Sares. After receiving an out of office message indicating that Mr. Sares was on vacation, counsel for Plaintiff called Mr. Sares on Tuesday, September 24, 2024. Counsel for Plaintiff discussed the likely need for another show cause hearing given Mr. Oltmann's public statements about non-compliance and his actual non-compliance (no proposed dates provided for his deposition/document production and no payment of the per diem fine). Mr. Sares stated that he would discuss the matter with his client. Counsel for Plaintiff requested that he respond as soon as possible and that a show cause motion would be filed on Thursday (today) if Mr. Oltmann failed to comply. Earlier today, counsel for Plaintiff sent a follow-up email seeking to confirm Mr. Oltmann's position. No response was received as of this filing despite ten days of attempts to confer.

2

## BACKGROUND

1. The Order required Joseph Oltmann (Mr. Oltmann) to pay Plaintiff a $1,000 per diem fine until he fully and in good faith complies with Judge Starnella's ruling and orders.[2]

2. On September 4, 2024, Plaintiff served a copy of the Order on counsel for Mr. Oltmann as directed.[3]

3. Mr. Oltmann demonstrated his knowledge of the Order through repeated public comments. Beginning the day after the entry of the Order, Mr. Oltmann pledged that he would not comply with the Order.[4] "So you've got an illegal judge," he stated, "a crooked judge that decides to destroy people to be a weapon and an arm for the DOJ, because you know that they were involved in this, who comes in to say, thousand dollars a day."[5] As he often does, Mr. Oltmann went on to assure his audience the next election would also be rigged and to predict widespread political violence as a result.[6] He also expressed his frustration at not being able to find the home addresses of judges.[7]

---

[2] *See* **Exhibit 3**, Order at Section VI, p. 13 [Dkt. 168]

[3] **Exhibit 4**.

[4] **Exhibit 1**.

[5] **Exhibit 5**, Joe Oltmann, *Joe Oltmann with Guest Erin Lee: Gender Ideology – The Epidemic of a Generation*, CONSERVATIVE DAILY PODCAST, (Sept. 5, 2024).

[6] **Exhibit 6**, *Id.*, (Oltmann: "They're setting up the steal, with the same apparatuses that they set it up last time. You're going to see it again. It's going to happen all over again. And they're changing the rules. They're changing the dynamics, and they are desperate. I do believe that the people of this country on both sides of the aisle are going to rise up and November is going to be the start of something very very very very very kinetic.").

[7] **Exhibit 7**, *Id.* (Oltmann: "Did you know that judges actually remove their names from anywhere? That they can literally hide their addresses? As if they don't exist. Scrubbed. They become a protected person. So they believe it for you and I, that it's okay. They can just kill these people with impunity, they can do harm to them, they can bully them, they can just destroy them. They can do all of those things, but them?

3

4. As of the filing of this Motion, Mr. Oltmann has refused to agree to a time, place, and date for his Court-ordered deposition or to produce the Court-ordered documents. And, he has not paid any of the per diem fine.

5. The ordered discovery from Mr. Oltmann is critical. The identities of the individual(s)[8] involved in the alleged Antifa call are essential facts relevant not only to this dispute, but to the very origin of the Dominion Voting Systems conspiracy theory that gave rise to the attack on the U.S. Capitol on January 6, 2021. Where, when, and through whom Mr. Oltmann obtained access to the alleged call and to Dr. Coomer's private Facebook posts is key to further establishing the timeline and falsity of Mr. Oltmann's story. Mr. Oltmann has already admitted under oath that he fabricated the Google search about Dr. Coomer performed after the alleged call when he altered the date of the screenshot of his search.[9] His story about Dr. Coomer has been determined by another court "evasive and not credible" and to be "probably false."[10]

6. By way of excuse, Mr. Oltmann speculates that his testimony on the court-ordered topics and document production will result in harm to the individuals from whom he claims he received information about Dr. Coomer. But, it is Mr. Oltmann who

---

No. Judges are given this veil so that nobody can see where they live or how they live because they trust it so much. This system that they want us to operate under. They'll lie. They are liars.").

[8] The individual Mr. Oltmann has vaguely identified as "RD" is almost certainly a complete fabrication, as is the supposed "Antifa call" to which "RD" allegedly gave Oltmann access. The individual that gave Mr. Oltmann access to Dr. Coomer's private Facebook posts, however, *must* exist.

[9] **Exhibit 8,** Oltmann Depo. Tr. (Dec. 16, 2022) at 294:13-19; *see also* **Exhibit 9**, Google screenshot produced by Oltmann and falsely dated September 26, 2020. The Google "doodle" visible in the top left corner is a unique image commissioned by Google that was only in use on November 11, 2020, two days *after* Oltmann first published his false claims about Dr. Coomer.

[10] **Exhibit 10**, *Coomer v. Donald J. Trump for President, Inc. et al.*, 2020cv34319 (Denver Dist. Ct.) Hearing Tr. July 7, 2021, at 90:25-91:7.

4

makes threats, not Dr. Coomer. Mr. Oltmann has repeatedly made local and national news for calling for the executions of his political rivals, such as Governor Polis[11] and President Biden.[12] As noted in the Complaint, he frequently calls for the executions of his opponents for "treason," including Dr. Coomer, at times onstage and in front of the cameras provided to him by Defendants.[13]

7. The number of public threats made by Mr. Oltmann to this point directed at Dr. Coomer and other "enemies" are too voluminous to catalog here. Dr. Coomer has made no such threats and has no interest in harming witnesses or interfering in the administration of justice. To date, Dr. Coomer has deposed twenty-eight individuals or entities other than Mr. Oltmann in this and related proceedings. No harm has befallen any of those individuals, nor did they endure any threats or harassment in conjunction with their testimony. Dr. Coomer, who has himself voluntarily appeared for five separate depositions in this and other proceedings, has only ever sought to expose the truth. The individual(s) referenced in the Order are the people most capable of demonstrating the falsity of Mr. Oltmann's claims. The suggestion that Dr. Coomer would seek to harm these individuals is completely without merit or evidentiary support.

---

[11] *See* 9 News, *Joe Oltmann 'joking' about hanging political opponents, says CO lawmaker who nominated him for governor* (May 16, 2022), available at https://www.9news.com/video/news/local/next/neville-oltmann-hanging-colorado/73-421bd50a-9b0a-4d91-9adb-8c294f54017c; *see also* Rosalind Helderman, *With violent rhetoric and election denial, podcaster becomes GOP force*, WASHINGTON POST (June 27, 2022), available at https://www.washingtonpost.com/politics/2022/06/27/with-violent-rhetoric-election-denial-podcaster-becomes-gop-force/

[12] *See* Kyle Clark, *DCF Guns owner calls for the killing of President Biden*, 9 NEWS (March 13, 2024), available at https://www.9news.com/article/news/local/next/next-with-kyle-clark/dcf-guns-owner-calls-for-killing-of-president-biden/73-4b636e16-5975-412c-aab3-34a85d580497

[13] *See* Complaint, Dkt. 1, ¶¶ 3, 33, 37, 52-53, 57, 73.

8. As noted, Mr. Oltmann has not paid any of the $1,000 per diem fine to Dr. Coomer. Instead, during the period following the issuance of the Order, Mr. Oltmann has attempted to crowdfund (apparently through his daughter) the $1,000 per diem fine through a GiveSendGo campaign entitled "Defend Joe Oltmann in Fighting Legal Tyranny."[14] The campaign itself reiterates Mr. Oltmann's refusal to abide by the Order, stating that his supposed "source" for the "antifa call," as well as the individual that gave Mr. Oltmann access to Dr. Coomer's Facebook account "will never be identified for their safety." In promoting the fundraiser, Mr. Oltmann has stated that "it is amazing how rotted the judiciary is. I am not fighting Coomer, I am fighting a stacked criminal enterprise that is used as the bully pulpit."[15] As of September 26, 2024, this campaign has raised $14,110 from Mr. Oltmann's supporters.[16]

9. Mr. Oltmann he has more than sufficient financial means to pay the court-ordered sanction himself. Until recently, Mr. Oltmann has publicly boasted about his history as successful businessman. Mr. Oltmann owns shares in businesses such as Shuffling Madness Media (SMM), which owns all or part of Pin Business Network (PBN). PBN engages in advertising services and lists itself on LinkedIn as having 50-200 employees.[17] Mr. Oltmann owns all or part of DCF Guns, the largest gun retailer in

---

[14] **Exhibit 11**, available at givesendgo.com/joeoltmann.

[15] **Exhibit 12** @cdalerts, Twitter, (Sept. 19, 2024). Oltmann has been banned from Twitter numerous times and now utilizes the profile for his podcast, Conservative Daily.

[16] *See* **Exhibit** 11.

[17] **Exhibit 13**.

Colorado.[18]  Mr. Oltmann owns all or part of PiDoxa Technology Solutions, which had a $1.9 mm annual contract with FrankSpeech (owned by Mike Lindell and recently issued a public offering).[19]

10.     However, since being served with the Order, Mr. Oltmann has changed his tune.  On September 5, 2024, Mr. Oltmann claimed during his podcast that he had no money to pay the per diem fine and had only his exempt retirement fund to his name.[20]  Two weeks later, Mr. Oltmann claimed he had been forced out from his position at three of his companies by their respective boards of directors.[21]  In sum, Mr. Oltmann is either publicly misrepresenting his business success or is in the process of transferring assets in an attempt to delay, defraud, or hinder his creditors, including Dr. Coomer.

11.     In any case, the Court's Order is not having its intended effect, and a show cause hearing is necessary to address Mr. Oltmann's ongoing contempt.

**LEGAL STANDARD**

12.     Contempt power may be used whenever a deponent continues refusing to answer a question after being ordered to do so.  FED. R. CIV. P. 37(b)(1).  Moreover, the "[f]ailure by any person without adequate excuse to obey a subpoena served upon that

---

[18] *See* **Exhibit 14**, DCF GUNS – Colorado Springs, Facebook post (March 14, 2024) (referring to "Joe Oltmann, our CEO"; *see also* DCF Guns – About Us, https://www.dcfguns.com/about-us ("DCF Guns is Colorado's largest Gun store and range company.")

[19] *See* **Exhibit 8**, at 207:2-208:19; *see also Coomer v. Lindell et. al.*, 1:22-cv-01129-NYW-SKC (Dist. Ct. Colo.), Plaintiff's Second Amended Complaint and Jury Demand [Dkt. 170], ¶ 118.

[20] **Exhibit 15**, (Oltmann: "Well guess what?  I don't own anything.  I don't even have a bank account.  I have a retirement account.  You can't touch it.  But you've already taken everything you're going to take take.  I will never own anything, and I haven't for years.")

[21] **Exhibit 16**, Joe Oltmann, *Attempted Assassinations = Election Interference from Our Own Government?*, CONSERVATIVE DAILY PODCAST (Sept. 17, 2024) (Oltmann: "Yeah, I was taken out of three of my companies yesterday.  The boards decided that it was better that I not be associated with those companies.  So they asked me to step down.  So it's working.  So I mean I'm going to go broke.")

person may be deemed in contempt of the court from which the subpoena issued." FED. R. CIV. P. 45 (g). Before imposing civil contempt sanctions based upon the violation of a court order, a court only must conclude:

      a.      a valid order existed;

      b.      the alleged contemnor had knowledge of the order; and

      c.      the contemnor disobeyed the order.

*United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008); *see also United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986).

      13.      Civil contempt is characterized by the court's desire to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience. *KCI Auto Auction, Inc. v. Anderson*, 2024 WL 3771780 at *1 (D.Kan. 2024), *citing Ager v. Janice C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980). Sanctions for civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). A district court has broad discretion in using its contempt power to require adherence to court orders." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996). In exercising this discretion, courts may even incarcerate noncompliant parties should the circumstances warrant such extreme action. *See Bagwell*, 512 U.S. at 840-41 (1994) (Scalia, J., concurring) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441-44 (1911)); *see also In re Steele Cattle, Inc.*, 39 F.3d 1192 (table), 1994 WL 596627, at *2 (10th Cir. 1994) (upholding incarceration for civil contempt until debtors complied with reorganization plan).

14. Even incarceration for civil contempt order "is remedial, and for the benefit of the complainant." *Bagwell*, 512 U.S. at 827 (quoting *Gompers*, 221 U.S. at 441)); *see also Armstrong v. Rushton (In re Armstrong)*, 304 B.R. 432, 437 (10th Cir. BAP 2004) ("The distinction between civil and criminal contempt turns on the character and purpose of the sanction.") (further citations and quotations omitted)). Thus, a party incarcerated for civil contempt "carries the keys of his prison in his own pocket" and "can end the sentence and discharge himself at any moment by doing what he had previously refused to do." *Gompers*, 221 U.S. at 442 (further citation and quotations omitted). Once the defendant purges himself of contempt, any continuing imprisonment or sanction crosses the line from remedial contempt to criminal contempt. *See, e.g.*, *Dartez v. Peters*, 759 F. App'x 684, 689–90 (10th Cir. 2018) (distinguishing between civil and criminal contempt). That is because "[t]he primary purpose of a criminal contempt is to punish defiance of a court's judicial authority." *Ager*, 622 F.2d at 499-500; *see also Gompers*, 221 U.S. at 442 (holding criminal contempt does not "undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience").

**ARGUMENT AND REQUESTED RELIEF**

15. All three of the *Ford* elements are met here. *See Ford*, 514 F.3d at 1051. First, the Order is valid under Federal Rules of Civil Procedure 37(b)(1) and 45 (g). Second, Mr. Oltmann was provided a copy of the Order through counsel and has publicly

9

acknowledged receiving it.[22] Third, Mr. Oltmann has publicly and unequivocally expressed his intent not to comply with the Order and has not, in fact, complied.[23]

16. Additionally, Mr. Oltmann has publicly expressed his disdain for the orderly administration of justice and for the judicial system. Like many of his contemporaries, Mr. Oltmann seeks notoriety and national publicity through baseless election fraud claims, bombastic threats, and calls to violence. Mr. Oltmann's claims against Dr. Coomer were picked up by national media outlets, including OAN, Newsmax, and Fox News. OAN has settled with Dr. Coomer. Newsmax issued an on-air apology and retraction to Dr. Coomer in the spring of 2021 based on their determination that Mr. Oltmann's story was not credible. Fox News settled a defamation case brought by Dr. Coomer's former employer Dominion Voting Systems for $787 million. Rudy Guiliani and Sidney Powell publicly defamed Dr. Coomer at their infamous Trump Campaign press conference on November 19, 2020, again based on Mr. Oltmann's claims. And, with respect to this case, Clay Clark repeated Mr. Oltmann's defamatory statements about Dr. Coomer and then allowed him to promote them on stage as part of the ReAwaken America Tour. Mr. Oltmann is not deterred by fines or admonishments. He fund-raises off of them.

17. As a result, more stringent and coercive measures are necessary to ensure compliance. Mr. Oltmann has already paid in excess of $50,000 in sanctions for the same conduct in related proceeding *Coomer v. Donald J. Trump for President, Inc. et. al*. He has publicly indicated his disdain for the Court's inherent powers. The penalties assessed

---

[22] **Exhibit 3**.
[23] **Exhibit 1**.

to this point, though substantial, have failed to alter his conduct in any meaningful way. Instead, Mr. Oltmann is now trying to shift the consequences of his contempt to his supporters to avoid accountability for his actions. He is doing so by mischaracterizing the history of these proceeding and by recasting his past subterfuge by stating his non-compliance is a selfless act necessary to protect individuals who would be attacked by Dr. Coomer or his lawyers. Mr. Oltmann makes these claims even though Judge Starnella had previously ordered that his deposition and documentation to be produced would be considered "Attorneys Eyes Only" under the current protective order. *See* April 4, 2024 Courtroom Minutes [Dkt. 127]. The time for this accommodation, or any accommodation for Mr. Oltmann, has come to an end.

  18. This case has garnered substantial public attention, and a show cause hearing should be open to the public for multiple reasons. First, Mr. Oltmann has consistently misrepresented the course of proceedings in this and related cases to his audience. For example, after fleeing his deposition on June 6, 2024, Mr. Oltmann immediately published easily disproven lies about the questioning that had occurred in his deposition.[24] He did so after his counsel requested the courtroom be cleared for the hearing with Judge Starnella. He did so after his counsel also requested that the associated transcript be kept under seal. Mr. Oltmann is likely to again exploit a closed hearing and publicly misrepresent what occurs there.

---

[24] *See, e.g.*, Plaintiff's Supplemental Filing Regarding June 6, 2024 Hearing, pp. 8-9 (wherein Oltmann lied about questions relating to Joey Camp, the individual who likely made up the "antifa call" story in the first place.) [Dkt. 143].

11

19. Mr. Oltmann regularly lies to his audience about these legal proceedings to create the false impression that he has been treated unfairly or without due process. He then uses those lies to undermine faith in the rule of law and to inspire animosity against the judiciary as a whole. Keeping this hearing open to the public is an essential measure necessary to combat these pernicious motivations.

20. As one example, while complaining about the present Order, Mr. Oltmann claimed that expedited discovery under the anti-SLAPP statute, C.R.S. § 13-20-1101(6) was improperly ordered against him in the Denver District Court. He claimed "they had the governor actually appoint a judge . . . who ignores a 20-year seasoned judge, tells the defense, or Coomer's lawyers, here you go. Send me a notice to reconsider this decision that was just made by a judge, who was on the bench for twenty years."[25] This is a false description of those proceedings that Mr. Oltmann has been repeating to his audience for years. In reality, Judge Johnson issued an order granting discovery under the anti-SLAPP statute against one defendant in that proceeding, Eric Metaxas.[26] Judge Johnson was then transferred to another division, and Judge Rapaport, the "twenty year judge," served as an interim judge for just three weeks. During that time, she issued an order denying expedited discovery as to the other defendants,[27] apparently without knowledge of Judge Johnson's pre-existing minute order issued from the bench. When Judge Moses took over, she immediately *had to* address this inconsistent treatment of defendants, and

---

[25] **Exhibit 17**.

[26] **Exhibit 18**, *Coomer v. Donald J. Trump for President, Inc. et al.*, 2020cv034319, Minute Order (Mar. 9, 2021).

[27] **Exhibit 19**, *Id.*, Order Re: Plaintiff's Motion for Expedited Discovery to Aid in Responding to Defendants' Special Motions to Dismiss (May 21, 2021).

invited arguments *from all parties* to determine whether Judge Johnson's pre-existing order or Judge Rapaport's intervening order would control.[28] By omitting the fact that expedited discovery was *first* granted by Judge Johnson, who had presided over the entirety of the case up to that point, Mr. Oltmann tries to convince his audience something improper occurred. This type of mischaracterization is a consistent feature of Mr. Oltmann's public statements on these proceedings.

21. Mr. Oltmann also misrepresents events that have occurred to create the false impression that Dr. Coomer is acting in bad faith. For example, in the same September 5, 2024 outburst, he stated, "Here's how I knew that they knew that I knew that they knew which call Eric Coomer was on. Because they ran and got an affidavit. They ran and got an affidavit from Tay Anderson, who was on the call."[29] This is not what occurred. In reality, Mr. Oltmann was ordered to disclose the notes he supposedly took during the "antifa call."[30] He produced those following a hearing with the Court on July 7, 2021. The notes explicitly reference someone named "Tay".[31] At the time, former Denver School Board member Tay Anderson was a prominent figure in Denver politics, and Plaintiff reached out to him to see if he had any records of a call occurring on September 26.[32] Dr. Coomer then discovered that Mr. Anderson did have records of a call

---

[28] **Exhibit 20**, *Id.*, Order Regarding Reconsideration of Plaintiff's Motions for Expedited Discovery to Aid in Responding to Defendants' Special Motions to Dismiss (June 8, 2021).

[29] **Exhibit 21**.

[30] **Exhibit 22**, *Coomer v. Donald J. Trump for President, Inc. et al.*, 2020cv34319 (Denver Dist. Ct.), Hearing Transcript (July 15, 2021), 58:10-18.

[31] **Exhibit 23**, p. 3 ("Tay? This guy is Antifa??"). To be clear, there is no evidence to support the proposition that Exhibit 20 was actually created at the time of the alleged call as Oltmann has claimed.

[32] This was before the fabrication of the alleged "09/26/2020" screenshot was revealed.

13

that occurred on September 26 to discuss a local provocateur named Joey Camp, specifically in response to events that occurred on September 23.[33] He then provided a sworn affidavit confirming that Dr. Coomer was not on that call and that he has never met or heard of him.[34] After finding out that Mr. Anderson had produced an affidavit denying Dr. Coomer's presence on the call, Mr. Oltmann then changed his story, alleging for the first time that the call had actually occurred a week before.[35] In sum, it was Mr. Oltmann's own disclosures that led Dr. Coomer to Mr. Anderson, who denied any knowledge of Dr. Coomer. Without Mr. Oltmann's disclosure, Dr. Coomer never would have had any reason to reach out to him. Thereafter, Mr. Oltmann affirmatively denied that the Anderson affidavit was in relation to the alleged call, which he now asserts occurred a week prior to his various sworn affirmation it happened on September 26, and in fact a week prior to the events leading Anderson to conduct a call relating to Mr. Camp in the first place. And now he is lying to his audience about what occurred in an effort to impugn Dr. Coomer and the Court.[36]

22.     Accordingly, a public hearing is essential in this case to ensure that the arguments and testimony are witnessed by multiple third parties, including and especially

---

[33] **Exhibit 24**, *Coomer v. Donald J. Trump for President, Inc. et al.*, 2020cv34319 (Denver Dist. Ct.), Declaration of Auontai Anderson (Sep. 1, 2021), ¶¶ 8-10. Mr. Oltmann's alleged notes even reference Mr. Camp on multiple occasions. *See* **Exhibit 23**, p. 4. Mr. Camp's involvement in the facts of this case is notably inescapable.

[34] **Exhibit 24**, ¶¶ 11-14.

[35] Just prior to the anti-SLAPP hearing in *Coomer v. Donald J. Trump for President, Inc. et al.*, Mr. Oltmann disclosed an affidavit from his friend John "Tig" Tiegen that placed the call sometime between September 17-21, 2020. **Exhibit 24**, ¶¶ 12-14. This is notably at odds with Mr. Oltmann's sworn affidavit claiming the call happened on September 26, and the fabricated Google screenshot alleging the same.

[36] **Exhibit 21**.

Mr. Oltmann's own supporters. The hearing should provide counsel for both Dr. Coomer and Mr. Oltmann an opportunity to explain (or deny) the significance of the discovery sought, and to address Mr. Oltmann's claimed concerns that his alleged "sources" would somehow be in danger if he complied with the Order. Mr. Oltmann should be called as a witness to show cause why he should not be held in contempt.

23. In conclusion, Dr. Coomer requests the following relief:

a. that Mr. Oltmann be ordered to appear before Your Honor to show cause why he should not be held in contempt of the current Order attached hereto as **Exhibit 3**;
b. that Mr. Oltmann be ordered to produce the previously ordered documents at the show cause hearing and to testify in court before Your Honor on matters related to the Order;
c. that Mr. Oltmann be ordered to bring all sums due and owing as of the date of the show cause hearing and tender such funds to counsel for Plaintiff through his counsel;
d. that the show cause hearing be conducted in open court and the prior rulings and protective order be modified accordingly;
e. that should Mr. Oltmann fail to appear at the hearing, a Writ of Body Attachment be issued for his arrest; and
f. that should Mr. Oltmann appear but refuse to comply with the Order, he be incarcerated until he purges his contempt.

24. Finally, Dr. Coomer requests authorization to serve the requested show cause order on Mr. Oltmann both through his counsel and, additionally, through the United States Marshall's Office with actual notice through either means, or both, deemed to be consistent with Mr. Oltmann's right to due process.

Respectfully submitted this 26th day of September 2024.

      */s/ Bradley A. Kloewer*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**