IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

**EXHIBIT 3**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-3440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, doing business as ThriveTime Show,
CLAYTON THOMAS CLARK, individually, and
REOPEN AMERICA LLC, doing business as ReAwaken America Tour,

    Defendants.

---

**ORDER OVERRULING JOSEPH OLTMANN'S OBJECTIONS AND
ADOPTING AS MODIFIED THE MAGISTRATE JUDGE'S RECOMMENDATION**

---

Before the Court is non-party Joseph Oltmann's ("Oltmann") objections (ECF No. 145) to the recommendation of United State Magistrate Judge Kathryn A. Starnella (the "Recommendation"), in which she certifies facts to the undersigned regarding Oltmann's failure to comply with her orders that he testify under oath pursuant to a subpoena and submit to a deposition in her jury room.  (ECF No. 144 at 4–5.)  Judge Starnella recommends that the Court find Oltmann to be in civil contempt and, accordingly, to (1) "issue an order requiring [Oltmann] to appear and show cause why he should not be found in contempt of court"; (2) sanction Oltmann "in an amount of the fees the parties directly incurred because of [his] noncompliance"; (3) impose "a monetary sanction in the amount of $300 per day . . . until [he] complies with the subpoena and [her]" rulings; and (4) permit Coomer "to serve any Order to Show Cause on Attorney Mark A. Sares, counsel for Mr. Oltmann."  (*Id.* at 4–5, 18.)

Based on the certified facts, the Court finds Oltmann to be in civil contempt of Court—and because this finding is based on undisputed, material facts, the Court finds that it need not set a hearing for Oltmann to show cause as to why sanctions should not be entered for his civil contempt. The Court adopts the Recommendation in full with one modification: effective upon service of this Order, the Court imposes a monetary sanction in the amount of $1,000 per day until Oltmann complies with Judge Starnella's rulings and orders, as discussed more fully below.

## I.     GENERAL BACKGROUND

The parties are presumed to be familiar with the underlying facts of this case by way of, among other sources, the Court's Order denying Defendants' Special Motion to Dismiss and Motion to Strike (ECF No. 45), the Tenth Circuit's opinion dismissing Defendants' appeal of that Order (ECF No. 131), and the detailed recitation of the facts material to this Order set forth in the Recommendation (ECF No. 144). The Court incorporates by reference that pertinent factual background here.

## II.     THE CERTIFIED FACTS

In February 2024, Oltmann was served with a Subpoena to Testify at a Deposition in a Civil Action and Produce Documents. (ECF No. 114-1 at 2.) The subpoena requested production of the following documents:

> 1. All communications between September 1, 2020 and the present between you and the individual(s) you identified as "RD" who you have claimed provided you access to the alleged "Antifa call" including, but not limited to, all emails, text messages, and voice messages.
>
> 2. All communications between June 1, 2020 and the present between you and the individual(s) who provided you access to Dr. Coomer's private Facebook account.

2

3. All contemporaneous evidence you collected at the time of the alleged "Antifa call" including, but not limited to, any audio recording of the call, any video recording of the call, any list of participants on the call, and any notes taken during or immediately after the call.

4. All communications written, sent, or received by you between November 1, 2020 and the present between you and Clay Clark regarding Dr. Coomer, your allegations regarding Dr. Coomer's alleged attendance on the "Antifa call", Mike Flynn, election fraud issues, the ReAwaken America Tour, attendance at Tour events, and any financial relationship with the Tour.

5. All communications written, sent, or received by you between November 1, 2020 and the present between you and Make Your Life Epic LLC dba Thrivetime Show or anyone acting on its behalf, on topics relating to Dr. Coomer, your allegations about Dr. Coomer's alleged attendance on the "Antifa call," Mike Flynn, election fraud issues, the ReAwaken America Tour, attendance at Tour events, and any financial relationship with the Tour.

6. All communications written, sent, or received by you between November 1, 2020 and the present between you and ReOpen America LLC dba ReAwaken America Tour or anyone acting on its behalf on topics relating to Dr. Coomer, your allegations about Dr. Coomer's alleged attendance on the "Antifa call," Mike Flynn, election fraud issues, the ReAwaken America Tour, attendance at Tour events, and any financial relationship with the Tour.

7. Any notes you created for Randy Corporon providing information on the alleged "Antifa call," as described in your December 16, 2022 sworn testimony in related proceeding Coomer v. Lindell, et. al., (see Exhibit 1, at 303:19-304:4) including, but not limited to, the notes you read from on CONSERVATIVE DAILY podcast on November 9, 2020.

(*Id.* at 8.)

Oltmann moved to quash the subpoena in its entirety (ECF No. 114), which Judge Starnella denied, instead ordering him to produce the documents, and more

specifically, the following:

- "Communications between [Mr. Oltmann] and the individual identified as "RD" from December 1, 2022, to the present. These communications include but are not limited to all emails, text messages and voice messages." (RFP No. 1).

- "[A]ll communications between June 1, 2020, to the present between himself and the individual(s) who provided him with access to Dr. Coomer's private Facebook account. The identities shall be designated as highly confidential, attorneys' eyes only." (RFP No. 2).

- "[A]ll contemporaneous evidence he collected at the time of the alleged 'Antifa call' including, but not limited to, any audio recording of the call, any video recording of the call, any list of participants on the call, and any notes taken during or immediately after the call." (RFP No. 3).

- "[T]he 'Antifa call notes' which Mr. Oltmann prepared and from which he read on the November 9, 2020 CONSERVATIVE DAILY podcast, and which he sent to attorney Randy Corporon." (RFP No. 7).

(ECF No. 127.)  Judge Starnella also ordered Oltmann to appear for a deposition in her jury deliberation room on June 6, 2024, at 9:00 a.m.  (ECF No. 135 at 1.)  Oltmann appeared with his counsel, Mark Sares, but he did not bring with him any documents related to the records request numbers 1, 2, or 7.  (ECF No. 144 at 6–7.)

The deposition proceeded from approximately 9:30 a.m. to 12:00 p.m., during which time Oltmann refused to answer questions about who enabled him to attend the alleged "Antifa call."  (*Id.* at 7.)  After a morning recess, Coomer's counsel excused Coomer and another party from the room "to facilitate questioning about who provided Mr. Oltmann access to Dr. Coomer's private Facebook account . . . ."  (*Id.*)  But Oltmann repeatedly refused to answer how he obtained access to Coomer's Facebook account, even after Coomer's counsel reminded him of Judge Starnella's order requiring him to

4

disclose this information.  (*Id.* at 8.)

Coomer's counsel asked for a break to allow Sares to advise Oltmann.  (*Id.*)  About 35 minutes later, Coomer's counsel interrupted their discussion and said he "wished to have all counsel meet with [Judge Starnella] in her chambers."  (*Id.*)  During that meeting, Judge Starnella directed Sares to confer with Oltmann "for 20 minutes to cajole his compliance with the Court's April 8, 2024 Order."  (*Id.*)  Coomer's counsel returned to the jury deliberation room to wait for Sares's and Oltmann's 20-minute meeting to conclude, sometime after which he learned that Oltmann had left the courthouse without being released from his subpoena, and without the knowledge or leave of Judge Starnella, the parties, or counsel.  (*Id.*)

### III.     THE RECOMMENDATION

In addition to these certified facts, Judge Starnella observed that Coomer submitted a supplemental filing the day after Oltmann's deposition, asserting that, "within three hours of Mr. Oltmann's abrupt, unauthorized departure, Mr. Oltmann allegedly appeared on the CONSERVATIVE DAILY podcast from his home to boast about his actions."  (ECF No. 143.)  Oltmann acknowledged on his podcast Judge Starnella's order requiring him to appear for his deposition, described his refusal to comply, referred to the court proceedings as "lawfare" and "weapon[ized]," acknowledged that he might be jailed for his noncompliance, disparaged Judge Starnella and Coomer's counsel, "articulated purported falsehoods, and suggested violence against anyone who forces him to divulge who provided him with access to Dr. Coomer's private Facebook account."  (ECF No. 144 at 9.)

Judge Starnella then took judicial notice of various cases in which Oltmann has

5

refused to "comply with court orders requiring him to disclose information to support his allegations about Plaintiff Coomer." (*Id.* at 10 (citing *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, No. 2020cv034319 (Denver Dist. Ct.) and *Eric Coomer v. Joseph Oltmann, et al.*, No. 2021CA1481 (Colo. App.)).) Moreover, she observed, "[o]n February 22, 2022, the Colorado Court of Appeals awarded Dr. Coomer reasonable attorney fees and costs when it dismissed Mr. Oltmann's appeal of the Denver District Court's August 29, 2021 order imposing sanctions related to depositions, including Mr. Oltmann's non-appearance at his deposition." (*Id.* at 11 (citing *Coomer v. Oltmann, et al. Order* [#116-8] at 2).) Finally, Judge Starnella took "judicial notice of proceedings pending in this District; namely, *Coomer v. Lindell, et al.*, No. 22-cv-01129-NYW-SBP," in which case "the District Judge rejected Mr. Oltmann's attempt to avoid obeying a subpoena duces tecum and ordered Mr. Oltmann to appear for his deposition in the U.S. District Courthouse at 9 a.m. MST on Friday, December 16, 2022." (*Id.* (citing *Coomer v. Lindell Minute Order* [#116-12] at 2-3).)

Noting that "Magistrate Judges have limited contempt authority," Judge Starnella explained that she was required, as the magistrate judge in the referral role in this action, to "certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." (*Id.* at 13 (quoting 28 U.S.C. § 636(b)(e)(6) (internal quotation marks omitted)).)

Based on the foregoing certified facts—specifically, that (1) Oltmann refused to

6

answer questions about who enabled him to attend the alleged "Antifa call" or "how he obtained access to Dr. Coomer's private Facebook account" and (2) Oltmann "abandoned his deposition and departed the courthouse without court authorization and in the absence of release from the duly served subpoena"—Judge Starnella found "there is clear and convincing evidence that Mr. Oltmann violated the Court's Orders and failed to obey the subpoena." (*Id.* at 13–14.)  As a result, she recommended that the Court (1) "issue an order requiring [Oltmann] to appear and show cause why he should not be found in [civil] contempt of court"; (2) sanction Oltmann "in an amount of the fees the parties directly incurred because of [his] noncompliance"; (3) impose "a monetary sanction in the amount of $300 per day . . . until [he] complies with the subpoena and [her]" rulings; and (4) permit Coomer "to serve any Order to Show Cause on Attorney Mark A. Sares, counsel for Mr. Oltmann." (*Id.* at 17–18.)

Oltmann filed objections to the Recommendation, to which Coomer filed a response.  (ECF Nos. 145, 150.)

## IV.     PERTINENT PRINCIPLES

In considering objections to a non-dispositive ruling or recommendation issued by a Magistrate Judge, such as the Recommendation at issue here, the Court must adopt the Magistrate Judge's ruling unless it finds that the ruling is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847

F.2d 1458, 1464 (10th Cir. 1988).  The "contrary to law" standard permits "plenary review as to matters of law," 12 Charles Alan Wright, Arthur R. Miller, Richard L. Cooper, Federal Practice and Procedure § 3069, at 355 (2d ed. 1997), but the Court will overrule a Magistrate Judge's recommendation only if the judge applied the wrong legal standard or applied the appropriate legal standard incorrectly.  *See Wyoming v. United States Dep't of Agriculture*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002).  "Because a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if his discretion is abused."  *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996); *see also* Wright *et al., supra*, at 350 (noting that the "contrary to law" standard appears to invite plenary review but noting that "many matters . . . might be better characterized as suitable for an abuse-of-discretion analysis.").

Rule 45(g) of the Federal Rules of Civil Procedure permits a subpoena-issuing court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Similarly, Rule 37(b)(1) authorizes a court to treat as contempt of court a deponent's failure to obey a court order that the deponent "be sworn or . . . answer a question[.]"  Federal courts also have inherent power to enforce compliance with their lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  An order of civil contempt must be supported by clear and convincing evidence showing that (1) a valid order existed, (2) the alleged contemnor had knowledge of the order, and (3) the alleged contemnor disobeyed the order.  *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008). Once that showing has been made, the burden shifts to the alleged contemnor to show

8

either that it complied with the order or that it could not comply. *Id.*

Civil contempt has a remedial, rather than a punitive, objective. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994). Thus, civil contempt sanctions may be imposed only (1) to compel or coerce obedience to a court order; or (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018). Within these parameters, a district court "enjoys broad discretion" in exercising its power to impose civil contempt sanctions. *Id.*

When evaluating potential coercive sanctions for civil contempt, a court should consider both the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in compelling compliance with its order. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)). Sanctions may include a coercive daily fine, coercive incarceration, or any other sanction that puts "the keys of [the contemnor's] prison in his own pocket," *i.e.*, that enables the contemnor to immediately end the sanction by complying with the court order. *Bagwell*, 512 U.S. at 828-29; *accord Acosta*, 884 F.3d at 1239. The sanction imposed should be no greater than necessary to achieve compliance. *Ad-X Int'l, Inc. v. Kolbjornsen*, 2008 WL 5101304, at *5 (D. Colo. Nov. 26, 2008); *accord Shillitani*, 384 U.S. at 371 (Courts should exercise "[t]he least possible power adequate to the end proposed.").

## V.   ANALYSIS

The Court has reviewed the facts certified by Judge Starnella in the

Recommendation, and in doing so, finds under any standard of review that they are consistent with the record in this case.  Notably, Oltmann does not dispute the material facts certified in the Recommendation, nor does he ask for an evidentiary hearing.[1] That is, he does not dispute that he repeatedly refused to answer Coomer's questions about the identity of the person(s) who gave him access to the alleged "Antifa call" and Coomer's private Facebook account, nor that he left the deposition without authorization or being released from his subpoena.  Instead, he merely contests the certified facts that (1) Oltmann did not bring with him the documents listed in the subpoena duces tecum; (2) Sares met with Oltmann for about 20 minutes before Oltmann left the courthouse; and (3) Oltmann "articulated purported falsehoods, and suggested violence against anyone who forces him to divulge who provided him with access to Dr. Coomer's private Facebook account."  (ECF No. 145 at 1–3.)

But these facts are not material or relevant to Judge Starnella's recommendation that the Court find him to be in civil contempt for his failure to comply with her orders.  As a result, the Court need not hold an evidentiary hearing for Oltmann to show cause why sanctions should not be imposed upon him for such contempt.  *See Wyoming v. Livingston*, 443 F.3d 1211, 1224 (10th Cir. 2006) ("There is no need for a court to hold an evidentiary hearing in a matter when there are no material facts in dispute."); *Luo v. Wang*, 2023 WL 8613862, *4 (10th Cir. 2023) (rejecting challenge to district court's decision not to hold a hearing on civil contempt finding where "most of these disputes

---

[1] It is not entirely clear to the Court whether Oltmann even objects to Judge Starnella's civil contempt Recommendation.  Indeed, he merely asks the Court to "modify and/or set aside the findings to which he has objected above as 'erroneous' or 'contrary to law.'" (ECF No. 145 at 3.)  But, as explained, these facts are not germane to Judge Starnella's bottom-line recommendation.

10

did not concern the events of [the contemnor's] direct contempt"); *Lincoln Nat'l Life Ins. Co. v. Marchiol*, 2013 WL 673990, at *2 (D. Colo. Feb. 22, 2013) (declining to hold a contempt hearing where no relevant facts were in dispute); *Silva v. Coast to Coast Fin. Sol., Inc.*, 2020 WL 9432701, at *3 (D. Colo. Feb. 10, 2020) (same).

Based on the material certified facts, the Court finds that a prima facie case of civil contempt has been established by clear and convincing evidence. First, there is no dispute that Judge Starnella's orders that Oltmann attend the deposition and answer the aforementioned questions were valid orders. Second, there is no dispute that Oltmann knew about the orders. On the contrary, Oltmann explicitly acknowledged during his deposition and his podcast later that day that he knew about the orders but refused to comply with them, even though he was aware he might be jailed for his noncompliance. (ECF No. 144 at 9.) Third, there is no dispute that Oltmann disobeyed these orders. In his words, he did so because the court proceedings are "lawfare" and "weapon[ized]." (*Id.*) Consequently, the Court overrules Oltmann's objections in their entirety and adopts the Recommendation that Oltmann be found in contempt of court.[2]

Next, the Court must fashion an appropriate sanction. Judge Starnella recommends that the Court order Oltmann to pay "in an amount of the fees the parties directly incurred because of [his] noncompliance" and "a monetary sanction in the amount of $300 per day . . . until [he] complies with the subpoena and [her]" rulings. (ECF No. 144 at 17–18.) She also recommends that the Court permit Coomer "to

---

[2] The Court concludes that, because Oltmann has failed to raise any argument challenging the facts material to Judge Starnella's civil contempt recommendation, any such argument is waived. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

11

serve any Order to Show Cause on Attorney Mark A. Sares, counsel for Mr. Oltmann." (*Id.*)

The Court finds that, while these recommended sanctions are fully warranted under these circumstances, given Oltmann's conduct in recent years in this and other actions pending in this state, their "probable effectiveness" can quite reasonably be questioned. *O'Connor*, 972 F.2d at 1211. As the Recommendation notes, Oltmann has repeatedly flouted orders—not only in this case, but in others as well—requiring him to answer questions pertaining to who gave him access to the alleged "Antifa call" and Coomer's private Facebook account. What's more, he has boasted about it. (ECF No. 144 at 10 (citing *Eric Coomer v. Donald J. Trump for President, Inc., et al.*, No. 2020cv034319 (Denver Dist. Ct.) and *Eric Coomer v. Joseph Oltmann, et al.*, No. 2021CA1481 (Colo. App.)).)

Under these circumstances, the Court is of the view that a daily fine in the amount of $300 will not likely get Oltmann's full and complete attention. The Court finds instead that a $1,000 daily fine is far more likely—and no greater than necessary, *Shillitani*, 384 U.S. at 371, at least for now—to compel compliance with Judge Starnella's rulings and orders.[3] *O'Connor,* 972 F.2d at 1211 (instructing courts to consider the likelihood that the sanction will be effective when determining what

---

[3] The Court is mindful that, in determining the amount of a coercive fine, the Court must "consider the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to [the contemnor]." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)). But here, the Court sees little record evidence of Oltmann's financial resources, other than an assertion by Coomer that Oltmann has already paid $53,671.14 in sanctions in other courts and that he "frequently boasts of his wealth and comfortable lifestyle." (ECF No. 150 at 3 n.5; 10.) In the absence of more information and any argument from Oltmann on this issue, the Court considers the little it has to work with and exercises its judgment to impose the $1,000 daily sanction.

sanction to impose).

For all these reasons, the Court overrules Oltmann's objections and adopts the Recommendation as modified above.

## VI.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation (ECF No. 144) is ADOPTED AS MODIFIED;

2. Oltmann's objections (ECF No. 145) are OVERRULED;

3. Oltmann must pay the attorney's fees and costs the parties directly incurred as a result of his noncompliance with Judge Starnella's rulings and orders;

4. Oltmann must pay to Coomer $1,000 per day from the date of service of this Order until he fully and in good faith complies with Judge Starnella's rulings and orders, as set forth above; and

5. Pursuant to the Court's inherent authority to manage its docket to achieve the orderly and expeditious disposition of matters before it, Coomer may effect alternate service of this Order on Attorney Mark A. Sares, counsel for Oltmann, which shall operate for all legal purposes as service on Oltmann personally.

Dated this 4th day of September, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge