# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,
*Plaintiff*

v.

MAKE YOUR LIFE EPIC, LLC, *et al.*,
*Defendants*

---

### RESPONSE TO PLAINTIFF'S MOTION TO SHOW CAUSE REGARDING SEPTEMBER 4, 2024 CONTEMPT ORDER

---

Non-party, Mr. Joseph Oltmann, through undersigned counsel, hereby responds to the "Plaintiff's Motion to Show Cause Regarding September 4, 2024 Contempt Order" [Plaintiff's Motion] as follows:

Plaintiffs motion specifically seeks the following relief:

1. that Mr. Oltmann be ordered to appear before District Court judge Martinez to show cause why he should not be held in contempt of the Court's September 4, 2024 "Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendations"[1] ["Sanctions Order"] adopting the recommendations of Magistrate Starnella, as modified for sanctions currently against him;

2. that Mr. Oltman be ordered to produce documents and testify in open court regarding "matters related to the Order. [Plaintiff does not identify "the matters"] – but presumably,

---

[1] Case No. 1:21-cv-03440-WJM-KAS Document 168 filed 09/04/24 USDC Colorado

{01983805.1}1

    meaning testify to the identify the persons who gave Mr. Oltmann access to the Antifa Zoom call and access to Coomer's Facebook page;

3. if he appears, and refuses to comply with the Order, that he be incarcerated;
4. if he does not appear to the show cause hearing, that a Writ of Body Attachment be issued for his arrest;
5. that Mr. Oltmann be ordered to bring all sums claimed by Coomer's counsel pursuant to the Order and tender the funds to Plaintiffs' counsel;

    Mr. Oltmann intends to appeal the Sanctions Order and further to request a stay of the enforcement of the Sanctions Order pending appeal.  Mr. Oltmann has genuine journalistic credentials in his Conservative Daily programing and he wants to protect his rights to non-disclosure of confidential sources.  *See* Affidavit of Joe Mr. Oltmann, attached hereto, ¶¶3 through 17.   It is correct that Mr. Oltmann has not agreed to a time place and date for a continued June 6, 2024 deposition.  But Mr. Oltmann acknowledges the court's order of the fines and sanctions against him and is intending to pay his fines – although reserving his rights to dispute their propriety/legality, and the amount of fines and attorneys' fees and costs claimed – but he is only able to pay as funds are available.  Mr. Oltmann lives in Texas, *see* Affidavit of Joe Mr. Oltmann, attached hereto, ¶28, and had previously requested that his June 6, 2024 deposition take place by Zoom or Web Ex audio video communication.  Mr. Oltmann further requests that if the court should order a "show cause" hearing that he be permitted to attend any hearing in this case by Zoom or Web Ex.

RE: DOCUMENTS

Plaintiff incorrectly states that Mr. Oltmann failed to produce the subpoenaed documents subject to the Magistrate Judge's Order Re: Hearing of April 8, 2024 [ECF No. 127] denying Objection to Subpoena and Motion for Protective Order [#114].  As set forth in Joseph Oltmann's Reply to Plaintiffs' Response to the Objection to Subpoena and Motion for Protective Order [ECF No. 122] ["Protective Order Reply"][2], the documents in the possession of Joseph Oltmann that were requested in Coomer's subpoena[3] in this case (other than those specific to the present case against the ReOpen America, Make Your Life Epic and Clark defendants) were already the subject of discovery and were produced by non-party Mr. Oltmann to the extent he possessed responsive documents.  See Exhibit D, Protective Order Reply, p. 2-6.  The previous production by Mr. Oltmann included the documents referenced by the Sanctions Order of Judge Martinez regarding the following materials; with the exception of the last item – the notes from which Oltmann read on the November 9, 202 Conservative Daily podcast that were sent to Randy Corporon – which Oltmann cannot locate.    See Affidavit of Joe Mr. Oltmann, ¶20, that he is prepared to testify to and cooperate in production of materials that are not privileged.

- "Communications between [Mr. Oltmann] and the individual identified as "RD" from December 1, 2022, to the present. These communications include but are not limited to all emails, text messages and voice messages." (RFP No. 1).

- "[A]ll communications between June 1, 2020, to the present between himself and the individual(s) who provided him with access to Dr. Coomer's private Facebook account. The identities shall be designated as highly confidential, attorneys' eyes only." (RFP No. 2).

- "[A]ll contemporaneous evidence he collected at the time of the alleged 'Antifa call' including, but not limited to, any audio recording of the call, any video

---

[2]  filed 03/26/24, Case No. 1:21-cv-03440-WJM-KAS
[3] [ECF No. 114-1 at 2]. Subpoena to Testify at a Deposition in a Civil Action and Produce Documents.

recording of the call, any list of participants on the call, and any notes taken during or immediately after the call." (RFP No. 3).

• "[T]he 'Antifa call notes' which Mr. Oltmann prepared and from which he read on the November 9, 2020 CONSERVATIVE DAILY podcast, and which he sent to attorney Randy Corporon." (RFP No. 7).

Sanctions Order, p.4. As stated in the Protective Order Reply brief Mr. Oltmann's position is that "The Subpoena's request for documents at page 5, Request Nos. 1, 2, 3 and 7 are repetitive requests for production. Specifically, when compared to the above discovery in the DDC case and the *Lindell* case, Coomer's requests are duplicative of the discovery already proffered and completed by Coomer in the DDC case and the *Lindell* case." Protective Order Reply, p.6.

In email correspondence, on April 26, 2024, undersigned counsel forwarded to counsel for Coomer the subpoenaed documents that were requested from Mr. Oltmann and specific to the present case (Subpoena request Nos. 4, 5, and 6) in relation to Clay Clark, Make Your Life Epic LLC and ReOpen America LLC. *See* Exhibit A. Produced were 537 pages in three documents.

Prior to that email producing those case-specific documents responsive to the subpoena, undersigned counsel communicated with Coomer's counsel about the other subpoenaed requests for production. Counsel for Coomer was informed that subpoena request nos. 1, 2 and 3 appeared to have been previously disclosed in the Denver District Court case. *See* Exhibit B, February 14, 2024 email to Charlie Cain. Counsel for Coomer did not respond by stating what he believed to be documents that remained un-produced.

RE: IDENTIFY OF PERSONS

Mr. Oltmann has maintained that he has a right to protect the identity of the person who gave him access to the Antifa call as it is known. Mr. Oltmann has consistently maintained that this protection of that person was necessary because of a distinct and reasoned belief that he

would be subject to harm from radical Antifa adherents.  *See* Affidavit of Joe Mr. Oltmann, attached hereto, ¶¶27 and 28.  Mr. Oltmann as maintained this right to protect the individual that is referred to as "RD" linking it to a journalist's privilege for his reporting on the Conservative Daily podcast.

   Specifically, Mr. Oltmann reminded counsel for Coomer of this assertion of privilege in the deposition of June 6, 2024. *See* Exhibit C, pages 61, line 4, and 64 (June 6, 2024 transcript of the deposition from which Mr. Oltmann left).

>     PAGE 61   Q    Well, that's the only person in the world who can corroborate your story, isn't it, Mr. Oltmann?
>       A    It's also the only person that they could just put a bullet in, but that wouldn't happen either because with radical F, would it?
>       Q    Mr. Oltmann, multiple witnesses have been identified throughout the litigation in this case and no one has been physically harmed.
>       A    I live in a house with bullet proof glass and thermal cameras.
>       Q    That's a choice that you made, Mr. Oltmann.
>       A    It's a choice that I made by doing -- by doing what?  Giving up the ability to run a successful business?  All for what?
>       Q    What evidence do you have --
>       A    All for what?
>       Q    -- of the person who got you on the call has been --
>       A    All for what?
>       Q    -- subjected to threats?
>       **A    The only reason nobody's been subjected to threats is because <u>I use my privilege as a journalist</u>.**
> [PAGE 63]   Q    You have no idea whether they're facing any sort of threats or harassment at all?  You haven't spoken to this person in years?
>       A    Did not for many reasons.
>       Q    Do you know where they live?
>       A    I do not.
>       Q    Do you know how to contact them?
>       A    I do not.
>       Q    So as you sit here today you're refusing to [PAGE 64] identify this person?
>       A    I've asked and answered this.
>       Q    You're refusing to identify?
>       A    I did identify this person.
>       Q    You have not identified this person Mr. Oltmann, please.  You're refusing to identify this person today, aren't you?  Who have you identified this person to?  Who else in the world knows who got you on that call?  You're not answering the question because this person doesn't exist, do they, Mr. Oltmann?

    A    The person does exist, and there is someone that actually knows he was on the call.
    Q    Who is that person?
    **A**    **I'm a journalist, forced to be actually.**
    Q    How do we know this person exists?  How would I know that?
    A    I talked about this on October 15th before the election; is that true?
    Q    How did you --
    A    Is that true?
    Q    How did you know the person who got you on this call -- you didn't talk about this call on October 15th?
    A    Oh, yes, I did actually.  I talked about infiltrating Antifa.  I did, October 15th.

Mr. Oltmann asserts his status as a journalist and exercises his privilege not to disclose the identity of his source for getting onto the Antifa Call and for the access to Coomer's Facebook Account that Mr. Oltmann has used in his reporting.  *See accord. Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 438 (10th Cir. 1977) ("compulsory disclosure in the course of a "fishing expedition" is ruled out in the First Amendment case.").  *See also* Affidavit of Joe Mr. Oltmann, attached hereto, ¶¶ 18-19.   In *Silkwood,* the facts are quite parallel.  The non-party deponent, Mr. Hirsch, was being compelled to disclose a source even though he was not doing the job of reporter, but was making a documentary film.  However, "in an effort to make a factually accurate film. He assured the interviewees, who demanded confidentiality, that the information would be kept confidential. He also assured those interviewees who requested that their identities be not revealed that he would respect their requests." *Silkwood* at 435.  At deposition, "Hirsch invoked his First Amendment privilege on each and every question calling for disclosure of information which he deemed confidential." *Id.*  The Court addressed the issue of whether a privilege exists in favor of a non-party witness which permits him to resist pretrial discovery in order to protect a confidential source of information." *Id.* The 10th Circuit noted that the Supreme Court has not limited the privilege to newspaper reporting. *Id.* at 437.  The

*Silkwood* court noted that the law reviewed indicated that the relevance or irrelevance of the information mattered and that "questionable relevance, ... weighed in favor of protection." *Id*. at 438.

Had this court held a hearing per the recommendation of Magistrate Starnella the record would reflect the privilege that was asserted by Mr. Oltmann against disclosure of a person he reasonably believes needs protection from likely harm that would result from disclosure of his identity. It would also reflect that Plaintiff Coomer has yet to disclose anything as to the true nature of the evidence sought, yet to disclose Coomer's efforts to obtain it from other sources, yet to disclose the necessity for Coomer to have it, and yet to disclose to its actual relevance to his defamation lawsuit. *Id.* These are highly important criteria prior to compelling the production of the information. *Id.*

Consequently, at this stage Coomer's persistent arguing that Mr. Oltmann's public statements are not protected first amendment speech, simply because he disagrees with them and dislikes their being said does not mean they are defamatory. Coomer has a burden of proof before he can by-pass the first amendment right to protect a source of a news/podcast story such as had been maintained by Mr. Oltmann. The *Silkwood* Court holding directs that Plaintiff Coomer has the need to meet the following criteria: "1. Whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful. 2. Whether the information goes to the heart of the matter. 3. Whether the information is of certain relevance. 4. The type of controversy." *Silkwood*, 563 F.2d at 438.

Mr. Oltmann further exercised his reporter's privilege when filing his "Reply to Plaintiff's Response to Nonparty Joseph Oltmann's Objection to Subpoena and Motion for Protective Order," *See* Exhibit D, Joseph Oltmann's Reply to Plaintiff's Response to Nonparty

Joseph Oltmann's Objection to Subpoena and Motion for Protective Order [ECF Doc. 122], p.4

*and see* Exhibit E Mr. Oltmann's DDC deposition 9-8-2021, page 11, line 13- page 12, line 15

(which is an exhibit to that Reply Brief [122-1]).

> A. I made a commitment not to disclose the name of that person. Unfortunately, that person who is known to me is actually in my notes.
> 16 Q. In the notes of the call?
> 17 A. Yes.
> 18 Q. Okay. Who is it?
> 19 A. That's all I'm going to say.
> 20 Q. You understand the Court has ordered you to provide us that information. You understand that?
> 22 A. I'm not going to provide that information.
> 23 Q. I'm sorry?
> 24 A. Mr. Coomer is on this call. Mr. Coomer is the one that presented the antifa manifesto in his social [Page 12] media. Mr. Coomer was the one that was on that call. So as a result of that, no protection order would protect this individual.
> 4 Q. Who is the -- who is the person that was your conduit? Give me the identity of that person. Are you refusing to answer my question?
> 7 A. I answered your question already. You just didn't like the answer.
> 9 Q. No. I didn't get the answer to the question. The question was: Who is the person or persons who served as the conduit for you to be on the antifa call? Give me the name.
> 13 A. I gave you the information as it relates to the information that's in my notes, and you have my notes. So therefore you have that name.

And at p. 27, line 4 - p.28, .

> Q. (By Mr. Cain) No, you haven't. My question is this: You say he presented himself as RD. That's fine. I understand your testimony there. But my question wasn't how he presented himself. My question was: Do you actually know his -- his full name -- his identification and you're just not providing that to me?
> 10 A. I do not know his full name.
> 11 Q. Do you know his first name?
> 12 A. I've never verified his identity.
> 13 Q. So you don't know his first name?
> 14 A. He was known to me as RD. I've given you the information of who he is.
> 16 Q. RD isn't a first name. And my question is: Do you know what the R stands for?
> 18 A. No.
> 19 Q. Let's go about it that way. Richard? Roger? Rick? Do you know?
> 21 A. I do not know what the R stands for.
> 22 Q. Do you know what the D stands for? His last name, perhaps?
> 24 A. I do not know what the D stands for.

25 Q. Do you have contact information for him? A phone number?
2 THE REPORTER: I'm sorry. The answer?
3 THE DEPONENT: I do not.

As for the claim by Coomer that Oltmann has not disclosed documents reflecting communications with the person who gave him access; this has been answered. Mr. Oltmann has testified that he did not and does not have his past communications with RD because they communicated through an application called "Signal" that limits the life of the communications which disappear after 5 to 10 minutes. *Id.* at (28,22) –(30, 2).

Plaintiff Coomer asserts that the information of the persons' identities that provided access to the Antifa Call and Facebook are "key" to further evidence to impeach Mr. Oltmann's statements. However, Coomer has not laid the foundation for this contention, since Coomer has acknowledged his Facebook posts and cannot state whether the person giving access to the Antifa call was even present with Mr. Oltmann or knows what Mr. Oltmann did with the information.

Counsel for Mr. Coomer alleges that it is speculation for Mr. Oltmann, an individual who has experienced threats and concerning, anomalous, security event at his home, to believe that Antifa adherents are violent. Mr. Oltmann has reasonable bases to conclude that Mr. Coomer is such an adherent given his Facebook posting on an antifa manifesto. *See* Affidavit of Joe Mr. Oltmann, attached hereto, ¶¶27 and 28. Therefore, it is rational to believe that his source for the Antifa Call would be a potential target of these activists.

The purpose of Plaintiff's Motion appears to be harassment and calculated to have Mr. Oltmann incarcerated, since counsel for Coomer expects that Mr. Oltmann does not intend to appear at a hearing in Denver. On the other hand, Plaintiff's Motion could be construed as a request that the Court follow-up its Sanctions Order with the hearing, that it did not find a need

to set, initially, pursuant to the Magistrate's Recommendation. Suffice it to say that Nonparty Mr. Oltmann does not agree with and disputes the Background Facts as stated in Plaintiff's Motion to Show Cause to the extent they seek to describe him, his actions and/or his purposes or thinking. In his Affidavit, attached hereto, Mr. Oltmann provides, generally, some limited background of his actions, purposes and thinking different than the what Coomer has described in his Motion to Show Cause.

WHEREFORE, nonparty Joseph Oltmann respectfully requests the court deny the Plaintiff's Motion to Show Cause. Should the court Order a Show Cause hearing, Mr. Oltmann requests the court order that he be able to appear by Zoom or Web Ex for the hearing. Further, given Mr. Oltmann's intent to appeal the Sanctions, Order Mr. Oltmann requests that the court *sua sponte* stay the Sanctions Order and any Show Cause hearing, and avoid the unnecessary further incurring of legal fees and costs by all parties involved and or grant such further as the court deems proper.

Respectfully submitted this this 2nd day of October 2024,

s/ Mark A. Sares
Mark A. Sares, #19070
HARRIS, KARSTAEDT, JAMISON & POWERS, P.C.
10333 E. Dry Creek Road, Suite 300
Englewood, Colorado 80112
Phone: 720-875-9140
Fax: 720-875-9141
Email: msares@hkjp.com
ATTORNEYS FOR NON-PARTY JOSEPH OLTMAN

CERTIFICATE OF SERVICE

    I certify that on this October 2, 2024, I electronically served <u>Response to Plaintiff's Motion to Show Cause Regarding September 4, 2024 Contempt Order</u> and sent a copy to the following individuals' email addresses:

| | |
|---|---|
| Brad Kloewer, Esquire<br>Charlie Cain, Esquire<br>Steve Skarnulis, Esquire<br>Zachary H. Bowman, Esquire<br>David E. Jennings, Esquire<br>Cain and Skarnulis, PPLC<br>P.O. Box 1064<br>Salida, Colorado 81201<br>Telephone: (719) 530-3011<br>*Attorneys for Plaintiff* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to:  bkloewer@cstrial.com<br>ccain@cstrial.com<br>skarnulis@cstrial.com<br>zbowman@cstrial.com<br>djennings@cstrial.com |
| Thomas J. Rogers, III, Esquire<br>Mark Grueskin, Esquire<br>RechtKornfeld PC<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>Telephone: (303) 573-1900<br>*Attorneys for Plaintiff* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to:  trey@rklawpc.com<br>mark@rklawpc.com<br>( ) By Facsimile Transmission to _____ |
| Thomas Baker Quinn, Esquire<br>Gordon & Rees LLP<br>555 17th Street, Suite 3400<br>Denver, CO 80202<br>303-534-5160<br>*Attorneys for Defendant Make Your Life Epic, LLC* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to tquinn@gordonrees.com<br>( ) By Facsimile Transmission to 303-534-5161 |
| Melissa Ann Wiese, Esquire<br>Gordon Rees Scully Mansukhani LLP<br>555 17th Street, Suite 3400<br>Denver, CO 80202<br>303-200-6879<br>*Attorneys for Defendant Make Your Life Epic, LLC* | (X) by CM/ECF System<br>( ) by First Class U.S. Mail<br>( ) by designated email to:  mwiese@grsm.com; 8<br>( ) By Facsimile Transmission to _____ |

*Original signature on file at the offices of*
*Harris, Karstaedt, Jamison & Powers, P.C.*

*s/ Carol Kentner*