**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff

v.

MAKE YOUR LIFE EPIC LLC dba THRIVETIME SHOW,
REOPEN AMERICA LLC dba REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SHOW CAUSE
REGARDING SEPTEMBER 4, 2024 CONTEMPT ORDER**

---

"I called around to and sent stuff to, and very well documented, to people like Gateway Pundit and others.  I sent a thing to them saying look, that's not what happened.  You need to take this down.  **I never said I was a journalist.**  I didn't say I have a recording.  I didn't say any of that.  You have to take that stuff down.  You have to make these corrections."

- Joe Oltmann[1]

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

    Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), through the undersigned, files this Reply in Support of his Motion to Show Cause (the Motion) with respect to this Court's Order Overruling Joseph Oltmann's Objection and Adopting As Modified the Magistrate Judge's Recommendation [Dkt. 168] (the Order), and states as follows:

---

[1] Joe Oltmann, *Georgia Going to Delete Dominion Machines*, CONSERVATIVE DAILY PODCAST (Nov. 30, 2020) at 32:00, https://www.youtube.com/watch?v=qvobf-8PJ10&t=1s

1

1. Through a series of demonstrable and at times remarkable falsehoods, the Response of Joseph Oltmann (Mr. Oltmann) raises various arguments never asserted at any point during his monthslong efforts to avoid testifying in this case. What it does not, and cannot do, is deny his outright contempt for this Court. Nor can it square his public belligerence on this matter with his efforts to appear reasonable before the Court.

2. Dr. Coomer organizes his arguments in the order of their relevance to the Court's analysis, rather than the order in which Mr. Oltmann raises them. Taken together, these arguments leave no question that the Court should issue an order compelling Mr. Oltmann to appear for a show cause hearing.

## ARGUMENT

### A. *Mr. Oltmann has waived any argument with respect to Colorado's Reporter's Privilege.*

3. The crux of Mr. Oltmann's argument is his claim, asserted for the first time in this proceeding, that he is a journalist. As such, and supposedly by virtue of Colorado's Reporter's Privilege, he argues he never has to explain the basis for the false claims that upended Dr. Coomer's life, gave rise to litigation across the country, and inspired an attack on the U.S. Capitol. This is untenable.

4. Mr. Oltmann has never raised this argument in this proceeding. At no point in his Objection to Subpoena and Motion for Protective Order [Dkt. 114], filed more than nine months ago, does Oltmann ever assert the privilege. He did not assert it in his Reply to Plaintiff's Response to the Objection to Subpoena and Motion for Protective Order [Dkt. 122]. He did not ever suggest his obstruction was permissible under the Reporter's Privilege during the lengthy hearing on his objections held before Judge Starnella on

2

April 8, 2024.[2] He did not raise it in the Show Cause hearing held after his flight from the courthouse on June 6.[3] And he did not assert the privilege in his Objections to Recommendations of United States Magistrate Judge for a Finding of Civil Contempt [Dkt. 148].

5.   In fact, the only time Mr. Oltmann has ever attempted to assert the Reporter's Privilege was more than three years ago in *Coomer v. Donald J. Trump for President, Inc.*, 2020cv34319, where he is a defendant. In that instance, after holding a hearing on the matter, the Court determined that Mr. Oltmann's testimony was "evasive and not credible" and that his story was "probably false."[4] It rightly determined the privilege does not apply.

6.   Mr. Oltmann's reluctance to again assert the alleged privilege until the eleventh hour is unsurprising. The Denver District Court's analysis on the matter was thorough and followed sworn testimony from Mr. Oltmann. Even then though, the countless gaps and inconsistencies in Mr. Oltmann's tale were immediately apparent under scrutiny.[5] And even here, Mr. Oltmann does not actually attempt to make the argument. At no point in his Response does he even cite the Reporter's Privilege Statute, C.R.S. § 13-90-119, nor does he identify the factors for the Court to consider under that

---

[2] **Exhibit 1**, *Coomer v. Make Your Life Epic LLC dba Thrivetime Show, et. al.*, 21-cv-03440-WJM-KAS, Motion Hearing Transcript (April 8, 2024).

[3] **Exhibit 2**, *Coomer v. Make Your Life Epic LLC dba Thrivetime Show, et. al.*, 21-cv-03440-WJM-KAS, Show Cause Hearing Transcript (June 6, 2024).

[4] **Exhibit 3**, *Coomer v. Donald J. Trump for President, Inc.*, 2020cv34319 (Denver Dist. Ct.), Hearing Transcript (July 7, 2021), at 90:22-91:7.

[5] *Id.*, at 88:19-93:6.

analysis. Under the statute, a Court may compel a newsperson[6] to disclose information if the party seeking the information can demonstrate:

    a. That the news information is directly relevant to a substantial issue involved in the proceeding;

    b. That the news information cannot be obtained by any other reasonable means; and

    c. That a strong interest of a party seeking to subpoena the newsperson outweighs the interests under the First Amendment to the United States Constitution of such newsperson in not responding to a subpoena and of the general public in not receiving news information.

*Gordon v. Boyles*, 9 P.3d 1106, 1117 (Colo. 2000) (*citing* C.R.S. 13-90-119(3)(a-c); *Henderson v. People*, 879 P.2d 383, 393 (Colo. 1994)). In defamation cases where the defendant is a newsperson, the trial court must make a preliminary determination of whether the plaintiff has made a satisfactory showing of the probable falsity of the defendant's allegedly defamatory statements at the time the statements were made. *Id.*, at 1109.

    7. Had Mr. Oltmann timely raised any of these arguments, Dr. Coomer would have readily met all of the criteria necessary to sustain Judge Starnella's Recommendation under the *Boyles* factors as well, just as he did in *Coomer v. Donald J. Trump for President Inc*. But Mr. Oltmann did not, and in fact still has not actually made that argument. As such, the Court can rightly understand this last minute ruse as yet another iteration of Mr. Oltmann's yearslong efforts to delay adjudication of Dr. Coomer's claims by any means possible.

---

[6] Mr. Oltmann's status as a "newsperson" is disputed.

8. At best, Mr. Oltmann cites to *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977). The *Silkwood* factors that he cites are the following: 1) whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful; 2) whether the information goes to the heart of the matter; 3) whether the information is of certain relevance; and 4) the type of controversy. *Silkwood*, 563 F.2d at 438. Unlike *Silkwood*, all of these factors were addressed in multiple hearings before Judge Starnella even though the privilege was not expressly raised.

9. Dr. Coomer addressed the first factor in part when describing Mr. Oltmann's misrepresentation of facts surrounding the Anderson affidavit in his Motion to Show Cause at ¶¶ 21-22.[7] But Dr. Coomer's efforts to identify the existence of a supposed "antifa call" that allegedly happened at some point in late September 2020, go far beyond simply reaching out to Tay Anderson after Mr. Oltmann produced alleged call notes that identified someone name "Tay." Dr Coomer also reached out to and obtained affidavits from Heidi Beedle[8] and Erik Maulbetsch,[9] two other individuals that Mr. Oltmann has at times implied may have partaken on the supposed call. Both denied any knowledge or involvement with the call.

---

[7] Notably, at no point does Mr. Oltmann attempt to deny that he regularly misrepresents the facts of this and related proceedings.

[8] The affidavit of Heidi Beedle was submitted in this proceeding as Exhibit P 4 Plaintiff's Response in Opposition to Defendants' anti-SLAPP Motion to Dismiss [Dkt. 30. It is resubmitted her as **Exhibit 4** to this Reply.

[9] **Exhibit 5**, *Coomer v. Donald J. Trump for President, Inc.*, Declaration of Erik Maulbetsch (Sep. 2, 2021).

10. With respect to the second factor, the information sought *is* the heart of the matter. Whether or not Mr. Oltmann completely made his story up or if there is any actual basis in fact to his claims, however tenuous, is ultimately what this and all of the related *Coomer* cases are all about.

11. And with respect to the third and fourth *Silkwood* factors, the information sought is undeniably of certain relevance to this defamation lawsuit, which alleges that Mr. Oltmann's claims are false and defamatory.

12. In any case, Mr. Oltmann only claims to be a "journalist" when it suits him, and has publicly denied that description when he perceives it is in his interest to do so, including and specifically with respect to his claims about Dr. Coomer.[10]

### B. *There is no way to know if Mr. Oltmann has produced responsive documents.*

13. As long as Mr. Oltmann refuses to identify his supposed sources, there is no way to confirm if he has produced communications with those individuals. It is true that Mr. Oltmann has testified certain documents do not exist, and for the limited purposes of this argument, Dr. Coomer is willing to take Mr. Oltmann at his word that he has destroyed highly relevant evidence. But assuming the individual who supposedly got Mr. Oltmann on the alleged Antifa call actually exists, Dr. Coomer may have the ability to get access to those communications through that individual. As long as their identity remains a secret though, Mr. Oltmann is effectively foreclosing this potential avenue of discovery as well.

---

[10] *Supra,* FN 1.

6

14. The same concern is present with respect to the individual that gave Mr. Oltmann access to Dr. Coomer's Facebook account. This information is not for purposes of supposedly authenticating the posts. Dr. Coomer has always acknowledged and admitted that the posts are his (although fake posts were also made by others). Rather, the Facebook source is important for purposes of *timing*. This was discussed with Judge Starnella at length when she initially issued her Orders in this case.[11] There is a substantial body of evidence to suggest that Mr. Oltmann may have begun targeting Dr. Coomer long before the election, that the supposed "antifa call" was a story made up by a third party[12] who has since fled the country with the admitted purpose of escaping the need to provide testimony in this and other related cases,[13] and that the entire Dominion Voting Systems conspiracy theory was a setup from the beginning.[14] Among numerous highly relevant bases for obtaining this information is the fact that a preconceived narrative is one of various factors that courts look to when assessing whether defamatory statements were published with actual malice.

---

[11] *See* **Exhibit 1**, 41:3-42:25.

[12] The Coomer story was likely fabricated by Joey Camp, who was recently arrested in Belize on a criminal charge of "Spreading Fake News" in connection with the murder of a coast guard officer. Camp has been a guest on Conservative Daily and is a known associate of John "Tig" Tiegen, who submitted an affidavit for Mr. Oltmann purporting to have knowledge about the alleged "antifa call".

[13] **Exhibit 6**, Joseph A. Camp, @JoeyCamp2020, Gab (Aug. 17, 2024) In this post, Camp claims that "In less than 1 year I will have 4 citizenships." In response to criticism in the comments on the post, Camp states that, "My exile is based on the inability of certain billion dollar lawsuits not being able to touch me (and thus giving the sued parties a fighting chance." *Id*. at p. 2.

[14] **Exhibit 7**, Joseph A. Camp, @JoeyCamp2020, Gab (Sep. 7, 2021) (Camp: When my team preserved material from Eric Coomer we did so because of his connection to Antifa, not because of his connection to Dominion – ***which we didn't even know existed before***." (emphasis added)). This admission necessarily puts Camp's knowledge of Dr. Coomer *before* Mr. Oltmann's November 9 podcast, which link's Coomer to Dominion throughout.

15. In sum, Mr. Oltmann must identify the individuals before the Court can determine with any certainty that he has actually complied with the document requests.

### C. *The safety of the sources.*

16. Nowhere in his argument or affidavit does Mr. Oltmann ever identify or even attempt to identify evidence that Dr. Coomer or these proceedings is in any way related to any of the supposed harm he claims to have endured.[15] Nor can he. Mr. Oltmann has been pressed on this issue under oath multiple times and has never been able to identify any support for this claim.[16]

17. Nor does he point to a single piece of evidence suggesting that his "sources" are in any kind of danger, or would be if he identified them. In fact, at no point does Mr. Oltmann argue or aver that his supposed source has even *requested* anonymity.

18. As noted in the Motion to Show Cause, Dr. Coomer has never harmed or threatened to cause harm to any witness to any of these proceedings. Dr. Coomer has a strong interest in these witnesses' well-being, and there is no evidence to the contrary.

### D. *Mr. Oltmann does not live in Texas.*

19. Dr. Coomer must briefly address one noteworthy falsehood in Mr. Oltmann's argument. Mr. Oltmann begins his Response by falsely asserting that he lives in Texas. He posits this as a basis for allowing him to appear remotely for a deposition.

---

[15] Even these alleged harms are unsupported by evidence beyond Mr. Oltmann's word.

[16] **Exhibit 8**, *Coomer v. Michael J. Lindell et. al.*, Depo. Tr. Oltmann (Dec. 16, 2022) at 86:11-98:9; *see also* **Exhibit 9**, *Coomer v. Make Your Life Epic, LLC dba Thrivetime Show et. al.*, Depo. Tr. Oltmann (June 6, 2024) at 140:19-144:15.

8

20. Mr. Oltmann was served with the subpoena in this case at his residence in Douglas County, Colorado.[17] After he fled the deposition on June 6, he immediately returned to what appears to be his home, where he recorded a podcast from his living room demeaning the Court and these proceedings.[18] The affidavit he submits in conjunction with his Response refers to "my home" no less than four separate times while describing his Douglas County residence.[19] That affidavit is notarized here in Colorado.

21. Counsel for Mr. Oltmann attempted to make this false claim in conjunction with conferral over Mr. Oltmann's Motion to Quash. Counsel for Dr. Coomer responded by pointing out that Mr. Oltmann's prior counsel had also tried and failed to make this false claim, and that Mr. Oltmann himself was at that time publicly declaring his place of residence as "Castle Pines, Colorado."[20] Notably, Mr. Oltmann briefly retreated from his claim of Texas residency when that claim subjected him to scrutiny for potential voter fraud after he voted in Colorado in the 2022 midterms.[21] As of this writing, Mr. Oltmann, who claims to care very deeply election security, *is still registered to vote in Colorado*[22] while still claiming to a federal court that he does not live here. This is outrageous and Mr. Oltmann's yearslong efforts to flout Colorado voter registration laws cannot be

---

[17] **Exhibit 10**, Affidavit of Service on Joseph Oltmann [Dkt. 111].

[18] See generally, *Joe Oltmann, Joe WALKS OUT of Coomer Dominion Deposition Vs Clay Clark, Reports Live,* CONSERVATIVE DAILY PODCAST (June 6, 2024(, available at https://conservative-daily.com/cd-livestream/6-june-2024-joe-walks-out-of-coomer-dominion-deposition-vs-clay-clark-reports-live

[19] Exhibit 6 to Oltmann Response, Oltmann Affidavit, ¶¶ 27-28.

[20] **Exhibit 11**, p. 2.

[21] *See* Erik Maulbetsch, *DougCo Clerk Says It's Aware of Oltmann's Potential Voter Fraud and Is Cooperating with Colorado Secretary of State*, COLORADO TIMES RECORDER (Feb. 10, 2023), available at https://coloradotimesrecorder.com/2023/02/dougco-clerk-says-its-aware-of-oltmanns-potential-voter-fraud-and-is-cooperating-with-colorado-secretary-of-state/51837/

[22] **Exhibit 12**.

allowed to continue, especially when he is the leading voice in the state calling Colorado's election integrity into question. To the extent the Court is willing to humor this argument, it should be in conjunction with a criminal referral for Mr. Oltmann's 2022 violation and apparently planned 2024 violation of C.R.S. § 1-13-709.5.[23]

22. Notably, Mr. Oltmann's counsel did not raise this argument before the Court, either in Motion for Protective Order or during the hearing on that Motion. Now though, at the eleventh hour, their reluctance to invite perjured testimony seems to have diminished.

### E. *The Court should order Mr. Oltmann to appear for a public show cause hearing.*

23. The public, including and especially Mr. Oltmann's supporters, would greatly benefit from a public hearing to address why he should not be held in contempt. Plaintiff should be afforded an opportunity to explain why the information sought is so important, and Oltmann should be afforded an opportunity to respond. And Mr. Oltmann should take the stand and answer questions himself. After nearly four long years of constant falsehoods, his audience and his victims deserve no less.

### CONCLUSION

24. For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. requests the Court grant his Motion for Show Cause Hearing.

---

[23] Given Oltmann's current Colorado voter registration status, his mail-in ballot may have already been printed and will likely be mailed soon.

Respectfully submitted this 3rd day of October 2024.

       */s/ Bradley A. Kloewer*
Charles J. Cain, No. 51020
ccain@cstrial.com
Bradley A. Kloewer, No. 50565
bkloewer@cstrial.com
**Cain & Skarnulis PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Thomas J. Rogers III, No. 28809
trey@rklawpc.com
Mark Grueskin, No. 14621
mark@rklawpc.com
**RechtKornfeld PC**
1600 Stout Street, Suite 1400
Denver, Colorado 80202
303-573-1900
**ATTORNEYS FOR PLAINTIFF**