IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-3440-WJM-KAS

ERIC COOMER,

      Plaintiff,

vs.

MAKE YOUR LIFE EPIC LLC, d/b/a THRIVETIME SHOW,
REOPEN AMERICA d/b/a REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK,

      Defendants.

_____

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Defendants, by counsel, Gordon Rees Scully Mansukhani LLP, hereby move the Court pursuant to Fed.R.Civ.P. 56(b) for partial summary judgment on Plaintiff's claims for defamation and civil conspiracy:

**I.    Introduction and summary of grounds for summary judgment.**

Defendants move for summary judgment primarily to streamline and simplify this case for trial. Defendants believe this can best be accomplished by eliminating those aspects of Plaintiff's defamation claim premised on publications which are not defamatory of Plaintiff or are otherwise nonactionable in defamation. The Second Amended Complaint purports to base its sole defamation claim on 34 discrete statements attributed to Defendants; of these, any defamation claim based on the seven statements allegedly made in 2022 is barred by limitations, while 17 of the other 27 alleged defamatory statements are not actionable either because they are not defamatory of Plaintiff or are constitutionally protected expressions of opinion. Granting summary judgment on these

aspects of Plaintiff's defamation claim will ensure that any jury instruction on the alleged defamatory statements will be limited to statements actually determined by the Court to be defamatory.

In addition, Plaintiff's civil conspiracy claim against Defendant Clayton Clark and the two limited liability company Defendants should be dismissed on summary judgment. Plaintiff has expressly alleged and the evidence establishes that Clark is the sole member and an agent of both companies and a company and an agent of the company do not constitute the "two or more persons" necessary to form a conspiracy as a matter of law.

## II.     Movant's statement of material facts.

1.      Defendant Make Your Life Epic LLC (MYLE) is a limited liability company organized in Oklahoma. Second Amended Complaint [Dkt. 175], ¶ 10; **Exhibit A** (MYLE Certificate of Limited Liability Company).

2.      Defendant Clayton Clark is the sole member and sole owner of MYLE and is its sole decisionmaker. **Exhibit B** (Vanessa Clark depo. 16:15-17:7) **Exhibit C** (MYLE depo. 9:22-10:7); Exhibit D (Clayton Clark depo. 46:10-25, 48:15-17).

3.      Clayton Clark is the manager of MYLE LLC. **Exhibit E** (MYLE Operating Agreement § 5.04).

4.      Defendant Reopen America LLC is a limited liability company organized in Oklahoma. Second Amended Complaint [Dkt. 175], ¶ 11; **Exhibit F** (Reopen America Certificate of Limited Liability Company).

5.      The sole owner and sole member of Reopen America LLC is Clark Holdings, LLC. **Exhibit G** (Reopen America depo. 29:17-30:20); **Ex. B** (V. Clark depo. 37:19-22); Ex. D (C. Clark

depo. 58:22-59:1).

6.     Clayton Clark is the sole owner and sole member of Clark Holdings, LLC. **Exhibit D** (C. Clark depo. 46:5-9, 48:15-17); **Ex. G** (Reopen America depo. 29:17-30:20).

7.     Clayton Clark is the manager of Clark Holdings LLC. **Exhibit H** (Clark Holdings Operating Agreement § 5.04).

8.     Reopen America LLC hosts and organizes the ReAwaken America Tour. **Ex. B** (V. Clark depo. 27:14-23); **Ex. G** (Reopen America depo. 6:20-25).

**III.    Standard of review.**

Summary judgment is appropriate if the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A "genuine" fact does not exist simply because the nonmoving party demonstrates some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with admissible evidence significantly probative of his claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986); Fed.R.Civ.P. 56(e). If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact, trial would be useless and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Anderson*, 477 U.S. at 249-52.

**IV.    Defendants are entitled to partial summary judgment on Plaintiff's defamation claim.**

**A.    The special responsibility of the Court on summary judgment in defamation cases.**

As the Colorado Supreme Court stated in *DiLeo v. Koltnow*, 613 P.2d 318, 323 (Colo. 1980), summary judgment is particularly appropriate in defamation cases: "Were not summary judgment granted in proper cases, the threat of protracted litigation might have a chilling effect

3

upon the full and free exercise of the First Amendment right sought to be protected by *New York Times v. Sullivan* and its progeny." Because of this chilling effect on constitutionally protected free speech rights, it is appropriate under Colorado law to promptly resolve defamation actions by summary judgment. *SG Interests I, Ltd. v. Kolbenschlag*, 452 P.3d 1, 6 (Colo. App. 2015); *Barnett v. Denver Pub. Co.*, 36 P.3d 145, 147 (Colo. App. 2001). The Court thus has a special responsibility on summary judgment in defamation cases to determine in the first instance whether the challenged publications are defamatory and actionable.

**B.     Any new defamation claim based on the seven 2022 publications identified in the Second Amended Complaint is barred by Colorado's one-year statute of limitations.**

Summary judgment should be granted for Defendants on any claim for defamation based on the seven 2022 publications newly identified in the Second Amended Complaint because Colorado's one-year statute of limitations for defamation expired on these publications before Plaintiff sought leave to amend his complaint to assert them.

In ¶¶ 89-102 of his Second Amended Complaint [Dkt. 175], Plaintiff asserts as additional bases for his defamation claim seven discrete publications that were allegedly made between January 15, 2022 and September 13, 2022, after the initial complaint was filed on December 22, 2021 but before the First Amended Complaint was filed on November 8, 2023. These publications were allegedly made on January 15 and 26, March 15, April 1, August 3 and 25, and September 13, 2022. Plaintiff was aware of three of these publications no later than April 13, 2022, when he filed his Response to Defendants' Special Motion to Dismiss [Dkt. 30] inasmuch as Plaintiff submitted audio recordings of these publications as exhibits in support of his Response. [Dkt. 30-23 (Jan. 15, 2022 publication); Dkt. 30-15 (Jan. 26, 2022 publication); Dkt. 30-16 (Mar. 15, 2022

publication)]. He was also aware of the August 3, 2022 and September 25, 2022 publications no later than June 27, 2023, when his counsel referenced them in a settlement demand letter. *See* **Exhibit J**, at p. 3, n.9 (redacted). By July 31, 2023, Plaintiff was aware of the April 1, 2022 publication when Defendant Clark served his response to Plaintiff's interrogatory no. 10, which identified Joe Oltmann's appearance at the April 1-2, 2022 Tour Event in Salem, Oregon. *See* **Exhibit K** at p. 14 (excerpt of Clark's discovery responses). However, Plaintiff's second motion for leave to amend his complaint to assert these publications as the basis for his defamation claim was not filed until August 19, 2024, more than a year after Plaintiff discovered each of the seven publications. Thus, the one-year statute of limitations of Colo. Rev. Stat. § 13-80-103(1)(a) had already expired on any defamation claim arising from any of these alleged 2022 publications. *See Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1390 (Colo. App. 1985).

Summary judgment for Defendants is therefore warranted because any defamation claim based on the publications alleged in ¶¶ 89-102 of the Second Amended Complaint is now barred by the one-year statute of limitations. Because each new defamatory publication constitutes a separate and distinct claim for relief,[1] any new defamation claims arising from post-litigation publications do not arise out of the facts alleged in the initial complaint, and therefore do not relate back to the date of the initial complaint under Rule 15(c) so as to avoid the bar of limitations. The doctrine of relation-back in Rule 15(c) does not permit a party to amend a complaint to assert a

---

[1]*See Lininger v. Knight,* 226 P.2d 809, 812 (Colo. 1951) ("No law is better settled than that each publication of a libel is a separate and independent claim"); *Russell v. McMillen*, 685 P.2d 255, 258 (Colo. App. 1984) ("[E]ach separate publication constitutes a separate and distinct claim for libel."); *Corporon*, 708 P.2d at 1390 ("each defamatory statement upon a separate publication is a separate claim"); *Warad West, LLC v. Sorin CRM USA Inc.*, 2016 WL 1089825, *12 (D. Colo. Mar. 21, 2016) ("[e]ach communication of a defamatory statement, even though identical in content, constitutes a separate publication, giving rise to a separate cause of action.").

defamation claim after the statute of limitations has already run. *See Walker v. Associated Press*, 417 P.2d 486, 488 (Colo. 1966); *Even v. Longmont United Hosp. Assn.*, 629 P.2d 1100, 1103 (Colo. App. 1981). Summary judgment should be granted for Defendants on any defamation claim based on these seven alleged 2022 publications because any such claim is barred by § 13-80-103(1)(a). *See Even*, 629 P.2d at 1103.

      **C.**     **The publications are not defamatory or not actionable.**

            **1.**     **The Court must in the first instance determine whether the challenged statements are defamatory.**

Defendants next move for summary judgment on the ground that many of the publications Plaintiff has alleged to be defamatory are either not defamatory or else not defamatory of Plaintiff as a matter of law. The purpose of this motion is to winnow down the number of publications alleged to be defamatory in order to simplify the case for trial. Whether a statement is defamatory *per se* is to be determined as a matter of law by the Court. *Sky Fun 1, Inc. v. Schuttloffel*, 8 P.3d 570, 574 (Colo. App. 2000), *aff'd in part & rev'd in part on other grounds*, 27 P.3d 361 (Colo. 2001); *McGettigan v. Di Mare*, 173 F.Supp.3d 1114, 1126 (D. Colo. 2016); *Lininger v. Knight*, 226 P.2d 809, 813 (Colo. 1951). If not defamatory on its face, then whether a statement is capable of a defamatory meaning is also a question of law for the Court. *Fry v. Lee*, 408 P.3d 843, 851 (Colo. App. 2013). Because the jury must be instructed on each publication the Court has determined to be defamatory, *see* COLO. JURY INST. CIV. 22:1 (2024), the Court must determine as a matter of law in each instance whether the publication is defamatory before the jury can be instructed on it as the basis of Plaintiff's defamation claim. *See* Notes on Use to 22:1 ("This instruction should be given only when the court has determined [ ] that the statement was libelous

or slanderous *per se*").[2] It is therefore critical that the Court determine which of the challenged publications is defamatory before it can be submitted to the jury as a basis for Plaintiff's defamation claim.

In his initial Complaint, Plaintiff alleged 27 discrete publications as the basis for his defamation claim.[3] [Dkt. 1; *see* Dkt. 24-10 (submitted as **Exhibit** I)]. Of the 27 statements alleged to be defamatory in the Complaint, 15 are attributed to Defendants (Nos. 1-4, 9-10, 13-20, 24), and 11 are attributed to Joe Oltmann (Nos. 5-8, 12, 21-23, 25-27). One statement (No. 11) is attributed to an unidentified speaker on the podcast. However, the statements principally alleged to be defamatory are Nos. 5-8, attributed to Oltmann, that Plaintiff bragged about rigging the 2020 election during an "Antifa conference call" in September 2020 to which Oltmann was party. [Dkt. 45 at 2-3]. Defendants do not challenge whether this statement is defamatory for purposes of this motion, since the Colorado Court of Appeals has already determined that it is. *See Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 582 (Colo. App. 2024) (finding "statements that could reasonably be interpreted as asserting that Coomer said on a conference call that he had made sure President Trump was not going to win the election" and "statements, either express or

---

[2]The Notes on Use to Pattern Instruction 22:1 also caution that "Each publication of a libel or slander is a separate cause of action. Therefore, if the case involves separate statements made on different occasions, such as more than one article about the plaintiff, each article constitutes a separate claim and should be treated separately in the instructions. It is also advisable, in such cases, to submit special verdict forms for the jury to identify which publication(s) give rise to liability" (citations omitted). A general jury verdict based on more than one alleged defamatory statement, one or more of which is not actionable as a matter of law, cannot stand. *Zueger v. Goss*, 343 P.3d 1028, 1035 (Colo. App. 2014). The better practice is to submit a special verdict form requiring the jury to indicate which statements it relied upon in reaching its verdict. *Id.*

[3]Plaintiff's First Amended Complaint added ReOpen America, LLC as a Defendant but not allege any additional defamatory publications. *See* redlined First Amended Complaint. [Dkt. 101-1].

implied, that Coomer took steps to undermine the election results" defamatory).[4] Because the gist of Statements Nos. 21-23 and 25-27 is similar to Nos. 5-8, those particular statements are not the subject of this motion.[5]

As shown below, however, all of the other challenged statements attributed to Defendants are either not defamatory *per se* or else not capable of defamatory meaning, and thus not actionable as a matter of law. Partial summary judgment should therefore be granted for Defendants on Plaintiff's defamation claim to the extent it is based on these discrete nonactionable statements, so as to avoid unnecessarily instructing the jury on statements that are constitutionally protected or nondefamatory. *See Zueger v. Goss*, 343 P.3d 1028, 1035 (Colo. App. 2014).

> **2.    The challenged statements are rhetorical hyperbole that do not charge Plaintiff with the commission of any specific crime and thus are protected statements of opinion.**

In its order denying Defendants' anti-SLAPP motion to dismiss, the Court previously determined, for purposes of that motion, that Statements Nos. 1, 9, 13, 18, 20, and 24 attributed to Defendants are defamatory of Plaintiff because they use the words "treasonous," "treason," and "fraud" to describe conduct attributed to Plaintiff. [Dkt. 45 at 17-18]. However, when viewed in the context in which they were used, and at this stage of the pleadings, these words are rhetorical

---

[4]The court of appeals, however, did not determine the statement that Plaintiff participated in an "Antifa conference call" was defamatory standing alone. *See id.*, 552 P.3d at 581 n.8 ("[A]s we understand Coomer's claims, those claims are not based on his mere participation in the call but rather what defendants claimed he said on that call."); *id.* at 582, n.11 ("[W]e do not consider the statements that Coomer participated in an Antifa conference call as an independent basis of Coomer's claims, separate from defendants' statements about what Coomer supposedly said on that call.").

[5]Defendants do not concede these statements are actionable and reserve their argument that they are not to the extent that Defendants themselves did not publish them.

hyperbole that do not charge the commission of any specific crime and thus amount to statements of opinion that are not actionable under Article II, § 10 of the Colorado Constitution, which affords greater protection for speech than the First Amendment. *Diversified Mgt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1109 (Colo. 1982).

Colorado has long recognized that statements of opinion are protected speech. *See NBC Subsidiary (KCNC-TV), Inc. v. Living Will Center*, 879 P.2d 6, 11-12 (Colo. 1994); *BKP, Inc. v. Killmer Lane Newman*, 506 P.3d 84, 98-99 (Colo. App. 2021), *rev'd on other grounds*, 535 P.3d 91 (Colo. 2023); *Giduck v. Niblett*, 408 P.3d 856, 868 (Colo. App. 2014); *Wilson v. Meyer*, 126 P.3d 276, 280-81 (Colo. App. 2005); *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989); *Burns v. Denver Post, Inc.*, 606 P.2d 1310, 1311 (Colo. App. 1979). Defamation claims "must be considered against the background of a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Lane v. Arkansas Valley Pub. Co.*, 675 P.2d 747, 750 (Colo. App. 1983) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). To ensure "uninhibited, robust, and wide-open" debate on matters of public concern, statements of opinion are constitutionally privileged. *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990).

The principal inquiry for distinguishing actionable statements of fact from nonactionable statements of opinion is whether the statement is capable of a defamatory meaning about the plaintiff. *BKP*, 506 P.3d at 98. The focus is whether the language used is capable of being understood as defamatory of the plaintiff, and if so, whether it is capable of being construed as a statement of fact. *Id*. To answer these questions, a court considers "how the assertion is phrased" and "the context of the entire statement." *Id*. Figurative, hyperbolic, or loose language may indicate that

statements should not be viewed as assertions of fact. *Id.* An opinion of the "pure type" is not itself

sufficient for an action of defamation, "no matter how unjustified and unreasonable the opinion

may be or how derogatory it is." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 566, cmt. c

(1977)).

Here, the challenged statements are phrased as exaggerated rhetorical hyperbole ("fraud",

"treason") that are not susceptible to proof of truth or falsity precisely because these expressions

are phrased as opinion. *See Bucher v. Roberts*, 595 P.2d 239, 241 (Colo. 1979). Calling someone a

"traitor" is no more actionable in defamation than calling someone a "fascist" or "right-wing." *See*

*Cheng v. Neumann*, 51 F.4th 438, 446 (1st Cir.2022) ("'Right-wing,' 'far-right,' and 'conspiracy

theorist' are vague, judgment-based terms that admit of numerous interpretations and are not ob-

jectively provable as false."); *Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir.1976) ("fascist" is "too

imprecise, loose and insusceptible of proof" and "cannot be regarded as having been proved to be

[a] statement[ ] of fact").[6] Such labels "cannot be regarded as having been proved to be statements

---

[6] *See Cibenko v. Worth Publishers, Inc.*, 510 F.Supp. 761, 766 (D.N.J. 1981) (accusation of racism held nonactionable opinion); *Fortson v. Colangelo*, 434 F.Supp.2d 1369, 1380 (S.D.Fla. 2006) (calling basketball player "thug" was an "opinion" or "rhetorical hyperbole" and thus not actionable as defamatory); *Chang v. Cargill, Inc.*, 168 F.Supp.2d 1003, 1011 (D. Minn. 2001) (recognizing use of word "stupid" as opinion not actionable as defamatory); *Atlanta Humane Socy. v. Mills*, 618 S.E.2d 18, 24 (Ga. App. 2005) (statement that plaintiff was "evil" was protected opinion that cannot be proved false); *Blomberg v. Cox Enterprises, Inc.*, 491 S.E.2d 430, 433 (Ga. App. 1997) (assertion that plaintiff was "silver-tongued devil" cannot be proved false); *Ward v. Zelikovsky*, 643 A.2d 972 (N.J. 1994) (statements that plaintiffs "hated Jews" were nonactionable); *Schwartz v. Nordstrom, Inc.*, 1553 N.Y.S.2d 684 (App. Div. 1990) (remark that plaintiff was a "Nazi" deemed nonactionable); *Holy Spirit Assn. v. Harper & Row Publishers*, 420 N.Y.S.2d 56, 59 (N.Y. Sup. Ct. 1979) (comparison of plaintiff group to "Nazis" was expression of opinion not actionable as defamation); *Vail v. Plain Dealer Pub. Co.*, 649 N.E.2d 182 (Ohio 1995), *cert. denied*, 516 U.S. 1043 (1996) ("gay-basher," "hate-mongering," and "bigot" held nonactionable opinion); *Condit v. Clermont County Rev.*, 675 N.E.2d 475 (Ohio App. 1996) (statements that plaintiffs were "fascists" and "anti-Semites" did not have sufficiently definite meaning to be factual and were too general to be verifiable, and were constitutionally protected expressions of opinion,

of fact, among other reasons, because of the tremendous imprecision of the meaning and usage of these terms" and because they "are concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity." *Bucher*, 595 P.2d at 241 (quoting *Buckley*, 539 F.2d at 893). *See Sall*, 782 P.2d at 1218 ("the metaphoric choice of words ... reveals that they were intended and reasonably would be perceived as rhetorical hyperbole rather than fact."); *Henderson v. Times Mirror Co.*, 669 F.Supp. 356, 359 (D. Colo. 1987) ("sleazebag" and "slime" have meanings "so imprecise that they cannot be considered as asserting facts."), *aff'd,* 876 F.2d 108 (10th Cir. 1989).

The same analysis applies to other statements that amount to no more than "emotionally charged" rhetorical hyperbole. *See BKP*, 506 P.3d at 98-99; *Cheng*, 51 F.4th at 446-47; *Buckley*, 539 F.2d at 893. "Once a court needs to speculate concerning the meaning the statement purports to convey ... we enter the area of opinion as opposed to factual assertion." *Bucher*, 595 P.2d at 241.

As for whether the publication is capable of a defamatory meaning about the plaintiff, while the accusation of commission of a crime can be defamatory *per se*, broad accusations of criminal wrongdoing are not always provable statements of fact. *See Cinquanta v. Burdett*, 388 P.2d 779, 780 (Colo. 1963) ("crook" is not accusation of specific crime and not defamatory *per se*). An opinion that could imply commission of illegal activity is actionable if the context in which it appears suggests it was meant literally, but not if it would be understood as rhetorical hyperbole

---

not statements of fact); *Stepien v. Franklin*, 528 N.E.2d 1324, 1329-30 (Ohio App. 1988) (use of words "stupid," "dumb," "buffoon," "nuts," "crazy," and "lunatic" is rhetorical hyperbole and protected opinion);*Garcia v. Semler*, 663 S.W.3d 270, 283 (Tex. App. 2022) (statement describing plaintiff as "pure evil" is statement of opinion that cannot be verified); *Grutzmacher v. Chicago Sun-Times, Inc.*, 1994 WL 742257, *3 (Ill. Cir. Ct. 1994) (phrase "Neo-Nazi" not defamatory *per se*). *See generally Steinhausen v. HomeServices of Neb., Inc.*, 857 N.W.2d 816, 829 (Neb. 2015) (collecting cases holding rhetorical hyperbole is nonactionable in defamation).

meant to express an opinion on the plaintiff's conduct. *See Lane*, 675 P.2d at 751.

For example, such broad, general allegations as "blackmail" and "extortion" are nonaction-able because they are too nonspecific to be assertions of provable fact and are merely an expression of opinion. *Id. See, e.g.*, *Greenbelt Coop. Pub. Assn., Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (accus-ation of "blackmail" was no more than "rhetorical hyperbole, a vigorous epithet"); *Hogan v. Winder*, 762 F.3d 1096, 1107 (10th Cir. 2014) (accusations of "extortion" and "blackmail" "are a familiar rhetorical device"; "We all know of colloquial or hyperbolic uses of the term.... [W]e cannot assume that the term always refers to a crime or similarly heinous conduct. Like with other words, context matters."); *Fasi v. Gannett Co.*, 930 F.Supp. 1403, 1410-11 (D. Haw. 1995) (words "blackmail" and "extortion" must be read in context to determine whether defendants are actually accusing plaintiff of criminal conduct; use of terms to describe plaintiff's conduct was protected under First Amendment and thus not actionable), *aff'd*, 114 F.3d 1194 (9th Cir. 1997). *See generally* D. Elder, Defamation: A Lawyer's Guide § 8.27 (2022) (collecting cases finding "seeming statements of criminality" to be opinion or rhetorical hyperbole).

"It has long been the law that simply invoking a criminal act or accusing a person of a crime does not transform an otherwise nonfactual statement into a factual assertion if the accusation, in light of the surrounding context, is 'rhetorical hyperbole.'" *McDougal v. Fox News Network, LLC*, 489 F.Supp.3d 174, 182 (S.D.N.Y. 2020). "Such accusations of crimes are also unlikely to be defamatory when, as here, they are made in connection with debates on a matter of public or political importance." *Id.* These types of statements "deserve the highest protection." *Id.* at 183 (citing *Milkovich*, 497 U.S. at 19). Thus, in *McDougal*, the court found an accusation of "extortion" was "nonactionable hyperbole." *Id.* at 183-84.

The same analysis applies to the description of Plaintiff's alleged conduct in connection with the 2020 election as "fraud" and "treason." "Fraud" is a loose term that is not specific to criminal conduct and is often used to characterize conduct the speaker considers lacking honesty but not necessarily illegal. In that context, it is a protected statement of opinion rather than an actionable accusation of the commission of a specific crime. *See, e.g.*, *Seidl v. Greentree Mortg. Co.*, 30 F.Supp.2d 1292, 1318 (D. Colo. 1998) (letter accusing plaintiff of "misappropriation for fraudulent purposes," read in context of entire letter, did not charge plaintiff with having committed a crime, but was "a statement of opinion and its expression is therefore protected by the First Amendment"); *Small Business Bodyguard Inc. v. House of Moxie, Inc.*, 230 F.Supp.3d 290, 312 (S.D.N.Y. 2017) (concluding statement that plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" is a "a vague statement ... of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation"); *Yourman v. People's Sec. Life Ins. Co.*, 992 F.Supp. 696, 706-07 (D.N.J. 1998) (defendant's characterization of plaintiff's actions as fraudulent was protected opinion); *Spelson v. CBS, Inc.*, 581 F.Supp. 1195, 1203 (N.D.Ill. 1984) (characterization of chiropractor's practices as "fraudulent" were "merely statements of opinion" protected by First Amendment and state common law right of fair comment and criticism), *aff'd,* 757 F.2d 1291 (7th Cir. 1985).

Only two of the statements alleged to be defamatory even use the word "fraud," and neither refers directly to Plaintiff. Statement No. 20, that Oltmann "is at the tip of the spear exposing election fraud," makes no reference to Plaintiff; "election fraud" is vague and can refer to other alleged instances of fraud in the 2020 election that Oltmann expressed concern about. Statement No. 24 is equally vague, since it describes Oltmann as "a very successful entrepreneur who had hundreds of employees and all sorts of reasons to not fight back, but he discovered the corruption,

the election fraud," who "decided to put his career on hold and to put his hundred percent focus on trying to save this nation and to expose the corruption of election fraud," which also includes the other instances of fraud Oltmann discussed on the Tour.[7] The statement does not explicitly tie this alleged "election fraud" to Plaintiff but mentions only that Plaintiff "happens to be pro-Antifa."

"Treason" is no different than "fraud," "extortion," or "blackmail." Despite its status as a constitutional crime, "treason" is another epithet bandied about in political discourse on a regular basis. Its frequent usage in the political context to describe conduct with which the speaker disagrees makes it highly unlikely it is intended as a literal accusation of treason, which is defined as levying war against the United States or giving aid and comfort to its enemies. 18 U.S.C. § 2381. Its use in this context as rhetorical hyperbole—particularly on alternative media and social platforms such as those at issue here—is not an accusation of the specific crime of levying war against the United States or aiding its enemies, but a characterization of the speaker's opinion of the subject's conduct as unpatriotic or disloyal.

In *Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 271-72 (1974), the Supreme Court held the use of the word "traitor" to define a "scab" in the context of a labor dispute could not serve as the basis for a defamation action because no reader could understand the epithet "traitor" to be a charge that the "scab" has committed the criminal offense of treason. Courts have recognized that in the context of political speech, allegations of "treason" are little more than rhetorical hyperbole, and not an accusation of a particular

---

[7]For example, during his appearance at the Grand Rapids, Michigan Tour event on August 22, 2021, Oltmann made several statements about election fraud, including that the election was "stolen," that audits in Maricopa County would result in an overturning of the presidential election, and that former President Trump was the rightful president. However, he made absolutely no mention of Plaintiff. *See* Second Amended Complaint at ¶76 [Dkt. 175].

crime. *See Kellems v. California Cong. of Indus. Org. Council*, 68 F.Supp. 277, 278 (N.D. Cal. 1946) (holding that "treasonable" is nonactionable in libel because it is fair comment based on plaintiff's activities: "The characterization 'treasonable' is adjective. It refers to specific activities or 'operations' of plaintiff. Those to whom the articles were published could have been in no doubt or uncertainty as to the particular operations so designated. Viewed in context, it is clear that the term 'treasonable' was not used in the sense of statutory treason, but rather in the sense of savoring of, or partaking of, or akin to treason and in the nature of disloyalty...."); *Bennett v. Seimiller*, 267 P.2d 926, 930 (Kan. 1954) (word "traitor," as used in context of labor dispute, "may not be considered as a separate and independent statement which charged plaintiffs with being guilty of a crime.").

Viewed in context, Statements Nos. 1 and 13 calling Plaintiff's alleged conduct "treasonous" are rhetorical hyperbole, and do not accuse him of levying war against the United States or giving aid and comfort to its enemies, or any other acts that constitute treason under the Constitution. Neither does Statement No. 9: "And there's a concern they have, is that the word 'treason' means the crime of betraying one's country, especially by attempting to kill the sovereign or overthrow the government. And you have these people like [Plaintiff] that are attempting to overthrow what appears to be the will of the people." This statement expresses a colloquial concept of treason—"attempting to kill the sovereign or overthrow the government" or "attempting to overthrow what appears to be the will of the people," but does not specifically accuse Plaintiff of committing the crime of treason as defined in 18 U.S.C. § 2381. Words that "refer to matters not chargeable as a crime" are not actionable. *Cinquanta*, 388 P.2d at 780. *See Fort v. Holt*, 508 P.2d 792, 794 (Colo. App. 1973). Statement No. 18—"What do we do with people that commit treason,

sedition and subversive activities?"—is also pure rhetorical hyperbole.

Statements Nos. 1, 9, 13 and 18 are opinions and therefore not defamatory. Because these statements are incapable of being true or false, they are not actionable. *See Keohane*, 859 P.2d at 297. These are not statements that contain or imply verifiable fact or have a truth value susceptible to empirical proof; rather, the statements are clearly and easily recognizable as pure opinion because they are based on a factual premise revealed during Defendants' podcast. *See Living Will*, 879 P.2d at 11-12; *BKP*, 506 P.3d at 98-99; *Burns*, 606 P.2d at 1311.

Defendants' Statements Nos. 1, 9, 13, 18, 20, and 24 thus fall into the categories of opinion, rhetorical hyperbole, and non-literal commentary associated with a matter of significant public discourse, namely election fraud and the legitimacy of the 2020 presidential election. Such broad and generic accusations as "treason" or "fraud"—which do not refer to the elements of any specific crime—are too indefinite and nonspecific to be assertions of provable fact and can only be understood as statements of opinion. The use of "treason" does not actually accuse Plaintiff of levying war against the United States or giving aid and comfort to its enemies and cannot reasonably be understood as such in the context of the podcast. "Attempting to overthrow what appears to be the will of the people" is not a specific accusation of the crime of treason. It is not even an accusation of trying to overthrow the government itself, but rather an accusation of trying to undo the choice of the majority. The alleged accusations of "fraud" and "treason" are not accusations of the commission of specific crimes, but only Defendants' opinionated characterization of Plaintiff's alleged conduct. Plaintiff may be displeased with Defendants' use of colorful or exaggerated language, but the use of "loose, figurative, or hyperbolic language … negates the impression" that the contested statements were assertions of fact. *Milkovich*, 497 U.S. at 21. *See Herring Networks,*

*Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021).

Thus, the question whether the statements here are sufficiently factual to be susceptible of being proved true or false must be answered in the negative. Defendants' statements about "treasonous" conduct are not provable statements of fact that actually accuse Plaintiff of committing treason or any other specific crime but are only Defendants' opinionated characterization of Plaintiff's alleged conduct. The statement that Plaintiff "committed fraud and treason" does not accuse Plaintiff of any specific crime but merely expresses the speaker's opinion on his alleged conduct—based on circumstances disclosed and known to the speaker's audience—as deceitful and disloyal. *See Cinquanta*, 388 P.2d at 780; *BKP*, 506 P.3d at 98.

"It is axiomatic that opprobrious epithets, even if malicious, profane and in public, are ordinarily not actionable." *Bartow v. Smith*, 78 N.E.2d 735, 737 (Ohio 1948). *See Bucher*, 595 P.2d at 241. This is "because it is clear to the listener or reader that such language is no more than either an idle comment or the venting of the speaker's or writer's emotions and therefore does not reflect adversely on the plaintiff's reputation," and because "epithets properly understood are merely a form of nonactionable opinion." R. Sack, Libel, Slander, & Related Problems 58 (1980). Because Statements Nos. 1, 9, 13, 18, 20, and 24 all fall into the category of rhetorical hyperbole or other epithets that are "so debatable, loose and varying that they are insusceptible to proof of truth or falsity," these statements of opinion are not actionable as defamation. *Bucher*, 595 P.2d at 241. Partial summary judgment should therefore be granted for Defendants dismissing Plaintiff's defamation claim to the extent it is based on these six discrete statements.

### 3.    No other alleged statements are actionable in defamation.

This Court's prior order only addressed Defendants' statements that accused Plaintiff of

"fraud" and "treason," Nos. 1, 9, 13, 18, 20, and 24. None of the other publications alleged in the Second Amended Complaint can support a claim for defamation because they are not defamatory, are not "of and concerning" Plaintiff, are in the nature of opinion or hyperbole, or are other statements that cannot be proved true or false. These include the alleged statements identified in Exhibit I as Nos. 2-4 and 9-20.

> **a.** **Statements Nos. 2, 10, 16, 19, and 24 are not defamatory and are rhetorical hyperbole.**

For language to be defamatory *per se*, the facts alleged must be deplorable, derogatory, or disgraceful, and the element of disgraceful imputation must be clearly expressed on the face of the publication. *Bernstein v. Dun & Bradstreet, Inc.*, 368 P.2d 780, 784 (Colo. 1962). For a characterization to be defamatory, it should, without equivocation, expose the plaintiff to public hatred or contempt. *Lininger*, 226 P.2d at 813; *Hayes v. Smith*, 832 P.2d 1022, 1025 (Colo. App. 1991).

Statements Nos. 2 and 10 that Plaintiff "is in fact a member of Antifa," No. 16 that he is "Antifa loving," and Nos. 19 and 24 that he is "pro-Antifa," are not defamatory. The term "Antifa" does not accuse Plaintiff of any criminal offense or professional misconduct and is not *per se* defamatory; there is no evidence that people associated with Antifa are held by society in poor esteem. *See Hayes*, 832 P.2d at 1025. "Antifa" literally means "anti-fascist." Other than that, it does not refer to any particular group or organization, but a political philosophy to which individuals subscribe. "Depending on local contexts or politics, antifa can variously be described as a kind of ideology, an identity, a tendency or milieu, of an activity of self-defense." M. Bray, ANTIFA: THE ANTI-FASCIST HANDBOOK xvi (2017). *See Goodwin v. Commonwealth*, 834 S.E.2d 487, 489 n.4 (Va. App. 2019) ("Antifa" is "a loose collection of groups, networks and individuals who believe in active, aggressive opposition to far right-wing movements."). Whether "Antifa"

has a recognized defamatory meaning "without equivocation" is not obvious. (Dwight Eisenhower was literally "Antifa," and so is Indiana Jones). "Antifa" has such a wide range of reference that its meaning cannot readily be discerned and is too vague to have a recognized defamatory meaning. It does not "without equivocation, expose the plaintiff to public hatred or contempt." *Hayes*, 832 P.2d at 1025. *See Coomer v. Trump*, 552 P.3d at 581-82 n.8, 11 (court would not consider statements that Plaintiff participated in an "Antifa conference call" as an "independent basis" of his claims). "Antifa" is not on its face and without the aid of intrinsic proof unmistakably recognized as inherently injurious to reputation. *See Lininger*, 226 P.2d at 813. Hence, the challenged statements that Plaintiff "is in fact a member of Antifa" (Nos. 1, 2, 10), is "Antifa loving" (No. 16) and "pro-Antifa" (Nos. 19, 24) are not defamatory *per se* and thus nonactionable. *See Hayes*, 832 P.2d at 1025.

Statements Nos. 2, 10, 16, 19, and 24 accusing Plaintiff of being "a member of Antifa," "Antifa loving," and "pro-Antifa" are also rhetorical hyperbole protected as an expression of opinion. In *Harris v. Warner*, 527 P.3d 314, 310 (Ariz. 2023), the Arizona Supreme Court specifically held that "acting like Antifa" was not defamatory because it was "rhetorical political invective or mere hyperbole and not statements or implications of objective fact." Calling someone "Antifa" is no more actionable in defamation than calling someone a "fascist" or "right-wing." *See Cheng*, 51 F.4th at 446; *Buckley*, 539 F.2d at 893. Even the term "extremist" is generally regarded as opinion and not as defamatory. *See Washburn v. Wright*, 68 Cal.Rptr. 224, 229 (Cal. App. 1968); *Renwick v. News & Observer Pub. Co.*, 304 S.E.2d 593, 601 (N.C. App. 1983), *rev'd on other grounds,* 312 S.E.2d 405 (N.C. 1984); *see also Edwards v. Detroit News, Inc.*, 910 N.W.2d 394, 404 (Mich. App. 2017) (statement that plaintiff was "a leader of the Ku Klux Klan" held nonactionable opinion).

Such labels "cannot be regarded as having been proved to be statements of fact, among other reasons, because of the tremendous imprecision of the meaning and usage of these terms." *Bucher*, 595 P.2d at 241 (quoting *Buckley*, 539 F.2d at 893).

> ### b.    Statement No. 4 does not contain a verifiable statement of fact.

"To be entitled to full constitutional protection, the statement must not contain a provably false factual connotation or, if it does, it must not be such that it could reasonably be interpreted as stating actual facts." *Lawson v. Stow*, 327 P.3d 340, 348 (Colo. App. 2014). Statement No. 4 concerns Oltmann being a "whistleblower" about Plaintiff. Because it is not specific and therefore unable to be proven true or false, this statement is not actionable. *See Keohane v. Wilkerson*, 859 P.2d 291, 297 (Colo. App. 1993) ("if the statement does contain or imply a verifiable fact, but is not reasonably susceptible to interpretation as a declaration of fact, it will receive full constitutional protection and no action for defamation will lie"), *aff'd sub nom*, *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994); *see also Fry*, 408 P.3d at 848-49.

> ### c.    Statements Nos. 3, 12, 14, and 20 are not "of and concerning" Plaintiff.

To be actionable as defamation, a statement must be about, or "of and concerning," the plaintiff. *Inter-State Detective Bureau, Inc. v. Denver Post, Inc.*, 484 P.2d 131, 133 (Colo. App. 1971). *See Lininger*, 226 P.2d at 813 (defamatory words must be "specifically directed at the person claiming injury"); *McGettigan*, 173 F.Supp.3d at 1126 (statement is defamatory *per se* when it is "specifically directed at a particular person"); *e.g.*, *Stump v. Gates*, 777 F.Supp. 808, 826 (D. Colo. 1991) (publication of police report that plaintiffs' father committed suicide was not libelous *per se* of plaintiffs because it was specifically directed at the deceased, not at plaintiffs), *aff'd*, 986

F.2d 1429 (10th Cir. 1993); *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 520 (Colo. App. 1983) (publication not actionable when it does not refer to plaintiff).

Statements Nos. 3 and 14 contain no defamatory factual assertion about Plaintiff. Rather, they are statements about praying for Oltmann and Defendants' subjective belief that Oltmann's statements are true. The statements are not actionable because they are not specifically directed at Plaintiff and do not even mention him by name. *See Deatley v. Allard*, 2015 WL 134271, *5 (D. Colo. Jan. 9, 2015). Statement No. 20, that Oltmann "is at the tip of the spear exposing election fraud" makes no factual assertion specifically "of and concerning" Plaintiff and is also not actionable. *Stump*, 777 F.Supp. at 826. Statement No. 12, attributed to Oltmann, similarly contains no defamatory factual assertion about Plaintiff, only about "these people" who "have suppressed the voice of the American people," against whom the invective in the statement is generally directed. Statement No. 12 makes no defamatory accusation of fact specifically directed at Plaintiff and is therefore not actionable. *Id.*

### d.    Statements Nos. 10, 11, 13, and 15-18 are nonactionable questions.

Statements Nos. 10, 11, 13, 15, 16, 17, and 18 are questions asked by Defendants, which by their very nature cannot be proved true or false. It is generally settled as a matter of defamation law that a question, "however embarrassing or unpleasant to its subject, is not accusation." *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993). Questions indicate a defendant's "lack of definitive knowledge about the issue." *Partington v. Bugliosi,* 56 F.3d 1147, 1157 (9th Cir. 1995). For that reason, federal circuit courts have consistently held that merely posing questions does not give rise to actionable defamation claims. *See id*.; *Beverly Hills Foodland, Inc. v. United Food & Comm'l. Workers Union, Local 655*, 39 F.3d 191, 195-96 (8th Cir. 1994); *Phantom*

*Touring, Inc. v. Affiliated Pubs.*, 953 F.2d 724, 729-31 (1st Cir. 1992); *Chapin*, 993 F.2d at 1094.

*See also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338-39 (D.C. Cir. 2015) (Kavanaugh,

J.) ("Questions can be posed to explore, to inquire, to prompt further inquiry, to frame discussion,

to initiate analysis, and the like. But questions are questions."); *but see Keohane*, 882 P.2d at 1302

(suggesting that a question, "though not phrased in the form of a declaration of fact, may imply

the existence of a false and defamatory fact").

> **e.  Partial summary judgment should be granted for Defendants on Statements Nos. 1-4, 9-20, and 24 to simplify trial.**

This motion does not address whether Defendants may be liable for Statements Nos. 5-8,

21-23, or 25-27, all attributed to Oltmann, since the gist of these statements—that Plaintiff boasted

about and thereby admitted "rigging" the 2020 election—is the same as the gist of Oltmann's

statements that have previously been found defamatory.[8] None of the other statements Plaintiff

alleges are defamatory is actionable, however, for the reasons above. Partial summary judgment

should therefore be granted for Defendants on Plaintiff's defamation claim to the extent it is based

on these 17 discrete statements (Nos. 1-4, 9-20, and 24) because they are nonactionable in

defamation, and in order to clarify the basis of the defamation claim and simplify it for trial.

## V.  Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim because Plaintiff cannot establish a conspiracy between "two or more persons."

Defendants also move for summary judgment on Plaintiff's civil conspiracy claim because

Clark and his LLCs do not constitute "two or more persons" necessary to impose liability for civil

conspiracy under Colorado law.

---

[8]Defendants do not concede these statements are actionable as to Defendants and reserve their defenses to argue they cannot be liable for these statements on other grounds.

Plaintiffs claim for civil conspiracy in his Second Amended Complaint alleges at ¶ 127 that "Defendants engaged in a conspiracy to defame and inflict emotional distress upon Plaintiff." [Dkt. 175]. The only Defendants in this case and thus the only alleged conspirators are Clark, MYLE LLC, and Reopen America LLC. The Second Amended Complaint expressly alleges that Clark is an "agent" of both LLCs. *Id*., ¶ 10 (Clark "at all times relevant was acting as an agent and representative of Make Your Life Epic LLC"); *id*., ¶ 11 (Clark "at all times relevant was acting as an agent and representative of Reopen America LLC").

Under Oklahoma law, a limited liability company is managed by one or more managers. 18 OKLA. STAT. § 2013. It is undisputed that Clark is the sole member and manager of MYLE LLC. (SUF Nos. 2-3). He is also the sole member and manager of Clark Holdings LLC, which is the sole member of Reopen America LLC. (SUF Nos. 5-7). Under 18 OKLA. STAT. § 2019, "Managers as Agents," "Every manager is an agent of the limited liability company for the purpose of its business, and the act of every manager, including the execution in the limited liability company name of any instrument for apparently carrying on the business of the limited liability company of which he is a manager, binds the limited liability company...." As the manager, Clark is thus an agent of both LLCs.

"As an inanimate entity, a corporation must act through agents." *Genova v. Longs Peak Emergency Physicians, P.C*., 72 P.3d 454, 462 (Colo. App. 2003). Consequently, as the Colorado Court of Appeals made clear in *Coomer v. Trump*, 552 P.3d at 602, "A corporation and its agents acting on its behalf 'do not constitute the "two or more persons" required for a civil conspiracy'" (quoting *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1390 (Colo. App. 1986)). *See Semler v. Hellerstein*, 428 P.3d 555, 562 (Colo. App. 2016), *rev'd on other grounds*, *Bewley v. Semler*, 432

P.3d 582 (Colo. 2018). This is not a new rule of Colorado law. *See Lockwood Grader Corp. v. Bockhaus*, 270 P.2d 193, 196 (Colo. 1954) (person acting on behalf of corporation cannot conspire with himself individually); *see also Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52 (10th Cir. 1963) (applying Colorado law in holding that "a corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy"). "It is a generally the rule that, because a corporation can only act through its officers and employees, such officers and employees are incapable of conspiring with the corporation or with each other with regard to actions taken by the corporation." *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 655 (D. Colo. 2005).

Courts in this district have consistently recognized that a corporation cannot conspire with its agent, especially an officer or managing agent. *See Titan Mfg. Sols., Inc. v. Natl. Cost, Inc.*, 2020 WL 996880, *3 (D. Colo. Mar. 2, 2020) (Martinez, J.) ("In light of the rule that corporate employees acting on the corporation's behalf cannot create a civil conspiracy, Plaintiff's civil conspiracy claim must be dismissed.") (citing *Pittman*); *Judson v. Walgreens Co.*, 2021 WL 1207445, *4 (D. Colo. Mar. 31, 2021); *IIT, Inc. v. Communications Distributors, LLC*, 2021 WL 5240287, *20 n.39 (D. Colo. Oct. 7, 2021) ("[A]s an agent for CDI, Mr. Dieter and CDI cannot conspire with each other."); *MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, 2020 WL 4271703, *11 (D. Colo. July 24, 2020); *Martensen v. Koch*, 2014 WL 3057172, *5 (D. Colo. July 7, 2014) ("A corporation and its employees do not constitute the 'two or more persons' required for a conspiracy."); *TRC Self Storage Dev., LLC v. Pub. Storage, Inc.*, 2007 WL 2936322, *3 (D. Colo. Oct. 9, 2007). Hence, where the basis of the claim is that a corporate officer conspired with a corporation, the conspiracy claim fails as a matter of law. *See Martin v. Pure Spectrum CBD, LLC*, 2022 WL 19418, *8 (D. Colo. Jan. 3, 2022) ("Because it is undisputed that Mr. Bell was the CEO

of Pure Spectrum, he could not, as a matter of law, conspire with Pure Spectrum. Accordingly, summary judgment is appropriate on this [conspiracy] claim.").

LLCs are no different than corporations in this regard. Under 18 OKLA. STAT. § 2019, the manager of an LLC is an agent of the LLC who acts on its behalf. A manager or agent of an LLC therefore cannot conspire with the LLC because they do not constitute the "two or more persons" necessary for a civil conspiracy. *See Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F.Supp. 693, 708 (D. Colo. 1994) (agent cannot be held liable for conspiracy with his principal where agent acts within scope of his authority). This doctrine has been applied to bar claims of conspiracies between a limited liability company and its members, and between a parent company and its wholly owned subsidiary. *See Southern Field Maint. & Fabrication LLC v. Killough*, 2018 WL 4701782, *9 (M.D. Ala. Oct. 1, 2018) (dismissing conspiracy action against limited liability company and its sole member). The same intracorporate conspiracy doctrine applies to Clark Holdings as sole member of Reopen America. Because Reopen America's sole member is Clark Holdings, Clark Holdings cannot conspire with Reopen America, and Clayton Clark, as Clark Holdings' manager and sole member, cannot conspire with either LLC. *See Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128, 1131 (Colo. App. 1985) (conspiracy claim cannot be maintained if one company is but an instrumentality of another).

Since the Second Amended Complaint therefore does not allege the "two or more persons" necessary for a conspiracy, *see id.* at ¶ 127, there is no basis for any conspiracy claim against Defendants based on any alleged "conspiracy" between the LLCs and Clark. *See Coomer v. Trump*, 552 P.3d at 602 (concluding that Coomer "failed to meet his burden of establishing a reasonable likelihood of prevailing on his conspiracy claim" based on allegations of a conspiracy between a

corporation and its agents); *Titan Mfg. Sols*, 2020 WL 996880 at *3; *MSC Safety Sols.*, 2020 WL 4271703 at *11; *TRC Self Storage.*, 2007 WL 2936322 at *3. Summary judgment is therefore proper for all Defendants on Plaintiff's civil conspiracy claim. *See Martin v. Pure Spectrum*, 2022 WL 19418 at *8.

## VI.    Conclusion.

For the foregoing reasons, Defendants respectfully requests that this Court grant partial summary judgment in their favor on Plaintiff's claims for defamation with respect to the statements set forth in paragraphs 1-4, 9-20, and 24 of **Exhibit I** and civil conspiracy as requested herein.

Respectfully submitted this 25th day of November, 2024.

*/s/Thomas B. Quinn*
Thomas B. Quinn
Melissa A. Wiese
Gordon Rees Scully Mansukhani LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
tquinn@grsm.com
mwiese@grsm.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2024, I electronically filed the foregoing **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk of the United States District Court which will send notification to all counsel of record.

*/s/ Karla M. Freeman*