IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-3440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, d/b/a THRIVETIME SHOW,
REOPEN AMERICA LLC d/b/a REAWAKEN AMERICA TOUR, and
CLAYTON THOMAS CLARK, individually,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS FOR ATTORNEYS' FEES AND COSTS**

---

    Before the Court are Plaintiff Eric Coomer's motions for attorneys' fees and costs (jointly, "Motions") arising from the civil contempt and appellate proceedings, wherein Nonparty Joseph Oltmann and his appellate counsel violated court orders and committed misconduct, respectively. (ECF Nos. 170, 244.) Oltmann filed a response to the motion seeking fees and costs arising from the contempt proceedings. (ECF No. 199.) Coomer inexplicably did not file a reply. Oltmann inexplicably did not file a response to Coomer's motion for appellate fees and costs. (ECF No. 245.) Coomer nonetheless filed a reply in support of his appellate fees and costs Motion. (ECF No. 252.) On July 25, 2025, the Court held an evidentiary hearing on the Motions. (ECF No. 260.)

    For the following reasons, the Motions are granted in part and denied in part.

I.     BACKGROUND

The Court assumes familiarity with the general background of this case from, among other sources, the Tenth Circuit's Opinion affirming the Court's Order finding Oltmann to be in civil contempt. (ECF No. 239 at 1–6.) The Court incorporates that background here and adds the following pertinent facts.

In February 2024, Coomer served Oltmann with a Subpoena to Testify at a Deposition in a Civil Action and Produce Documents. (ECF No. 114-1 at 2.) According to Coomer, "the central purpose of the deposition was to obtain evidence related to Mr. Oltmann's claimed conduit to the alleged Antifa call and his access to [Coomer's] Facebook page." (ECF No. 170 at 4.) Oltmann moved to quash the subpoena (ECF No. 114), which United States Magistrate Judge Kathryn A. Starnella denied, instead ordering him to appear for the deposition in her jury deliberation room on June 6, 2024, at 9:00 a.m. (ECF No. 135 at 1.) Oltmann appeared with his trial counsel, Mark Sares. (ECF No. 144 at 6–7.)

The deposition proceeded from approximately 9:30 a.m. to 12:00 p.m., during which time Oltmann refused to answer questions about who enabled him to attend the alleged "Antifa call." (*Id.* at 7.) After a morning recess, Coomer's counsel excused Coomer and another party from the room "to facilitate questioning about who provided Mr. Oltmann access to Dr. Coomer's private Facebook account . . . ." (*Id.*) But Oltmann repeatedly refused to answer how he obtained access to Coomer's Facebook account, even after Coomer's counsel reminded him of Judge Starnella's order requiring him to disclose this information. (*Id.* at 8.)

Coomer's counsel asked for a break to allow Sares to advise Oltmann. (*Id.*)

2

About 35 minutes later, Coomer's counsel interrupted their discussion and said he "wished to have all counsel meet with [Judge Starnella] in her chambers." (*Id.*) During that meeting, Judge Starnella directed Sares to confer with Oltmann "for 20 minutes to cajole his compliance with the Court's April 8, 2024 Order." (*Id.*) Coomer's counsel returned to the jury deliberation room to wait for Sares's and Oltmann's 20-minute meeting to conclude, sometime after which he learned that Oltmann had fled the courthouse without being released from his subpoena, and without the knowledge or permission of Judge Starnella, the parties, or counsel. (*Id.*)

Based on these events, Judge Starnella found "there [to be] clear and convincing evidence that Mr. Oltmann violated the Court's Orders and failed to obey the subpoena." (ECF No. 143 at 13–14.) Consequently, she Recommended that the Court, as pertinent here, sanction Oltmann "in an amount of the fees the parties directly incurred because of [his] noncompliance." (*Id.* at 17–18.) Oltman filed an Objection to the Recommendation, to which Coomer filed a response. (ECF Nos. 145, 150.) The Court overruled the Objection and adopted in full the portion of Judge Starnella's Recommendation granting Coomer his attorneys' fees and costs, specifically awarding those fees and costs which were "directly incurred as a result of [Oltmann's] noncompliance with Judge Starnella's orders." (ECF No. 168 at 13.) Coomer filed his Motion for fees and costs arising from the contempt proceedings in September 2024. (ECF No. 170.)

In October 2024, Oltmann appealed the Court's Order overruling his Objection, finding him to be in civil contempt, and awarding fees and costs. (ECF No. 195.) In June 2025, the Tenth Circuit affirmed the Court's Order, and in doing so, concluded that

3

Oltmann's appellate counsel, Randy Corporon, "crossed" the "fine line between zealous advocacy and frivolity or attorney misconduct." (ECF No. 239 at 15.) Specifically, the Circuit concluded that Corporon violated appellate Rule 46.5 by presenting arguments that were not "grounded in existing law and based upon facts supported by the record." (*Id.*) For this misconduct, the Circuit "order[ed] that Oltmann pay Coomer's reasonable expenses, including reasonable attorney's fees, and costs associated with this appeal." (*Id.* at 16.) The Circuit continued: "Because the determination of fees and costs from the district court proceeding remains outstanding, we remand to the district court to make factual findings on fees and costs in the first instance, to include those previously incurred during the contempt proceedings and those incurred as part of this appeal." (*Id.*)

Earlier this month, Coomer moved for appellate fees and costs. (ECF No. 244.) On July 25, 2025, the Court held an evidentiary hearing on both Motions. (ECF No. 260.) Hence, the Motions are fully ripe for the Court's resolution.

## II.     APPLICABLE LAW

Courts have "inherent authority" "to impose compensatory monetary sanctions for contempt, including awarding attorney's fees incurred due to the noncompliance . . . ." *In re Arrowhead Fin. ICT, LLC*, 2024 WL 2305786, at *5 (Bankr. D. Kan. May 20, 2024). The Court and the Tenth Circuit have already determined that Coomer is entitled to attorneys' fees and costs resulting from the contempt and appellate proceedings. Thus, the issue here is not *whether* Coomer is entitled to such fees and costs but whether *the amounts* he seeks to recover are reasonable.

Determining the amount to which a moving party is entitled begins with "the

4

moving party fil[ing] an affidavit detailing the requested amount." *Castillo v. Allstate Prop. & Cas. Ins. Co.*, 2023 WL 7385109, at *1 (D.N.M. Nov. 8, 2023). Courts then employ the lodestar calculation to determine whether the requested fee amounts are reasonable. *Id.* (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)). "The lodestar amount is calculated by multiplying the number of attorney hours reasonably expended by a reasonable hourly rate." *Id.* "To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment." *Porter v. BASF Corp.*, 2021 WL 4426954, at *3 (D. Colo. Sept. 27, 2021). "The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment." *Id.* "[T]he resulting product is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

"Assessment of attorney's fees is discretionary, 'ever more so given the district court's understanding of the litigation and the 'desirability of avoiding frequent appellate review of what are essentially factual matters.'" *T.A.P. v. Comm'r, Soc. Sec. Administration*, 2024 WL 4213763, at *3 (D. Colo. Sept. 16, 2024) (citation omitted). "Because of this, the district court 'need not identify and justify every hour allowed or disallowed.'" *Id.* (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)).

### III.     ANALYSIS

Coomer moves to recover his attorneys' fees and costs arising from the contempt and appellate proceedings. (ECF Nos. 170, 244.) Addressing each Motion in turn, the Court concludes that Oltmann shall be required to pay Coomer the following amounts.

5

### A. Attorneys' Fees and Costs Directly Incurred by Oltmann's Contempt

Coomer seeks to recover $19,623.24 in attorneys' fees and costs arising from the contempt proceedings, which he says were "directly incurred as a result of [Oltmann's] noncompliance with Judge Starnella's orders." (ECF No. 168 at 13.) Specifically, Coomer seeks to recover $16,966.88 in fees and $2,656.36 in costs. (ECF No. 170-2 at 5.) As to the fees, Coomer elaborates "that 56.6 hours were reasonably expended by the attorneys and paralegals with respect to preparing for the deposition of [Oltmann], thereafter attending a contempt hearing following the abrupt departure from the deposition by Mr. Oltmann, preparation and submission of a response in support of the [Recommendation], and the preparation and filing of the Motion accompanying this Declaration." (ECF No. 170-1 at 2–3.)

Oltmann disputes the reasonableness of these amounts on the grounds that Coomer's counsels' billing entries are based on or otherwise involve "deposition time already required"; "excessive time and duplication of services"; "inadequate documentation of invoice/block billing"; "time spent on paralegal and clerical tasks"; and "unnecessary costs." (ECF No. 199 at 2, 3, 5, 8, 10.)

The Court agrees in part with Oltmann that some of the fee amounts sought by Coomer are based on expenses that were not "directly incurred as a result of [Oltmann's] noncompliance with Judge Starnella's orders." (ECF No. 168 at 13.) For example, Coomer seeks to recover roughly $900 for the 13 hours his counsel, Brad Kloewer, spent preparing for Oltmann's deposition, traveling approximately three hours from Salida to Denver, and having dinner with Coomer after the deposition. (ECF No. 170-3 at 2–3.) Although this $900 figure constitutes only 25% of Kloewer's typical $275

6

hourly rate—which rate Oltmann does not challenge—the Court questions that even 25% of these 13 hours was attributable to Oltmann's refusal to answer questions at his deposition. (ECF No. 170 at 5.) Kloewer would have had to prepare for the deposition, drive from Salida to Denver,[1] and presumably would have elected to have dinner with Coomer regardless of whether Oltmann answered certain questions and fled the deposition without leave.

Nor does the Court see how Coomer directly incurred $3,187.50 in expenses as a result of his other counsel, Charles Cain, billing 8.5 hours to attend the "deposition and hearing." (ECF No. 170-3 at 2–3.) Although this $3,187.50 figure constitutes only 75% of Cain's typical $500 hourly rate—which rate Oltmann again does not challenge— surely 75% of these 8.5 hours were attributable to tasks other than those solely caused by Oltmann's noncompliance with the Court's Orders. Furthermore, according to the billing entries submitted by Coomer, *Kloewer* was the attorney who prepared for and conducted the deposition; Cain's participation was therefore minimal at best and his attendance was arguably wholly unnecessary at most.[2] *See Robinson v. City of*

---

[1] The Court is not totally convinced that it is appropriate to award fees based on Coomer's counsels' travel and lodging expenses. In one sense, those are not expenses "directly related" or attributable to Oltmann's noncompliance. Coomer's counsel presumably would have had to incur those travel expenses regardless of whether Oltmann answered the two questions. In another sense, however, perhaps Coomer's counsel would have opted not to depose Oltmann at all if they had known beforehand that he planned not to answer important questions.

Relatedly, Coomer appears to justify seeking to recover his travel expenses "based on the need to perform an additional deposition of Mr. Oltmann." (ECF No. 170 at 5.) But the parties have apparently reached a settlement as to the underlying merits of this lawsuit. (ECF No. 242 at 6.) Hence, it appears that Coomer no longer plans to depose Oltmann again, and thus, his anticipatory request (albeit from over six months ago) for such fees is rejected as moot.

[2] On the other hand, the Court takes Cain's point from the Evidentiary Hearing that, in matters like these, where a witness is expected to be difficult to wrangle, it is helpful to have

7

*Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (instructing courts to consider the "potential duplication of services" by multiple lawyers when ascertaining the reasonableness of a fee award).

Coomer's request for fees related to clerical tasks also lacks merit. "[D]istribut[ing]" Judge Starnella's Recommendation to the trial team, "[r]eceiv[ing] courtroom minutes," "updat[ing] docket regarding" the response to the Objection, and "gather[ing] and mark[ing] exhibit[s]" are all tasks which strike the Court as overhead expenses not appropriately billed to the client. *See Bess v. Kijakazi*, 2023 WL 2422205, at *4 (D. Colo. Mar. 6, 2023) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as EAJA attorney fees."). Yet Coomer at times seeks to recover 100% of these expenses from Oltmann. (*Id.*) And while the Court would be amenable to considering whether to give Coomer the benefit of the doubt with regard to some of these suspect billing entries, the Court is disinclined to do so here since Coomer inexplicably did not file a reply to Oltmann's response.[3] But for the Evidentiary Hearing held by the Court, these figures would go wholly unrefuted by Coomer, at least on the papers.

To be sure, the Court is unpersuaded by many of Oltmann's other arguments challenging the reasonableness of Coomer's counsel's billing practices. Take for example Oltmann's argument that Kloewer inappropriately billed 8.5 hours for attending Oltmann's deposition, which ultimately only lasted 2.5–5.5 hours. (ECF No. 199 at 4.)

---

more experienced counsel at the deposition to assist.

[3] The Court gave Coomer an opportunity to explain why he did not file a reply at the Evidentiary Hearing. But Coomer had no answers.

According to Oltmann, this constitutes "improper billing" and means that counsel was "billing for three hours of time that could not have been incurred under any scenario but more specifically could not have been incurred as [a] 'direct' result of Oltmann's noncompliance." (*Id.*)  Oltmann, however, is mistaken.  While the substantive deposition time appears to have only lasted about 2.5 hours, that is not the end of the story.  The critical part of the story is what happened thereafter: Where Oltmann (1) refused to answer questions pertaining to material facts, which (2) prompted a conference with Judge Starnella, after which Oltmann (3) fled the courthouse without permission and then (4) went home to record a podcast episode where he disparaged Judge Starnella and suggested violence against anyone who may "come for" him.  (ECF No. 239 at 4.)  These events also precipitated Coomer's counsel's need to attend a contempt hearing on that same day, research and annotate the aforementioned podcast episode, and perform other related tasks.  Billing for that time was more than appropriate since it arose directly as a result of Oltmann's antics.  (*Id.*)

The Court is likewise unconvinced by Oltmann's claim that Coomer's counsel provided insufficient billing entries to account for their time and largely engaged in block billing.  Contrary to Oltmann's assertion, a log stating that Coomer's counsel spent time "prepar[ing] for deposition of Joe Oltmann" and attending the deposition and contempt hearing is sufficiently detailed to give the Court a clear sense of the tasks for which counsel billed Coomer.  (ECF No. 170-3 at 2–3.)  So is the log entry in which Kloewer indicated that he billed eight hours to "[r]eview and annotat[e]" Oltmann's podcast episode and draft the "supplemental notice to [the] Court for contempt recommendation."  (*Id.*)  Despite Oltmann's view that "[r]eviewing and annotating a

9

podcast post deposition is entirely free and separate from any fees 'directly incurred' as a result of Oltmann's noncompliance," the Court thinks such a task is completely understandable in circumstances like this, where Oltmann's recalcitrance and utter contempt for the judicial system is well-documented in this and other forums. (ECF No. 199 at 7.) Judge Starnella, too, understood the import of these past instances of misconduct, making clear in her Recommendation that Oltmann's misconduct here "was not isolated," which prompted her opinion that he should be held in contempt and pay a daily coercive fine. (ECF No. 144 at 10.)

In sum, the Court concludes that, while Coomer's fee request amounts are overall reasonable and supported by his counsel's billing entries and credible testimony at the Evidentiary Hearing, there are some notable, unrebutted exceptions warranting a reduction. The Court will not reduce the sought fee amount, however, "by attempting to identify specific hours that should be eliminated." *Dunlap v. Spec Pro, Inc.*, 2014 WL 1053641, at *5 (D. Colo. Mar. 18, 2014) (citation omitted). Doing so in these circumstances would be particularly inapt since some of the problematic billable hours are accompanied by other requests that are without question reasonable and directly related to Oltmann's misconduct and contempt.

Thus, the Court will instead reduce Coomer's sought fee amount of $19,623.24 by 10%. *See id.* (reducing fee award by 15% and collecting cases reducing fee award similarly). The Court finds that this relatively conservative reduction is particularly appropriate in this case, where Coomer's counsel already endeavored in good faith to pro-rate their sought fee amounts throughout their declarations. (*See generally* ECF No. 170-2.) Indeed, Coomer's counsel trimmed their sought fee amounts by

10

approximately one-third. (*Id.*) The Court appreciates these efforts to exercise prudent billing judgment.

For all these reasons, the Court awards Coomer **$17,660.92** in attorney's fees and costs arising from the contempt proceedings.

### B.   Appellate Attorneys' Fees and Costs

Coomer seeks to recover $37,995.70 in attorneys' fees and costs arising from the appellate proceedings. (ECF No. 244 at 3.) Specifically, he seeks to recover $37,923.50 in fees and $63.20 in costs. (*Id.*)

The Court finds these amounts to be reasonable. Coomer's counsel avers that "151.7 hours were reasonably expended by the attorneys and paralegals with respect to nonparty Oltmann's appeal of this Court's Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendations (ECF No. 168) entered September 4, 2024, preparation of briefs on jurisdiction, motions for expedited appeal, and answer briefing after nonparty Oltmann's opening brief was filed." (ECF No. 244-1 at 2–3.) The amounts Coomer seeks to recover are based on the same hourly rates his counsel charged for their time working on the contempt proceeding matters—rates which, again, Oltmann did not object[4] to in his Response. (*Id.* at 3.) As noted, those rates include $275 and $500/hour for Kloewer and Cain, respectively. The Court finds these hourly rates to be reasonable.

The Court likewise finds that Coomer's counsel spent a reasonable amount of time preparing briefs related to appellate jurisdiction, motions to expedite the appeal,

---

[4] What's more, Oltmann expressly stated at the Evidentiary Hearing that he did not challenge the reasonableness of these rates.

11

the answer brief, and the motion for sanctions. As for their time preparing appellate jurisdiction briefs and the motion for expedited appeal, it appears that Coomer's counsel spent roughly 50 hours. (*See generally* ECF No. 244 at 2.) The Court finds this amount of time to be quite reasonable, particularly because (1) Coomer had every incentive to seek a speedy resolution of Oltmann's meritless appeal given his previous attempts to delay judicial proceedings in this and other forums,[5] (2) Oltmann's Opening Brief was difficult for Coomer (and apparently the Tenth Circuit) to apprehend and fully understand, and (3) the jurisdictional issue involved thorny legal issues of arguable first impression, including whether the Court's daily fine sanction rendered its contempt order final and therefore reviewable. (*See generally* ECF No. 205 (explaining why the Court lacked jurisdiction upon Oltmann's filed notice of appeal).)

The Court also finds that the time Coomer's counsel spent preparing the answer brief and motion for sanctions to be reasonable. It appears Coomer's counsel spent roughly 85 hours preparing that 38-page answer brief and sanctions motion. (*See generally* ECF No. 244 at 3–5.) The Court finds such time to prepare those papers to be reasonable. And while the Court has not extensively reviewed the briefs for substance, the Court notes that they resulted in a favorable outcome on appeal, which tracks well with the general quality of Coomer's counsel's work product at the trial level. The Tenth Circuit agreed with Coomer, moreover, that Corporon committed misconduct; it therefore granted (at least in part) Coomer's motion for sanctions.

---

[5] Indeed, Coomer had to file multiple responses to Oltmann's motions for extensions of time to file various briefs. It was utterly reasonable for Coomer to oppose such motions given Oltmann's repeated delay tactics in this and other related litigation.

Notably, yet inexplicably,[6] Oltmann did not file a response to Coomer's Motion for appellate fees and costs. Thus, Coomer's fee figures are unrebutted and therefore confessed by Oltmann. *See Hallum v. Sheriff of Delaware Cnty.*, 2023 WL 9423259, at *9 (N.D. Okla. Dec. 26, 2023) ("Mr. Hallum has confessed this argument by failing to address it in his response.").

In discharging its duty to independently review the reasonableness of the fee amounts, however, the Court notes that there are a few occasions where Coomer's counsel engaged in block billing as to their appellate fees. (*See generally* ECF No. 244 at 2.) Hence, out of fairness to Oltmann, the Court finds it appropriate to reduce the sought appellate fees and costs by a modest 5%.

For all these reasons, the Court awards Coomer **$36,095.91** in attorneys' fees and costs[7] arising from the appellate proceedings.[8]

## IV.   CONCLUSION

---

[6] Oltmann explained at the Evidentiary Hearing that he did not learn of the Motion for appellate fees and costs until just a few days ago. This strains credulity. The Tenth Circuit awarded Coomer his appellate fees and costs many weeks ago. Oltmann surely knew of these circumstances around that time and therefore should have known that Coomer's Motion was forthcoming.

Even assuming Oltmann had no knowledge of this, however, that is an issue between he and his counsel. It is not an excuse that the Court will credit in this Order.

[7] The Court sees no issues with the amount of appellate costs sought by Coomer. In particular, the Court appreciates Coomer's counsel's efforts to comply with Tenth Circuit rules and seek only $63.20 in costs, despite incurring several hundred dollars in such costs.

[8] To reiterate, the Court's ruling is based on a rough calculation of the time Coomer's counsel spent on various tasks. There are many other tasks included in the billing entries not expressly discussed in this analysis. That lack of discussion should not, however, be construed as a view that those amounts are not reasonable. To be clear, the Court finds the vast majority, if not the entirety, of the 151.7 hours expended opposing Oltmann's appeal to be reasonable.

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Motions. (ECF Nos. 170, 244.) As noted above, Coomer shall have **$17,660.92** in attorneys' fees and costs arising from the contempt proceedings and **$36,095.91** in attorneys' fees and costs arising from the appellate proceedings.

Dated this 28th day of July, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge